## IN THE UNITED STATES DISTRICT COURT
## FOR THE DELAWARE DISTRICT

R.W., a Minor, individually, by and through      :
his parent and natural guardian SARAH WILLIAMS;
AND SARAH WILLIAMS, individually,      :
           PLAINTIFFS,      :
   v.

THE DELAWARE DEPARTMENT OF      :
EDUCATION; VALERIE WOODRUFF;
personally and in her official capacity as
the Secretary of Education for the State of
Delaware; THE STATE OF DELAWARE BOARD      :
OF EDUCATION; and JOSEPH PIKA, Ph. D.;
JEAN ALLEN; RICHARD M. FARMER, JR.;
MARY GRAHAM, ESQ.; BARBARA RUTT;      C. A. No.05-CV-662KAJ
DENNIS SAVAGE; CLAIRBOURNE D.
SMITH; ANNE CASE; VALERIE WOODRUFF;
personally and in their official capacity as Members      :
of the State Board of Education; and
THE CHRISTINA SCHOOL DISTRICT; JOSEPH J.      **E-FILE**
WISE, personally and in his official capacity as the      :
Superintendent of the District; DAVID SUNSTROM,
personally and in his official capacity as the Assistant
Superintendent of the District; SANDRA COUNTLEY, :
personally and in her official capacity; SHARON
DENNY, personally and in her official capacity;      :
FREEMAN WILLIAMS, personally and in his official
capacity; THE CHRISTINA SCHOOL DISTRICT      :
SCHOOL BOARD; BRENDA PHILLIPS;      :
JAMES DURR; GEORGE EVANS, ESQUIRE;
BEVERLY HOWELL; CONSTANCE MERLET      :
JOHN MACKENZIE; CECELIA SCHERER; and      :
JOSEPH WISE; all personally and in their official
capacity as Members of the CHRISTINA
SCHOOL DISTRICT.      :

      DEFENDANTS.

## <u>PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF</u>

**COMES NOW,** the Plaintiffs in the above captioned case, R.W., a

Minor, individually, by and through his parent and natural guardian SARAH

WILLIAMS; AND SARAH WILLIAMS, individually, by their attorney, Patricia

M. O'Neill, Esquire, hereby moves this Honorable Court pursuant to Rule 65 of the

Federal Rules of Civil Procedure for a preliminary injunction enjoining the

Defendants from refusing to admit Plaintiff student, R.W. to the general education

placement pending the final hearing and determination of this action and from

continuing to violate his guaranteed fundamental right to an education and from

continuing to violate his guaranteed Due Process Rights.

The injunctive relief is sought on the grounds that:

1. Unless restrained by this Court, defendants will perform the acts

referred to;

2. Such actions by the defendants will result in irreparable injury, loss

of educational opportunities to the plaintiff, as more particularly appears in the

Complaint and Affidavit of Sarah Williams, attached hereto;

3. Issuance of the requested injunctive relief will not cause undue

inconvenience or loss to defendants but will prevent irreparable injury to Plaintiff

student, R.W.;

      4. The Plaintiffs are likely to succeed on the merits in a trial on this

claim;

      5. The issuance of a preliminary injunction hearing is likely to

advance the public interest.

      WHEREFORE, Plaintiffs respectfully request that this Honorable

Court grant Plaintiffs' Motion for Preliminary Injunction be granted.

                          Patricia M. O'Neill
                          DE. ID. # 3016
                          Attorney for Plaintiffs
                          22 West Front Street
                          Media, PA 19063
                          610-891-6668
                          Oneillpmo@aol.com

Dated:  October 15, 2005

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DELAWARE DISTRICT

| | | |
|---|---|---|
| R.W., a Minor, individually, by and through his parent and natural guardian SARAH WILLIAMS; AND SARAH WILLIAMS, individually, PLAINTIFFS, | : : | CA. No.05-662KAJ |
| v. | | |
| THE DELAWARE DEPARTMENT OF EDUCATION, *et.al.* | : | |

### AFFIDAVIT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

STATE OF DELAWARE   )
                                          )SS.
NEW CASTLE COUNTY  )


        SARAH WILLIAMS, being duly sworn, deposes and says:

        1. I am one of the Plaintiffs in the above-entitled action and am the Parewnt and natural guardian of Plaintiff R.W. age fourteen.

        2. I have filed the above-entitled action on behalf of my son because the School District, *et.al.,* deprived my son of his right to an education by failing to follow their own procedures regarding suspensions and expulsions and provide the requisite due process.

        3. I have filed the above-entitled action on behalf of my son because the State Board of Education, *et.al.,* deprived my son of his right to an education by failing to hear an appeal of the District's decision because it was not made by the Board below.

        4. In the Complaint,  paragraphs 23 through 30 describe the details of the

incident which occurred on November 8, 2004,that began this ordeal and this case before the Court. In summary, R.W., after being provoked, hit another student in the face. My son is a good student, a hero in the community and a respectful person. This incident was not his usual course of actions in school. In fact, he had never been in trouble before in school or the community. He served his five day suspension and returned to school for one-half day and I received a phone call to come and get him. I learned that the District had ordered the Principal to suspend him for five more days because he was not sufficiently punished . (Par. 31 & 32).

5. I consistently requested a copy of the Student Code of Conduct and was denied a copy. I was not prepares for what happened at the meetings because no one ever provided me with appropriate information such as, among others, appeal rights; who should or should not be at the meetings and a flat out refusal to show me a video-tape of my son which the District wrongfully concluded showed that my son had no remorse. The District also lied to me and others when it stated on one form that my son was expelled and yet later tried to tell me he wasn't. I only learned how the District violated its own policy after I managed to obtain the Student Code of Conduct early the next year. The District tried to place him in a school which was that principal said was not the appropriate placement for him.

6. The District can't tell this Court that it did placed my son in an alternative placement because he pled guilty in Family Court to a crime because that did not happen until after the District made all of their decisions. The Family Court placed him in a diversionary program.

7. I requested that the District Board hear my son's case and the District refused to hear any appeal. I then requested that the State Board hear the appeal. There, I learned that, presumably the State Board is there to make sure District act in accordance with the laws, rules and regulations, the State Board does not care about making a District do things right. The State Board actually stated that it could not hear my appeal because there was no decision from the District's Board, which refused my request for appeal.

