IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

| | | |
|---|---|---|
| R.W., A Minor, individually, by and through | : | |
| his parent and natural guardian SARAH WILLIAMS | : | |
| and SARAH WILLIAMS, individually, | : | |
| PLAINTIFFS, | : | |
| | : | |
| | : | |
| V. | : | |
| | : | |
| THE DELAWARE DEPARTMENT OF | : | |
| EDUCATION; VALERIE WOODRUFF; | : | |
| personally and in her official capacity as | : | |
| the Secretary of Education for the State of | : | |
| Delaware; THE STATE OF DELAWARE BOARD | : | |
| OF EDUCATION; and JOSEPH PIKA, Ph.D.; | : | |
| JEAN ALLEN; RICHARD M. FARMER, JR.; | : | |
| MARY GRAHAM, ESQ.; BARBARA RUTT; | : | C.A. NO. 05-CV-00662 |
| DENNIS SAVAGE; CLAIRBOARNE D. | : | |
| SMITH; ANNE CASE; VALERIE WOODRUFF; | : | |
| personally and in their official capacity as Members | : | |
| of the State Board of Education; and | : | |
| THE CHRISTINA SCHOOL DISTRICT; JOSEPH J. | : | |
| WISE, personally and in his official capacity as the | : | |
| Superintendent of the District; DAVID SUNSTROM, | : | |
| personally and in his official capacity as the Assistant | : | |
| Superintendent of the District; SANDRA COUNTLEY | : | |
| personally and in her official capacity; SHARON | : | |
| DENNY, personally and in her official capacity; | : | |
| FREEMAN WILLIAMS, personally and in his official | : | |
| capacity; THE CHRISTINA SCHOOL DISTRICT  : | | |
| SCHOOL BOARD; BRENDA PHILLIPS; | : | |
| JAMES DURR; GEORGE EVANS, ESQUIRE; | : | |
| BEVERLY HOWELL; CONSTANCE MERLET | : | |
| JOHN MACKENZIE, CECELIA SCHERER; and | : | |
| JOSEPH WISE; all personally and in their official | : | |
| capacity as Members of the CHRISTINA | : | |
| SCHOOL DISTRICT. | : | |
| DEFENDANTS. | : | |

**ANSWERING BRIEF OF DEFENDANTS THE CHRISTINA SCHOOL DISTRICT
BOARD OF EDUCATION, JOSEPH J. WISE, DAVID SUNSTROM, SANDRA
COUNTLEY, SHARON DENNY, FREEMAN WILLIAMS, BRENDA PHILLIPS, JAMES
DURR, GEORGE EVANS, BEVERLY HOWELL, CONSTANCE MERLET, JOHN
MACKENZIE AND CECILIA SCHERER, IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

WHITE AND WILLIAMS LLP


JOHN D. BALAGUER ((#2537)
WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: 302.467.4508
*Attorneys for The Christina School District
Board of Education, Joseph J. Wise, David
Sunstrom, Sandra Countley, Sharon Denny,
Freeman Williams, Brenda Phillips, James
Durr, George Evans, Beverly Howell,
Constance Merlet, John Mackenzie and Cecilia
Scherer*

Date:  October 21, 2005

Table of Contents

Page

TABLE OF AUTHORITIES ................................................................. ii

NATURE OF CASE AND STAGE OF PROCEEDINGS................................1

SUMMARY OF ARGUMENT ..........................................................2

STATEMENT OF FACTS .................................................................3

ARGUMENT.................................................................................17

I.  TRANSFERRING A STUDENT FROM REGULAR CLASSES TO AN
    ALTERNATIVE EDUCATION PLACEMENT FOR DISCIPLINARY REASONS
    DOES NOT IMPACT A PROTECTED PROPERTY INTEREST IMPLICATING
    DUE PROCESS CONCERNS.....................................................17

    A.  This Court Should Be Reluctant to Become Involved in School Discipline Cases
        Because Disciplinary Decisions Are Better Left to School Administrators ...........17

    B.  Plaintiff's Transfer did not Impact A Protected Property Interest Implicating Due
        Process Concerns ...........................................................18

II. TO THE EXTENT THAT THE COURT DOES NOT DENY PLAINTIFFS'
    MOTION FOR FAILING TO IMPLICATE A PROTECTED PROPERTY
    INTEREST, PLAINTIFFS' ARE NOT ENTITLED TO A PRELIMINARY
    INJUNCTION BECAUSE THEY HAVE NOT ESTABLISHED A REASONABLE
    PROBABILITY OF SUCCESS OR IRREPARABLE HARM, BOTH OF WHICH
    ARE PREREQUISITES TO IMPOSING A MANDATORY PRELIMINARY
    INJUNCTION ...................................................................22

    A.  Standard for Preliminary Injunctions.......................................22

    B.  Plaintiff Has No Likelihood of Success on the Merits Because he Received a Fair
        and Impartial Hearing, Which is All the Due Process Clause Requires ................23

    C.  Plaintiffs Have Failed To Allege Or Establish Irreparable Harm ..........................32

# TABLE OF AUTHORITIES

## CASES

*Arcierno v. New Castle County*, 40 F.3d 645 (3d Cir. 1994)........................................22, 23

*Betts v. Board of Education of the City of Chicago*, 466 F.2d 629 (7th Cir. 1972)....28, 29, 30, 32

*Board of Ed. of Rogers Arkansas v. McCluskey*, 458 U.S. 966 (1982) .......................17, 18

*Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352 (6th Cir. 1996) ...........................21

*Flynn v.Terrebonne Parish School Brd.*, 2004 WL 2009277 (E.D. La. 2004).................19

*Fuller v. Decatur Public Sch. Brd. of Ed. Sch. Dist. 61*, 78 F. Supp. 2d 812 (D.C. Ill. 2000) (7th Cir. 2001)...............................................................................................17

*Goss v. Lopez*, 419 U.S. at 565 (1975)...........................................17, 18, 19, 20, 25, 26, 30

*In the Matter of the Expulsion of Z.K., et.al.*, 695 N.W.2d 656 (Minn. Ct. App. 2005) ...............................................................................................................26, 27

*Johnson & Johnson Orthopaedics, Inc. v. Minnesota Mining & Manufacturing Co.*, 715 F. Supp. 110 (D. Del. 1989) .......................................................................23

*Mathews v. Eldridge*, 424 U.S. 319 (1976)..........................................................................25

*Nevares v. San Marcos Consolidated Independent School District*, 111 F.3d 25 (11th Cir. 1997)..................................................................................19, 20, 21, 29, 32

*Palmer v. Merluzzi*, 868 F.2d 90 (3d Cir. 1989).........................................................25, 30

*Robinson v. Oak Park and River Forest High School*, 571 N.E.2d 931 (Ill. Ct. App. 1991) ................................................................................................................17

*Sill v. Pennsylvania State University*, 462 F.2d 463 (3d Cir. 1972) ..................................21

*Stafford Municipal School District v. L.P.*, 64 S.W.3d 559 (Tx. Ct. App. 2001)..............20

*Tinker v. Des Moines Independent Community School Dist.*, 89 S. Ct. 733 (1969)..........17

*Wood v. Strickland*, 420 U.S. 308 (1975) .........................................................................17

*Zamora v. Pomeroy*, 639 F.2d 662 (10th Cir. 1981).........................................................21

## STATUTES

14 *Del. C.* § 202(a) ............................................................................................18

14 *Del. C.* § 4112(b) ...........................................................................................6

14 *Del. C.* § 4112(d) ...........................................................................................7

## NATURE OF CASE AND STAGE OF PROCEEDINGS

Plaintiff R.W. ("Plaintiff") was involved in an altercation with Jeffrey L. at the Shue-Medill Middle School on November 8, 2004. The altercation consisted primarily of Plaintiff punching Jeffrey L. in the face, causing severe injury to the area around his eye. Plaintiff was subsequently arrested, and he pled guilty to 3rd degree assault in Family Court.

