# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2004 WL 2009277 (E.D.La.)

**(Cite as: 2004 WL 2009277 (E.D.La.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Dale FLYNN and Dale Flynn, Jr.
v.
TERREBONNE PARISH SCHOOL BOARD
**No. Civ.A. 03-2500.**

Sept. 8, 2004.
James Rene Williams, Lazarus, Brown & Williams,
Houma, LA, for Plaintiff.

*ORDER AND REASONS*

VANCE, J.

**\*1** Defendant Terrebonne Parish School Board
moves the court for summary judgment. Plaintiffs
Dale Flynn and Dale Flynn, Jr. oppose the motion.
For the following reasons, the Court GRANTS the
School Board's motion for summary judgment.

I. Facts and Procedural Backgrounds

Dale Flynn, Jr. is a white male who is now twenty
years old. In August of 2002, Flynn was a senior at
H.L. Bourgeois High School in the Terrebonne
Parish School System. H.L. Bourgeois provided
Flynn with learning disability accommodations
under a "1904/504 Accommodation Plan" while he
was a student there. Flynn was a member of the
football and track teams and hoped to earn a college
scholarship in those sports. Flynn asserts that he had
no discipline problems at H.L. Bourgeois. In the
spring of 2002, Flynn was accused of rape by a
student at another school. He was arrested, charged
and released in June of that year while he awaited

trial.

On September 4, 2002, Flynn was informed that he
was being transferred from H.L. Bourgeois High
School to Andrew Price School, an alternative
school for students whose behavior is disruptive.
Under Louisiana law, a school board or its
delegated officials have "full and final authority" to
transfer students among public schools for a variety
of reasons, including "the morals, conduct, health
and personal standards of the pupil." LA. REV.
STAT. § 104. Elizabeth Scurto, Superintendent of
Terrebonne Parish Schools, notified Flynn's father,
Dale Flynn, Sr. of the transfer by letter dated
September 4, 2002. The Flynns contend they did
not receive this letter until a week or two after
Flynn began to attend Andrew Price. The letter
states that Flynn will be transferred pending the
adjudication of the felony charges against him and
that the transfer was to prevent the disruption of his
education. Mr. Flynn contacted and discussed the
matter with school personnel but did not pursue a
formal appeal.

Flynn was tried and acquitted of the rape charge in
November of 2002, but he remained at Andrew
Price until the end of the semester when he was
eligible to earn his diploma. Flynn was unable to
participate in football and track during his time at
Andrew Price because the school did not have
extracurricular activities. The Flynns contend that
Flynn did not receive disability accommodations at
Andrew Price and was unable to complete the
course work necessary to be eligible for scholarship
money under the "TOPS" program.

After his one semester at Andrew Price, Flynn
enrolled at Nicholls State University in Thibodaux,
Louisiana in January of 2003. He received a Pell
Grant of $1,800 per semester. The Flynns allege
that because Flynn was transferred, he was denied
additional scholarship money that would have
covered his tuition at Louisiana State University, his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 2

Not Reported in F.Supp.2d, 2004 WL 2009277 (E.D.La.)

**(Cite as: 2004 WL 2009277 (E.D.La.))**

first choice. They also allege that because of the transfer, he was unable to compete for athletic scholarships.

In September of 2003, the Flynns sued Terrebonne Parish School Board in the Eastern District of Louisiana. The Flynns allege violations of 29 U.S.C. § 794(a), 42 U.S.C. § 2000d, and a denial of due process under 42 U.S.C. § 1983. The School Board now moves for summary judgment.

II. Motion for Summary Judgment

A. Legal Standard

**\*2** Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325; *see also Lavespere,* 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075

(5th Cir.1996).

B. Analysis

The School Board moves for summary judgment on a number of grounds, including that Flynn was never discriminated against on the basis of disability, race, color, or national origin, that Flynn has not been denied due process, and that the Flynns' claim is foreclosed because any violation by school officials was subject to remedy because the state provided adequate postdeprivation procedures.

1. Discrimination Under 29 U.S.C. § 794(a)

Under section 794(a), "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The School Board argues that the Flynn's claim under section 794(a) should be dismissed because Flynn was transferred because he was charged with rape, not because of his disability. To support its claim, the School Board provides an affidavit from Elizabeth M. Scurto, the Superintendent, who attests that Flynn was not transferred because of his disability. Def.'s Mot. for Summ. J. Exh. C.

The Flynns produced no evidence to counter the School Board's evidence that Flynn was transferred because he was charged with rape. Indeed, they state in their opposition that Flynn "was expelled simply because he was charged with forcible rape." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 6. Because discrimination on the basis of a disability is the gravamen of a violation of section 794(a), and there is no evidence of such discrimination, the School Board is entitled to summary judgment on plaintiffs' claim that the School Board violated 29 U.S.C. § 794(a).

2. Discrimination Under 42 U.S.C. § 2000d

**\*3** Under 42 U.S.C. § 2000d, "[n]o person ... shall, on the ground of race, color, or national origin, be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3

Not Reported in F.Supp.2d, 2004 WL 2009277 (E.D.La.)

