Westlaw.

Not Reported in A.2d                                                                                                       Page 1

Not Reported in A.2d, 1988 WL 47096 (Del.Super.)

(Cite as: 1988 WL 47096 (Del.Super.))

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware, New Castle County.
The BOARD OF EDUCATION OF the NEW CASTLE COUNTY VOCATIONAL TECHNICAL SCHOOL
DISTRICT, Respondent Below, Appellant and Cross-Appellee,
v.
Ronald H. CLARK, Jr., Petitioner Below, Appellee and Cross-Appellant,
v.
BOARD OF EDUCATION OF the NEW CASTLE COUNTY VOCATIONAL-TECHNICAL SCHOOL DISTRICT, Appellee, Petitioner Below.

Submitted: Feb. 24, 1987.
Decided: May 3, 1988.

Upon appeal of the State Board of Education's October 24, 1985 decision to remand to the Vocational-Technical School Board. AFFIRMED. Upon appeal of the State Board of Education's February 26, 1986 decision. AFFIRMED.

Jeffrey M. Weiner, Wilmington, for the Vocational-Technical Board of Education.

David Roeberg, Wilmington, for Ronald H. Clark, Jr..

Marcia Rees, Department of Justice, Wilmington, for State Board of Education, Intervenor.

*MEMORANDUM OPINION*

GEBELEIN, Judge.

*1 This case involves cross-appeals from decisions of the State Board of Education reviewing decisions of the New Castle County Vocational Technical School District Board of Education. The State Board has intervened in the action and claims its decisions should be affirmed. The facts of the case are as set forth below.

Ronald H. Clark, Jr. (Student Clark) was an eleventh grader at Delcastle High School on May 21, 1985. On that day, he had in his possession a "butterfly" knife which he had purchased earlier that day from another student. The knife had a blade about four inches long. Student Clark wore the knife unconcealed in a belt holster throughout his small appliance repair shop class. He had been appointed "foreman" for the day. He and a ninth grader, Dennis Bennett (Student Bennett), became involved in an altercation concerning Student Bennett's work responsibilities. Student Clark placed Student Bennett in a hold commonly known as a "headlock", and tightened his grip until Student Bennett agreed to do his work. Four student witnesses also testified that Student Clark threatened Student Bennett with the knife during the fracas. Student Clark claimed he only "showed" the knife to Student Bennett, and did not threaten him with it. He admitted using the "headlock". However, he claimed he purchased the knife in class with the approval of the teacher, Mr. Galbraith, and that Mr. Galbraith approved the foreman's use of physical force to exercise control. Mr. Galbraith denied these statements.

Student Clark was reported to the student advisor, Mr. Immediato, who confronted him during eighth period of the school day. At that time Student Clark was found to be carrying the knife in its holster in his back pocket.

The Vo-Tech administration investigated the incident and suspended Student Clark with intent to expel. He then requested a hearing before the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 2
Not Reported in A.2d, 1988 WL 47096 (Del.Super.)
(Cite as: 1988 WL 47096 (Del.Super.))

Vo-Tech Board. The hearing was held on August 12, 1985. The Vo-Tech Board then expelled Student Clark for the 1985-86 school year. He appealed to the State Board. On September 19, 1985, the State Board heard argument in his appeal. It held, on October 24, 1985 that he was not given sufficient due process rights with regard to witnesses and cross-examination. The Board remanded to Vo-Tech to remedy the due process deficiencies.

On November 4, 1985, Vo-Tech held another hearing. Student Clark there had the opportunity to cross-examine Mr. Galbraith, the student who sold him the knife, Student Bennett, and four other student witnesses. On November 11, 1985 the Vo-Tech Board reaffirmed its decision to expel Student Clark.

On November 12, 1985, Vo-Tech appealed to this Court the State Board's October 24, 1985 decision to remand claiming Student Clark had proper due process. On November 22, 1985, Student Clark filed a cross-appeal as to the same decision, claiming the State Board should have proceeded *de novo*, rather than by remand.

Student Clark then appealed the Vo-Tech's November 11, 1985 decision to reaffirm the expulsion to the State Board. On January 16, 1986, the State Board heard argument in Student Clark's appeal. By decision and Order dated February 20, 1986, the State Board affirmed Vo-Tech's decision to expel Student Clark for the 1985-86 school year.

*2 On March 19, 1986, Student Clark appealed the State Board's February 20, 1986 decision and Order to this Court, asserting that the Vo-Tech Board's decision was not supported by substantial evidence. The appeals have been consolidated for decision.

There are three issues to be decided.

I.

The first issue to be addressed is the legal sufficiency of the State Board's decision holding that Student Clark was not afforded due process at the Vo-Tech Board hearing on August 12, 1985.

In 1967, the United States Supreme Court held that where substantial punishment was involved, a juvenile was entitled to due process. *In re Gault*, 387 U.S. 1 (1967). In *Gault*, a fifteen-year-old boy was convicted of making an obscene phone call. He was denied the right to counsel and the right to confront and cross-examine the accuser. The Court set aside the conviction. *Id.*

*Gault* led to questions about whether a juvenile retained his rights when in school. In a case involving freedom of expression, the United States Supreme Court made clear that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969).

Despite the foregoing, the area of due process for students remained unclear. For many years "school officials were practically free to prescribe any and all rules governing student conduct, to enforce such rules, and to discipline or expel students in any matter they deemed desirable." R. Gatti and D. Gatti, *Encyclopedic Dictionary of School Law* 122 (1975). Hearings were not required.

