6. Defendant State of Delaware School Board is established under 14 Del. C. Section 104 and is the governmental agency empowered, among other things: to decide certain types of controversies and disputes involving the administration of the public school systems, (14 Del.C. Section 104 (b) (5)) as well as decide all controversies involving rules and regulations of local school boards ( *Id.* at (7)).

7. Defendant Joseph Pika, Ph.D. is President of the Defendant Board and is responsible for administration of the Board. He is being sued personally and in his official capacity. His office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

8. Defendant Jean Allen is the vice-president of the Board. She is being sued personally and in her official capacity. Her office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

9. Defendants Richard M. Farmer Jr. ; Mary Graham, Esquire; Barbara Rutt; Dennis Savage; Clairbourne D. Smith; Anne Case; Valerie Woodruff; all sit as members of the Board and together with Defendants Pika and Allen, at all times relevant hereto, failed to oversee Defendant District's policies and procedures regarding Alternative Placements which resulted in harm to R.W. *supra.* They are being sued personally and in an official capacity. Their office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

10. Defendant Christina School District is a political subdivision of the State of Delaware performing the function of administering public education under the laws of the State of Delaware. It is responsible for and obligated to provide public education to R.W. Its principal place of business is 600 North Lombard Street, Wilmington, DE 19801. The District caused harm to R.W. due to unconstitutional policies and procedures which deprived R.W. of his equal protection and due process rights. The District is a federally funded program and activity under Title VI of the Civil Rights Act of 1964 which prohibits discrimination on the basis of race, color or national origin in federally assisted programs and activities receiving assistance from the U.S. Government.

11. Defendant Joseph J. Wise (Wise) is the Superintendent of the Defendant District. At all times relevant herein, Superintendent Wise was responsible for the supervision of agents, servants, and employees of the Defendant District. He is sued personally and in his official capacity as Superintendent of Defendant District. His principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Defendant Wise did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

12. Defendant David Sundstrom, ( Sundstrom) is the Assistant Superintendent of Defendant District. At all times relevant herein, Defendant

Sundstrom was responsible for the supervision of agents, servants, and employees

of the Defendant District. He is sued personally and in his official capacity as

Assistant Superintendent of Defendant District. His principal place of business is

600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein,

Sundstrom did conspire with other named Defendants to deprive R.W. of his equal

protection and due process rights.

    13. Defendant Sandra Countley, (Countley) is the Director of Alternative

Placement Defendant District. At all times relevant herein, Countley was

responsible for the Alternative Placement Program. She is sued personally and in

her official capacity as Alternative Placement Program of Defendant District. Her

principal place of business is 600 North Lombard Street, Wilmington, DE 19801.

At all times relevant herein, Countley did conspire with other named Defendants to

deprive R.W. of his equal protection and due process rights.

    14. Defendant Sharon Denny (Denny) is the Coordinator of the Alternative

Program for Defendant District. At all times relevant herein, Denny was

responsible for the supervision and implementation of the Program. She is sued

personally and in his official capacity as Coordinator of the Alternative Program for

Defendant District. Her principal place of business is 600 North Lombard Street,

Wilmington, DE 19801. At all times relevant herein, Denny did conspire with other

SEP-13-2005 TUE 04:56 PM CHRISTINA 2ND FLOOR        FAX NO. 3024542005        P. 13/14

named Defendants to deprive R.W. of his equal protection and due process rights.

15. Defendant Eleanor Ludwigeson (Ludwigsen) the Principal of Shue-Medill Middle School, one of the schools located within the boundaries of the Defendant District at 1500 Capital Trail, Newark, DE 19711. At all times relevant herein, Ludgwigsen was responsible for the supervision of agents, servants, and employees of the Middle School. She is sued personally and in his official capacity as Principal. At all times relevant herein, Ludwigsen did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

16. Defendant Gina Moody is the Assistant Principal of Shue-Medill Middle School, one of the schools located within the boundaries of the Defendant District at 1500 Capital Trail, Newark, DE 19711. At all times relevant herein, Moody was responsible for the supervision of agents, servants, and employees of the Middle School. She is sued personally and in his official capacity as Assistant Principal. At all times relevant herein, Moody did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

17. Defendant Freedman Williams (Williams) is the Director of School Operations for the Defendant District. At all times relevant herein, Williams was responsible for the supervision of agents, servants, and employees of the District. He is sued personally and in his official capacity as District Director of Operations.

