

**CHRISTINA**
**SCHOOL DISTRICT**
*Educating each student to succeed*

| | | | |
|---|---|---|---|
| **Administration Building** | 83 East Main Street | Newark, DE 19711 | Phone: (302) 454-2529 |
| Dr. Sandrra Countley | | | FAX: (302) 454-2005 |
| Email: countleys@christina.k12.de.us | | | TTD Relay Service: (800) |
| 232-5470 | | | |

December 20, 2004

Ms. Sarah W███
███████
███████

Dear Ms. W███

Thank you for attending the alternative placement meeting for R████ W███ at the Christina School District Office on December 13, 2004. It was a unanimous decision of the placement committee to assign R████ W███ to the Compass School Alternative Program. Placement will be reviewed at the end of the ~~2004-2005 school year~~. *third marking period*

The Compass School will contact you to schedule registering R████ W███ for the program.

While in the alternative program, R████ is expected to achieve the following:

- Decision making skills
- Academic improvement
- Socially acceptable behaviors
- Compliance to rules
- Anger management

If you have additional questions, you may contact our office at 454-2529.

Sincerely,

*Sandra M. Countley*

Sandra Countley, Ph.D.
Supervisor of Student Services

B80

Joseph Wise, Superintendent

The Christina School District is an equal opportunity employer and does not discriminate or deny services on the basis of race, color, religion, national origin, gender, disability or age.

December 30, 2004

Re: R█████ W████████

District Hearing
Due Process Rights / Civil Rights

To Whom It May Concern:

On December 13, 2004 my son R████ W██████ had a district hearing. As of December 30, 2004, I have not receive a written decision. The written decision is vital to my son due process rights. I also request Christiana School District administrative manual that outline the following

(A) building hearing process
(B) district hearing process
(C) hearing process for alternative school placement
(D) process for taking statement from student
(E) Charles Carter official position
(F) video surveillance of students during school hour
(G) Sharon Denny position
(H) parents notice of student video surveillance
(I) Christiana School District appeal process
(J) alternative school placement process

If there are any questions I can be reach at 6562316

CC: NAACP

Sincerely,
Sarah ████

JAN 03 2005

B81

# Hilltop Lutheran Neighborhood Center, Inc.

1018 WEST SIXTH STREET   WILMINGTON, DELAWARE 19805
(302) 656-3224
FACSIMILE: (302) 656-3130

JAN - 7   5

January 4, 2005

Via Facsimile and U. S. Mail

Dr. Joseph Wise, Superintendent
Christina School District
83 E. Main Street
Newark, Delaware 19711

RE: R▓▓▓ W▓▓▓ an 8th grade student at Shue Middle School

Dear Dr. Wise,

   I write to appeal the decision of the so-called hearing held on December 13, 2004 wherein the so-called committee recommended that R▓▓▓ be placed in the Compass Alternative program. The reasons for the appeal include but are not limited to:

1. Apparently the District by its action in this case maintains the position that a student can be placed in an alternative program without a formal hearing. Mrs. Sarah W▓▓▓ (mother) and I adamantly disagree. It is our view that a formal hearing is indeed required to remove a student from the regular school setting.
2. Procedural due process was not followed in this case.
3. R▓▓▓'s placement in the alternative program does not comport with the requirements or the process set forth in Title 14 of the Delaware Code.
4. At least two of the participants in the so-called December 13, 2004 hearing had prior knowledge and discussion about the case prior to the hearing. Therefore, they were not unbiased.
5. R▓▓▓ right to privacy was violated by school officials at Shue Middle School.
6. The alleged victim in this case committed violations of the student code against R▓▓▓ that were totally ignored.
7. R▓▓▓ punishment to date (limited home bound instruction) does not comport with the State of Delaware's mandatory attendance laws for children sixteen and under.
8. The hearing officer maintained that the so-called December 13, 2004 hearing was a step II hearing. However, step two procedures were not followed.

9. The punishment given to R███████ who is a student in good academic standing with no prior history of substantive violations of the student code is excessively harsh.
10. Placement in the alternative program will be detrimental to R███████ academic career.

It is for these reasons that I am herein requesting that an appeal hearing in this case be held with all deliberate speed and that R███████ be reinstated in Shue School (without classes with the alleged victim in this case) immediately.

I await your response.

Sincerely,

Jea P. Street
Executive Director

Pc: Christina Board of Education
    Mrs. Sarah W███████



| Administration Building | 83 East Main Street<br>Newark, DE 19711<br>(302) 454-2530 | FAX: (302) 454-4736<br>TDD Relay Service: (800) 232-5470<br>e-mail: wisej@christina.K12.de.us |
|---|---|---|

January 27, 2005

Sarah W▓▓▓
▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓

Dear Mrs. W▓▓▓

This is to confirm our meeting at my office on Wednesday, January 26, 2005, at which you appealed the District Level decision to alternatively place your son R▓▓▓ W▓▓▓ at the Compass School following his agreement to plead of guilty to assault of a fellow student at Shue-Medill Middle School. Ms. Sharon Denney was also present at the meeting.

