

# INDIVIDUAL STUDENT GOALS

To promote student success, individual goals are developed for each student assigned to an alternative educational experience. It is expected that each student will successfully achieve his/her goals while in the alternative school. Strong consideration will be given at each evaluation period to determine if these expectations have been mastered and demonstrated consistently by the student.

_____ has been assigned to an alternative education setting at The _____ beginning _____. While at _____, _____ will meet the following objectives:

**Attendance:** The student will attend _____ regularly.

The student will not have any unexcused absences. A parent/guardian *must* notify the alternative school administration *immediately* of reasons for student excused absences. Excuses for absences must be submitted within two school days after the absence. Excused absences include:

- Illness of student, if necessary, attested by a physician's certificate
- Contagious disease within the home of a pupil
- Death in the immediate family or of a close friend
- Legal business (documentation is necessary)
- Observance of a religious holiday
- Remedial health treatment
- Emergency situations as determined by the school principal
- Pre-arranged absence with administrative approval

**Behavior:** The student will have *NO* suspensions while at _____.

The student will consistently demonstrate:

- Compliance with school rules
- Positive response to re-direction
- Appropriate classroom behavior
- Positive student-to-student interaction
- Positive student-to-teacher interaction
- Responsiveness to counseling

**Counseling:** The student will participate in counseling sessions that focus on:

- ☐ Decision making
- ☐ Problem solving
- ☐ Pro-social behaviors
- ☐ Compliance with rules
- ☐ Anger management
- ☐ Self control/self discipline

**Academics:** The student will demonstrate consistent academic achievement while at _____.

This includes completing all assignments and passing all courses.

Student Signature _____  Date _____
Parent Signature _____  Date _____
District Administrator _____  Date _____
Alternative Program Administrator _____  Date _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

R.W., A Minor, individually, by and through
his parent and natural guardian SARAH W████
and SARAH W████ individually,
    PLAINTIFFS,

V.

THE DELAWARE DEPARTMENT OF
EDUCATION; et. al.

C.A. NO. 05-CV-00662

## AFFIDAVIT

STATE OF _Delaware_ :
COUNTY OF _New Castle_ : SS.

**BE IT REMEMBERED** that on this _19_ day of _October_, 2005, personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, Dr. Gina Moody, who, being duly sworn according to law did say that:

1. She is the Assistant Principal at Shue-Medill Middle school;

2. After the initial incident involving R.W. and Jeffrey L. on November 8, 2004, Mr. Carter investigated the incident. During the investigation, R.W. was given an opportunity to tell his side of the story. As a result of his investigation, Mr. Carter concluded that R.W. committed an assault on Jeffrey L. Consequently, I suspended R.W. for five days. I explained the suspension to R.W. and asked him to sign the suspension form, noting on the form that he had been given an opportunity to explain his side of the story.

3. I extended R.W.'s suspension for an additional five days after learning that the police had found probable cause to believe that R.W. committed an assault. I also scheduled a

B139

conference with R.W.'s mother regarding the assault and the possible consequences of an alternative placement or expulsion for R.W. I met with Sarah W████ on November 19, 2004 regarding the extended suspension, and handed the extension of suspension notice to her.

4. Sarah W████ attended the building level conference on December 2, 2004. At the conference, she was permitted to state her position and opinion regarding the potential sanctions of alternative placement and/or expulsion. She also stated that R.W. was remorseful and she sought a sanction less severe than an alternative placement, offering to have Plaintiff write an essay and do community service. After hearing reviewing the case and hearing Plaintiff's position and arguments, however, the School District employees in attendance agreed that R.W.'s case should be referred to the district office with a recommendation that he be placed in an alternative program. After the School District representatives met to come up with a recommendation, we reconvened the meeting with Ms. W████ to explain the decision. Defendant Freeman explained the recommendation for alternative placement to Ms. W████ and gave her a copy of the Summary of Building Level Conference form that I completed.

5. At the District Level meeting held on December 13, 2004, Dr. Countley was the superintendent's designee. Dr. Sharon Denney also attended the December 13, 2004 hearing. She attended in her capacity as the Alternative Programs Transition Coordinator.

6. At the December 13, 2004, hearing, I presented the evidence gathered by the school at the Building Level conference, and relayed the recommendation from the Building Level conference. At the meeting Ms. W████, R.W., and Jea Street, an advocate for R.W. had an opportunity to present R.W.'s side of the story and arguments associated therewith. They were also permitted to and present character witnesses on R.W.'s behalf.

7. After Dr. Countley heard all of the testimony and reviewed the information presented, she met with Dr. Denney and me to discuss R.W.'s case. Although the placement decision rested with Dr. Countley and Dr. Denney, we all agreed that R.W.'s conduct was sufficiently violent and serious enough to warrant an immediate alternative placement at the Compass School. After one marking period, his placement was to be reviewed.

8. After the meeting, Dr. Countley explained the decision to Ms. W███.

9. On November 8, 2004, at the request of Mr. Carter, I located a copy of the Code of Conduct for Ms. W███ to review. A copy of the Code was provided to Ms. W███, and she spent approximately 45 minutes reviewing the Code in the lunch room at the school.

