IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

R.W., A Minor, individually, by and through        :
his parent and natural guardian SARAH WILLIAMS     :
and SARAH WILLIAMS, individually,                  :
                    PLAINTIFFS,                     :
                                                    :
            V.                                      :
                                                    :
THE DELAWARE DEPARTMENT OF                          :
EDUCATION; VALERIE WOODRUFF;                        :
personally and in her official capacity as          :
the Secretary of Education for the State of         :
Delaware; THE STATE OF DELAWARE BOARD               :
OF EDUCATION; and JOSEPH PIKA, Ph.D.;               :
JEAN ALLEN; RICHARD M. FARMER, JR.;                 :
MARY GRAHAM, ESQ.; BARBARA RUTT;                    :          C.A. NO. 05-CV-00662
DENNIS SAVAGE; CLAIRBOARNE D.                       :
SMITH; ANNE CASE; VALERIE WOODRUFF;                 :
personally and in their official capacity as Members :
of the State Board of Education; and                :
THE CHRISTINA SCHOOL DISTRICT; JOSEPH J.            :
WISE, personally and in his official capacity as the :
Superintendent of the District; DAVID SUNSTROM,     :
personally and in his official capacity as the Assistant :
Superintendent of the District; SANDRA COUNTLEY     :
personally and in her official capacity; SHARON     :
DENNY, personally and in her official capacity;     :
FREEMAN WILLIAMS, personally and in his official    :
capacity; THE CHRISTINA SCHOOL DISTRICT  :
SCHOOL BOARD; BRENDA PHILLIPS;                      :
JAMES DURR; GEORGE EVANS, ESQUIRE;                  :
BEVERLY HOWELL; CONSTANCE MERLET                    :
JOHN MACKENZIE, CECELIA SCHERER; and                :
JOSEPH WISE; all personally and in their official   :
capacity as Members of the CHRISTINA                :
SCHOOL DISTRICT.                                    :
                    DEFENDANTS.                      :

**DEFENDANTS THE CHRISTINA SCHOOL DISTRICT BOARD OF EDUCATION,
JOSEPH J. WISE, DAVID SUNSTROM, SANDRA COUNTLEY, SHARON DENNY,
FREEMAN WILLIAMS, BRENDA PHILLIPS, JAMES DURR, GEORGE EVANS,
BEVERLY HOWELL, CONSTANCE MERLET, JOHN MACKENZIE AND CECILIA
SCHERER, BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

WHITE AND WILLIAMS LLP


 /s/ William L. Doerler
JOHN D. BALAGUER ((#2537)
WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: 302.467.4508
*Attorneys for The Christina School District*
*Board of Education, Joseph J. Wise, David*
*Sunstrom, Sandra Countley, Sharon Denny,*
*Freeman Williams, Brenda Phillips, James*
*Durr, George Evans, Beverly Howell,*
*Constance Merlet, John Mackenzie and Cecilia*
*Scherer*

Date:  January 17, 2006

2

Table of Contents

Page

TABLE OF AUTHORITIES ................................................................ ii

NATURE OF CASE AND STAGE OF PROCEEDINGS ................................... 1

SUMMARY OF ARGUMENT ............................................................ 2

STATEMENT OF FACTS ................................................................ 3

ARGUMENT .............................................................................. 10

I. STANDARD FOR MOTIONS TO DISMISS ...................................... 10

II. THE CHRISTINA SCHOOL DISTRICT DEFENDANTS ARE ENTITLED TO
    ABSOLUTE IMMUNITY .......................................................... 11

III. THE CHRISTINA SCHOOL DISTRICT DEFENDANTS ARE ENTITLED TO
     QUALIFIED IMMUNITY ........................................................ 14

IV. PLAINTIFF'S COMPLAINT FAILS TO STATE A RACE DISCRIMINATION
    CLAIM UNDER EITHER THE EQUAL PROTECTION CLAUSE OR TITLE VI. 18

V. PLAINTIFF FAILED TO STATE DUE PROCESS CLAIM UPON WHICH RELIEF
   MAY BE GRANTED BECAUSE TRANSFERRING A STUDENT FROM
   REGULAR CLASSES TO AN ALTERNATIVE EDUCATION PLACEMENT FOR
   DISCIPLINARY REASONS DOES NOT IMPACT A PROTECTED PROPERTY
   INTEREST IMPLICATING DUE PROCESS CONCERNS ..................... 20