8. In the interim, my son has been on homebound instruction for a marking period and spent the summer in the District's school and passed grade 8. He is now placed in the 9th grade at Newark High School. His name is called out on a daily basis. Now, either the District placed him there and didn't tell anyone or they used him as part of the September 30, 2005 body count for funding. If so, the District appears to knowingly be committing fraud on the State in regard to how many

student are in school.

9. My son did something wrong and he has paid dearly for it. He is now under the care of a psychiatrist for the depression which has plagued him because of the incident and the dishonest way both the District and the State have treated him.

10. Unless Defendants are compelled to return this child to his regular educational placement, he will continue to suffer great and irreparable harm. He has already lost a year of educational opportunities which can never be replaced. And, as is the usual modus operandi of school district in the State of Delaware, the District blames me and does not take a good long look at how we got here. The defendants will suffer no prejudice or harm by the Court enjoining both from returning my son to the regular educational placement and order the District to bring him up to class level.

_Sarah Williams_
SARAH WILLIAMS

SWORN TO AND SUBSCRIBED
before me, a Notarial Officer of the
State of Delaware this / ⟨ of
October, 2005

_____
Notarial Officer/Attorney

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DELAWARE DISTRICT

R.W., a Minor, individually, by and through      :
his parent and natural guardian SARAH WILLIAMS;
AND SARAH WILLIAMS, individually,      :
           PLAINTIFFS,             CA. No.05-662KAJ
     v.

THE DELAWARE DEPARTMENT OF      :
EDUCATION, *et.al.*

## PLAINTIFFS' OPENING BRIEF
## IN SUPPORT OF THE MOTION FOR INJUNCTIVE RELIEF

## INTRODUCTION

This is a Motion for a Preliminary Injunction, and after a

hearing, a final injunction, seeking to enjoin the Defendants from refusing to place

R.W. back into a general education placement at Newark High School or in the

alternative to order the District to place R.W. back into a regular education school.

Further, Plaintiffs claim that their due process rights have been violated.

## FACTS

All facts are well pled in the attached complaint. However, in summary,

R.W. was involved in an assault in school on November 8, 2004. Before he ever had

his day in Family Court, he was "sentenced" to the outer lands of regular education without proper Due Process. Immediately after the incident, R.W. spoke with a District employee and was forced to "spill his guts" as to his "crime" or risk being punished further.

Initially, he was given a five day suspension. Then he was given another five day suspension and his Mother was told to come to a meeting on December 2, 2004. Mother went to the meeting and was prevented from being able to defend her child. All information provided at the meeting was ignored. Mother was told that there was a video tape of R.W. showing no remorse for his actions. No other information was given about this video tape. Mother requested that she be permitted to view such a video tape but was denied that request. The video tape was never shown to her at all. Yet, the District used that tape to decide that R.W. was not remorseful and to take further action against him.

Mother did not know what type of meeting this was, because she was never provided with any written information about it. At no time was she given a copy of the student Code of Conduct, despite repeated requests. At no time was Mother asked to provide input for a program to meet R.W.'s particular needs as is required by the Alternative Placement Program. At no time was parent given notice of what, if any, was the decision other than go to another meeting.

At the next meeting held on December 13, 2004, which presumably was an

expulsion meeting, however, Mother was still not fully informed. Assuming it was such a meeting, the District violated it own policy as to the make up of the individuals needed for such a meeting. A packet was presented at this meeting which Mother had no time to review before the meeting. No information was provided to Mother as to the outcome of the meeting until Mother called the District and learned that a letter was sent to her on December 20, 2004 advising her of the outcome. Parent did not receive such letter, until after the conversation with the District. In the interim, a referral was sent to the Compass school listing R.W. as having been expelled from school. Even according to the District's own documents, this was not true.

Mother did visit the alternative school and found that it was not an appropriate placement for her son.

Mother appealed the decision of the Meeting held on December 13, 2004 to the State Board. There in a classic example of a "catch 22", the State Board refused to hear the case on its merits because the District Board had not decided the issue of alternative placement and/or expulsion.

## ARGUMENT

The salient question is whether R.W. should be returned to his regular education placement. The answer can be found threefold.

First, the District placed R.W. in an alternative placement for a marking period and he completed such an alternative placement in a homebound setting for one semester, thus he should be permitted to return to his regular educational placement immediately.

Second, the District failed to provide the requisite Due Process protections as defined by the United States Supreme Court and apparently outlined in the District's Code of Conduct, thereby violating R.W.'s protected rights, thus R.W. should be returned to his regular educational placement in the District.

Third, the State Board violated R.W.'s protected rights by conducting a biased meeting for fear of . . . "opening the floodgates of litigation" if it heard R.W.'s appeal on the merits, thus R.W. should be returned to his regular educational placement.

I. On November 8, 2004, R.W. was involved in an incident in school and as a result thereof was placed in an alternative placement. This statement does not in any way concede that the District acted properly in doing so.

However, taking the placement alone, R.W. was placed in alternative school know as The Compass School (nothing more than a dumping ground/ warehouse of delinquent children with a severity of issues not at all in common with R.W.) The principal, himself, told Mother, Compass School was not appropriate for R.W.

According to the District's Code of Conduct of Conduct, such a placement should take into consideration the child's needs and that prior to placement, the student's parent/guardian shall be conferred with about the student's need to be in a special program. ( See Code of Conduct relevant pages attached as Exhibit A).

The District never considered the needs of this child nor requested input from the Parent, yet unilaterally place him in this terrible place. Mother learned that the placement was inappropriate and refused to send him there, so R.W. was administratively placed on Homebound instruction by the District on November 29, 2004 and continued to receive homebound instruction until January 21, 2005, the semester in an alternative placement. (See Attendance Report for R.W. attached as Exhibit B).

R.W. was removed from Homebound instruction as a retaliation for his Mother's exercise of her right to know how this procedure worked and because she insisted on continuing to appeal this matter.