As a result of Plaintiff's assault on Jeffrey L., Plaintiff was given an alternative school placement. Plaintiff and his mother, Sarah Williams (Mother), contend that the responding defendants,[1] along with the State Board of Education and its members, violated Plaintiff's Due Process rights. Mother filed suit on behalf of Plaintiff and herself on or about September 12, 2005. Plaintiffs' claim for relief includes a request for a preliminary injunction, requiring the School District to return Plaintiff to his regular education school

Plaintiffs have requested an expedited hearing on their request for a preliminary injunction. Consequently, a hearing on Plaintiffs' request for a preliminary injunction is scheduled for November 10, 2005.

Plaintiffs have filed a motion and brief in support of their request for a preliminary injunction. This is Responding Defendants' Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction.

---

[1] The responding defendants are identified in the caption of this brief and will collectively referred to herein as "Responding Defendants."

## SUMMARY OF ARGUMENT

1.    Plaintiff's transfer to an alternative school does not impact a protected property interest implicating due process concerns.

2.    Even if the transfer impacts a protected property interest implicating due process concerns, Plaintiffs have failed to meet the standards required in order for this Court to impose a mandatory preliminary injunction.  Plaintiffs have failed to meet their heavy burden of establishing a reasonable likelihood of success on the merits and irreparable harm.  Plaintiffs cannot establish a reasonable likelihood of success on the merits because Plaintiff and/or his mother attended three meetings with school officials, which were properly noticed, where they had an opportunity to be heard and present mitigating arguments.  Plaintiff received all of the process that was due, and more.

-2-

## STATEMENT OF FACTS

On November 8, 2004, Plaintiff, Kevin K., and Nick M. were involved in an altercation with Jeffrey L.[2]  The problem started in homeroom, when Nick M. stepped on chains hanging from Jeffrey L.'s pants, purposefully causing them to rip.[3]  As a result of his pants getting ripped, Jeffrey L. got upset.[4]  On the way to his seat, Plaintiff blocked Jeffrey L.'s way, causing them to bump into each other.[5]  Plaintiff, Kevin K., Nick M. and Tyrone G. contend that as a result of the initial incident, Jeffrey L. said he was going to put a "death wish" Plaintiff.[6]

As the boys were leaving homeroom, Plaintiff, Kevin K., and Nick M. surrounded Jeffrey L. in the hallway[7] and Kevin K. hit Jeffrey L. in the head.[8]  Plaintiff then followed Jeffrey L. into his next class and hit Jeffrey L. in the face, in the area of his eye.[9]  Plaintiff then went out into the hallway and gave "high fives" to Kevin K. and Nick M.[10]

After being assaulted by Plaintiff, Jeffrey L. went to the nurse's office because his face was bleeding profusely.[11]  After hearing about the incident, Dr. Moody sent Plaintiff to Mr. Carter's office.[12]  Mr. Carter, seeing Plaintiff's hand was cut, sent Plaintiff to the

---

[2] B39 (Preliminary incident report).

[3] B40 (stmt. of Nick M.).

[4] *Id.*

[5] *Id.*; B41-42 (incident report dated Nov. 9, 2004, prepared by Mr. Carter, Dean of Students).

[6] B43 (Plaintiff's stmt.); B44 (Kevin K. stmt.); B40 (Nick M. stmt.); B45 (Tyrone G. stmt.).

[7] B45 (stmt. of Tyrone G. (a/k/a Trey))

[8] B45 (Tyrone G. stmt); B40 (Nick M. stmt); B44 (Kevin K. stmt).

[9] *Id.*; B40 (Nick M. stmt.).

[10] B42 (incident report, at 2).

[11] *Id.*

[12] B41-42 (incident report dated 11/9/04).

-3-

nurse's office.[13]  When Plaintiff returned without having been given any assistance, Mr. Carter walked him back to the nurse's office.[14]  Upon arrival, Mr. Carter found that the nurse was still treating Jeffrey L. for the laceration under his eye, which the nurse indicated would need stitches.[15]  Mr. Carter, therefore, took Plaintiff back to his office, where Mr. Carter called Mother.[16]

When Mr. Carter called Mother, she indicated that she did not want Plaintiff to give any verbal or written statements until she arrived.[17]  Mr. Carter, therefore, did not take any statements from Plaintiff at that time.[18]  Once Mother arrived, she and Plaintiff spoke privately in Mr. Carter's office.[19]  When Mr. Carter returned to the room, Mother allowed Plaintiff to tell his side of the story.  Plaintiff reported that Jeffrey L. bumped him in homeroom and said he was going to put a "death wish" on Plaintiff.[20]

At Mother's request, Mr. Carter, Mother and Plaintiff did a "walkthrough," re-enacting the incident.[21]  During the walkthrough, Mr. Carter determined that after the incident involving Jeffrey L.'s pants, that Plaintiff blocked the walkway Jeffrey L. used to get to his seat..[22]  During his investigation, Mr. Carter determined that Plaintiff was not scheduled to be in Room 205, where the assault occurred.  When Mr. Carter asked

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] B41-42 (incident report dated 11/9/2004).

[17] *Id.*

[18] *See Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*  (Mr. Carter determined that "Jeffrey may have brushed [Plaintiff] when he was moving to his seat").

-4-

Plaintiff why he was in Room 205, Plaintiff stated that Jeffrey L. had said something to him "so he went in and punched him in the eye."[23]  When Mr. Carter met with Mother and Plaintiff, he secured a statement from Plaintiff.[24]

As part of his investigation, Mr. Carter also reviewed the tape from the school's security camera.[25]  During the review of the tape, Mr. Carter determined that Jeffrey L. had been hit two times, first by Kevin K. in the hallway, and then by Plaintiff. Consequently, Mr. Carter talked to Kevin K. and secured a written statement from him.[26] In his statement, Kevin K. admitted that he hit Jeffrey L. in the head and indicated that after the initial incident in homeroom, Plaintiff waited in the hallway to confront Jeffrey L., and subsequently followed Jeffrey L. into his next class and punched him in the eye.[27] The tape Mr. Carter reviewed showed that after leaving the class room, Plaintiff gave "high fives" to Kevin K. and Nick M.[28]  After seeing on the tape that Nick M. was somehow involved, Mr. Carter interviewed Nick M and secured a written statement from him.[29]

In his statement, Nick M. admitted that he was involved in the initial incident, wherein Jeffrey L.'s pants were ripped.[30]  He also stated that Jeffrey L. and Plaintiff bumped into each other when Jeffrey L. made his way to his seat, and that people started

---

[23] Id.

[24] B43 (Plaintiff's stmt.).

[25] Still photographs from the tape are included in the Appendix.  See B-47-B67.

[26] B41-42 (incident report); B44 (Kevin K. stmt.).

[27] B44 (Kevin K. stmt.).

[28] B41-42 (incident report).

[29] Id.; B40 (Nick M. stmt.).

[30] B40 (Nick M. stmt.).

hitting Jeffrey L. in the hallway after homeroom.[31]  He also stated that after Jeffrey L. and Plaintiff had a verbal exchange, Plaintiff followed Jeffrey L. into Room 205 and punched Jeffrey L. in the face.[32]  Mr. Carter also talked to Tyrone G. and secured a written statement from him.  Tyrone G.'s statement also indicated that the incident started in homeroom and continued in the hallway, before Plaintiff ultimately struck Jeffrey L. in the face.[33]

Mr. Carter turned the results of his investigation over to Dr. Moody and a detective with the State Police.[34]  As a result of Mr. Carter's investigation, Dr. Moody suspended Plaintiff for 5 days.[35]  The notice of suspension form was presented to Plaintiff on November 8, 2005.[36]  Plaintiff signed the form, indicating that he had "been given an opportunity to tell [his] side of the story."[37]  The procedures for appealing the suspension were spelled out on the form.[38]

Dr. Moody, consistent with the requirements of 14 *Del. C.* § 4112(b), notified the police that an assault had occurred.  Consequently, during Plaintiff's initial suspension, the police investigated the incident.[39]  As a result of their investigation, the police charged Plaintiff with Assault in the 3rd degree.[40]  The police report was prepared on

---

[31] *Id.*

[32] *Id.*

[33] B45 (Stmt. of Tyrone G.)

[34] B42 (incident report).

[35] B46 (notice of suspension).

[36] *Id.*

[37] *Id.*; B139 (Affidavit of Dr. Moody).

[38] B46 (suspension form).

[39] B68 (police report).

[40] *Id. See* B73 (plea agreement).