**(Cite as: 2004 WL 2009277 (E.D.La.))**

excluded form participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ." Scurto attests that Flynn was never discriminated against on the basis of race, color or national origin. Def.'s Mot. for Summ. J. Exh. C.

The Flynns have produced no evidence to counter the School Board's evidence that Flynn was not transferred on the basis of a ground prohibited by section 2000d. Flynn's section 2000d claim is therefore doomed, and the School Board is entitled to summary judgment.

3. Due Process

The Flynns assert that Flynn's transfer violated his constitutional due process rights. The School Board is entitled to summary judgment on plaintiffs' due process claims because plaintiffs have no substantive due process claims as a matter of law, because Flynn was not deprived of a protected property interest that would implicate his procedural due process rights, and because even if he were, the state provided postdeprivation procedures that are sufficient to satisfy due process.

Plaintiffs refer generically to a denial of due process and do not differentiate between substantive and procedural due process. Their allegations clearly do not give rise to a substantive due process claim. Flynn's transfer was an executive act that the School Board had "full and final" statutory authority to take or to delegate to persons employed by the Board. LA. REV. STAT ANN. § 104. An executive act does not warrant substantive due process protection unless the right infringed is "fundamental." *C.B. v. Driscoll,* 82 F.3d 383, 389 (11th Cir.1996). The right to attend a public school, and the lesser right to attend a particular public school, are state-created, not fundamental, rights for the purposes of substantive due process. *Plyler v. Doe,* 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). A transfer to a different school does not, therefore, abridge a fundamental right that would implicate substantive due process. *Plyler,* 457 U.S. at 221; *Nevares v. San Marcos Consolidated Independent School District,* 111

F.3d 25, 27 (5th Cir.1997). Because no fundamental rights were abridged by Flynn's transfer, any attempt to apply a substantive due process theory to this case must fail.

Plaintiffs apparently base their due process claim on the allegations that the felony charge was not sufficient to support the action taken against Flynn, that school administrator, Pat Luke, violated regulations when he decided to transfer Flynn, either because he was biased or did not follow applicable requirements, and that the Flynns did not receive sufficient notice or a hearing on the transfer decision.

The Due Process Clause prevents the state from depriving a person of life, liberty, or property without due process of law. U.S. CONST. amend XIV. [FN1] In the seminal case on deprivation of access to education, *Goss v. Lopez,* the Supreme Court held that a student has a property interest in receiving an education when a state creates a public school system and requires children to attend. 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) . The Court found that this property interest is protected by procedural due process and may not be abridged by a pupil's suspension from school without some degree of procedural due process. 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

> FN1. The Flynns incorrectly invoke the Fifth Amendment, which applies to the federal government. The Due Process Clause of the Fourteenth Amendment applies to state and local governments.

**\*4** Louisiana has created a public school system, which it requires children to attend. *See* LA. REV. STAT. § 17:221(A). Flynn therefore has a protectible property interest in receiving an education. *See Goss,* 419 U.S. at 574. The Flynns assert that Flynn's transfer was a more serious deprivation of this property interest than a suspension because it was equivalent to an expulsion from H.L. Bourgeois, even though they concede that the School Board never literally expelled Flynn. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 5. The Flynns' argument fails

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2009277 (E.D.La.)

**(Cite as: 2004 WL 2009277 (E.D.La.))**

for a number of reasons. First, the Flynns have pointed to no record evidence to support their contention that Flynn's transfer amounted to an expulsion. Indeed, the evidence before the Court indicates that it was not, because Flynn was able to complete his high school education at Andrew Price, received his diploma after only a semester there, and enrolled at a university immediately after that. Moreover, the Fifth Circuit has held that a disciplinary transfer to another school after a student is charged with a felony does not abridge a protected property interest, because the student continues to attend school and thus is not deprived of access to education, even temporarily. *See Nevares,* 111 F.3d at 26. Thus, Flynn's property interest in receiving an education was not implicated by the transfer.

All of the other interests that the Flynns complain the transfer affected, such as Flynn's interest in receiving a particular curriculum and in participating in school athletics are similarly not protected property interests that, on these facts, implicate procedural due process. *See Nevares,* 11 F.3d at 27 (holding that the opportunity to receive a particular curriculum is not a protected property interest); *Walsh v. Louisiana High Sch. Athletic Ass'n,* 616 F.2d 152, 159-60 (5th Cir.1980) (holding that the opportunity to participate in high school athletics is not a protected property interest). Thus, the Flynns have failed to show that Flynn suffered a deprivation of a protected property interest that entitled him to procedural due process protection.

Finally, even if the Flynns showed that Flynn had a protected interest that was affected by his transfer and therefore implicated procedural due process, the Flynns' due process claim would still fail. Such a due process claim is foreclosed here because the state offers adequate postdeprivation procedures. The Flynns have alleged that Flynn's transfer was improper because it was made for a reason that is not authorized by state law or because the official who made the decision was biased against Flynn. The School Board argues that those claims, if true, would constitute an unauthorized deprivation of rights that is not actionable under section 1983 if

adequate post-deprivation procedures are available. The Court agrees.