In 1975, the Supreme Court decided *Goss v. Lopez*, 419 U.S. 565 (1974), where it announced that a student's legitimate entitlement to a public education was a property interest [FN1] protected by the due process clause, and that "minimum procedures" required by the clause had to be followed before suspension. *Id.* at 574. The Court held that "in connection with a suspension of 10 days or less, ... the student [should] be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. The Court did not require assistance of counsel, confrontation and cross-examination of witnesses, or the opportunity to call witnesses for such "short suspension" hearings. *Id.* at 583. The need for those procedures was left to the disciplinarian's discretion. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                  Page 3
Not Reported in A.2d, 1988 WL 47096 (Del.Super.)
(Cite as: 1988 WL 47096 (Del.Super.))

In the instant case, Student Clark faced a more extreme punishment than in *Goss*, i.e., expulsion rather than suspension. It is logical and commendable that the procedural safeguards would be expanded in concert with the possible loss, in this instance the permanent loss of Student Clark's property interest in his education at Delcastle High School.

This conclusion is in accord with *Mathews v. Eldridge*, 424 U.S. 319 at 335, 336 (1970), wherein the Supreme Court ruled that identification of the process due requires consideration of three factors: 1) the private interest that will be affected; 2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards, and 3) the government's interest, including the fiscal and administrative burdens that the additional procedural requirement would entail. In Student Clark's case, the interest affected was his attendance at Delcastle High School. The risk of erroneous deprivation of that interest was great without an opportunity to fully present his case via cross-examination of witnesses; the value of the additional safeguards is clear. Finally, the burden on the government in ensuring the additional safeguards was negligible. Clearly, the Delaware State Board of Education recommended in its *Guidelines: Resource Material for Developing Local School District Policies Regarding Student Rights and Responsibilities*, approved by the State Board on September 16, 1971, that a formal hearing be held by the local board in cases of recommendations for expulsion and that the student be afforded the "right to have witnesses and cross-examine complaining witnesses." This is the exercise of discretion described in *Goss*. Legal scholars have supported cross-examination and confrontation in expulsion cases as "good policy", e.g., Gatti & Gatti at 126. Serious questions of credibility arose in this case. If the State Board of Education has concluded that these procedures were necessary to permit minimum due process required by *Goss* in expulsion cases, the Court will not set that decision aside.

II.

*3 The next issue is whether the State Board was correct in remanding to the Vo-Tech Board, rather than holding a *de novo* hearing itself, as Student Clark claims it should have.

It is provided by 14 *Del.C.* § 1058 that appeals from decisions of the local district board of education involving that district's rules and regulations shall be heard by the State Board of Education. The procedures to be followed on such appeals are to be provided by the State Board:

The State Board of Education shall by rules and regulations provide for adequate procedures for the hearing of any such petitions and shall decide the controversy. The decision of the State Board of Education shall be final.

14 *Del.C.* § 1058.

This statute is interrelated with the Administrative Procedures Act. 29 *Del.C.*, Ch. 101. Proceedings before the State Board of Education are governed by this Act. *Lake Forest School Dist. v. Woodbridge School Dist.*, Del.Supr., 402 A.2d 810 (1979). This Act requires that:

When required by law or when the parties do not consent to informal poceedings ... the agency shall conduct a formal, public evidentiary hearing ...

29 *Del.C.* § 10124.

*4 Student Clark argues that this section requires the State Board to give an appellant a hearing *de novo*. In dealing with an appeal from a local school board the State Board sits in an appellate capacity. In general, appeals from agency action do not require an appeal *de novo* unless specifically required by statute. *See* for example, *Cahill v. State*, Del.Super., 411 A.2d 317 (1980) rev'd other grds., Del.Supr. 443 A.2d 497 (1982); and, *Poe v. Poe*, Del.Super., 333 A.2d 403, appeal dism'd, Del.Supr., 348 A.2d 327 (1975).

Neither 29 *Del.C.* § 10124 nor 14 *Del.C.* § 1058 require a hearing *de novo* by the State Board. Thus, the State Board procedures limiting appellate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                         Page 4
Not Reported in A.2d, 1988 WL 47096 (Del.Super.)
**(Cite as: 1988 WL 47096 (Del.Super.))**

review to the record below comply with the statutory appellate scheme.

The State Board's October 24, 1985 decision to remand to the Vo-Tech, in order to comply with due process is AFFIRMED. [FN2]

### III.

The third and final issue is whether the State Board's February 20, 1986 affirmance of the Vo-Tech Board's November 11, 1985 reaffirmance to expel, was supported by substantial evidence. 29 *Del.C.* § 10142(d).

Student Clark has admitted having the knife, a deadly weapon, in school. He has admitted assaulting another student, by placing him in a headlock. These two factors alone constitute substantial evidence upon which an expulsion might be justified. Student Clark's argument that he was only "showing the knife," rather than using it to threaten, was rejected by the Board. The argument regarding non-credible witnesses is misdirected in this Court. The appellant had opportunity to cross-examine the witnesses and argue their credibility to the Board. The Board, not the Court, must resolve conflicts in testimony and issues of credibility, and then decide what weight, if any, is to be given to the evidence presented. *Starkey v. Unemployment Ins.App.Bd.,* Del.Super., 340 A.2d 165 (1975); *aff'd,* 364 A.2d 651 (1976). There is clearly substantial evidence in the record to support the State Board's decision.

The State Board's February 26, 1986 decision is AFFIRMED.

IT IS SO ORDERED.

> FN1. In *Goss,* the applicable state law established an entitlement to attend school so as to create a constitutional property interest. "The Supreme Court has not held that publicly financed primary or secondary education is a fundamental right." 2 R. Rotunda, J. Nowak, & J. Young, *Constitutional Law Substance and Procedure* 714 (1986).

> FN2. The Court rejects the State Board's argument that the Vo-Tech Board waived objection to the remand by complying with it. Its compliance was mandatory.

Not Reported in A.2d, 1988 WL 47096 (Del.Snper.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.