8

B10

His principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Williams did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

18. Defendant Christina School Board (School Board) is established under 14 Del. C. Section 1041 *et.seq.* and has the authority to administer and supervise the free public schools of the reorganized school district and have the authority to determine policy and adopt rules and regulations for the general administration and supervision of the District. Its principal place of business is 600 North Lombard Street, Wilmington, DE 19801. The School Board violated R.W.'s rights by failing to provide due process rights upon a placement in an Alternative School; by permitting a continuous policy and procedures to exist in the Student Code of Conduct which discriminate against R.W. and denies equal protection by subjecting R.W. to discriminatory treatment in regard to discipline for R.W., a minority child. Due to this continuous policy and procedure, R.W. and Parent suffered the harm, *supra.*

19. Defendants Brenda Phillips; James Durr, George Evans, Esquire; Beverly Howell; Constance Merlet; John MacKenzie; Cecelia Scherer; and Joseph Wise are, at all relevant times, all members of the School Board. They are being sued personally and in their official capacity. Their official place of business is 600

9

North Lombard Street, Wilmington, DE 19801. The School Board members permitted a continuous policy and procedure to exist, in the Student Code of Conduct, which each and every member of the School Board knew failed to provide due process rights in regard to placement in an Alternative School as well as discrimination against minority children on the basis of race.

20. At all times relevant hereto and in all of the actions described herein, all individuals and agency defendants were acting in their respective capacities as stated under Color of law, ordinances and regulations of the State of Delaware and statutes of the United States of America, and did subject the Plaintiffs herein to the deprivation of rights, privileges, and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described herein.

## IV. FACTUAL BACKGROUND

21. R.W. was born on June 3, 1991. He is presently 14 years old and was attending Shue-Megill Middle School for the school year 2004-2005 for the eighth grade. This school is located within the District.

22. R.W. attended the District schools from Kindergarten until November 8, 2004. He was an Honors Student and had a perfect attendance record until November 8, 2004. He received numerous academic awards over his education,

10

B12

09/15/05 15:24:29       RightFax->       3026540245  Fax Server       Page 017

including but not limited to, spelling bee awards, science awards, Math awards, sportsmanship awards, and the City of Wilmington Academic Award for his 6th grade year.   He also was recognized for intervening in a Rape in Progress on his school bus in 7th grade.

23.   On November 8, 2004, in a classroom at Shue-Megill Middle School a fellow student identified as Nick. M. stepped on a long chain which was hanging from the pants of student Jeffrey L.   Jeffrey L. then that threw his shoulder into R.W. and pushed him and R.W. gave him a push back.

24.   R.W. exited the classroom with other students and began walking down the hallway to his 1st period class.

25.   Jeffery L. threatened R.W. and two other students three times with a "death wish." The topic of death wishes and voo-doo had been recently discussed in social studies class.

26.   R.W. then entered another classroom and punched Jeffrey L. under his right eye.

27.   Jeffrey L.'s eye was bleeding as and he went to the nurse's office.

28.   R.W. was told by his teacher, Mrs. Jefferson to go to the nurse's office because his hand was bleeding.

29.   Defendant Moody interceded and sent R.W. to Mr. Carter's office

11

B13

wherein Mr. Carter told R.W. to return to the nurse's office for treatment. There,

Jeffrey L. stated to R.W. in a provocative manner: " Bleed, Bleed, Bleed, it didn't

hurt," (referring to his eye).

30.  After treatment, R.W. went back to see Mr. Carter.  Parent was called and

both were told that R.W. was suspended for 5 days.  Parent asked for a copy of the

Student Code of Conduct and was told by Mr. Carter that the School did not have a

copy to give her.   Two days later, Parent again requested a copy of the Student Code

of Conduct and was again told the School did not have one to give her.

31.  R.W. returned to school on November 19, 2004 for one-half day when

parent received a phone call from Moody stating that R.W. was going to be

suspended for five more days.

32.  Parent immediately went to school and met with Moody with Mr. Carter

present and asked why was R.W. being suspended –did something else happen?  She

was told by Moody that Denny, from the District office, ordered her to suspend R.W.

for five more days because that he wasn't punished enough.  Again, Parent

requested a copy of the Student Code of Conduct and was told by Moody that the

only copy she had was her own and none was given.

33.  Parent received an Extension of Suspension form (Revision date 9/99) on

November 19, 2004 which suspended R.W. for 5 more days until December 1, 2004.

12

B14

The first paragraph stated that R.W. had been involved in an offense which will result in alternative placement or expulsion. The second paragraph of the form is as follows: " The student is scheduled for an alternative placement meeting on the following date: Dec.2- 8 a.m. BLDG., Dec 13- 9:30 a.m.(Both of the dates were on one line). If the student is recommended for expulsion, the District Office personnel will contact you to schedule a time for the expulsion hearing."