First, I would like to again apologize for the erroneous information Dr. Countley provided you in her letter dated December 20, 2004. As we discussed, the District Discipline Committee's recommendation was for your son, R▓▓▓ W▓▓▓, to attend The Compass School, *with re-evaluation after his first quarter there*. It was not the Committee's recommendation that he automatically remain at Compass for the balance of the entire school year. Dr. Countley's reference to the school year understandably caused confusion, and that is both regrettable and unfortunate. However, it was not an attempt to circumvent the Committee's recommendation, or in any manner alter it.

Second, you acknowledge that your son punched another student at the Shue-Medill Middle School, causing a head injury that required stitches. You and your son have signed a Family Court agreement for him to plead guilty to criminal assault charges arising from this incident. Yet—despite his guilty plea— you are insisting that he be returned to the very school at which he committed the criminal act. As I understand it, you believe that your son should be returned to Shue-Medill because his initial 5-day suspension was extended an additional 5 days to allow for an Alternative Placement Meeting. You asserted that this extension was a violation of his due process rights. You also asserted that the injured student violated the dress code contained in the Student Code of Conduct. I was only able to conclude that you are asserting an alleged failure to strictly enforce the dress code on the date of the incident prohibits the District from enforcing any other component of the Student Code of Conduct. You are wrong.

Please review page 62 of the Christina School District Student Code of Conduct, under the topic "Suspensions." The Superintendent/Designee is authorized—and exercised the District's right— to extend R▓▓▓ initial suspension from 5 days to 10 days. R▓▓▓ was eligible to



Joseph Wise, Superintendent

The Christina School District is an equal opportunity employer and does not discriminate or deny services on the basis of race, color, religion, national origin, gender, disability or age.

make up missed assignments, and received Homebound Instruction because of that eligibility. As for the dress code issue: disparate treatment does not arise from a failure to notice a dress code violation. Although you disagree, there *is* a distinct difference between wearing inappropriate clothing and punching to the point of injury. If this entire case arose solely from your son wearing inappropriate clothing, I *would* agree that punishing him and not a similarly-garbed child could constitute disparate treatment. But that is not what happened here.

The following is a summary of the events:

- Reginald punched a child in the face and caused injury at the Shue-Medill Middle School. You do not deny this.
- Reginald was suspended from school for an initial period of 5 days. You do not deny this.
- The suspension was extended for an additional 5 days as authorized under the Student Code of Conduct (see page 62). Reginald began to receive Homebound Services.
- Reginald was entitled to and did receive a Building Level meeting. You do not deny attending this meeting. At this meeting it was recommended that Reginald be alternatively placed at a site other than the Shue-Medill Middle School.
- Reginald was entitled to and did receive a District Level appeal/meeting. You do not deny attending this meeting. At that meeting it was unanimously recommended that Reginald be alternatively placed at the Compass School.
- You agreed to and scheduled a visit to the Compass School, but subsequently cancelled.
- The District continued Homebound Services until you and I could meet yesterday, so that I could hear your concerns as the Superintendent's Designee under *Appeals Process for Suspension* (see page 10 of the Student Code of Conduct).

**After reviewing all of the records, and hearing the arguments raised at the January 26, 2005 meeting, the Recommendation for Alternative Placement at the Compass School is hereby affirmed.**

R▇▇▇ Homebound Services will end tomorrow. In accordance with the Appeal Process for Suspensions and Grievance Procedures of the Student Code of Conduct, this decision is final, with no additional right of administrative appeal (See pages 10 and 12 of the Student Code of Conduct).

Your refusal to visit the Compass School— and your rejection of any option other than the return of R▇▇▇ to the Shue-Medill Middle School—is profoundly troubling. It is important that R▇▇▇ receive an education. It is also important that you and this District work together to ensure he receives the right messages from the adults entrusted with his care. Please contact Ms. Denney (454-2535) so that she may make the necessary arrangements to get R▇▇▇ back in school.

Sincerely,

David Sundstrom
Assistant Superintendent/Chief of Staff

DMS:jsg

B85



| | | |
|---|---|---|
| **Administration Building** | 83 East Main Street<br>Newark, DE 19711<br>(302) 454-2571 | FAX: (302) 454-4736<br>TDD Relay Service: (800) 232-5470<br>e-mail: wisej1@christina.K12.de.us |

February 1, 2005

Mr. Jea Street
Executive Director
Hilltop Lutheran Neighborhood Center
1018 West 6th Street
Wilmington, DE 19805

RE: Shue-Medill Student; Due Process

Dear Mr. Street:

You had inquired as to the hearing process involving a student at Shue-Medill Middle School. As you recall, the student—whom you represented at the initial building-level hearing—has executed a plea agreement (also signed by his mother), admitting guilt for a criminal assault at the Shue-Medill Middle School that resulted in a head wound to another student while that student was in class. Here's what our records show:

1. On December 2, 2004 the Building Level Conference met to evaluate the incident and following review of all the evidence submitted a recommendation that the student be alternatively placed at another school following his suspension. His initial 5-day suspension had been extended an additional 5 days in accordance with the Christina School District Student Code of Conduct (see page 62 of the Code). During his suspension, the student began to receive Homebound Services.