10. All students, including R.W., were given a copy of the School District's Student Code of Conduct at the beginning of the school year. During the first two days of the school year, the Code is specifically reviewed with middle school students, and those students are instructed to take the Code home and share it with their parents. The Code is also available on the School District's website, and was available on the School District's website at all times relevant to the Complaint in this matter.

*Gina A. Moody, Ed. D.*   DEOC 128250

SWORN AND SUBSCRIBED before me this 19th, of October, 2005.

NOTARY PUBLIC

OFFICIAL SEAL
SANDRA RODGERS
NOTARY PUBLIC - DELAWARE
NEW CASTLE COUNTY
My Commission Expires March 7, 2006

B141

-3-

DOCS_DE 116794v2

IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

R.W., A Minor, individually, by and through :
his parent and natural guardian SARAH WILLIAMS :
and SARAH WILLIAMS, individually, :
            PLAINTIFFS, :    C.A. NO. 05-CV-00662
:
V. :
:
THE DELAWARE DEPARTMENT OF :
EDUCATION; *et. al.* :

**AFFIDAVIT**

STATE OF DELAWARE   :
                           : SS.
COUNTY OF NEW CASTLE  :



BE IT REMEMBERED that on this 19th day of October, 2005, personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, Dr. Sharon L. Denney, who, being duly sworn according to law did say that:

1.    From August 1, 2004 through April 1, 2005, I was the Alternative Programs Transition Coordinator for the Christina School District. On April 1, 2005, my title changed to Managing Director of Operations. I acted as the Alternative Programs Transition Coordinator, however, through August 1, 2005;

2.    I attended the December 13, 2004, District Level Alternative Placement Meeting for R.W. The following individuals also attended the meeting: Dr. Moody, Dr. Countley, Jea Street, R.W., Sarah W███████, Coach Vincent Coleman, and Coach Dave Carter. Dr. Countley was the superintendent's designee at the meeting. I appeared in my capacity as the Alternative Programs Transition Coordinator. Dr. Moody appeared in her capacity as the Assistant Principal

B142

-2-

at Shue-Medill Middle School.

3. Dr. Moody presented the evidence gathered by the school at the Building Level conference, and the recommendation from the Building Level conference. I reviewed the materials provided to me, as set forth in the Alternative Placement Checklist Coversheet dated December 8, 2004, and heard the comments and testimony of R.W.; his mother; Jea Street, who acted as an advocate for Plaintiff; and Mr. Coleman and Mr. Carter, who appeared as character witnesses.

4. After reviewing the file and hearing the testimony and arguments presented at the meeting, I met with Defendant Countley and Dr. Moody to discuss R.W.'s case. We all agreed that R.W.'s conduct was sufficiently violent and serious to warrant an immediate alternative placement at the Compass School. I recommended that R.W. be placed at the Compass School. After one marking period, his placement was to be reviewed.

5. After meeting with Defendant Countley, and Dr. Moody, the three of us met with Ms. W█████, Mr. Street and R.W. and Dr. Countley explained the alternative placement decision to Mother.

6. All individuals at the December 13, 2005 meeting were given an opportunity to question all parties present.

7. On January 26, 2005, I attended the review meeting held by Defendant Sundstrom, Assistant Superintendent, and the Superintendent's designee for purposes of the meeting. Ms. W█████ also attended the meeting.

8. At the January 26, 2005 meeting, all circumstances related to the November 8, 2004 incident were reviewed, including the propriety of the alternative placement. After hearing all of the circumstances and permitting Mother to state her side of the story and present

potentially mitigating circumstances, Defendant Sundstrom affirmed the alternative placement decision.

9. On February 2, 2005, I attended the intake meeting with R.W. and his mother, Sarah W▮ at the Compass School. Lisa Cave (principal at the Compass School), and Nicole Randick (supervisor and Art Therapist at the Compass School) were also present at the meeting;

10. At the intake meeting, Mrs. Cave and Ms. Randick explained the program, went through the paperwork, and gave R.W. and his mother a tour of the school. They also introduced R.W. and his mother to several staff members, including teachers and other counselors, and answered all of Ms. W▮ questions.

11. During the intake meeting, I explained the District goal sheet to R.W. and his mother. I also explained the goals and expectations that would be considered when the District reviewed R.W.'s placement at the Compass School at the end of the third marking period.

12. During the intake meeting, Mother questioned Ms. Randick regarding a notation on the placement form which indicated that R.W. had been expelled. When questioned by Ms. Randick, I acknowledged the error on the form. Ms. Randick made a correction on the form, and signed and initialed it in front of Mother. The correction was made to indicate that R.W. was not expelled.

13. At the end of the meeting, Ms. W▮ refused to sign the paperwork to allow R.W. to begin attending the Compass School. She also handed Ms. Randick and me a letter.