   A. THIS COURT SHOULD BE RELUCTANT TO BECOME INVOLVED IN
      SCHOOL DISCIPLINE CASES BECAUSE DISCIPLINARY DECISIONS ARE
      BETTER LEFT TO SCHOOL ADMINISTRATORS ........................... 20

   B. PLAINTIFF'S TRANSFER DID NOT IMPACT A PROTECTED PROPERTY
      INTEREST IMPLICATING DUE PROCESS CONCERNS ................... 21

VI. EVEN IF PLAINTIFF'S COMPLAINT STATES A DUE PROCESS CLAIM, THE
    COMPLAINT ALSO ESTABLISHES THAT PLAINTIFF RECEIVED ALL THE
    PROCESS THAT WAS DUE ...................................................... 24

VII. THE COMPLAINT SHOULD BE DISMISSED AS TO DEFENDANTS WISE
     AND THE SCHOOL DISTRICT BOARD MEMBERS AS THERE ARE NO
     FACTUAL ALLEGATIONS SUFFICIENT TO IMPLICATE THEM ........... 29

## TABLE OF AUTHORITIES

### CASES

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994)..................................................16

Anderson v. Creighton, 483 U.S. 635................................................................15

Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990)..................................19, 20

Betts v. Board of Education of the City of Chicago, 466 F.2d 629 (7th Cir. 1972)...27, 28, 29

Blake v. Town of Delaware City, 441 F. Supp. 1189 (D. Del. 1977)................................13

Board of Ed. of Rogers Arkansas v. McCluskey, 458 U.S. 966 (1982) ............................21

Bogan v. Scott- Harris, 523 U.S. 44 (1998)............................................11, 12, 13

Bradley v. United States, 299 F.3d 197 (3d Cir. 2002) ...............................18, 19

Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808 (3d Cir. 1990) ....................................................................10

Cunningham v. Becker, 96 F. Supp. 2d 369 (D. Del. 2000)..............................11

Daniels v. Delaware, 120 F. Supp. 2d 411 (D. Del. 2000) ..........................................15, 16

Davis v. Scherer, 468 U.S. 183 (1984) ...............................................................15

Egan v. Concini, 585 F. Supp. 801 (M.D. Pa. 1984) ........................................30

Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278 (5th Cir. 1993)...........................11

Flynn v.Terrebonne Parish School Brd., 2004 WL 2009277 (E.D. La.) ..........................23

Fuller v. Decatur Public Sch. Brd. of Ed. Sch. Dist. 61, 78 F. Supp. 2d 812 (D.C. Ill. 2000), aff'd, 251 F.3d 662 (7th Cir. 2001) ....................................................21

Good v. Dauphin County Soc. Serv. for Children and Youth, 891 F.2d 1087 (3d Cir. 1989)]........................................................................16

Goss v. Lopez, 95 S. Ct. 729 (1975).................................20, 21, 22, 23, 24, 25, 26, 27, 29

Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000)................................................16

Guzman v. Cranston, 812 F.2d 24 (1st Cir. 1987)......................................................29, 30

Hamilton v. Jamieson, 355 F. Supp. 290 (E.D. Pa. 1973) ................................................30

Harlow v. Fitzgerald, 457 U.S. 800 (1982).................................................................14, 17

Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82 (3rd Cir.
     1998) .........................................................................................................................17

Malley v. Briggs, 475 U.S. 335 (1986)..............................................................................16

Marvasi v. Shorty, 70 F.R.D. 14 (E.D. Pa. 1976) .............................................................30

Mathews v. Eldridge, 424 U.S. 319 (1976) .......................................................................25

McCarther v. Grady County, 437 F. Supp. 831 (W.D. Okla. 1977).................................30

McHugh v. Board of Education of Milford School District, 100 F. Supp. 2d 231
     (D. Del. 2000) ......................................................................................................12, 13

Mitchell v. Forsyth, 472 U.S. 511 (1985) ..........................................................................17

Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997) .............................11

Nevares v. San Marcos Consolidated Independent School District, 111 F.3d 25
     (11th Cir. 1997)..............................................................................................23, 24, 29