An intimidating letter was sent to her by David Sunstrom, who was not involved in this matter until Mother began to ask appropriate questions, for example: why is Compass School appropriate when the principal told her it was not; why does the paperwork given to the Compass School indicate that R.W. was expelled and if so, why was she not provided with the Code of Conduct (which she requested many times); and why was she not permitted to view the video-tape which

the District used to decide that R.W. was not remorseful.(Attached as Exhibit C).

Accordingly, This Court could reasonably determine that R.W. served his time in an alternative school, that is the Homebound program, which the District provided to him and therefore should be returned to his regular education placement in Newark High School, Newark, Delaware in the Christina District.

It is important for the Court to know that every day of this school year, 2005-2006 thus far, a teacher in Newark High School has called out R.W.'s name when checking attendance. There can only be two explanations for this: one that the District placed him there and yet insists on an alternative placement at the Compass School as some type of lesson to the Mother; or, two, the District committed fraud upon the State in using R.W.'s name in the September 2005 student count which determines how much money it receives from the state for education. The District is not entitled to play around with a child's life and education for either reason. This child has been permitted to waste enough time by the District, which undoubtably will blame Mother and not it for what happened here. The District lost sight of the child in favor of needing to be right over the Mother and covering its mistakes.

II. The landmark case of *Goss et. al. v. Lopez et.al.,* (419 U.S. 565, (1975)), *(Attached as Exhibit D)* established that education is a property right and

cannot be taken away without due process. " The Fourteenth Amendment forbids the States to deprive any person of life, liberty or property without due process of law. Protected interests in property are normally "not created by the Constitution. Rather, they are created and their dimensions defined" by an independent source such as statutes or rules entitling the citizens to certain benefits. *Board of Regents v. Roth, 408 U.S. 564 (1972) . . . " Goss at 556.*

The public schools of Delaware are free to persons who are residents of this state. *14 Del. C. Sections 201, et. seq.* In the case at hand, as in the *Goss* case, R.W. has, on the basis of state law, a legitimate claim of entitlement of education. In this case, as in *Goss,* schools have their own rules for suspensions or expulsions. *14 Del.C. Sections 1601 et. seq.* Particularly, in Delaware Code, Section 1604, The Delaware Department of Education established a program component which will provide alternative educational and related services for the **more severe discipline** problems in public schools. (Emphasis added). The District pays only 30 per cent of the cost per student and the Department of Education pay the rest. Thus, it is possible for the District to place R.W. in an alternative school program and still make money as part of the initial student count. The Department of Education also required prevention-related student services to students to prevent them from becoming a discipline problem. *12 Del C. Section 1605A.* No services were offered to R.W. for the first offense he ever committed, and who was also known as a hero

by preventing a rape from occurring on the school bus. It is also the Plaintiffs' position that R.W. did not belong in an alternative placement because the mandate from the State is for severe discipline problems and R.W. did not fall into that category.

Although, constitutionally, Delaware may not be obligated to establish and maintain a public school system it has nevertheless done and has required children to attend. These young children, as well as R.W., do not "shed their constitutional rights" at the school house door . . . "The Fourteenth Amendment, as now applied to the states, protects the citizens against the State itself and all of its creatures–Boards of Education not excepted." *Goss.Id.*

Further, *Goss* stated that:

"...education is perhaps the most important function of state and local governments, and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of a suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary."

The question then remains if indeed Due Process is required, what process is due. *Goss* states that if the suspension is for 10 days or less, notice and a hearing is required. Further, there must be no delay between the time "notice" is given and the time of the hearing. Longer suspensions or expulsions for the remainder of the

school term, or permanently, may require more formal procedures.

Parties whose rights are to be affected are entitled to be heard and in order to be heard they must first be notified. *Id.* In this case, Mother was not given the original notice of suspension, it was only given to R.W. to sign. Further, an Extension of suspension form was given to Mother on November 19, 2004 listing 2 meeting dates but only stating that this was for an alternative placement meeting, one date said building, the other said nothing. On the December 2, 2004-summary of Building  Level Conference, the recommendation was for District review. It did not provide any information as to what referral to "District for review" meant. In fact, at that review, Mother was provided a large packet to review and had no time to review the materials contained therein. If this was an expulsion hearing, then certainly Mother had no information to tell her what to do or that she had the right to counsel, if she so chooses. No certified mail was sent to her, as is the usual case in other states, no notice of an expulsion hearing was ever handed to her, only that the "case is referred to the District for review" The District would be disingenuous to try and state that it was not an expulsion hearing because in the referral sent to The Compass School it stated that R.W. was expelled. Also, no letter was sent to Mother about the results of the meeting until after she called the District and then mysteriously, a letter appeared.

Even in the case where parents waived the right to an expulsion hearing and

the child was expelled, the Court ruled that the parents' waiver was not valid because

they were not knowingly and intelligently given. The Court so ruled because the

parents were not provided with sufficient notice of the availability of free or low-cost

counsel. *In the Matter of the Expulsion of Z.K. et.al.,* (Minn. Ct. App. 0517/05).

The expulsion was reversed.

    In this case, Mother was not afforded any notice of the right to free or low-cost

counsel. That someone went to the second meeting with her, who is not an attorney,

does not mean Mother was afforded proper notice.

    In the most important words of *Brown v. Board of Education of Topeka*:


        Today, education is perhaps the most important function of state and
    local governments. Compulsory school attendance laws and the great expenditures
    for education both demonstrate our recognition of the importance of education to our
    democratic society. It is required in the performance of our most basic public
    responsibilities, even service in the armed forces. It is the very foundation of good
    citizenship. Today it is a principal instrument in the awakening the child to cultural
    values, in preparing him for later professional training and in helping him adjust
    normally to his environment. In these days it is doubtful that any child may
    reasonably be expected to succeed in life if he is denied the opportunity of an
    education. Such an opportunity, where the state has undertaken to provide it, is a
    right which must be made available to all on equal terms. (347 U.S. 483 (1954)).

    It is with these important words in mind, ( not withstanding that *Brown* is an

equal protection case,  the words are important nonetheless) that the Plaintiffs

request that this Honorable Court stop the District from education R.W.  The District

made mistakes. R.W. made a mistake.  R.W. has done his marking period in an

alternative school.  Let him return.