November 11, 2004, during Plaintiff's initial suspension period.[41]

In light of the overwhelming evidence that Plaintiff had committed an assault against Jeffrey L., Dr. Moody notified Mother on November 19, 2004, that Plaintiff's assault could result in either alternative placement or expulsion.[42]   In addition, Dr. Moody, consistent with the provisions of 14 *Del. C.* § 4112(d),[43] extended Plaintiff's initial suspension for an additional five days to allow the District time to schedule a meeting with Mother and, if appropriate, an alternative placement or expulsion hearing.[44]

In the November 19, 2004 notice, the District noted the dates and times for both the initial conference with Mother, and the alternative placement/expulsion hearing. The initial conference, the "building level conference," was scheduled for December 2, 2004, at 8:00 a.m.   The alternative placement/expulsion hearing was scheduled for December 13, 2004, at 9:30 a.m.   The notice was hand delivered to Mother when she came to school to pick Plaintiff up on November 19, 2004.

The December 2, 2004 conference went forward as scheduled.  Mother attended

---

[41] B68 (police report).

[42] B74 (Ext. of Suspension notice); B36 (Code of Conduct, pg. 44 – Assault); B140 (Affidavit of Dr. Moody).  Plaintiff's assault was considered a Level III violation. B36 (Code of Conduct, pg. 44).   Level III violations subject violators to "severe consequences," including possible expulsion.  *Id.*  An illustrative list of the consequences associated with committing an assault include:   1) parent notification; 2) suspension for five (5) days; 3) parent conference; 4) notification of police; possible charges filed by police; 5) restitution/restoration, if necessary; 6) recommendation to appropriate counseling or social service agency(s); 7) possible recommendation for alternative placement or expulsion; and 8) referral to mediation, if appropriate. *Id.* The sanctions noted are not all inclusive. *Id.* at p.47. Where students commit acts which constitute a crime under Delaware law, they are subject to discipline up to and including expulsion. *Id.*

[43] 14 *Del. C.* § 4112(d) requires school officials to immediately refer students for alternative placement when the police finds probable cause to believe that a student has committed a crime, and immediate suspension of the student until a parent conference can be held to review the student's educational placement.

[44] *Id.*

the meeting, as did Defendant Williams, Dr. Moody, Ms. Stey, and Mr. Carter.[45] Defendant Williams attended the conference as a representative of the District.[46] Ms. Stey attended in her capacity as the 8th Grade Guidance Counselor.[47]

At the conference, Mother was permitted to comment about the potential actions to be taken regarding alternative placement/expulsion.[48] Mother indicated Plaintiff's remorse and sought a sanction less than an alternative placement, offering to have Plaintiff write an essay and do community service.[49] The unanimous opinion of the school district employees attending the meeting, however, was that Plaintiff should be referred to the District office with a recommendation that he receive an alternative placement.[50] Immediately following the meeting, Defendant Williams explained the decision to Mother and gave Mother a copy of the summary of the conference prepared by Dr. Moody.[51]

In light of the extended suspension and the recommendation for alternative placement, Defendant Williams authorized homebound instruction for Plaintiff on a temporary basis.[52]

On December 8, 2004, Plaintiff entered a plea agreement in the Family Court

---

[45] B76 (Dec. 2, 2004 Bldg. Level Conf. Summary).

[46] *Id.*

[47] *Id.*

[48] *See Id.*

[49] *Id.*

[50] *See Id.*; B140 (Affidavit of Dr. Moody).

[51] *See* B140 (Affidavit of Dr. Moody); B76 (summary of conference dated Dec. 2, 2004).

[52] B77 (Request for Homebound Instruction). Homebound instruction was supposed to take place only until the District level alternative placement hearing. The instruction was continued, however, through January 27, 2005, when Defendant Sundstrom issued the District's final decision regarding the alternative placement. *See* B85 (letter dated Jan. 27, 2005).

related to his Assault 3rd charge.[53]  Pursuant to the agreement, Plaintiff agreed to plead guilty to the Assault 3rd charge, and the State agreed to Nolle Prosequi the remaining charges.[54]  Both Plaintiff and Mother signed the plea agreement.[55]

Also on December 8, 2004, Dr. Moody completed an Alternative Placement Checklist, compiled the documents noted in the checklist, and sent the documents to the District office for use by the Superintendent's designee at the Alternative Placement hearing scheduled for December 13, 2004.[56]  On December 13, 2004, the District Level Alternative Placement meeting went forward as scheduled.[57]

The following individuals attended the meeting:  Defendant Countley, Defendant Denney,[58] Dr. Moody, Plaintiff, Mother, Jea Street, Vincent Coleman, and Dave Carter.[59]  Defendant Countley, Director of Student Services and Alternative Placements, appeared at the meeting as the Superintendent's designee.  Defendant Denney appeared in her capacity as the Alternative Programs Transition Coordinator.[60]  Dr. Moody appeared in her capacity as the Assistant Principal.  Jea Street, Executive Director of the Hilltop Lutheran Neighborhood Center, Inc., appeared as an "advocate" for Plaintiff.  Mr. Coleman and Mr. Carter, who were Plaintiff's coaches in various activities, appeared as character witnesses on behalf of Plaintiff.[61]

---

[53] B73 (Plea Agreement).

[54] *Id.*

[55] *Id.*

[56] B78 (Alternative Placement Checklist).

[57] B79 (Alternative Placement Meeting Form).

[58] B142 (Affidavit of Defendant Denney); B140 (Affidavit of Dr. Moody).

[59] B79 (Alternative Placement Meeting Form).

[60] B142 (Affidavit of Defendant Denney).

[61] B79 (Alt. Placement Meeting Form).

-9-

After reviewing the documents provided and hearing the testimony of Mother, Plaintiff, Plaintiff's advocate and Plaintiff's character witnesses, Dr. Moody, Defendant Countley, and Defendant Denney met to discuss Plaintiff's case.[62] All of the District representatives agreed that Plaintiff's assault was sufficiently serious and violent to warrant immediate placement at the Compass School.[63] Plaintiff's placement was to be reviewed after one marking period.[64] After the meeting, Defendant Countley explained the decision to Mother.[65] Defendant Countley also sent Mother a letter on December 20, 2004, which detailed the results of the alternative placement meeting.[66]

The Compass School offers an academic program which is comparable to the program offered at the Shue-Medill middle school.[67] Classes are taught by State certified teachers, and the class sizes are typically smaller than those at Shue-Medill, which permits more individualized attention.[68]

The curriculum at both Shue-Medill and the Compass School is the standard State of Delaware curriculum.[69] Subjects offered to students attending the Compass School

---

[62] B143 (Affidavit of Defendant Denney); B141 (Affidavit of Dr. Moody).

[63] B79 (Alternative Placement Meeting Form); B143 (Affidavit of Defendant Denney); B141 (Affidavit of Dr. Moody).

[64] Id.

[65] B79 (Alt. Placement Meeting Form); B143 (Affidavit of Defendant Denney): B141 (Affidavit of Dr. Moody).

[66] B80 (letter dated Dec. 20, 2004). There is a handwritten correction noted on the copy attached as the original letter indicated that the alternative placement would be reviewed at the end of the school year. The correction reflects the fact that Plaintff's placement at the Compass School was to be reviewed at the end of the third marking period, not at the end of the school year.

[67] B146-47 (Affidavit of Defendant Denney dated Oct. 20, 2005).

[68] Id.

[69] Id.

include core subjects such as science, social studies, math and English.[70]  The Compass School also offers electives such as art, physical education, and health.[71]  The Compass School also offers group and individual counseling for children with behavioral and other problems.[72]  The Compass School has three trained counselors and students are required to participate in weekly counseling sessions.[73]  These counseling sessions are designed to address each student's particular needs.[74]

Shortly after the December 13, 2004 meeting, Jea Street met with Defendant Countley to negotiate a possible alternative placement for R.W. at the Kirk Middle School, where Mother knew the principal.[75]  Mother ultimately rejected this compromise placement.[76]

On or about December 30, 2004, Mother wrote to the school indicating that she had not received a written decision from the District regarding Plaintiff's alternative placement.[77]  On January 4, 2005, Mr. Jea Street wrote to Defendant Wise attempting to appeal the alternative placement decision.[78]  Both Mother's and Mr. Street's letters expressed concerns about Due Process.  On or about January 9, 2005, Defendant Wise referred the letter from Mr. Street to Defendant Sundstrom and asked him to respond.[79]

---

[70] *Id.*

[71] *Id.*

[72] B146-47 (Affidavit of Defendant Denney dated Oct. 20, 2005).