When a plaintiff sues under section 1983 for a violation of procedural due process, the violation is "not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zimermonv. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). When a deprivation occurs because officials failed to follow the law that controls their actions, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Id.* at 129. In that case, the question is whether the state has nonetheless satisfied due process by providing adequate postdeprivation procedures. *See Caine v. Hardy,* 943 F.2d 1406, 1412 (5th Cir.1991). If it has, due process will be satisfied if three additional conditions are met: (1) the deprivation was unforeseeable; (2) the pre-deprivation procedures were impotent to counter the state actors' conduct; and (3) the conduct was "unauthorized" because it was not within the officials' express or implied authority. *Zimermon;* 494 U.S. at 132-39; *Caine,* 943 F.2d at 1413. Each of the three criteria are satisfied here.

**\*5** First, if there was an arguable deprivation of a protected interest, it was not foreseeable. There is a Louisiana statute that governs student transfers, which requires school boards and their designees to consider certain factors in transferring students. [FN2] LA. REV. STAT ANN. § 104. The School Board's reasons for transferring Flynn either complied with this statute or they did not. Because it is not predictable that officials will violate statutes that control their conduct, any injury to Flynn from an unauthorized transfer was unforeseeable. *See Charbonnet v. Lee,* 951 F.2d 638, 643 (5th Cir.1992).

> FN2. The Flynns appear to rely on another provision of state law that governs the discipline of students whose behavior disrupts the classroom, playground or transportation to and from school. LA. REV. STAT. ANN. § 17:416. That provision does not apply to this case.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 2009277 (E.D.La.)

**(Cite as: 2004 WL 2009277 (E.D.La.))**

Flynn was not disciplined for conduct that occurred in any of these contexts, and thus was not subject to disciplinary procedures under that section. Accordingly, any reliance on that section by the Flynns is misplaced. The Court finds that Flynn was transferred pursuant to the statute that explicitly governs student transfers. *See* LA. REV. STAT. ANN. § 104.

Second, the state has articulated the factors to be considered when a student is transferred to another school. LA. REV. STAT. § 104. Because state law requires compliance with the statute, the state has provided predeprivation procedural safeguards. *See Charbonnet,* 951 F.2d at 644; *Caine,* 943 F.2d at 1414. If the factors are disregarded, as the Flynns allege occurred here, those predeprivation procedural safeguards are necessarily impotent to counter the conduct of an official who ignores them. *Charbonnet,* 951 F.2d at 644.

Third, the conduct of school officials in this case, if they indeed transferred Flynn for an improper reason, cannot have been "authorized." The statute provides factors to be considered in transferring students. If the officials transferred Flynn based on a factor not included in the statute, they were not authorized to do so. *Charbonnet,* 951 F.2d at 644; *Caine,* 943 F.2d at 1414.

Finally, the postdeprivation procedures in this case were sufficient to satisfy due process. The School Board asserts and provides evidence that the Flynns received a letter informing them of the transfer and that the Flynns discussed the matter with several school officials. Although these discussions occurred after Flynn was transferred, the Fifth Circuit has recognized that predeprivation hearings are not always required, even when a student is indeed deprived of access to education by a suspension, which is not the case here. *Meyer v. Austin Indep. School Dist.,* 161 F.3d 271, 275, n. 4 (5th Cir.1998) (citing *Sweet v. Childs,* 518 F.2d 320, 321 (5th Cir.1975). Here, the informal discussions with school officials gave the Flynns an opportunity to present their side of the story, an important component of procedural due process.

The Flynns present no evidence to the contrary.

Louisiana offers a further postdeprivation remedy for any transfer that might implicate due process. State law provides a parent the right to file written objections with the school board and to request a hearing on the decision to transfer the student. The statute also provides for final resort to the state courts for judicial review of any denial of reconsideration by the board. LA. REV. STAT. §§ 106, 108. There is no evidence that the Flynns availed themselves of these procedures or were prevented from doing so. The availability of these procedures, along with the informal contact the Flynns had with various school officials, provided Flynn with all the process he is due for a transfer that, on this record, did not amount to a deprivation of access to an education.

V. Conclusion

**\*6** For the foregoing reasons, the Court grants the School Board's motion for summary judgment as to all of plaintiff's claims.

Not Reported in F.Supp.2d, 2004 WL 2009277 (E.D.La.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2467616 (Trial Motion, Memorandum and Affidavit) Reply Memorandum to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment (Aug. 10, 2004)

• 2004 WL 2467636 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Defendant's Motion to Strike Witness and Exhibits Lists (Aug. 09, 2004)

• 2003 WL 23860417 (Trial Pleading) Answer to the Complaint and the First Supplemental and Amending Complaint (Dec. 04, 2003)

• 2003 WL 23860336 (Trial Pleading) First Supplemental and Amending Complaint (Nov. 17, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 6

Not Reported in F.Supp.2d, 2004 WL 2009277 (E.D.La.)

**(Cite as: 2004 WL 2009277 (E.D.La.))**

- 2003 WL 23860314 (Trial Pleading) Complaint (Sep. 03, 2003)

- 2:03CV02500 (Docket)
                                    (Sep. 03, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.