34. In the interim, R.W. was charged with Assault in the third degree and conspiracy. All three of the minority students were charged and the Caucasian male, Jeffrey L. was not, although he instigated the incident. The disparate discipline was done in violation of R.W.' s equal protection rights. R.W. was given a diversionary program by the Family Court of the State of Delaware.

35. A Building level Conference was held on December 2, 2004 attended by Parent, Freeman, Moody, Sley, Carter.

36. At that conference, Parent stated that the District's dress code was not enforced on November 8, 2004 (and in fact was never enforced against Jeffrey L., who dresses in the Gothic fashion, but was routinely enforced against minority children) against Jeffrey L. who was wearing chains on his pants, his consistent manner of dress.

37. Parent tried to point out that if the dress code had been consistently and

13

B15

equitably enforced against all children and not just minority children, then this incident would not have happened.

38. Also, Parent expressed that the two teachers from his home room class were not monitoring the classroom, but rather, talking between themselves in the hallway.

39. Also, Parent questioned, upon being told that there was a security tape of the hallway showing R.W. greeting one of his other friends with a "high five" gesture, why was the situation not handled immediately rather than be permitted to escalate.

40. Parent stated that she was not familiar with this type of conference and again requested a copy of the Student Code of Conduct and again was not provided with one.

41. Parent also asserted that R.W. was in honors classes and involved in many activities and that he was remorseful for his part in the incident.

42. The recommendation from this conference was to: "refer case to District for review." Parent was not told what this meant.

43. The District's Student Code of Conduct, revised edition, 2004, on page states that the consequences of an assault are (all of the following): 1) Parent/Guardian notification, 2) suspension for five (5) days, 3) parent/guardian

14

B16

conference, 4) notification of police; charges may be filed, 5) restitution/restoration, if necessary, 6) recommendation to appropriate counseling, 7) **\*possible** (\*Emphasis added) recommendation for alterative placement or expulsion, and 8) referral to mediation, if appropriate.

44. At no time relevant heretofore, despite repeated requests, was Parent provided with access to/or a copy of the Student Code of Conduct.

45. Further, at the December 2, 2004 Building level conference, Parent was again not provided with access to/or a copy of the Student Code of Conduct which outlined the District's Disciplinary Procedures.

46. At no time was the Assignment to Alternative Programs policy and procedure provided to Parent.

47. The Procedure, as stated in the Student Code of Conduct:  Assigned to alternative programs is the placement of a student, with appropriate consideration of due process, in a program designed to meet the student's particular needs . . . (A) Prior to placement in an alternative program the student and the student's parent/guardian shall be conferred with about the student's need to be in a special program.  (B)  Following the conference the student and the student's parents/guardians shall be given written notice of:  (1.) The circumstances which led to the placement; (2.) How the special program is designed to meet the student's

15

B17

needs; (3.) The conditions, which must be met in order for the student to return to the regular school program . . .

48. At no time prior to/or after the December 2, 2004 was Parent given any of the above information in violation of R.W."s Due Process rights. In fact, the result of this meeting was to refer the case to the District. It did not indicate that the student is referred for an expulsion hearing.

49. At no time prior to/or after the December 2, 2004, was Parent given information that the Assignment to Alternative Program contained a clause assuring appropriate consideration of due process.

50. At no time prior to/or after the December 2, 2004 was Parent given a written notice that any due process existed in regard to Assignment to Alternative Programs.

51. At all times relevant herein, the defendants knew that no due process protections for an Assignment to an Alternative Program existed and knowingly conspired to take no action to remedy this consistent policy.

52. For some period of time, R.W. did receive services from the District identified as "Homebound," which consisted of only five hours a week.

53. The next meeting occurred on December 13, 2004. This so called "District level" meeting was held at The Board Room of the District and attended by

16

B18



SEP-13-2005 TUE 05:14 PM      FAX NO.      P. 01/13

the Plaintiffs, their Advocate, Moody, Denny, Countley and witnesses on behalf of R.W.

54. A packet was presented at the meeting which had not been presented prior to the meeting, accordingly, there was no time for review by Parent.

55. Moody, Denny and Countly asked R.W. questions about the incident.

56. R.W. related that the matter began as related above.

57. Parent and witnesses provided character evidence of her son, R.W. as described above.

58. As a result, Countly related that R.W. should be placed at an alternative placement called Compass. There was no statement that R.W. was expelled.

59. The procedure for a Step II-District level conference requires that the parent be given Notice that a formal hearing was to be held. It further requires that the Notice be sent by certified mail or hand delivered. The District failed to do this in violation of R.W. Due Process rights.