2. Procedural due process was followed at every step. The District-level hearing was held on December 13, 2004, and the decision was unanimous: the student was recommended for alternative placement at the Compass School for a minimum of one marking period. The student's mother sought review of the decision in accordance with the Student Code of Conduct, and a meeting was scheduled at District office with me as the Superintendent's Designee (see Student Code of Conduct for reference to this designation) on January 24, 2005. Due to inclement weather, the parent had previously agreed to an alternative date of January 26, 2005. That meeting occurred, and the decision was upheld (see attached copy of letter to your client).

3. Title 14 of the Delaware Code to which your letter referred applies to students who are *expelled*. The student you represented was not subject to expulsion procedures, and was referred for Alternative Placement in accordance with the Student Code of Conduct.

4. In some cases, administrators do contact the Alternative Program Transition Coordinator asking for guidance in completing the alternative placement packet. In other instances, administrators ask if the incident warrants referral for alternative placement. As I understand it, in this situation,

**Joseph Wise, Superintendent**                                                                                          B86

The Christina School District is an equal opportunity employer and does not discriminate or deny services on the basis of race, color, religion, national origin, gender, disability or age.

Mr. Jae Street
Page 2
February 1, 2005

5. Dr. Moody contacted Ms. Denney asking for assistance in completing the paperwork. The parties confirmed that the student's placement in an alternative setting was not discussed at any time in that—or any other— communication. More importantly, please recall that it is the responsibility of the Transition Coordinator to review the alternative packets to make sure that the packet is complete.

6. Part of the school's investigation did include a review of a hallway videotape in which your client appeared. If you are asserting that the student had a reasonable expectation of privacy in a public hallway of a public

7. School building—and that this expectation was violated by his unwitting conduct being picked up by a video camera—you are mistaken. Please review the matter with counsel.

8. Placement meetings for the other two boys involved in the incident, both indicated that the victim's words were not directed at R▓▓▓ and that their shoulder to shoulder contact was not a deliberate act. No acts on the part of the "alleged" victim were ignored—by this District, or by law enforcement. The conduct of *all* involved was thoroughly examined.

9. Homebound Services were provided to R▓▓▓▓ because of his extended absence from school; his extended absence from school was the direct result of his assault on another student (his suspension and extension of suspension), and his mother's refusal to allow him to register at the recommended alternative school. However, efforts were made to place the student at the Compass School. For example, the student's mother indicated that she was only available on Thursdays. The Transition Coordinator attempted to schedule an intake meeting on January 6. The student's mother stated that she could not make this meeting. A second meeting was then scheduled at the Compass School for an intake to take place on January 13, 2005. Shortly before this scheduled event, the student's mother called and cancelled.

10. The reason for the schools referral to alternative placement. The student was asked to give his account of the incident that occurred at Shue Middle School. The student's mother was asked if she had any additional comments. You too were invited to add comments. As you recall, the student's mother, the student and you were then asked to leave the Boardroom. At that time, Dr. Countley, Dr. Moody and Mrs. Denney discussed what they believed would be an appropriate placement for the student—included in this discussion was analysis of what would be in the best interest of the student. Because the student's mother brought character witnesses to speak on the student's behalf, Dr. Countley invited them into the Board Room and allowed them to speak. And they did. Frankly, I am puzzled by your assertion that procedures weren't followed, and would appreciate talking with you directly on this issue. If there's something being overlooked, I genuinely want to address it.

11. I regrettably have to disagree with you on the penalty in this case as being excessively harsh. The totality of the circumstances compelled both the suspension and alternative placement.

12. Frankly, your assertion that the student's academic career will be jeopardized by his alternative placement is puzzling at best; he acknowledges having punched another student to the point of a head injury at the Shue-Medill Middle School, has executed a plea agreement in the criminal case arising from the incident, and is now recommended to have his educational services met at the Compass School for a minimum of one grading period. Do you really believe we would be

B87

Mr. Jae Street
Page 3
February 1, 2005

conveying the right message to him—and to the students who witnessed his attack—by immediately returning him to the very environment in which his actions occurred?

I think it's important that we agree on one common goal: to do what is in the best interest of this student—under the circumstances his voluntary actions created. To do otherwise would fail him—and the other kids in this District.

Please give me a call if you'd like to discuss this or to set up a meeting. I can be reached directly at 302.454.2535 or by cell evenings and weekends at 302.528.3341. I look forward to speaking with you.

Sincerely,

David M. Sundstrom
Chief of Staff

DMS:jg
cc: Sarah W̶i̶l̶l̶i̶a̶m̶s̶

B88