14. On or about Monday, February 7, 2005, I received a call from Ms. Williams wherein she indicated that she would not allow R.W. to attend the Compass School.

*Sharon L. Denney*
Sharon L. Denney, Ed.D.

-3-

SWORN AND SUBSCRIBED before me this 19th, of October, 2005.

*Susan B Brennan*
NOTARY PUBLIC

[Notary Seal: SUSAN D. BRENNAN, MY COMMISSION EXPIRES JULY 1, 2009, NOTARY PUBLIC, STATE OF DELAWARE]

IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

R.W., A Minor, individually, by and through :
his parent and natural guardian SARAH WILLIAMS :
and SARAH WILLIAMS, individually, :
          PLAINTIFFS, : C.A. NO. 05-CV-00662
           :
        V. :
           :
THE DELAWARE DEPARTMENT OF :
EDUCATION; *et. al.* :

**AFFIDAVIT**

STATE OF Delaware : 
COUNTY OF New Castle : SS.



BE IT REMEMBERED that on this 20th day of October, 2005, personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, Dr. Sharon L. Denney, who, being duly sworn according to law did say that:

1. From August 1, 2004 through April 1, 2005, I was the Alternative Programs Transition Coordinator for the Christina School District. On April 1, 2005, my title changed to Managing Director of Operations. I acted as the Alternative Programs Transition Coordinator, however, through August 1, 2005;

2. I am familiar with the alternative placement schools and programs that were available to students during the 2004/2005 school year.

3. The Compass School offers an academic program which is comparable to the program offered at the Shue-Medill middle school. Class sizes at the Compass School are typically smaller than the class sizes at Shue-Medill, which permits more individualized attention. Classes at the Compass School, like those at Shue-Medill, are taught by state certified

teachers. The curriculum at both Shue-Medill and the Compass School is the standard State of Delaware curriculum.

4. Subjects offered to students attending the Compass School include core subjects such as science, social studies, math and English. The Compass School also offers electives such as art, physical education, and health.

5. The Compass School also offers group and individual counseling for children with behavioral and other problems. The Compass School has three trained counselors and students are required to participate in weekly counseling sessions. These counseling sessions are designed to address each student's particular needs.

6. To assist the students in meeting the goals and expectations of the school with respect to improvements and changes in behavior while in an alternative educational placement, students are required to sign a "behavior contract," setting forth individual student goals. Goals for students relate to attendance, behavior, academics and counseling.

                                                                     */s/ Sharon L. Denney*
                                                                     Sharon L. Denney, Ed.D.

**SWORN AND SUBSCRIBED** before me this 26th of October, 2005.

                                                           */s/ Susan D. Brennan*
                                                           NOTARY PUBLIC

[Notary Seal: SUSAN D. BRENNAN / MY COMMISSION EXPIRES JULY 1, 2009 / NOTARY PUBLIC / STATE OF DELAWARE]

IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

R.W., A Minor, individually, by and through :
his parent and natural guardian SARAH WILLIAMS :
and SARAH WILLIAMS, individually, :
            PLAINTIFFS, :    C.A. NO. 05-CV-00662
                    :
         V. :
                    :
THE DELAWARE DEPARTMENT OF :
EDUCATION; *et. al.* :

## AFFIDAVIT

STATE OF DELAWARE    :
                           : SS.
COUNTY OF NEW CASTLE :

**BE IT REMEMBERED** that on this 18th day of October, 2005, personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, David Sundstrom, who, being duly sworn according to law did say that:

1.    I am the Assistant Superintendent/Chief of Staff at the Christina School District;

2.    After the meeting of the Christina School District Board of Education on April 12, 2005, I met with Sarah W▮▮▮, and in the presence of Defendant W▮▮▮ and Defendant P▮▮▮ renewed an offer to provide a compromise placement for R.W. at the Kirk Middle School. This alternative offer had been previously relayed to Ms. W▮▮▮ through her advocate Jea Street.

3.    In our discussion on April 12, 2005, Ms. W▮▮▮ indicated a willingness to send R.W. to Kirk Middle School if transportation was provided and stated that the only reason she did not accept the compromise "in school" alternative placement at Kirk Middle School when it

B148

-2-

was first presented to her was because she did not believe that transportation would be provided by the District.

5.  The following morning—in an effort to get R.W. back into an educational setting as soon as possible—I immediately made arrangements with the District's Transportation Department for a bus to pick R.W. up and transport him to Kirk Middle School. Ms. W▮ however, continued to hold R.W. out of school.

6.  Ms. W▮ advised me on April 20, 2005 that she would not send R.W. to Kirk Middle School because the bus provided by the District was a "short bus." When I questioned the significance of the size of the bus provided to transport her son, Ms. W▮ responded that it was associated with "handicapped" children, and was therefore unacceptable.

In accordance with the laws of the State of Delaware, I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 18, 2005, at Wilmington, Delaware.

DAVID M. SUNDSTROM

SWORN AND SUBSCRIBED before me this 18th of October, 2005.

Carol A. Marth
NOTARY PUBLIC

B149