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994)...................10

Palmer v. Merluzzi, 868 F.2d 90 (3d Cir. 1989).........................................................25, 29

Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d
     1192 (3d Cir. 1993) cert. denied sub nom White Consol. Industries, Inc. v.
     Pension Ben. Guar. Corp. 510 US 1042 (1994) .......................................................10

Polk County v. Dodson, 454 U.S. 312 (1989) ...................................................................29

Rakes v. Coleman, 318 F. Supp. 181 (E.D. Va. 1970) ......................................................30

Rappa v. Hollins, 991 F. Supp. 367 (D.Del. 1997) aff'd, 178 F.3d 1280 (3d Cir.
     1999) .........................................................................................................................15

Ringer v. Fallis, 848 F. Supp. 519 (D. Del. 1994) aff'd, 77 F.3d 463 (3rd Cir.
     1996) .........................................................................................................................16

Rizzo v. Goode, 423 U.S. 362 (1976).................................................................................20

Robinson v. Oak Park and River Forest High School, 571 N.E.2d 931 (Ill. Ct.
      App. 1991) ...........................................................................................................21

In re: Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280 (3d
      Cir. 1999) ............................................................................................................10

Siegert v. Gilley, 500 U.S. 226 (1991) ............................................................................15

Stafford Municipal School District v. L.P., 64 S.W.3d 559 (Tx. Ct. App. 2001) .............23

Tinker v. Des Moines Independent Community School Dist., 89 S. Ct. 733 (1969) ........20

United States ex. rel. Tyrell v. Speaker, 471 F.2d 1197 (3d Cir. 1973) ...........................30

Via v. Taylor, 224 F. Supp. 2d 753 (D. Del. 2002) ..........................................................16

Whittington v. Vaughn, 289 F. Supp. 2d 621 (E.D. Pa. 2003) .........................................30

Wood v. Strickland, 420 U.S. 308 (1975).................................................................14, 21

Youngblood v. Deweese, 352 F.3d 836 (3rd Cir. 2003)..............................................12, 13

## STATUTES

14 *Del. C.* § 202 ...........................................................................................................22

14 *Del. C.* § 1046 ..........................................................................................................12

14 *Del. C.* § 4112(b) .......................................................................................................4

42 U.S.C. § 1983.......................................................................................1, 2, 14, 19, 31

42 U.S.C. § 1988(b).......................................................................................................32

U.S. Const. Amend. XIV ...........................................................................................1, 19

## OTHER

68 Am.Jur.2d (Schools) § 244 .......................................................................................23

5A Wright v. Miller, *Federal Practice and Procedure:  Civil 2d § 1357* ........................10

## NATURE OF CASE AND STAGE OF PROCEEDINGS

Plaintiff R.W. ("Plaintiff") was involved in an altercation with Jeffrey L. at the Shue-Medill Middle School on November 8, 2004. The altercation consisted primarily of Plaintiff punching Jeffrey L. in the face, causing severe injury to the area around his eye. Plaintiff was subsequently arrested, and he pled guilty to 3rd degree assault in Family Court.

As a result of Plaintiff's assault on Jeffrey L., Plaintiff was given an alternative school placement. Plaintiff and his mother, Sarah Williams (Mother), contend that the Moving Defendants,[1] along with the State Board of Education and its members, violated Plaintiff's Due Process, and Equal Protection rights, as guaranteed by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the 14th Amendment of the United States Constitution. Mother filed suit on behalf of Plaintiff and herself on or about September 12, 2005.

Plaintiffs' filed a motion for a preliminary injunction, which the Court denied at a hearing held on November 10, 2005. Plaintiffs have filed a notice of appeal in the Third Circuit related to the Court's decision on their motion for a preliminary injunction.

The State Defendants have filed a Motion to Dismiss and brief in support of their motion. Plaintiffs have not yet responded to the State Defendants' motion.

Moving Defendants have filed a motion to dismiss. This is Moving Defendant's Opening Brief in Support of their motion.

---

[1] The moving defendants are identified in the caption of this brief and will collectively referred to herein as "Moving Defendants."