III.  The State of Delaware Department of Education and the Board is
responsible for seeing that the statutes regarding alternative placement and expulsion
are carried out in a proper manner.  This Department of Education abandoned its
responsibility and the Board knowingly allowed R.W.'s right to his education be
violated by not enforcing the Alternative Placement Program. They did not protect
this child.  They let him go because they did not want to open the flood gates to
litigation on alternative placements.  Shame on them all

## CONCLUSION

For the above stated facts and precedent, Plaintiffs submit that a preliminary
injunction should be granted and R.W. be returned to his regular educational
placement and be provided with additional instruction to bring student up to class
level.

Patricia M. O'Neill
DE. ID. # 3016
Attorney for Plaintiffs
22 West Front Street
Media, PA 19063
610-891-6668
Oneillpmo@aol.com

# EXHIBIT A

# CHAPTER 5: DISCIPLINARY PROCEDURES

## Assignment to Alternative Programs

Assigned to alternative programs is the placement of a student, with appropriate consideration of due process, in a program designed to meet the student's particular needs. Alternative programs may be located at the student's home school, another school site, or an alternative location.

A.     Prior to placement in an alternative program the student and the student's parents/guardians shall be conferred with about the student's need to be in the special program.

B.     Following the conference the student and the student's parents/guardians shall be given written notice of:

1.     the circumstances which led to the placement;
2.     how the special program is designed to meet the student's needs; and
3.     the conditions, which must be met in order for the student to return to the regular school, program.

C.     Continued offenses after placement in an alternative program will be considered a serious breach of this Code and may result in a possible recommendation for expulsion.

## Corporal Punishment     Corporal punishment will not be administered in any Christina school.

## Bus Privileges

Students and parents/guardians have the responsibility to know and respect the rules as described in the School Bus Safety Regulations manual. The Code of Conduct will apply to all violations while boarding, riding, or exiting buses.

## Bus Privileges (grades K-5)

Students must follow School Bus Safety Regulations as follows: 1) follow driver directions, 2) remain in seat and keep aisle clear, 3) do not throw objects in, out, or around bus, 4) NO fighting, 5) talk quietly, 6) no eating, drinking, or smoking, 7) do not damage bus property, 8) do not tamper with emergency doors, controls, or windows.

Consequences: (in progression of offenses): 1) warning, 2) temporary seat change, 3) on-bus conference with child, driver, school administrator and parent notification, 4) on-bus conference with child, driver, school administrator, and/or permanent seat reassignment and parent notification, 5) conference with parent, child, and school administrator, 6) loss of riding privileges for one to five (1-5) days. Severe Behavior such as property damage, hitting driver, fire setting, and abuse of emergency equipment will result in steps five and six (5&6) being implemented by the school administrator.

## Suspension from School

Suspension is the temporary removal of a pupil from the regular school program.

Prior to a suspension from school the student shall:

1.     be given oral or written notice of the charges and be told on what evidence the decision may be made;
2.     be given the opportunity to present the student's side of the story; and
3.     have had prior opportunity to know that the alleged actions were in violation of established rules and regulations.

**SUSPENSION FROM SCHOOL (Continued)**

The parent will be advised that the suspension may be appealed to the next administrative level.

Generally the notice and conference should precede the student's removal from school. However, if this is not feasible or if the immediate removal of the student from school is necessary to protect the safety of individuals, property, and/or the educational process, the necessary notice and conference, if requested, will follow as soon as practical.

In all cases of suspension an attempt shall be made to notify the parents/guardians by telephone to request that the student be picked up from school. Students whose parents/guardians cannot be reached by telephone will be retained at school until the end of the school day.

When a student is suspended, written notification of the suspension shall be sent to the parent/guardian within twenty-four (24) hours. The notification shall state the cause and duration of the suspension. If the suspension is for more than three (3) days a definite time and date for a conference shall be scheduled at a place designated by the school administrator. The principal/designee is required to hold a conference, to include the parent and child, prior to the readmission of the student.

## EXPULSION OF THE STUDENT PROCEDURES

When it is alleged that a student committed a violation of the Student Code of Conduct, which may result in a recommendation for expulsion the following procedures, shall be followed.

### Step I - Building Level

A.    An administrator will conduct a preliminary investigation to determine if there is a reasonable cause to pursue disciplinary action. The administrator will inform the student of the charges. The student will be given an opportunity to "tell his/her side of the story." If it is decided to proceed the following will be instituted:

    1.    Student will be suspended according to the Code of Conduct;

    2.    Student will be given written notice of the charges;

    3.    The student and parent/guardian will be informed of the date/time of the conference to review the case. The conference will be held at a mutually agreeable time as soon as possible, but within five (5) school days from the first day of the suspension. If agreement cannot be reached within the five day limit the principal/designee will set the date/time. Notification of the scheduled conference will be sent to the parent/guardian. Telephone contact will also be attempted. The parent/guardian may bring one advocate to this conference;

    4.    At the conclusion of the conference the principal/designee will inform the parent/guardian if expulsion is to be recommended;

    5.    If the decision is to recommend expulsion the recommendation, along with all back-up materials, must be submitted to the Superintendent/Designee within two (2) days of the conference; and

    6.    Days, as used at this level, shall mean school days unless it is the end of the student year; then days shall mean calendar days including Saturday, Sunday, and holidays.

**EXPULSION PROCEDURES (Continued)**

<u>Step II - District Level</u>

Upon receipt of a recommendation of expulsion from the building level the following will be implemented.

A.    The Superintendent/Designee will notify the student and the parent/guardian that a formal Hearing will be held to consider the recommendation for expulsion.

B.    The Hearing shall be held not less than three (3) nor more than ten (10) calendar days after receipt of Notice of Hearing.  The Notice of Hearing shall be deemed to be received on the third calendar day following the day of mailing.  This time period may be waived by agreement of the parties.

C.    The Notice of Hearing will be sent by certified mail or hand delivered and shall give the date, time, and location of the Hearing.  A copy of the Christina School District Expulsion Procedures will also be included with the Notice.

D.    The student and parent/guardian will also be given the following:

    1.    The reason(s) for the recommendation of expulsion;
    2.    The names of the witnesses who will appear at the Hearing; and
    3.    Copies of statements/information that will be submitted as evidence at the Hearing.