[73] *Id.*

[74] *Id.*

[75] *See* B93 (Feb. 10, 2005 letter from D. Sundstrom to Mr. Street).

[76] *See* B111 (Apr. 20, 2005 letter from D. Sundstrom to Mother).

[77] B81 (Dec. 30, 2004 letter from Mother).

[78] B82 (Jan. 4, 2005 letter).

[79] *Id.*

Although neither Mother's nor Mr. Street's request for an appeal complied with the grievance procedures set forth in the Code of Conduct,[80] Defendant Sundstrom, acting as the superintendent's designee, met with Mother on January 26, 2005 and permitted her to appeal the alternative placement decision.[81] Defendant Denny also attended the meeting.[82] At the meeting, Defendant Sundstrom reviewed the entire record and permitted Mother to make arguments on her son's behalf.[83] After reviewing the record and hearing Mother's argument, Defendant Sundstrom upheld the decision made at the alternative placement meeting.[84] Defendant Sundstrom advised Mother of his decision, in writing, on January 27, 2005.[85] Defendant Sundstrom's decision was the final decision of the school system.[86]

On or about February 2, 2005, Mother, Plaintiff and Defendant Denny attended an intake meeting at the Compass School.[87] At the meeting, the program was explained to Mother and Defendant Denny reviewed the District goal sheet with Mother, explaining the goals and expectations that would be considered when the District reviewed Plaintiff's placement at the end of the third marking period to determine whether Plaintiff should return to his regular placement.[88]

---

[80] *See* B34-35 (Code of Conduct, p. 11-12).

[81] B84 (letter dated January 27, 2005).

[82] *Id.*; B143 (Affidavit if Defendant Denney).

[83] *See Id.*

[84] *Id.*

[85] B84 (letter dated Jan. 27, 2005). Defendant Sundstrom responded to Mr. Street's letter on February 1, 2005. *See* B86 (letter dated Feb. 1, 2005).

[86] B84 (letter dated Jan. 27, 2005); B35 (Code of Conduct, p.12).

[87] B89 (intake meeting form dated Feb. 2, 2005); B144 (Affidavit of Defendant Denny).

[88] B144 (Affidavit of Defendant Denny).

During the meeting Mother questioned Ms. Randick, a supervisor at the Compass School, regarding a notation on the placement form which indicated that R.W. had been expelled. Defendant Denney immediately clarified that the notation was in-error, and the form was corrected, initialed and dated in front of Mother during the meeting.[89] The correction was made to indicate that R.W. was not expelled.[90] At the end of the meeting, Mother refused to sign the intake form to register Plaintiff to attend Compass.[91] Mother also handed Defendant Denney and Ms. Randick, a supervisor at the Compass School, a letter which indicated her continuing belief that her son had been denied Due Process with respect to his placement at the Compass School.[92] On or about February 7, 2005, Mother called Defendant Denney and indicated that she would not allow R.W. to attend the Compass School.[93]

Also on February 7, 2005, Mr. Street wrote to Defendant Phillips attempting to appeal the District's alternative placement decision to the Board.[94] On February 10, 2005, Defendant Sundstrom responded to the letter at Defendant Phillips' request.[95] In the letter, Defendant Sundstrom reiterated the School District's position regarding R.W.'s placement.[96]

---

[89] *Id.*; B94 (Feb. 25, 2005 letter from Mother to the Compass School).

[90] B144 (Affidavit of Defendant Denney). In response to subsequent inquires by Mother, *See* B94 (Feb. 25, 2005 letter to Compass School), the School District sent Mother a revised Referral Form, indicating once again that R.W. had not been expelled. B96-99 (Feb. 28, 2005 letter from T. Broadnx to Mother, including "revised" form).

[91] *Id.*

[92] *Id.*; B90 (Feb. 2, 2005, letter to Compass School).

[93] B144 (affidavit of Defendant Denney).

[94] B91 (Feb. 7, 2005 letter).

[95] *See* B93 (Feb. 10, 2005 letter).

[96] *Id.*

-13-

On March 1, 2005, Mr. Street wrote to Defendant Pika at the State Board of Education seeking to appeal the decision of the School District.[97]

On April 11, 2005, Mother spoke to Defendant Sundstrom about returning R.W. to his regular education classes at the district.[98]  Defendant Sundstrom reiterated, once again, the School District's position that R.W. could not return to his regular education setting until he had completed his alternative placement.[99]  On April 12, 2005, Mother appeared at the School Board's regularly scheduled meeting, during the public comment section of the meeting, and spoke about alternative placements and expulsion hearings.[100]

In a late night meeting following the Board meeting, Mother met with Defendant Sundstrom in an attempt to reach a compromise regarding R.W.'s placement.[101]  At this meeting, Mother indicated that she had previously rejected the School District's offer of an alternative placement at Kirk Middle School because she did not believe that the District would provide transportation.[102] Defendant Sundstrom indicated that the District would provide transportation and, accordingly, renewed the District's offer to place R.W. in an "in school" alternative program at Kirk Middle School.[103]  Mother indicated a willingness to send R.W. to Kirk Middle School if transportation was provided.[104]

After meeting with Mother, Defendant Sundstrom arranged for a bus to pick R.W.

---

[97] B100 (March 1, 2005 letter).

[98] B102 (Apr. 11, 2005 letter to Mother).

[99] *Id.*

[100] B104 (Board Minutes dated Apr. 12, 2005).

[101] B111 (Apr. 20, 2005 letter to Mother); B148 (Affidavit of Defendant Sundstrom).

[102] *Id.*

[103] *Id.*; B148-49 (Affidavit of Defendant Sundstrom).

[104] B148-49 (Affidavit of Defendant Sundstrom).

-14-

up and transport him to Kirk Middle School.[105]   Mother, however, refused to accept the compromise placement at Kirk Middle School, even with the transportation offered.[106]

When Defendant Sundstrom spoke with Mother on April 20, 2005 regarding her failure to send Plaintiff to school, Mother indicated that she would not send her son to school at Kirk Middle School on the "short bus," indicating that it was associated with "handicapped children." [107]   On April 20, 2005, Defendant Sundstrom also wrote to Mother informing her that if she continued to refuse to send Plaintiff to school, the District would have to refer the matter to truancy court.[108]   Consequently, on or about May 2, 2005, a summons was issued to Plaintiff and Mother to appear in truancy court.[109]

On April 28, 2005, Defendant Pika wrote to Mother advising her that the State Board of Education would hear oral argument on the legal issue of whether the State Board had jurisdiction to review the assignment of Plaintiff to an alternative program.[110] On May 13, 2005, Mr. Street, who is not an attorney, submitted a position paper to the State Board, purportedly setting forth Mother's position regarding the issue of whether the State Board had jurisdiction to review the alternative placement.[111]

The State Board heard oral argument on the legal issue noted on May 19, 2005. On June 1, 2005, after the hearing before the State Board, Plaintiff and Mother retained

---

[105] *Id.*

[106] *Id.*

[107] B149 (Affidavit of Defendant Sundstrom).

[108] B111 (Apr. 20, 2005 letter to Mother).

[109] B115-16 (Summons to mother and R.W.).

[110] B113 (Apr. 28, 2005 letter).

[111] B117-123 (May 13, 2005 letter, including "Written Argument on Behalf of [Plaintiff]").

-15-

Patricia O'Neal, Esquire to represent them.[112]

On June 16, 2005, the State Board issued a decision on Plaintiff's request for a review of the School District's alternative placement decision.[113]  The State Board held that it did not have jurisdiction to hear Plaintiff's appeal because no decision on the issue had been made by the School District.[114]

On September 12, 2005, almost three months after the State Board issued its decision, and more than three months after Plaintiffs retained their present attorney, Plaintiffs filed suit in this Court seeking, *inter alia*, a preliminary injunction, to be heard on an expedited basis.  In Plaintiffs' Complaint, they allege that Responding Defendants violated Plaintiff's due process rights with respect to his alternative placement.