60. The procedure for a Step II-District level conference requires that a parent be given the reasons for the recommendation of expulsion; names of witnesses and copies of statement. The District failed to do this in violation of R.W. Due Process rights.

61. The procedure for a Step II-District level conference requires that

B19

individuals involved in the building process are NOT to be involved in the District level conference. The District ignored this mandate and had individuals involved in the Building level conference participate in the decision at the District level, i.e., Moody. By this action/inaction, the District violated R.W.'s Due Process rights.

62. The procedure for a Step II-District level conference requires that the District provide a copy of the School District Expulsion Procedures with the requisite Notice. The District failed to do so. By this action/inaction, the District violated R.W.'s Due Process rights.

63. At the meeting, Parent requested that the Committee put the decision in writing and send it to her.

64. Despite another request for access or a copy of the Student Code of Conduct, none was provided.

65. Parent was not informed at that meeting, what, if any, appeal rights or procedures existed. Neither was she ever provided with any written Notice of appeal. The District failed to do so. By this action/inaction, the District violated R.W.'s Due Process rights.

66. On or about December 17, 2004, a referral was made by the Shue- Medill Middle School to Compass School, a locked facility, which indicated that R.W. was an expelled student. Parent did not receive a copy of this referral until she requested

SEP-13-2005 TUE 05:15 PM                    FAX NO.                    P. 03/13

it on or about February 25, 2005.

67.   Parent received no information regarding Compass School until she called and wrote a letter to Countley on or about January 3, 2005 requesting the policies and procedures regarding alternative placement and due process rights and appeal rights.

68.   At that time, Parent was informed by that the decision to place R.W. in an alternative placement had been mailed to her.  Parent never received that letter until approximately ten days after her phone call and letter.

69.   An appeal of the December 13, 2004 decision was made to Wise on January 4, 2005.  This was sent to all District Board members.

70.   No response to this request was made by Wise or the Board.

71.   Despite further calls to Countley, Parent spoke to Countley's supervisor on or about January 18, 2005 because Parent had no response from Countley.  Parent was advised that Sundstrom would call her.

72.   Parent met with Sunstrom and Denny on January 26, 2005.  Parent informed Sunstrom and Denny that the information regarding the Student Code of Conduct and the appeal process was never received by Parent.  Sunstrom apologized for several due process violations, including but not limited to, failure to show a videotape of R.W. after the incident at the December 13, 2004 meeting.

73. Sunstrom also stated that he has been following the regulations in the Student Code of Conduct and that the regulations have been the same for years.

74. Parent stated: what are the regulations? Sunstrom could not state even one of the regulations to Parent so he tried unsuccessfully to retrieve a copy from the computer. Parent still had no copy of the Student Code of Conduct or Expulsion Procedures. By this action/inaction, the District violated R.W.'s Due Process rights.

75. Sundstrom sent a follow-up letter dated January 27, 2005, reciting that Parent admitted that her son punched another student. Parent denies that this conversation took place. This aggressive letter was an attempt to intimidate the Parent in order to pressure Parent to send R.W. to Compass, again in violation of R.W.'s rights.

76. A second request for an appeal of the December 13, 2004 meeting was submitted on February 7, 2005 by Mr. Jea Street, an Advocate for R.W.

77. No acknowledgment of this request was made and no appeal was scheduled.

78. Parent visited Compass School on February 2, 2005. At that time, Parent first learned that R.W. was expelled, contrary to what she had been told, i.e., that was given an alternative placement and not an expulsion. However, when Parent later investigated Compass School, she learned that only expelled students were

admitted to Compass School. Further, during her visit, Parent observe a 12 year-old

student telling the administrator to "s—k his d—k (private parts) and that he was

sick of the m—f'ing school" At the February 2, 2005 visit, a school representative,

asked Parent: "Why are you asking so many questions- most parents just sign the

papers."

79. On March 1, 2005, the Advocate, Mr. Street, wrote a letter to Pika, of the

State Board, to appeal the decision of the District to expel R.W.

80. Also an appeal was taken on the District's decision to remove R.W. from

the regular educational setting to an alternative school without a hearing.

81. On April 12, 2005, Parent attended the District' School Board meeting.

At that meeting, Parent again requested a hearing before the Board and no response

was given. After the meeting, Sundstron asked if Parent would re-consider Kirk

Middle Alternative School ( why had unofficially been offered) and Parent advised

that she would think about it. Parent did not reject Kirk placement for the sole

reason of lack of transportation, (District sent a bus for handicapped children to pick

up R.W., which was unacceptable) but rather did not consider it an appropriate

placement.