## SUMMARY OF ARGUMENT

1.     Moving Defendants are entitled to legislative and/or quasi-judicial immunity.  To the extent that they are not, they are entitled to qualified immunity because even if Plaintiff's rights were violated, reasonable school officials would not have believed that Plaintiff's due process rights were violated and to the extent that Plaintiff stated an equal protection claim and identified similarly situated students in a nonprotected class, officials could reasonably disagree with respect to whether Plaintiff was similarly situated with the other students involved in the incident.

2.     Plaintiff's Complaint fails to state an Equal Protection and Title VI claim for race discrimination as he failed to identify similarly situated individuals in a non-protected class.

3.     Plaintiff's Complaint fails to state a Due Process claim because school placement decisions do not invoke the protections of the Due Process Clause.  Even if they did, the Complaint establishes that Plaintiff received all of the process to which he was due.

4.     Plaintiff's Complaint against Defendant Wise and the District School Board members should be dismissed as there are no factual allegations sufficient to implicate their direct involvement and claims alleging supervisory liability are not permitted under 42 U.S.C. § 1983.  In addition, the Complaint's allegations of conspiracy with respect to these individuals is insufficient as there are no specific factual allegations supporting the claims in the Complaint.

2

## STATEMENT OF FACTS[2]

On November 8, 2004, Plaintiff was a student at Shue-Medill Middle School, a school within the Christina School District. On that date, Plaintiff, Kevin K., and Nick M. were involved in an altercation with Jeffrey L. The problem started in homeroom, when Nick M. stepped on chains hanging from Jeffrey L.'s pants, causing them to rip.[3] After having his pants ripped, Jeffrey L. tried to get to his seat. On the way to his seat, Jeffrey L. bumped into Plaintiff, and Plaintiff shoved him.[4]

The boys subsequently left homeroom, and Plaintiff contends that Jeffrey L. threatened Kevin K., Nick M. and himself by placing a "death wish" on them. Plaintiff then followed Jeffrey L. into Jeffrey L.'s next class and punched him under his right eye.[5] Plaintiff's punch cased Jeffrey L.'s eye to bleed, and required him to go to the nurse and receive medical attention.[6]

Plaintiff's hand was also bleeding as a result of his having punched Jeffrey L. Defendant Moody sent Plaintiff to meet with Mr. Carter, a school administrator, immediately following the incident. Mr. Carter, after ensuring that Plaintiff received treatment for his bleeding hand, spoke with Plaintiff and Mother about the incident.[7] After hearing Plaintiff's side of the story and speaking with Mother about the incident,

---

[2] Unless otherwise noted, the statement of facts is based upon the allegations in Plaintiffs' complaint.

[3] Exh. 1 (Cmplt. ¶ 23).

[4] Cmplt. ¶ 23.

[5] Cmplt. ¶ 25-26.

[6] Cmplt. ¶ 26-27.

[7] Cmplt. ¶ 30.

3

the school district concluded that Plaintiff had assaulted[8] Jeffrey L. and, therefore, suspended Plaintiff from school for a period of 5 days.[9]  The notice of suspension form, which Plaintiff signed, indicated that he had "been given an opportunity to tell [his] side of the story."[10]  The procedures for appealing the suspension were spelled out on the form.[11]

Dr. Moody, consistent with the requirements of 14 *Del. C.* § 4112(b), notified the police that an assault had occurred.[12]  As a result of their investigation, the police charged Plaintiff with Assault in the 3rd degree.[13]

When Plaintiff returned to school on November 19, 2004, he was informed that his suspension had been extended by Defendant Denney, for an additional five day period.[14]  Mother received written notice of the extension of suspension on November 19, 2004 and met with Defendant Moody and Mr. Carter to discuss the suspension the same

---

[8] Plaintiff's assault on Jeffrey L. was a Level III offense under the terms of the Code of Conduct (COC).  Exh. 2 (COC, at 44).  The notice of suspension form is part of the record in this case as it was admitted as an exhibit at the preliminary injunction hearing.  *See* Exh. 3 (Hrg. Tr. at 23-24).  The notice, moreover, is an integral to the Complaint.  Inclusion of documents which are integral to the Complaint, or documents which are part of the record in the case, does not convert the motion to dismiss to a motion for summary judgment.  *See* Section I, *supra.*

[9] Cmplt. ¶ 30; Exh. 4 (Notice of Suspension dated Nov. 8, 2005).

[10] Exh. 4 (notice of suspension).