E.    At least twenty-four (24) hours prior to the Level II Hearing the parent/guardian must submit the following information to the District:

    1.    Name of the student advocate or legal counsel (if the student will be represented by one); and

    2.    Names of any witnesses who will be brought to the Hearing.

        (Note: If any of the witnesses are minors a copy of the parent's/guardian's permission for the child to attend must also be included.)

F.    The Hearing shall be conducted by a hearing officer/panel selected by the Superintendent/Designee.  The hearing officer/members of the panel may be employees of the District, but must not have been involved in the process at the building level.

G.    The hearing officer/panel shall have full authority to admit or exclude evidence.  The hearing officer/panel, in conducting the Hearing, shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure.  The hearing officer/panel shall exclude plainly irrelevant evidence.  Unduly repetitive proof, rebuttal, and cross-examination shall be excluded.  The witnesses shall be required to swear or affirm their testimony.

H.    In conducting the Hearing the District shall submit evidence first followed by the response of the student, if any.  Further rebuttal evidence by either party may be presented if the hearing officer/panel determines such evidence is necessary.

EXPULSION PROCEDURES (Continued)

Step II - District Level (Continued)

I.    The student shall have the following rights:

    1.    To be represented by counsel at the student's expense;
    2.    To cross-examine witnesses;
    3.    To testify and produce witnesses on his/her behalf; and
    4.    To obtain, at the student's expense, a copy of the tape of the Hearing.

## Step III - Board Level

A.    Within five (5) calendar days following the conclusion of the Hearing the hearing officer/panel shall prepare a written report (the Report) for the Board. This Report shall frame the issues, summarize the evidence, state conclusions of fact, and make a recommendation as to whether the Board should expel the student or implement some alternative disciplinary action or program.

B.    A copy of the Report shall be available to the student/parent/guardian at the District Office commencing with the sixth calendar day following the conclusion of the Hearing. The student/parent/guardian shall be deemed to have received the Report on the sixth day following the conclusion of the Hearing and shall have three (3) calendar days from the date of such receipt, including the day the student/parent/guardian received the Report, within which to file a written response noting exceptions to the Report and presenting any argument he/she may have. If the student/parent/guardian has not picked up a copy of the Report by 4:00 p.m. on the sixth calendar day following the date of the Hearing a copy of the Report shall be sent by certified mail to the student/parent/guardian, but the three (3) days within which to file a written response shall nevertheless begin to run on the sixth calendar day following the Hearing. The written response must be filed at the District Office with the Superintendent/Designee.

C.    The student/parent/guardian may have a greater period of time to file a written response provided that the student/parent/guardian submits a written request for an extension of time within three (3) calendar days of the receipt of the Report. In no event shall an extension of time greater than ten (10) calendar days be granted.

D.    A written request for an extension of time shall automatically waive the requirement that the Board make a decision within the timeframe outlined in Section III F.

E.    The Board shall make its decision at the next scheduled public Board Meeting that is held at least ten (10) calendar days after the conclusion of the Hearing. The review shall be conducted by a majority of the members of the Board and shall be based solely upon the Report from the hearing officer/panel, the record of the Hearing, and written responses, if any, by the student/parent/guardian. The Board may accept, reject, or modify the recommendation of the Hearing Officer.

F.    Except as is otherwise provided herein, within ten (10) calendar days of the conclusion of the review by the Board, the Board, through its designee, shall submit its decision to the student/parent/guardian in writing.

# EXHIBIT B

**ID:** 986700    **Name:** Williams, Reginald E    **Building:** Shue-Medill Middle School    **Grade:** 08

## Student Attendance Report

| Date | Period | Code | Arrive Time | Dismiss Time | Comment |
|---|---|---|---|---|---|
| 9/13/2004 | 2 | AU - Absent Unexcused | | | |
| 9/14/2004 | 1 | AU - Absent Unexcused | | | |
| | 2 | AU - Absent Unexcused | | | |
| | 3 | AU - Absent Unexcused | | | |
| | 5 | AU - Absent Unexcused | | | |
| | 6 | AU - Absent Unexcused | | | |
| 10/12/2004 | 1 | AU - Absent Unexcused | | | |
| 10/21/2004 | 3 | AU - Absent Unexcused | | | |
| 10/28/2004 | 1 | AU - Absent Unexcused | | | |
| 11/8/2004 | 1 | SO - Suspended Out | | | 5-day susp - #07, 99 (unauthorized area) |
| | 2 | SO - Suspended Out | | | |
| | 3 | SO - Suspended Out | | | |
| | 4 | SO - Suspended Out | | | |
| | 5 | SO - Suspended Out | | | |
| | 6 | SO - Suspended Out | | | |
| 11/9/2004 | 1 | SO - Suspended Out | | | |
| | 2 | SO - Suspended Out | | | |
| | 3 | SO - Suspended Out | | | |
| | 4 | SO - Suspended Out | | | |
| | 5 | SO - Suspended Out | | | |
| | 6 | SO - Suspended Out | | | |
| 11/10/2004 | 1 | SO - Suspended Out | | | |
| | 2 | SO - Suspended Out | | | |
| | 3 | SO - Suspended Out | | | |

|  |  |  |  |
|---|---|---|---|
|  | 4 | SO - Suspended Out |  |
|  | 5 | SO - Suspended Out |  |
|  | 6 | SO - Suspended Out |  |
| 11/15/2004 | 1 | SO - Suspended Out |  |
|  | 2 | SO - Suspended Out |  |
|  | 3 | SO - Suspended Out |  |
|  | 4 | SO - Suspended Out |  |
|  | 5 | SO - Suspended Out |  |
|  | 6 | SO - Suspended Out |  |
| 11/16/2004 | 1 | SO - Suspended Out |  |
|  | 2 | SO - Suspended Out |  |
|  | 3 | SO - Suspended Out |  |
|  | 4 | SO - Suspended Out |  |
|  | 5 | SO - Suspended Out |  |
|  | 6 | SO - Suspended Out |  |
| 11/17/2004 | 1 | SO - Suspended Out | 5-day extended suspension -- letter on file |
|  | 2 | SO - Suspended Out |  |
|  | 3 | SO - Suspended Out |  |
|  | 4 | SO - Suspended Out |  |
|  | 5 | SO - Suspended Out |  |
|  | 6 | SO - Suspended Out |  |
| 11/18/2004 | 1 | SO - Suspended Out |  |
|  | 2 | SO - Suspended Out |  |
|  | 3 | SO - Suspended Out |  |
|  | 4 | SO - Suspended Out |  |
|  | 5 | SO - Suspended Out |  |
|  | 6 | SO - Suspended Out |  |