---

[112] B124 (June 1, 2005 letter from Mother).

[113] B125-37 (June 17, 2005 letter from C. Fitzgerald, DAG, including the June 16, 2005 decision of the State Board).

[114] *Id.* (decision at p. 10-11).

**ARGUMENT**

I.     **TRANSFERRING A STUDENT FROM REGULAR CLASSES TO AN ALTERNATIVE EDUCATION PLACEMENT FOR DISCIPLINARY REASONS DOES NOT IMPACT A PROTECTED PROPERTY INTEREST IMPLICATING DUE PROCESS CONCERNS**

      A.     <u>**This Court Should Be Reluctant to Become Involved in School Discipline Cases Because Disciplinary Decisions Are Better Left to School Administrators**</u>

As the Supreme Court of the United States has recognized, "discipline and order are essential if the educational function is to be performed."[115]  As such, courts should recognize and affirm the comprehensive authority of the States and school officials to prescribe and control conduct in their schools.[116]

School discipline, therefore, is an area which courts enter with great hesitation and reluctance.[117]  The role of federal courts in school disciplinary matters is limited.[118]  § 1983 actions do not involve federal courts re-litigating evidentiary questions arising in school disciplinary hearings or the proper construction of school regulations.[119]  Federal courts should not set aside decisions of school administrators even if the court views them as lacking a basis in wisdom or compassion.  *Id.*  The educational system relies on the discretion and judgment of school administrators and § 1983 actions are not a vehicle for federal courts to correct errors in discretion that do not amount to constitutional

---

[115] *Goss v. Lopez*, 95 S.Ct. 729, 738 (1975).

[116] *Tinker v. Des Moines Independent Community School Dist.*, 89 S.Ct. 733, 737 (1969).

[117] *Robinson v. Oak Park and River Forest High School*, 571 N.E.2d 931, 933 (Ill. Ct. App. 1991).

[118] *Fuller v. Decatur Public Sch. Brd. of Ed. Sch. Dist. 61*, 78 F.Supp.2d 812, 821 (D.C. Ill. 2000), *aff'd*, 251 F.3d 662 (7th Cir. 2001).

[119] *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Board of Ed. of Rogers Arkansas v. McCluskey*, 458 U.S. 966, 970 (1982).

violations.[120]  In an educational environment, "[s]uspension is considered not only to be a necessary tool to maintain order, but a valuable educational device."[121]

Because transferring Plaintiff to an alternative school did not implicate a constitutionally protected property interest and educators are in a better position to mete out discipline in an educational environment, the Court should not permit Plaintiff to maintain a § 1983 action to attempt to second guess the discretion exercised by the School District's administrators.

B.     **Plaintiff's Transfer did not Impact A Protected Property Interest Implicating Due Process Concerns**

The core issue in this litigation is whether Plaintiff's placement in an alternative program violated the Due Process Clause.  A threshold inquiry related to this issue is whether Plaintiff's transfer impacts a protected property interest implicating due process concerns.  It does not.  Plaintiff, therefore, lacks standing to pursue his due process claim.  In addition, Plaintiff's claim fails to invoke the jurisdiction of the Court.  The Court, therefore, should deny Plaintiff's motion and dismiss Plaintiff's Due Process claims.

In *Goss*, the Court addressed the issue of whether students from Ohio who were temporarily suspended from public schools without a hearing either prior to the suspension or within a reasonable time thereof had been denied due process.  Ohio's law, like Delaware's,[122] provides that children of a certain age are entitled to a free education.[123] Based upon State law providing children with a free public education, the Court concluded that the students' legitimate entitlement to a public education was a

---

[120] *Id.*

[121] *Goss*, 95 S.Ct. at 738.

[122] 14 *Del. C.* § 202(a).

[123] *See Goss*, 419 U.S. at 568.

property interest protected by the Due Process Clause of the United States Constitution. Consequently, Ohio schools could not deprive their students of an education without adhering to the minimum procedures required by the Due Process Clause.[124]

When determining what process is due, courts look to the nature of the interest at stake to determine whether some type of a hearing is required prior to depriving someone of a property interest.[125]  In *Goss*, the Court determined that a suspension, i.e. a total exclusion from school, for more than a trivial period could not be imposed in complete disregard of the Due Process Clause.[126]  With respect to transfers to an alternative education placement setting, however, courts have routinely held that no protected property interest is implicated by such transfers.[127]  In the absence of a protected property interest, Plaintiff's due process claim fails.[128]

The facts of *Nevares* are similar to the facts in this case.  In *Nevares*, the school district received a police report indicating that Nevares had been detained by the police for an aggravated assault.  The principal questioned Nevares about the incident, which occurred off of school property, but Nevares refused to give a statement.  After confirming with the police that Nevares was being charged with aggravated assault, the

---

[124] *Id.* at 572-74.

[125] *Id.* at 575-76.

[126] *Id.* at 576.

[127] *Nevares v. San Marcos Consolidated Independent School District*, 111 F.3d 25, 27 (11th Cir. 1997); *Flynn v.Terrebonne Parish School Brd.*, 2004 WL 2009277 at *4 (E.D. La.) (Exh. A), *rearg. denied*, 348 F.Supp.2d 769 (E.D. La. 2004) (following *Nevares* and concluding that a student's transfer to a different school for disciplinary reasons was not equivalent to either a suspension or an expulsion and, therefore, the student's "property interest in receiving an education was not implicated by the transfer").

[128] *Nevares*, 111 F.3d at 27.

principal decided to transfer Nevares to an alternative program.[129]  The court held that

while students have a protected property interest in a free education, which is created by

State law, students do not have a protected interest in a particular program or attending a

particular school.[130]  Thus, Nevares' transfer to an alternative school for disciplinary

reasons did not raise a constitutional claim under the Due Process Clause.[131]

The suspension at issue in *Goss* is distinguishable from the alternative placement

decision made with respect to Nevares.  Unlike the situation in *Goss*, which resulted in a

total deprivation of education for more than a de minimus period, Nevares was not denied

access to public education, even temporarily.[132]  As the court noted:

> He was only to be transferred from one school program to another
> program with stricter discipline.  This alternative program is maintained
> by Texas schools for those students whose violations of the law or the
> school's code of conduct fall short of triggering suspension or expulsion,
> but who for reasons of safety and order must be removed from the regular
> classroom. . . . Not only does disorder interfere with learning school
> studies, it also defeats the charge to "inoculate the habits and manners of
> civility."[133]

In this case, like in *Nevares*, Plaintiff's transfer from one school to another did not

implicate a property interest subject to constitutional due process protections.  Plaintiff's

due process claim, therefore, fails as a matter of law.

---

[129] *Nevares*, 111 F.3d at 26.

[130] *Id.* at 27.

[131] *Id.* at 27.  *See Stafford Municipal School District v. L.P.*, 64 S.W.3d 559, 663 (Tx. Ct. App. 2001) (holding that transferring a student from regular classes to an alternative education placement for disciplinary reasons does not impact a protected property interest implicating due process concerns); 68 Am.Jur.2d (Schools) § 244 (indicating that students do not have an absolute right to attend a particular school or a property interest in where they receive their education).

[132] *Nevares*, 111 F.3d at 26.

[133] *Nevares*, 111 F.3d at 26 (citations omitted).

In *Zamora*,[134] the 10th Circuit Court of Appeals addressed a similar situation and reached a conclusion similar to the holding in *Nevares*.  In *Zamora*, the school district transferred Zamora to another school after finding drugs in his locker.  According to the plaintiff, the school that he was transferred to was inferior to his old school.[135]  The plaintiff attended the alternative school for one semester, during which time he continued the same academic courses that he had taking at his old school.[136]  In addition, when he returned to his original school the following semester, he was given full credit for courses taken at the alternative school.[137]

On these facts, the court in *Zamora* held that because the sanction imposed was much less than expulsion, the injury alleged to the plaintiff's property interest in a free education was not a constitutional injury capable of supporting the court's jurisdiction.[138]  To establish a constitutional injury, the plaintiff needed to make a "clear showing" that the alternative assignment was substantially prejudicial, such that the alternative education received was so inferior that it was equivalent to an expulsion.[139]  Absent this showing, the plaintiff lacked standing to appeal the School District's actions.[140]

Because Plaintiff has not made a clear showing in this case that his alternative

---

[134] *Zamora v. Pomeroy*, 639 F.2d 662 (10th Cir. 1981).