82. On April 14, 15, 2005, District representatives called Parent to find out

her decision whether to send R.W. to Kirk Alternative School. For the first time,

B23

SEP-13-2005 TUE 05:17 PM                    FAX NO.                         P. 06/13

Parent learned from one of the representatives that R.W. was considered a problems

to his teachers and that the Kirk program was an alternative program.  Parent advised

the representative that R.W. was not a problem to his teachers.

83.  The representative stated that R.W. did not have to attend the alternative

program but that he could go to the regular educational setting at Kirk Middle.

84.  Parent asked -if he is going to be placed in a regular educational setting-

why would he not go back to Shue-Medill Middle School.  This question was never

answered.

85.    In response to the March 1, 2005 letter to Pika, Parent was notified that

the case would be on the Board's agenda for April 21, 2005.  The Board voted to

hear the issue of whether the Board had jurisdiction over the matter and  oral

arguments were scheduled for May 19, 2005.

86. Prior to May 18, 2005, upon information and belief, three members of the

Board, Allen, Farmer, and Pepper,  attended a meeting at the Delaware School Board

Association wherein the R.W. matter was discussed as a topic of concern. A

statement was made that if R.W.'s appeal was granted, that the floodgates to

litigation would be opened.

87.  These three Board members attended the May 18, 2005 oral argument but

did not disclose this association and any information which may have been related to

09/15/05 15:27:17          RightFax->          3026540245  Fax Server          Page 029

SEP-13-2005 TUE 05:17 PM                    FAX NO.                      P. 07/13

them to  Parent or the Board at the May 19, 2005 hearing.

88.  Further, Pika stated that he would not assign this matter to a hearing

officer, (as is the usual procedure) because he did not know who he could trust  to

hear the case.

89.  This conduct was taken as part of the conspiracy to deprive Plaintiffs of

their right to a full, fair and impartial  hearing on the merits.

90.  Accordingly, Plainitffs' rights to a full,  fair and impartial hearing were

violated.

91.  At the Board meeting, the attorney for the District, David Williams,

Esquire, failed to disclose that he was representing the Delaware School Board

Association in addition to the District.

92.  The Board decided upon oral argument, that the Board did not have

jurisdiction over the matter because there was no direct Board action over the matter.

The Board incorrectly stated that there was no appeal made on R.W.'s behalf to the

District.  An appeal was taken on February 7, 2005, despite the District's failure to

provide any information regarding Notice of the Hearing and appeal rights.

'93.  The Board violated the rights of the Plaintiffs by failure to supervise the

District's  and the Board's policies and procedures; rules and regulations, regarding

exclusion of this child from his educational setting without due process and in

B25

SEP. 14. 2005 11:27AM    PRATT INSURANCE INC 302 653 2370          NO. 0498    P. 28/35

violation of equal protection, thereby conspiring with the District and the Board to

deprive R. W. of his education.

94. Further, the Board has the statutory responsibility to resolve disputes and

refused to perform its duties in violation of R. W.' s due process and equal protection

rights.

95. The District further violated R. W.'s rights by threatening criminal

charges and truancy against both Parent and R.W. if Parent continued to hold her son

out of school while trying to exercise their constitutionally protected rights.

96. The District did file Truancy charges against both Plaintiffs which is

pending in truancy court.

97. At the present time, the District continues to refuse to provide R. W. with

due process, continues to attempt to intimidate Parent, continues to follow its own

Rules and Regulation by designating that R. W. must attend an alternative school for

the month of September and continues to refuse to place R. W. in his regular

education school.

## COUNT I
### Violation of The Civil Rights Act of 1964, Title VI

98. Plaintiffs incorporate by reference all preceding paragraphs, as fully as

set forth herein at length.

24

B26

99. Defendants, by their aforestated actions, have deprived Plaintiffs of their rights under The Civil Rights Act of 1964. Title VI.

100. At all times relevant hereto and in all of the actions described herein, all individual defendants were acting in their respective capacities as stated under Color of Ordinances and Regulations of the School District, statutes of the State of Delaware and statutes of the United States of America and did subject Plaintiffs herein to the deprivation of their rights, privileges and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described hereafter.

101. The Civil Rights Act of 1964, Title VI provides that no person in the Unites States shall, on the grounds of race, color or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under program or activity receiving financial assistance.

102. The State of Delaware and the Christina School District, agents and employees of both public agencies are the recipients of federal assistance.

103. The Civil Rights Act of 1964, Title VI provides that no state shall be immune from suit under the Act, or any other Federal statute prohibiting discrimination.

104. All defendants, as described above, did discriminate against the