[11] Exh 4 (notice of suspension).

[12] *See* Cmplt. ¶ 34 (indicating that R.W. was charged with Assault in the third degree).

[13] Cmplt. ¶ 34;  *See* Exh. 5 (plea agreement).

[14] Cmplt. ¶¶ 32-33.  *See* Exh. 2 (COC at p. 62) (indicating that the Superintendent's designee may authorize suspensions of up to 10 days).  State law required the school district to extend Plaintiff's initial suspension period because Plaintiff could not return to school until a parent conference was held to review Plaintiff's educational placement.  14 *Del. C.* § 4112(d) (requiring school officials to immediately refer students for alternative placement when the police find probable cause to believe that a student committed a crime, and immediate suspension of the student until a parent conference can beheld to review the student's educational placement); Exh. 2 (COC at 47, identifying the state statutes which require schools to notify the police when certain offenses occur).

4

day.[15]  The Extension of Suspension form advised Mother that Plaintiff had been involved in an offense which will result in either an alternative placement or expulsion.[16] The form also provided Plaintiffs with notice that Plaintiff was scheduled for an alternative placement meeting, and provided the dates and times for two meetings.[17]

The first meeting, a "building level conference," was scheduled for December 2, 2004, and went forward as scheduled.[18]  Mother attended the conference and was given an opportunity to present Plaintiff's side of the story for a second time.[19]  Defendant Freeman and Dr. Moody also attended the conference, as did Mr. Carter and Ms. Sley, a school guidance counselor.[20]  At the meeting, Mother argued that the school district should be focusing on the conduct of Jeffrey L., and not her son, because Jeffrey L. had not complied with the school's dress code.[21]  Mother also argued that alternative placement was not appropriate because two teachers in Plaintiff's homeroom class, rather than monitoring the classroom, were talking in the hallway.[22]  Mother also stated that Plaintiff was in honors classes, involved in many activities, and that he was remorseful

---

[15] Cmplt. ¶¶ 32-33.  The Extension of Suspension Form to which Plaintiff refers in the Complaint is attached hereto as Exhibit 9.

[16] Cmplt. ¶ 33; Exh. 9 (Extension of Suspension Form).  *See also* Exh. 2 (COC, p. 44) (defining an assault, and detailing an illustrative list of consequences, which include suspension and, possibly, alternative placement or expulsion).  The sanctions noted are not all inclusive.  *Id.* at p. 47.  Where students commit acts which constitute a crime under Delaware law, they are subject to discipline up to and including expulsion.  *Id.*

[17] Cmplt. ¶ 33; Exh. 9 (Extension of Suspension Form).

[18] Cmplt. ¶ 35.

[19] Cmplt. ¶ 35-36.

[20] *See* Cmplt. ¶ 35.

[21] Cmplt. ¶ 36-37.

[22] Cmplt. ¶ 38.

5

for his part in the incident.[23]  After conferring with Mother and hearing her arguments on

Plaintiff's behalf, the recommendation of the school district representatives attending the

alternative placement meeting was that Plaintiff's case be referred to the district for

review for alternative placement.[24]  Following the building level conference, the school

district authorized "Homebound" instruction for Plaintiff on a temporary basis.[25]

On December 8, 2004, before the District Level alternative placement meeting

Plaintiff entered a plea agreement in the Family Court related to his Assault 3rd charge.[26]

Pursuant to the agreement, Plaintiff agreed to plead guilty to the Assault 3rd charge, and

the State agreed to Nolle Prosequi the remaining charges.[27]  Both Plaintiff and Mother

signed the plea agreement.[28]

On December 13, 2004, the District Level alternative placement meeting went

forward as scheduled.[29]  The following individuals attended the meeting:  Defendant

Countley, Defendant Denney, Dr. Moody, Plaintiff, Mother, Jea Street, Vincent Coleman,

and Dave Carter.[30]  At the meeting, school officials asked Plaintiff about the incident and

gave him a chance to explain his side of the story, which he did.[31]  In addition, Mother

and Plaintiff's witnesses provided character evidence for the school administrators to

---

[23] Cmplt. ¶ 41.

[24] Cmplt. ¶ 42 (quoting the recommendation section from the "Summary of Building Level Conference Form" prepared by the school district following the conference).  A copy of the quoted document is attached hereto as Exhibit 6.