| 11/19/2004 | 1 | SO - Suspended Out | |
| | 2 | SO - Suspended Out | |
| | 3 | SO - Suspended Out | |
| | 4 | SO - Suspended Out | |
| | 5 | SO - Suspended Out | |
| | 6 | SO - Suspended Out | |
| 11/22/2004 | 1 | SO - Suspended Out | |
| | 2 | SO - Suspended Out | |
| | 3 | SO - Suspended Out | |
| | 4 | SO - Suspended Out | |
| | 5 | SO - Suspended Out | |
| | 6 | SO - Suspended Out | |
| 11/23/2004 | 1 | SO - Suspended Out | |
| | 2 | SO - Suspended Out | |
| | 3 | SO - Suspended Out | |
| | 4 | SO - Suspended Out | |
| | 5 | SO - Suspended Out | |
| | 6 | SO - Suspended Out | |
| 11/29/2004 | 1 | HB - Homebound | administratively assgnd homebound pending district level on 12/13 |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 11/30/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/1/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |

|            |   |                 |
|------------|---|-----------------|
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/2/2004  | 1 | HB - Homebound  |
|            | 2 | HB - Homebound  |
|            | 3 | HB - Homebound  |
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/3/2004  | 1 | HB - Homebound  |
|            | 2 | HB - Homebound  |
|            | 3 | HB - Homebound  |
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/6/2004  | 1 | HB - Homebound  |
|            | 2 | HB - Homebound  |
|            | 3 | HB - Homebound  |
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/7/2004  | 1 | HB - Homebound  |
|            | 2 | HB - Homebound  |
|            | 3 | HB - Homebound  |
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/8/2004  | 1 | HB - Homebound  |
|            | 2 | HB - Homebound  |
|            | 3 | HB - Homebound  |
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/9/2004  | 1 | HB - Homebound  |
|            | 2 | HB - Homebound  |
|            | 3 | HB - Homebound  |
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/10/2004 | 1 | HB - Homebound  |
|            | 2 | HB - Homebound  |
|            | 3 | HB - Homebound  |
|            | 4 | HB - Homebound  |
|            | 5 | HB - Homebound  |
|            | 6 | HB - Homebound  |
| 12/13/2004 | 1 | HB - Homebound  |

| Date | Period | Status | Notes |
|---|---|---|---|
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/15/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/16/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/17/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/20/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/21/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/22/2004 | 1 | HB - Homebound | |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |
| | 5 | HB - Homebound | |
| | 6 | HB - Homebound | |
| 12/23/2004 | 1 | HB - Homebound | Nicole from COMPASS clld t/state stdnt s/b cmng n fr intake -- w/cntct us when stdnt enters... |
| | 2 | HB - Homebound | |
| | 3 | HB - Homebound | |
| | 4 | HB - Homebound | |

| Date | | |
|---|---|---|
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/3/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/4/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/5/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/6/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/7/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/10/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/11/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/12/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |

| Date | Period | Status |
|------|--------|--------|
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/13/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/14/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/18/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/19/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/20/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/21/2005 | 1 | HB - Homebound |
| | 2 | HB - Homebound |
| | 3 | HB - Homebound |
| | 4 | HB - Homebound |
| | 5 | HB - Homebound |
| | 6 | HB - Homebound |
| 1/25/2005 | 1 | AU - Absent Unexcused |
| | 2 | AU - Absent Unexcused |
| | 4 | AU - Absent Unexcused |
| | 6 | AU - Absent |

|  |  | Unexcused |
| --- | --- | --- |
| 1/26/2005 | 1 | AU - Absent<br>Unexcused |
|  | 2 | AU - Absent<br>Unexcused |
|  | 4 | AU - Absent<br>Unexcused |
|  | 6 | AU - Absent<br>Unexcused |
| 1/27/2005 | 2 | AU - Absent<br>Unexcused |
|  | 4 | AU - Absent<br>Unexcused |
|  | 6 | AU - Absent<br>Unexcused |
| 1/28/2005 | 1 | AU - Absent<br>Unexcused |
|  | 2 | AU - Absent<br>Unexcused |
|  | 4 | AU - Absent<br>Unexcused |
|  | 6 | AU - Absent<br>Unexcused |
| 1/31/2005 | 1 | AU - Absent<br>Unexcused |
|  | 2 | AU - Absent<br>Unexcused |
|  | 3 | AU - Absent<br>Unexcused |
| 2/1/2005 | 1 | AU - Absent<br>Unexcused |
|  | 2 | AU - Absent<br>Unexcused |
|  | 6 | AU - Absent<br>Unexcused |
| 2/2/2005 | 3 | AU - Absent<br>Unexcused |
|  | 6 | AU - Absent<br>Unexcused |
| 2/3/2005 | 6 | AU - Absent<br>Unexcused |
| 2/4/2005 | 1 | AU - Absent<br>Unexcused |
|  | 2 | AU - Absent<br>Unexcused |
|  | 6 | AU - Absent<br>Unexcused |
| 2/7/2005 | 1 | AU - Absent<br>Unexcused |
|  | 2 | AU - Absent<br>Unexcused |
| 2/8/2005 | 1 | AU - Absent<br>Unexcused |
|  | 2 | AU - Absent |