[135] *Id.* at 664.

[136] *Id.* at 667.

[137] *Id.*

[138] *Id.* at 670.

[139] *Id.  See Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352, 1359 (6th Cir. 1996) (indicating that the Due Process Clause is not implicated by an alternative placement absent a showing that the alternative school is significantly different from or inferior to a student's original school).

[140] *Id.*; *Cf. Sill v. Pennsylvania State University*, 462 F.2d 463, 471 (3d Cir. 1972) (holding that students placed on probation had not been aggrieved in the constitutional sense so as to have standing to pursue a constitutional due process claim).

placement was substantially prejudicial, comparable to an expulsion, Plaintiff has not

established a constitutional injury.   As such, he lacks standing to purse his Due Process

claim.   The Court, therefore, should deny Plaintiff's motion for a preliminary injunction

and dismiss Plaintiff's Due Process claims.

II.   **TO THE EXTENT THAT THE COURT DOES NOT DENY PLAINTIFFS' MOTION FOR FAILING TO IMPLICATE A PROTECTED PROPERTY INTEREST, PLAINTIFFS' ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION BECAUSE THEY HAVE NOT ESTABLISHED A REASONABLE PROBABILITY OF SUCCESS OR IRREPARABLE HARM, BOTH OF WHICH ARE PREREQUISITES TO IMPOSING A MANDATORY PRELIMINARY INJUNCTION**

   A.   **Standard for Preliminary Injunctions**

   The primary purpose of a preliminary injunction is to maintain the status quo until

the Court can render a decision on the merits of a particular case.[141]   Were a party seeks

to alter the status quo, that party is seeking a mandatory preliminary injunction.[142]

   To prevail on a motion for a preliminary injunction, the moving party must show:

1) a reasonable probability of eventual success in the litigation, and 2) that it will be

irreparably injured while the litigation is pending if the relief requested, a change in the

status quo, is not granted.[143]   Additional factors the Court should consider, when relevant,

are:  3) the possibility of harm to other interested persons if the injunction is granted or

denied, and 4) the public interest.[144]   The Plaintiff has the burden of establishing these

---

[141] *Arcierno v. New Castle County,* 40 F.3d 645, 647 (3d Cir. 1994).

[142] *Id.* (indicating that the plaintiff's request for an injunction compelling the County to issue a building permit fundamentally altered the status quo and, therefore, was a request for a mandatory preliminary injunction).

[143] *Id.* at 653.

[144] *Id.*

factors.[145]

Irreparable harm is harm that cannot be redressed by a legal or equitable remedy following a trial.[146]  Temporary loss of income does not usually constitute irreparable harm.[147]  The injury created in the absence of the injunction must be of a peculiar nature, such that compensation in money alone cannot atone for it.[148]  Where the moving party seeks a preliminary *mandatory* injunction which alters the status quo, the moving party has a *"particularly heavy burden"* in demonstrating its necessity.[149]  A party's inability to establish irreparable harm is, by itself, fatal to the party's motion for a preliminary injunction.[150]

To the extent that a preliminary injunction is warranted, the Court cannot issue a preliminary injunction without requiring the moving party to give security "in such sum as the [c]ourt deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."[151]

B.    **Plaintiff Has No Likelihood of Success on the Merits Because he Received a Fair and Impartial Hearing, Which is All the Due Process Clause Requires**

To the extent that the Court does not deny Plaintiffs' motion for failing to implicate a protected property interest, the Court should deny Plaintiff's motion because

---

[145] *Id.*

[146] *Acierno*, 40 F.3d at 653.

[147] *Id.*

[148] *Id.*

[149] *Id.*

[150] *Johnson & Johnson Orthopaedics, Inc. v. Minnesota Mining & Manufacturing Co.*, 715 F.Supp. 110, 112 (D. Del. 1989).

[151] F.R.C.P. 65(c).

he cannot establish a reasonable probability of success on the merits.

Plaintiff contends that he should be returned to his regular education placement because: a) he has already satisfied his alternative placement; and b) the district failed to provide the required Due Process with respect to his alternative placement.[152] Plaintiff's contentions fail because he ignores the facts associated with the _multiple_ hearings that he received and he makes conclusory, unsupported allegations which are factually inaccurate. Conclusory allegations do not satisfy Plaintiff's particularly heavy burden of showing a reasonable probability of success and irreparable harm.

In Sections I and II of the Argument section of his brief, Plaintiff contends, in conclusory fashion, that the School District failed to comply with its Code of Conduct regarding alternative placements because it failed to confer with Mother, took unilateral action, and failed to consider Plaintiff's needs.[153] Plaintiff also contends that the Court "can reasonably determine" that R.W. served his time in an alternative school based upon the fact that he received Homebound instruction.[154]    Plaintiff's contentions are conclusory, and lack any support in the record.

Once the Court determines that due process applies, it must determine what

---

[152] Plaintiff also alleges that he is entitled to a preliminary injunction because the State Board violated Plaintiff's rights by conducting a biased meeting.  Responding Defendants will not address actions taken by the State Board as those allegations are not addressed to Responding Defendant.

[153] Op. Brf., Arg. § I.

[154] Plaintiff further contends that a teacher at the high school "has called out R.W.'s name when checking attendance" every day of this school year.  This bald assertion is unsupported and, therefore, offers no support for Plaintiff's request for a preliminary injunction.  Even if the allegation were true, clerical errors regarding attendance do not support Plaintiff's position that he has satisfied his alternative placement requirement.  Similarly, Plaintiff's allegations regarding a possible fraud on the State regarding attendance records is spurious, libelous and irresponsible.  This allegation, moreover, lacks any evidentiary support and should be stricken.

process is due.[155] The interpretation and application of the Due Process Clause requires a flexible approach, recognizing that "[b]y and large, public education in our Nation is committed to the control of state and local authorities."[156] At a minimum, due process requires that deprivation of life, liberty or property by adjudication be preceded by notice and an opportunity to be heard which is appropriate to the nature of the case.[157]

The content of the notice and the nature of the hearing will be decided by balancing the competing interests involved.[158] To determine what process is due, courts weigh: "1) the private interests at stake, 2) the governmental interests at stake, and 3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards."[159]

With respect to school discipline, students have an interest in avoiding unfair or mistaken exclusion from the educational process.[160] Schools, on the other hand, have an essential interest in discipline and order.[161] Because disciplinarians often rely on reports of others and the controlling facts are often disputed, however, the risk of error should be guarded against to the extent that it can be done without prohibitive cost or interference with the educational process.[162]

With respect to a suspension of 10 days or less, the Due Process Clause requires

---

[155] *Goss,* 419 U.S. at 577.

[156] *Goss,* 419 U.S. at 577.

[157] *Id.*

[158] *Id.*

[159] *Palmer v. Merluzzi,* 868 F.2d 90, 95 (3d Cir. 1989) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335-36 (1976)).

[160] *Goss,* 419 U.S. at 579.

[161] *Id.*

[162] *Id.*

that a student be given oral or written notice of the charges against him and, if the charges are denied, an explanation of the evidence against him and an opportunity to present his side of the story.[163] There does not, however, need to be a delay between the time that notice is given and the time of the hearing.[164]

In the "great majority of cases" involving school discipline, the school disciplinarian may informally discuss the alleged misconduct with the student immediately after it occurs, provided that prior to being given an opportunity to explain himself the student is told what he is accused of doing and what the basis of the accusation is.[165] Students who pose a continuing danger to others at the school or who are an ongoing threat to the academic process may be immediately removed from school.[166] Where immediate removal is warranted, the necessary notice and "rudimentary hearing"[167] should follow as soon as practicable.[168]

As a preliminary matter, Plaintiff makes several assertions that he was expelled. Other than a misplaced checkmark on the intake form for Compass, there is absolutely nothing in the record to suggest that Plaintiff was expelled. Any arguments[169] applicable

---

[163] *Id.* at 581.