[25] Cmplt. ¶ 52.

[26] Exh. 5 (Plea Agreement).

[27] Id.

[28] Id.

[29] Cmplt. ¶ 53.

[30] Cmplt. ¶ 53.  Mr. Street is the "advocate" referred to in ¶ 53 of the Complaint.  Mr. Coleman and Mr. Carter are the "witnesses on behalf of" Plaintiff which are referred to in ¶ 53.

[31] Cmplt. ¶ 55-56.

consider when making their alternative placement decision.[32]    After reviewing the information presented at the meeting, the school officials present agreed that Plaintiff's assault on Jeffrey L. was sufficiently serious and violent to warranted an immediate alternative placement for Plaintiff at the Compass School.[33]    Defendant Countley informed Mother of the decision at the conclusion of the meeting.[34]    Consistent with this decision, the School District referred Plaintiff to the Compass School on or about December 17, 2004.[35]

On January 4, 2005, Mr. Jea Street wrote to Defendant Wise attempting to appeal the alternative placement decision.[36]    The COC, however, does not provide appeal procedures for alternative placement decisions.[37]    Despite the fact that Mr. Street's letter attempted to appeal a decision which was not appealable, Defendant Sundstrom, acting as the superintendent's designee, met with Mother on January 26, 2005 and permitted her to appeal the alternative placement decision.[38]    Defendant Sundstrom, however, upheld the decision made at the alternative placement meeting.[39]    Defendant Sundstrom advised

---

[32] Cmplt. ¶ 56-57.

[33] See Cmplt. ¶ 58.

[34] Cmplt. ¶ 58.

[35] Cmplt. ¶ 66.  In the Complaint, Plaintiff contends that the referral form indicated that Plaintiff was expelled, not that he was being sent for an alternative placement.  The basis for this statement was a notation on the referral form to Compass. Cmplt. ¶ 66.  Plaintiff, however, knew prior to the meeting at Compass that the referral was for an alternative placement.  See Cmplt. ¶ 67-68.

[36] See Cmplt. ¶69.

[37] See Exh. 2 (COC, at p. 54).  The letter, moreover, sent more than three days after the alleged due process violation, did not comply with the school district's grievance procedures.  See Exh. 2 (COC, at p. 11-12) (setting forth procedures by which students and their parents may file grievances associated with being denied due process by school administrators).

[38] See Cmplt. ¶ 72; Exh. 7 (letter dated January 27, 2005).  Mr. Sundstrom's January 27, 2005 letter is referred to in ¶ 75 of Plaintiff's Complaint.

[39] Exh. 7 (letter dated January 27, 2005).

7

DOCS_DE 119989v.1

Mother of his decision, in writing, on January 27, 2005.[40]    Defendant Sundstrom's decision was the final decision of the School District.[41]

Since that time, Mother has refused to let Plaintiff attend school and she has rejected alternative proposals made by the school district to attempt to settle this matter.[42] In addition, she has attempted to appeal the school district's alternative placement decision to the State Board of Education.[43]

On June 16, 2005, the State Board issued a decision on Plaintiff's request for a review of the School District's alternative placement decision.  The State Board held that it did not have jurisdiction to hear Plaintiff's appeal because no decision on the issue had been made by the Board of the School District.

Plaintiffs filed a Complaint in this Court on or about September 12, 2005.  The Complaint contains three Counts.  The first Count alleges violations of the Civil Rights Act of 1964, Title VI, by discriminating against Plaintiff on the basis of his race by excluding him from participation in federally funded programs.  The discrimination alleged is based upon an allegation that Plaintiff received disparate discipline because Plaintiff, an African-American student, was given an alternative placement while Jeffrey L., a Caucasian student, was not disciplined at all.[44]

The second Count in the Complaint alleges that Moving Defendants deprived, and conspired to deprive, Plaintiff of his Due Process rights in violation of the Civil Rights

---

[40] *Id.*

[41] *Id.*

[42] *See* Cmplt. ¶¶ 81-82 (referring to settlement discussions).

[43] *See* Cmplt. ¶¶ 85-94 (detailing allegations against the State Board of Education and its members).

[44] Cmplt. ¶¶ 101-105.