|           |   | Unexcused                |
|-----------|---|--------------------------|
|           | 5 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent<br>Unexcused |
| 2/9/2005  | 1 | AU – Absent<br>Unexcused |
|           | 2 | AU – Absent<br>Unexcused |
|           | 5 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent<br>Unexcused |
| 2/10/2005 | 5 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent<br>Unexcused |
| 2/14/2005 | 1 | AU – Absent<br>Unexcused |
| 2/15/2005 | 1 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent<br>Unexcused |
| 2/16/2005 | 5 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent<br>Unexcused |
| 2/17/2005 | 5 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent<br>Unexcused |
| 2/22/2005 | 4 | AU – Absent<br>Unexcused |
| 2/23/2005 | 4 | AU – Absent<br>Unexcused |
| 3/2/2005  | 1 | AU – Absent<br>Unexcused |
|           | 2 | AU – Absent<br>Unexcused |
|           | 4 | AU – Absent<br>Unexcused |
|           | 5 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent<br>Unexcused |
| 3/3/2005  | 1 | AU – Absent<br>Unexcused |
|           | 2 | AU – Absent<br>Unexcused |
|           | 4 | AU – Absent<br>Unexcused |
|           | 5 | AU – Absent<br>Unexcused |
|           | 6 | AU – Absent            |

|  |  |  |
|---|---|---|
|  |  | Unexcused |
| 3/4/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
| 3/7/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |
| 3/8/2005 | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |
| 3/9/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
| 3/11/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |
| 3/16/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent |

|  |  |  |
|---|---|---|
|  |  | Unexcused |
| 3/21/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |
| 3/22/2005 | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |
| 3/23/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Ab<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |
| 4/4/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
| 4/5/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 3 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |
| 4/6/2005 | 1 | AU – Absent<br>Unexcused |
|  | 2 | AU – Absent<br>Unexcused |
|  | 4 | AU – Absent<br>Unexcused |
|  | 5 | AU – Absent<br>Unexcused |
|  | 6 | AU – Absent<br>Unexcused |

**Total Days with Attendance:** 80   **Total Attendance**
                **Records:** 372

# EXHIBIT D

# EXHIBIT C
to be submitted in a redacted version

# GOSS ET AL. v. LOPEZ ET AL.

SUPREME COURT OF THE UNITED STATES
419 U.S. 565
January 22, 1975, Decided

**MR. JUSTICE WHITE delivered the opinion of the Court.**

This appeal by various administrators of the Columbus, Ohio, Public School System (CPSS) challenges the judgment of a three-judge federal court, declaring that appellees -- various high school students in the CPSS -- were denied due process of law contrary to the command of the Fourteenth Amendment in that they were temporarily suspended from their high schools without a hearing either prior to suspension or within a reasonable time thereafter, and enjoining the administrators to remove all references to such suspensions from the students' records.

Ohio law provides for free education to all children between the ages of six and 21. Section 3313.66 of the Code empowers the principal of an Ohio public school to suspend a pupil for misconduct for up to 10 days or to expel him. In either case, he must notify the student's parents within 24 hours and state the reasons for his action. A pupil who is expelled, or his parents, may appeal the decision to the Board of Education and in connection therewith shall be permitted to be heard at the board meeting. The Board may reinstate the pupil following the hearing. No similar procedure is provided in § 3313.66 or any other provision of state law for a suspended student. Aside from a regulation tracking the statute, at the time of the imposition of the suspensions in this case the CPSS itself had not issued any written procedure applicable to suspensions. Nor, so far as the record reflects, had any of the individual high schools involved in this case. Each, however, had formally or informally described the conduct for which suspension could be imposed.

The nine named appellees, each of whom alleged that he or she had been suspended from public high school in Columbus for up to 10 days without a hearing pursuant to § 3313.66, filed an action under 42 U. S. C. § 1983 against the Columbus Board of Education and various administrators of the CPSS. The complaint sought a declaration that § 3313.66 was unconstitutional in that it permitted public school administrators to deprive plaintiffs of their rights to an education without a hearing of any kind, in violation of the procedural due process component of the Fourteenth Amendment. It also sought to enjoin the public school officials from issuing future suspensions pursuant to § 3313.66 and to require them to remove references to the past suspensions from the records of the students in question.

The proof below established that the suspensions arose out of a period of widespread student unrest in the CPSS during February and March 1971. Six of the named plaintiffs, Rudolph Sutton, Tyrone Washington, Susan Cooper, Deborah Fox, Clarence Byars, and Bruce Harris, were students at the Marion-Franklin High School and were each suspended for 10 days on account of disruptive or disobedient conduct committed in the presence of the school administrator who ordered the suspension. One of these, Tyrone Washington, was among a group of students demonstrating in the school auditorium while a class was being conducted there. He was ordered by the school principal to leave, refused to do so, and was suspended. Rudolph Sutton, in the presence of the principal, physically attacked a police officer who was attempting to remove Tyrone Washington from the auditorium. He was immediately suspended. The other four Marion-Franklin students were suspended for similar conduct. None was given a hearing to determine the operative facts underlying the suspension, but

each, together with his or her parents, was offered the opportunity to attend a conference, subsequent to the effective date of the suspension, to discuss the student's future.

Two named plaintiffs, Dwight Lopez and Betty Crome, were students at the Central High School and McGuffey Junior High School, respectively. The former was suspended in connection with a disturbance in the lunchroom which involved some physical damage to school property.  Lopez testified that at least 75 other students were suspended from his school on the same day. He also testified below that he was not a party to the destructive conduct but was instead an innocent bystander. Because no one from the school testified with regard to this incident, there is no evidence in the record indicating the official basis for concluding otherwise. Lopez never had a hearing.

Betty Crome was present at a demonstration at a high school other than the one she was attending. There she was arrested together with others, taken to the police station, and released without being formally charged. Before she went to school on the following day, she was notified that she had been suspended for a 10-day period. Because no one from the school testified with respect to this incident, the record does not disclose how the McGuffey Junior High School principal went about making the decision to suspend Crome, nor does it disclose on what information the decision was based. It is clear from the record that no hearing was ever held.