[164] *Id.* at 582.

[165] *Id.*

[166] *Goss*, 419 U.S. at 582.

[167] In requiring only a "rudimentary hearing" with respect to short suspensions, the Court recognized that imposing additional safeguards, such as the opportunity to secure counsel and confront and cross-examine witnesses, would probably overwhelm the administrative capabilities of most school districts and would likely cost more that it would save in educational effectiveness. *Id.* at 583. Escalating the formality and adversary nature of such proceedings would make it too costly to use suspensions as a regular disciplinary tool and destroy its effectiveness as part of the teaching process. *Id.*

[168] *Id.* at 582.

[169] In § II of the Argument section of his Opening Brief, Plaintiff appears to argue that he entitled to notice of the availability of free or low-cost counsel because he was expelled. Plaintiff offers

-26-

to expelled students, therefore, are inapposite.

The record evidence and affidavits supplied by Responding Defendants definitively establish that Plaintiff received all the process that was due to him. Immediately after the incident, Mr. Carter spoke with Plaintiff and Mother, heard their side of the story and thoroughly investigated the incident.[170]  After Mr. Carter investigated the incident, Dr. Moody suspended Plaintiff for five days.  His suspension was subsequently extended for an additional five days after the police determined that there was probably cause to believe that an assault occurred.[171]  This extension was mandated by statute and was necessary to permit the school time to confer with Mother and consider alternative placement options.

Mother received notice of the Building Level Conference and appeared for the Conference.[172]  The notice unequivocally advised Mother that Plaintiff had been involved in an altercation that could result in an alternative placement and that two meetings were scheduled to discuss the issue.[173]  Moreover, it is clear that Mother was given an opportunity to be heard at the conference.[174]  At the conclusion of the initial conference, Mother was advised that her son's case would be referred to the District Office for an

---

no authority for the proposition that an attorney is required with respect to school transfers.  The case relied on by Plaintiff, moreover, *In the Matter of the Expulsion of Z.K., et.al.*, 695 N.W.2d 656, 662 (Minn. Ct. App. 2005), was decided based upon a state statute.  Plaintiff does not point to any corresponding state statute in Delaware.

[170] *See e.g.* B41 (Incident Report prepared by Mr. Carter dated 11/9/04).

[171] *See* B139-40 (Affidavit of Dr. Moody).

[172] *Id*; B14-15 (Cmplt. ¶¶ 33, 35); Pl. Op. Brf., § II (Argument).  In ¶ 33 of the Complaint, Plaintiffs admit that Mother received a copy of the Extension of Suspension Notice.  In ¶ 35, Plaintiffs admit that Mother attended the building level conference.

[173] B74 (Extension of Suspension letter dated 11/19/04).

[174] B76 (Summary of Bldg. Level Conference); B15-16 (Cmplt. ¶¶ 35-41).

alternative placement meeting.[175]

On December 8, 2004, prior to the Alternative Placement meeting, Plaintiff pled guilty to Assault III.[176] Both Plaintiff and Mother signed the plea agreement.[177]

On December 13, 2004, Mother and Plaintiff appeared at the District Level meeting regarding Alternative Placement.[178] They appeared at the meeting with an "advocate," and character witnesses.[179] At the meeting, Plaintiff was questioned about the incident and he stated his side of the story.[180] In addition, Mother and the character witnesses were permitted to speak and present evidence on Plaintiff's behalf.[181] In addition, Plaintiff's "advocate" was permitted an opportunity to speak and make arguments on Plaintiff's behalf.[182]

After hearing Plaintiff's side of the story, all of the District representatives at the meeting agreed that Plaintiff should be placed in an alternative school for at least one marking period.[183] Dr. Countley, as the Superintendent's designee, conveyed the District's decision to Mother, Plaintiff and their advocate at the end of the meeting.[184]

---

[175] B140 (Affidavit of Dr. Moody); B76 (Summary of Bldg. Level Conference).

[176] B73 (Plea Agreement).

[177] *Id.* In light of Plaintiff's admitted guilt, due process concerns focus not on the fact finding procedure, but on the opportunity to be heard on the question of what discipline is warranted for the admitted offense. *Betts v. Board of Education of the City of Chicago*, 466 F.2d 629, 633 (7th Cir. 1972).

[178] B140 (Affidavit of Dr. Moody); B18 (Cmplt. ¶ 53).

[179] B143 (Affidavit of Dr. Denney); B18 (Cmplt. ¶53).

[180] B143 (Affidavit of Dr. Denney); B19 (Cmplt. ¶¶ 55-56). In the Complaint, Plaintiff states: "Moody, Denney and Countly [sic] asked R.W. about the incident;" and "R.W. related that the matter began as related above." B19 (Cmplt. ¶¶ 55-56).

[181] B143 (Affidavit of Dr. Denney); B19 (Cmplt. ¶ 57).

[182] *See* B143 (Affidavit of Dr. Denney).

[183] *Id.*; B140-41 (Affidavit of Dr. Moody).

[184] *Id.*

On December 20, 2004, Defendant Countley sent Mother written notice of the decision.[185]

Following the Alternative Placement meeting Mother and Plaintiff's advocate sought to appeal the decision to the Superintendent of the School District and to the School Board. Although not required by either the Due Process Clause or the Code of Conduct,[186] Defendant Sundstrom agreed to meet with Mother on January 26, 2005, to review the case and give her one more chance to plead Plaintiff's case.[187] After reviewing Plaintiff's case and giving Mother an opportunity to be heard, Defendant Sundstrom upheld the alternative placement decision.[188]

In light of the fact that Plaintiff is objecting to procedures related to his assignment to an alternative placement, any safeguards required by the Due Process Clause are even less than those required for suspensions.[189] Suspensions result in a total exclusion from the educational process. Alternative placements, in contrast, are not total exclusions.

In this case, the alternative placement at the Compass School would have permitted Plaintiff to maintain a course of study consistent with the curriculum he received at Shue-Medill, and he would have been taught by certified teachers, in smaller

---

[185] B80 (Letter from Dr. Countley dated Dec. 20, 2004). The letter contained an error in that it indicated that the alternative placement was through the end of the year. Defendant Sundstrom acknowledged the error in his letter to Mother dated January 27, 2005. B84 (Jan. 27, 2005 letter). The decision made at the Alternative Placement meeting was that Plaintiff's placement at the Compass School would be reviewed after the first marking period. *Id.*; B79 (Alt. Placement Meeting Form).

[186] *See* B38 (Code of Conduct, p. 54, addressing Assignments to Alternative Programs).

[187] B84 (Jan. 27, 2005 ltr.); B21 (Cmplt. ¶ 72); B143 (Affidavit of S. Denney).

[188] B144 (Affidavit of Dr. Denney); B84 (Letter dated Jan. 27, 2005 from Defendant Sundstrom).

[189] *See Nevares*, 111 F.3d at 27 (comparing an alternative placement to the suspension addressed in *Goss*).

class sizes.[190]  To the extent that there was any injury to Plaintiff's entitlement to a free education which required Due Process, the injury involved did not require that anything other than rudimentary Due Process be provided.

It is beyond dispute that Plaintiff received notice and an opportunity to be heard. To the extent that the Due Process Clause was implicated, consistent with *Goss,* rudimentary notice and an opportunity to be heard is all that was required.[191]

Plaintiff contends that he was denied due process because Mother never received a copy of the Code of Conduct. Plaintiff offers no authority, however, for the proposition that failing to provide a Code of Conduct book is a violation of the Due Process Clause. Plaintiff, moreover, received a copy of the Code of Conduct at the beginning of the year to take home.[192]  In addition, Dr. Moody provide a copy of the Code of Conduct to Ms. Williams to review on the very first day of Plaintiff's suspension[193] and  the Code of Conduct was available at all times on the School District's website.[194]  Even if, however, the evidence establishes that Mother never received a copy of the Code of Conduct, this fact, by itself, does not establish that Mother has a reasonable probability of succeeding on her due process claim.

---

[190] B146-47 (Affidavit of Defendant Denney dated Oct. 20, 2005).