8

Act of 1871, 42 U.S.C. § 1983.   More specifically, Plaintiff alleges that Moving Defendants, acting under color of state law and through policy custom or practice, intentionally, knowingly, recklessly and with deliberate indifference to Plaintiff's Due Process Rights, failed to instruct, train, supervise, control procedures and policies related to alternative placements, which has resulted in: a) a disparate number of minority students being placed in Alternative Placements; and b) deprivation of Plaintiff's right to an education, as guaranteed to him under the laws of the State of Delaware, the United States, and the United States Constitution.[45]   Plaintiff further alleges that Moving Defendants' race discrimination and Due Process violations have caused Plaintiff to be excluded from participation in, denied the benefits of, and subjected to discrimination in federally funded educational programs. [46]

The final Count in the Complaint alleges that Moving Defendants have Deprived Plaintiff of his right to Equal Protection and Due Process, as guaranteed by the Fourteen Amendment of the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.[47]

---

[45] Cmplt. ¶¶ 106-115.

[46] Cmplt. ¶ 116.

[47] Cmplt. ¶¶ 117-118.

**ARGUMENT**

I.    **STANDARD FOR MOTIONS TO DISMISS**

When deciding a Motion to Dismiss for failure to state a claim, the Court accepts all facts pleaded as true and draws all reasonable inferences in favor of the plaintiff.[48] The Court focuses on the pleadings to determine if the plaintiff has stated a claim upon which relief may be granted.[49]  The Court may also consider matters of public record, orders, and exhibits attached to the Complaint and items appearing in the record of the case.[50]  In addition, the Court may consider documents integral to or explicitly relied upon in the Complaint,[51] and undisputedly authentic documents which a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.[52]  To hold otherwise would permit a plaintiff with a legally deficient claim to survive a motion to dismiss simply by failing to attach a dispositive document on which he relied.[53]

In considering a motion to dismiss, the Court should accept as true the material

---

[48] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

[49] *Id.* at 1384-85.

[50] *Id.* at 1385 n.2 (citing 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d*, § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)).  Public records, for purposes of what a court can rely upon in a motion to dismiss, include criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993), *cert. denied sub nom, White Consol. Industries, Inc. v. Pension Ben. Guar. Corp.* 510 US 1042 (1994).  A document is not a public records solely because it is subject to disclosure pursuant to a FOIA request. *Id.*

[51] *In re: Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999).

[52] *Pension Benefit Guaranty Corp.*, 998 F.2d at 1196.

[53] *Id.*

10

allegations in the complaint and construe the allegations in favor of the Plaintiff.[54] The Court need not, however, credit a complaint's "bald assertions" or "legal conclusions."[55] "'Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"[56] The Court may dismiss a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.[57]

## II.  THE CHRISTINA SCHOOL DISTRICT DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY

All claims against the School District's Board Members are barred by absolute legislative immunity, and must be dismissed.

Local legislators are entitled to the same absolute immunity from liability for §1983 claims as are state legislators and members of Congress.[58] As a general matter, the Supreme Court has recognized that absolute immunity of legislators at all levels of government exists for their discretionary acts.[59] Specifically, the Court held that "the exercise of legislative discretion should not be inhibited by judicial interference or distorted by fear of personal liability."[60] The Court also recognized the threat of lawsuits and the time and energy it takes to defend them are particularly significant at the local level where there is greater concern that individuals may be deterred from exercising

---

[54] *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997).

[55] *Id.*

[56] *Id.* n.8 (quoting *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993)).

[57] *Cunningham v. Becker*, 96 F.Supp.2d 369, 372 (D. Del. 2000).

[58] *See Bogan v. Scott- Harris*, 523 U.S. 44, 49 (1998) (finding that rationale for absolute immunity applies equally to local, state and regional legislators, as well as Congress).

[59] *Id.* at 51.

[60] *Id.* at 52.

their discretion and serving as local government officers when there is a threat of liability in their individual capacity.[61]  This concern is especially applicable in the present case, since school board members in Delaware are not compensated for their service as a local official.[62]

This absolute immunity extends to all actions taken, "in the sphere of legitimate legislative activity," including but not limited to, voting on resolutions, preparing reports, and speaking before the legislative body.[63]  The acts of legislators not protected by absolute immunity are those acts that are only, "casually or incidentally related to legislative affairs," such as, preparing news letters for constituents or accepting bribes.[64] In *Youngblood*, for example, the Court found that the discretionary acts of two state representatives in allocating funding for internal office staffing was entitled to legislative immunity, even though no policy-making of the legislative body was involved.