II

At the outset, appellants contend that because there is no constitutional right to an education at public expense, the Due Process Clause does not protect against expulsions from the public school system. This position misconceives the nature of the issue and is refuted by prior decisions. The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally "not created by the Constitution. Rather, they are created and their dimensions are defined" by an independent source such as state statutes or rules entitling the citizen to certain benefits. *Board of Regents* v. *Roth*, 408 U.S. 564 (1972). Accordingly, a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge may demand the procedural protections of due process.  So may welfare recipients who have statutory rights to welfare as long as they maintain the specified qualifications. *Goldberg* v. *Kelly*, 397 U.S. 254 (1970). *Morrissey* v. *Brewer*, 408 U.S. 471 (1972), applied the limitations of the Due Process Clause to governmental decisions to revoke parole, although a parolee has no constitutional right to that status.  Here, on the basis of state law, appellees plainly had legitimate claims of entitlement to a public education. Ohio Rev. Code Ann. §§ 3313.48 and 3313.64 direct local authorities to provide a free education to all residents between five and 21 years of age, and a compulsory-attendance law requires attendance for a school year of not less than 32 weeks.  It is true that § 3313.66 of the Code permits school principals to suspend students for up to 10 days; but suspensions may not be imposed without any grounds whatsoever. All of the schools had their own rules specifying the grounds for expulsion or suspension. Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred.  Although Ohio may not be constitutionally obligated to establish and maintain a public school system, it has nevertheless done so and has required its children to attend. Those young people do not "shed their constitutional rights" at the schoolhouse door. . "The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures -- Boards of Education not excepted."  The authority possessed by the State to prescribe and enforce standards of conduct in its schools although concededly very broad, must be exercised consistently with constitutional safeguards.

Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause. The Due Process Clause also forbids arbitrary deprivations of liberty. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the Clause must be satisfied. School authorities here suspended appellees from school for periods of up to 10 days  based on charges of misconduct. If sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment. It is apparent that the claimed right of the State to determine unilaterally and without process whether that misconduct has occurred immediately collides with the requirements of the Constitution.

Appellants proceed to argue that even if there is a right to a public education protected by the Due Process Clause generally, the Clause comes into play only when the State subjects a student to a "severe detriment or grievous loss." The loss of 10 days, it is said, is neither severe nor grievous and the Due Process Clause is therefore of no relevance. Appellants' argument is again refuted by our prior decisions; for in determining "whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake." Appellees were excluded from school only temporarily, it is true, but the length and consequent severity of a deprivation, while another factor to weigh in determining the appropriate form of hearing, "is not decisive of the basic right" to a hearing of some kind.  A 10-day suspension from school is not *de minimis* in our view and may not be imposed in complete disregard of the Due Process Clause. A short suspension is, of course, a far milder deprivation than expulsion. But, "education is perhaps the most important function of state and local governments," and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.

III

"Once it is determined that due process applies, the question remains what process is due." We turn to that question, fully realizing as our cases regularly do that the interpretation and application of the Due Process Clause are intensely practical matters and that "[the] very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."  We are also mindful of our own admonition: "Judicial interposition in the operation of the public school system of the Nation raises problems requiring great care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities."  "The fundamental requisite of due process of law is the opportunity to be heard," a right that "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest."  At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given *some* kind of notice and afforded *some* kind of hearing. "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."  It also appears from our cases that the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved.  The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences. The Due Process Clause will not shield him from suspensions properly imposed, but it disserves both his interest and the interest of the State if his suspension is in fact unwarranted. The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, that is not the

case, and no one suggests that it is. Disciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process. The difficulty is that our schools are vast and complex. Some modicum of discipline and order is essential if the educational function is to be performed. Events calling for discipline are frequent occurrences and sometimes require immediate, effective action. Suspension is considered not only to be a necessary tool to maintain order but a valuable educational device. The prospect of imposing elaborate hearing requirements in every suspension case is viewed with great concern, and many school authorities may well prefer the untrammeled power to act unilaterally, unhampered by rules about notice and hearing. But it would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his dereliction and to let him tell his side of the story in order to make sure that an injustice is not done. "[Fairness] can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . ." "Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."

We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency. Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is. Since the hearing may occur almost immediately following the misconduct, it follows that as a general rule notice and hearing should precede removal of the student from school. We agree with the District Court, however, that there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable, as the District Court indicated.

In holding as we do, we do not believe that we have imposed procedures on school disciplinarians which are inappropriate in a classroom setting. Instead we have imposed requirements which are, if anything, less than a fair-minded school principal would impose upon himself in order to avoid unfair suspensions.

We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular

disciplinary tool but also destroy its effectiveness as part of the teaching process.

On the other hand, requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action. At least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect. He may then determine himself to summon the accuser, permit cross-examination, and allow the student to present his own witnesses. In more difficult cases, he may permit counsel. In any event, his discretion will be more informed and we think the risk of error substantially reduced.

We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures. Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required.

**MR. JUSTICE POWELL, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACKMUN, and MR. JUSTICE REHNQUIST join, dissenting.**

The Court today invalidates an Ohio statute that permits student suspensions from school without a hearing "for not more than ten days." The decision unnecessarily opens avenues for judicial intervention in the operation of our public schools that may affect adversely the quality of education. The Court holds for the first time that the federal courts, rather than educational officials and state legislatures, have the authority to determine the rules applicable to routine classroom discipline of children and teenagers in the public schools. It justifies this unprecedented intrusion into the process of elementary and secondary education by identifying a new constitutional right: the right of a student not to be suspended for as much as a single day without notice and a due process hearing either before or promptly following the suspension.

The Court's decision rests on the premise that, under Ohio law, education is a property interest protected by the Fourteenth Amendment's Due Process Clause and therefore that any suspension requires notice and a hearing. In my view, a student's interest in education is not infringed by a suspension within the limited period prescribed by Ohio law. Moreover, to the extent that there may be some arguable infringement, it is too speculative, transitory, and insubstantial to justify imposition of a *constitutional* rule....

**CERTIFICATE OF MAILING AND/OR DELIVERY**

I hereby certify that on October 15, 2005, I electronically filed The Motion for Injunctive

Relief and the Opening Brief in Support of the Motion with the Clerk of the Court using CM/ECF

which will send notification of such filing to Counsel of Record.

Patricia M. O'Neill
DE. ID. # 3016
Attorney for Plaintiffs
22 West Front Street
Media, PA 19063
610-891-6668
Oneillpmo@aol.com

(43 PAges)