[191] *Cf. Betts v. Brd. of Education of the City of Chicago,* 466 F.2d 629, 633-34 (7th Cir. 1972) (concluding that the plaintiff had not shown a reasonable likelihood of success with respect to her Due Process claim where the plaintiff admitted pulling the school's fire alarm and was transferred to an alternative school after she and her mother met with a school administrator and were given an opportunity to explain the plaintiff's actions); *Palmer,* 868 F.2d at 96 (holding that the informal notice and hearing procedures established in *Goss* provided appropriate Due Process procedures for a student suspended from school for 10 days and from the football program for 60 days);

[192] B141 (Affidavit of Dr. Moody).

[193] *Id.*

[194] *Id.*

DOCS_DE 116781v.1

Plaintiff also argues that the period of time that he received Homebound instruction should count as his alternative placement and, therefore, the Court should return Plaintiff to his regular education program. Plaintiff's argument addresses none of the standards applicable to a motion for a preliminary injuction: probability of success on the merits, irreparable injury, the possibility of harm to other interested persons, and the public interest. Even if Plaintiff's argument was relevant, it is flawed.

Plaintiff's Homebound instruction was not a substitute for an alternative placement. Homebound instruction was offered solely as a temporary accommodation until the alternative placement hearing could be held. In this case, the temporary accommodation was extended, as a courtesy, in an attempt to accommodate Mother's continued concerns. Homebound instruction was terminated immediately following Mother's meeting with Defendant Sundstrom on January 26, 2005, where he upheld the alternative placement decision. It would be grossly inequitable to treat the School District's accommodation as an alternative placement.

Moreover, the Homebound instruction Plaintiff received is not equivalent to an alternative placement at the Compass School. Homebound instruction offers none of the counseling or disciplinary guidance that would be offered at the Compass School. The alternative placement, moreover, required that Plaintiff comply with goals and objectives, as evidenced in a behavior contract.[195] Plaintiff never executed this contract and there is no indication that he has met the goals and objectives established by the School District. The discipline imposed, moreover, was not limited to one marking period. Rather, the discipline imposed provided that Plaintiff's placement would be reviewed after one

---

[195] B138 (Individual Student Goals Form).

marking period.   Finally, treating Plaintiff's Homebound instruction as an alternative placement would send the wrong message to parents and future violators as it would suggest to parents that they should simply hold their children out of school and ask for Homebound services while they pursue baseless appeals.   This type of conduct severely undermines the authority of school administrators and should not be countenanced by the Court.

Because Plaintiff has failed to meet the heavy burden imposed on him to prove a reasonable likelihood of success on the merits, the Court should deny Plaintiff's motion for a preliminary injunction.[196]

### C. Plaintiffs Have Failed To Allege Or Establish Irreparable Harm

Plaintiff's motion does not set forth any basis for the Court to believe that he has suffered irreparable harm.   Consequently, Plaintiff's motion for a preliminary injunction must fail.   Even if Plaintiff asserted that he suffered irreparable harm, this assertion would fail as the alternative placement offered provides Plaintiff with a free public education, which is all that the law requires.   Plaintiff is not entitled to attend the school of his choice[197] and, therefore, he cannot allege irreparable harm on the basis of being transferred to the Compass School.

---

[196] *Cf. Betts*, 466 F.2d at 634.   In *Betts*, the plaintiff was transferred to an alternative program after pulling the fire alarm at school.   Prior to being transferred, her mother was informed of the infraction and the plaintiff and her mother met with a school administrator to discuss the incident. After being given an opportunity to be heard and present mitigating arguments, the school administrator transferred the plaintiff to an alternative school.   The court denied the plaintiff's motion for a preliminary injunction on the basis that she had not "shown any probability that she was denied due process." *Id.*

[197] *Nevares*, 111 F.3d at 27.

## CONCLUSION

Plaintiff has failed to meet his heavy burden of establishing either a reasonable probability of success on the merits, or irreparable harm. Plaintiff's alternative placement did not impact a protected property interest implicating due process concerns. Even if it did, Plaintiff received all process due to him. Plaintiff had a conference with the school and a meeting with school officials prior to his alternative placement. On both occasions he had notice of the meetings and he was provided an opportunity to be heard and present mitigating arguments. He was also allowed an appeal his alternative placement, where he was again provided the opportunity to be heard and to present mitigating arguments. Plaintiff has received all the process to which he is do, and more.

While Mother may disagree with the alternative placement decision, that does not establish a Due Process violation. Mother's continued refusal to allow her son to attend school is unwarranted and in violation of the law. Mother has chased her windmills long enough. It is time that she return her son to school so that he can complete his alternative placement and move on with his education.

-33-

Respectfully Submitted,

WHITE AND WILLIAMS LLP

BY: _____

WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
Phone: 302.467.4508
*Attorneys for The Christina School District
Board of Education, Joseph J. Wise, David
Sunstrom, Sandra Countley, Sharon Denny,
Freeman Williams, Brenda Phillips, James
Durr, George Evans, Beverly Howell,
Constance Merlet, John Mackenzie and Cecilia
Scherer*

Date:  October 21, 2005

-34-

IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

R.W., A Minor, individually, by and through      :
his parent and natural guardian SARAH WILLIAMS   :
and SARAH WILLIAMS, individually,                :
       PLAINTIFFS,                           :
                                            :
       V.                                   :
                                            :
THE DELAWARE DEPARTMENT OF                        :
EDUCATION; VALERIE WOODRUFF;                      :
personally and in her official capacity as       :
the Secretary of Education for the State of       :
Delaware; THE STATE OF DELAWARE BOARD            :
OF EDUCATION; and JOSEPH PIKA, Ph.D.;            :
JEAN ALLEN; RICHARD M. FARMER, JR.;              :
MARY GRAHAM, ESQ.; BARBARA RUTT;                 :      C.A. NO. 05-CV-
00662                                            
DENNIS SAVAGE; CLAIRBOARNE D.                    :
SMITH; ANNE CASE; VALERIE WOODRUFF;              :
personally and in their official capacity as Members :
of the State Board of Education; and             :
THE CHRISTINA SCHOOL DISTRICT; JOSEPH J.         :
WISE, personally and in his official capacity as the :
Superintendent of the District; DAVID SUNSTROM,  :
personally and in his official capacity as the Assistant :
Superintendent of the District; SANDRA COUNTLEY  :
personally and in her official capacity; SHARON  :
DENNY, personally and in her official capacity;  :
FREEMAN WILLIAMS, personally and in his official :
capacity; THE CHRISTINA SCHOOL DISTRICT  :
SCHOOL BOARD; BRENDA PHILLIPS;                   :
JAMES DURR; GEORGE EVANS, ESQUIRE;               :
BEVERLY HOWELL; CONSTANCE MERLET                 
JOHN MACKENZIE, CECELIA SCHERER; and             :
JOSEPH WISE; all personally and in their official :
capacity as Members of the CHRISTINA             :
SCHOOL DISTRICT.                                 :
       DEFENDANTS.                          :

## CERTIFICATE OF SERVICE

    I, William L. Doerler, Esquire, do hereby certify that on this 21st day of October, 2005 one (1) copy of the foregoing **ANSWERING BRIEF OF DEFENDANTS THE CHRISTINA SCHOOL DISTRICT BOARD OF EDUCATION, JOSEPH J. WISE, DAVID SUNSTROM, SANDRA COUNTLEY, SHARON DENNY, FREEMAN WILLIAMS, BRENDA PHILLIPS, JAMES DURR, GEORGE EVANS, BEVERLY**

**HOWELL, CONSTANCE MERLET, JOHN MACKENZIE AND CECILIA SCHERER, IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** were delivered via E-File and Serve, and First Class Mail, postage prepaid upon:

Patricia McHale O'Neill
Patricia M. O'Neill, Esq.
114 West Front Street
Media, PA 19063

Craig Romond Fitzgerald
Department of Justice
102 West Water Street
Dover, DE 19904


WHITE AND WILLIAMS LLP


BY: _____

WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: 302.467.4508
*Attorneys for The Christina School District*
*Board of Education, Joseph J. Wise, David*
*Sunstrom, Sandra Countley, Sharon Denny,*
*Freeman Williams, Brenda Phillips, James*
*Durr, George Evans, Beverly Howell,*
*Constance Merlet, John Mackenzie and Cecilia*
*Scherer*