In Delaware it is well-established that this same absolute legislative immunity applies to local school board members who are sued in their individual capacity.[65]  This Court specifically recognized that in Delaware school boards are, "vested with authority 'to determine and adopt rules and regulations for the general administration and supervision' of the public schools...[and] to appoint personnel and 'determine the educational policies... and prescribe rules and regulations for the conduct and

---

[61] *Id.*

[62] *See* 14 *Del. C.* § 1046.

[63] *Id.* at 54.  *See also*, *Youngblood v. Deweese*, 352 F.3d 836, 839-40 (3rd Cir. 2003) (internal citations omitted).

[64] *Id.* at 840 (internal citations omitted).

[65] *See McHugh v. Board of Education of Milford School District*, 100 F. Supp. 2d 231, 238 (D. Del. 2000).

12

management of the schools."[66]  Therefore, the acts of local school board members in determining the rules and regulations for the general administration and management of the schools are examples of the types of legislative activities that are protected by absolute legislative immunity.

There is no indication that the absolute immunity for school board members is any less extensive in scope than the general legislative immunity applied to state legislators or members of Congress.  Therefore, while voting for or against a particular policy may be the best example of a quintessentially legislative act, it is certainly not the only action protected from liability under §1983 by absolute immunity.  In fact the courts have specifically recognized that speaking before the legislative body is considered a legislative act protected by absolute immunity.[67]  As recognized by the Supreme Court, actions by legislators that involve the exercise of their discretionary authority, rather than simple mandatory or ministerial acts, are absolutely immune from liability.[68]  Similarly, as recognized by this Court, to the extent a plaintiffs' allegations do not demonstrate that the individual defendants exceeded the scope of their legislative authority, absolute immunity protects their actions and dismissal is appropriate.[69]

Plaintiff's Complaint alleges that the Christina School Board and its members violated his rights by failing to ensure that there were adequate due process procedures in place with respect to alternative placements.[70]  The decision of whether to adopt or implement district-wide policies is akin to a legislative decision, for which the Board and

---

[66] *Id.*

[67] *Youngblood*, 352 F.3d at 839-40.

[68] *See Bogan*, 523 U.S. at 51.

[69] *See Blake v. Town of Delaware City*, 441 F. Supp. 1189, 1201 (D. Del. 1977).

[70] *See* Cmplt. ¶ 18-19

13

its members are entitled to absolute immunity. Thus, the Board and its members are entitled to absolute immunity with respect to allegations in the Complaint that the School District failed to adopt procedures which were sufficient to provide due process.

Similarly, the School District Defendants are entitled to quasi-judicial immunity with respect to Plaintiff's alternative placement decision. The School District Defendants adopt the arguments made by the State Defendants in § IV of their Brief in Support of Their Motion to Dismiss.[71] The School District Defendants involved in the alternative placement decision are entitled to immunity for the reasons stated in § IV of the State Defendants' brief. This immunity, in turn, shields the remaining School District Defendants from liability.

III.    **THE CHRISTINA SCHOOL DISTRICT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

It is generally accepted that public officials, sued in their individual capacity, who perform discretionary functions are entitled to qualified immunity for damages claims brought pursuant to 42 U.S. C. §1983 when their conduct does not violate clearly established statutory or constitutional rights that a reasonable person should have known.[72] The defense of qualified immunity extends to local school board members.[73] Plaintiffs may only overcome a qualified immunity defense if they can show that the Defendants' actions were objectively unreasonable based on clearly established laws at the time of the conduct.[74]    The test for evaluating an official's right to qualified

---

[71] *See* Dkt. # 29.

[72] *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

[73] *Wood v. Strickland*, 420 U.S. 308, 321-322 (1975).

[74] *See Davis v. Scherer*, 468 U.S. 183, 197 (1984). *See also Rappa v. Hollins*, 991 F. Supp. 367, 371 (D.Del. 1997) *aff'd*, 178 F.3d 1280 (3d Cir. 1999) (plaintiff has burden of proving the existence of a clearly established constitutional right).