immunity involves a three-part inquiry: "(1) whether the allegations state a claim for the violation of rights secured by the constitution, (2) whether the rights and laws at issue are clearly established; and (3) whether a reasonably competent official would have known that his conduct was unlawful, in light of clearly established law."[75]

The determination of whether the law is clearly established at the time of the alleged conduct and the determination of whether or not the official's conduct was reasonable in light of the established law are both questions of law for the Court.[76] The standard for determining whether or not the asserted constitutional right was "clearly established" is based on whether the right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[77] If reasonable people can disagree regarding the proper interpretation of the existing law at the time of the conduct, then the Defendants are entitled to immunity.[78] Moreover, the clearly established law must be specific to the facts in the present case, not simply a general statement of constitutional law, such as the general principle that employees may not be retaliated against for exercising their First Amendment Rights.[79]

While many cases focus only on whether the law was clearly established,[80] the decisions of this court and the Third Circuit make it clear that officials may be entitled to

---

[75] *Daniels v. Delaware*, 120 F.Supp.2d 411, 418 (D. Del. 2000) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

[76] *Rappa*, 991 F.Supp. at 371.

[77] *Id.* at 370 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 n7 (1987)).

[78] *Rappa*, 91 F. Supp at 370

[79] *Id.* at 374 n15 & 375-76 (finding defendants were entitled to qualified immunity despite significant Supreme Court precedent regarding First Amendment retaliation because it was not clear at the time that defamatory statements could constitute retaliation).

[80] *See, e.g., Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994) (quoting *Good*, but resolving qualified immunity on the "clearly established" factor).

qualified immunity even if the applicable law is clearly established:

> [T]he Third Circuit has concluded that "even where the officials clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles." [*Good v. Dauphin County Soc. Serv. for Children and Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989)]. This inquiry necessarily requires the court to examine the defendant's conduct and determine the "objective legal reasonableness" of the defendant's actions. *Gruenke* [*v. Seip*, 225 F.3d 290, 299 (3d Cir. 2000)] ("[A]n official will not be liable for allegedly unlawful conduct so long as his actions are objectively reasonable under current federal law.") "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the actions were lawful]; **but if officers of reasonable competence could disagree on this issue, immunity should be recognized**." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[81]

Questions involving qualified immunity involve more than an analysis of "the state of the law at the relevant time;" it also involves a determination of "the information available to the defendants."[82] This concept applies to Due Process questions as well. Although Due Process is a clearly established right, officials are entitled to qualified immunity if a reasonable person in defendant's position would not have believed he violated the plaintiff's rights.[83]

Qualified immunity is intended to protect government officials and the public from the expense of litigation, the diversion from government service and the deterrence

---

[81] *Via v. Taylor*, 224 F. Supp. 2d 753, 772 (D. Del. 2002) (emphasis added); *see also Daniels*, 120 F. Supp. 2d at 419.

[82] *Good*, 891 F.2d at 1092.

[83] *See Ringer v. Fallis*, 848 F. Supp. 519, 525-26 (D. Del. 1994) *aff'd*, 77 F.3d 463 (3rd Cir. 1996) (holding that the plaintiff's procedural due process rights were clearly established, but that defendant met his burden of establishing qualified immunity because a reasonable person in defendant's position would not have believed he violated those rights).

16

of potential public officials.[84]    Because qualified immunity is intended to shield government officials and the public from both liability and the costs of litigation, it should be decided at an early stage of the proceedings.[85]

   With respect to Plaintiff's Due Process claim, to the extent that school transfers implicate the Due Process Clause,[86] the facts set forth in the Complaint, which are detailed in the Statement of Facts section, establish that Plaintiff received notice and an opportunity to be heard prior to his suspension, and prior to his alternative placement.  In addition, the Complaint unequivocally establishes that Plaintiff had an opportunity to appeal his case regarding alternative placement, even though school procedures do not provide for such an appeal.  Even if Plaintiff's rights were somehow violated, the facts alleged in Plaintiff's complaint establish that a reasonable person in the School District Defendants' position would not have believed those rights were violated.  The School District Defendants are entitled to qualified immunity with respect to Plaintiff's Due Process claims.

   With respect to Plaintiff's Title VI claim based upon race discrimination, this allegation contends that the School District Defendants discriminated against Plaintiff because of the disparate discipline given to Plaintiff in reference to Jeffrey L., a white student, who receive no discipline at all.  Although Plaintiff contends that Jeffrey L. initiated the incident, Plaintiff's Complaint clearly establishes that Plaintiff and his friends started the incident when one of them ripped Jeffrey L.'s pants.  Moreover, the

---

[84] *Harlow,* 457 U.S. at 814; *Mitchell v. Forsyth*, 472 U.S. 511, 525-527 (1985); *Larsen v. Senate of the Commonwealth of Pennsylvania*, 154 F.3d 82, 87 (3rd Cir. 1998).

[85] *See, Harlow*, 457 U.S. at 816-18; *Mitchell*, 472 U.S. at 526; *Larsen*, 154 F.3d at 87.

[86] Defendants contend that school transfers do not implicate the Due Process Clause.  *See* Section V, *surpa.*

17

Complaint unequivocally establishes that Plaintiff was the aggressor, and was the only individual causing serious bodily harm as the result of an assault. On these facts, although Plaintiff's right to be free from racial discrimination was clearly established at the time of the incident, it is clear that Plaintiff and Jeffrey L. were not similarly situated. Even if they were, reasonably competent officials could disagree on this issue and, therefore, the School District officials are entitled to qualified immunity with respect to Plaintiff's Title VI claim.

To the extent that Plaintiff states an equal protection claim based upon disparate treatment,[87] Defendants are entitled to qualified immunity for the same reasons noted in the preceding paragraph with respect to Title VI: plaintiff failed to identify a similarly situated student.[88] Even if Plaintiff did, reasonably competent officials could disagree as to whether the students were similarly situated. Therefore, the School District defendants are entitled to qualified immunity with respect to Plaintiff's equal protection claim.

Even if Plaintiff's claims are otherwise valid, because the School District Defendants are entitled to qualified immunity with respect to all of Plaintiff's claims, the Court should dismiss Plaintiff's Complaint as to Moving Defendants.

IV.   **PLAINTIFF'S COMPLAINT FAILS TO STATE A RACE DISCRIMINATION CLAIM UNDER EITHER THE EQUAL PROTECTION CLAUSE OR TITLE VI**

The Equal Protection Clause of the Fourteenth Amendment prohibits a State from

---

[87] *See* Section IV, *supra* (establishing that plaintiff's Complaint fails to state an Equal Protection Claim.

[88] *See Bradley v. United States*, 299 F.3d 197 (3d Cir. 2002) (holding that in order to establish a discriminatory effect, the plaintiff had to establish that she was a member of a protected class and that she was treated differently than similarly situated individuals in an unprotected class).

18

denying to any person within its jurisdiction the equal protection of the laws.[89]  An equal protection claim arises when a person in a protected class claims that he was treated differently than similarly situated individuals in an unprotected class.[90]  To succeed on an equal protection claim under 42 U.S.C. § 1983, a plaintiff must prove the existence of purposeful discrimination.[91]

In this case, Plaintiff contends that the School District Defendants discriminated against him because of the disparate discipline given to Plaintiff in reference to Jeffrey L., a white student, who received no discipline at all.  Although Plaintiff contends that Jeffrey L. initiated the incident, Plaintiff's Complaint clearly establishes that Plaintiff and his friends started the incident when one of them ripped Jeffrey L.'s pants.  Moreover, the Complaint unequivocally establishes that Plaintiff was the aggressor, and was the only individual causing serious bodily harm as the result of an assault.  Because the Complaint unequivocally establishes that Plaintiff and Jeffrey L. were not similarly situated, Plaintiff's Equal Protection claim fails as a matter of law.  This same rationale establishes that Plaintiff has failed to state a claim for discrimination under Title VI.

To the extent that Plaintiff's Complaint otherwise states an Equal Protection claim, any claims based upon supervisory liability fail with respect to Defendants Wise, Phillips, Durr, Evans, Howell, Merlet, Mackenzie and Scherer.  Equal Protection claims based upon supervisory liability must allege affirmative conduct on the part of the supervisor that played a role in the discrimination.[92]  The supervisor's involvement can

---

[89] U.S. Const. Amend. XIV.

[90] *Bradley*, 299 F.3d at 206.

[91] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990).

[92] *Andrews*, 895 F.2d. at 1478 (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)).

19

be shown through allegations of personal involvement or actual knowledge and acquiescence.[93]    Plaintiff's complaint fails to state a claim based upon supervisory liability for the noted defendants as there are no facts alleged from which a jury can conclude that Defendants Wise, Phillips, Durr, Evans, Howell, Merlet, Mackenzie and Scherer had personal involvement in the alternative placement decision, or knowledge of and acquiescence in the decision.  To the extent that all of Plaintiff's equal protection claims are not dismissed, the Court should dismiss the equal protection claims against these individuals.

V.    **PLAINTIFF FAILED TO STATE A DUE PROCESS CLAIM UPON WHICH RELIEF MAY BE GRANTED BECAUSE TRANSFERRING A STUDENT FROM REGULAR CLASSES TO AN ALTERNATIVE EDUCATION PLACEMENT FOR DISCIPLINARY REASONS DOES NOT IMPACT A PROTECTED PROPERTY INTEREST IMPLICATING DUE PROCESS CONCERNS**

A.    <u>**This Court Should Be Reluctant to Become Involved in School Discipline Cases Because Disciplinary Decisions Are Better Left to School Administrators**</u>

As the Supreme Court of the United States has recognized, "discipline and order are essential if the educational function is to be performed."[94]  As such, courts should recognize and affirm the comprehensive authority of the States and school officials to prescribe and control conduct in their schools.[95]

School discipline, therefore, is an area which courts enter with great hesitation and reluctance.[96]  The role of federal courts in school disciplinary matters is limited.[97]  §

---

[93] *Id.*

[94] *Goss v. Lopez*, 95 S.Ct. 729, 738 (1975).

[95] *Tinker v. Des Moines Independent Community School Dist.*, 89 S.Ct. 733, 737 (1969).

[96] *Robinson v. Oak Park and River Forest High School*, 571 N.E.2d 931, 933 (Ill. Ct. App. 1991).

20

1983 actions do not involve federal courts re-litigating evidentiary questions arising in school disciplinary hearings or the proper construction of school regulations.[98]  Federal courts should not set aside decisions of school administrators even if the court views them as lacking a basis in wisdom or compassion.  *Id.*  The educational system relies on the discretion and judgment of school administrators and § 1983 actions are not a vehicle for federal courts to correct errors in discretion that do not amount to constitutional violations.[99]  In an educational environment, "[s]uspension is considered not only to be a necessary tool to maintain order, but a valuable educational device."[100]

Because transferring Plaintiff to an alternative school did not implicate a constitutionally protected property interest and educators are in a better position to mete out discipline in an educational environment, the Court should not permit Plaintiff to maintain a § 1983 action to attempt to second guess the discretion exercised by the School District's administrators.

B.      **Plaintiff's Transfer did not Impact A Protected Property Interest Implicating Due Process Concerns**

The core issue with respect to Plaintiff's due process claim is whether Plaintiff's placement in an alternative program violated the Due Process Clause.   A threshold inquiry related to this issue is whether Plaintiff's transfer impacts a protected property interest implicating due process concerns.  It does not.  Plaintiff, therefore, lacks standing to pursue his due process claim.   In addition, Plaintiff's claim fails to invoke the

---

[97] *Fuller v. Decatur Public Sch. Brd. of Ed. Sch. Dist. 61*, 78 F.Supp.2d 812, 821 (D.C. Ill. 2000), *aff'd*, 251 F.3d 662 (7th Cir. 2001).

[98] *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Board of Ed. of Rogers Arkansas v. McCluskey*, 458 U.S. 966, 970 (1982).

[99] *Id.*

[100] *Goss*, 95 S.Ct. at 738.

21

jurisdiction of the Court.   The Court, therefore, should deny Plaintiff's motion and dismiss Plaintiff's Due Process claims.

In *Goss*, the Court addressed the issue of whether students from Ohio who were temporarily suspended from public schools without a hearing either prior to the suspension or within a reasonable time thereof had been denied due process. Ohio's law, like Delaware's,[101] provides that children of a certain age are entitled to a free education.[102] Based upon State law providing children with a free public education, the Court concluded that the students' legitimate entitlement to a public education was a property interest protected by the Due Process Clause of the United States Constitution. Consequently, Ohio schools could not deprive their students of an education without adhering to the minimum procedures required by the Due Process Clause.[103]

When determining what process is due, courts look to the nature of the interest at stake to determine whether some type of a hearing is required prior to depriving someone of a property interest.[104]   In *Goss*, the Court determined that a suspension, i.e. a total exclusion from school, for more than a trivial period could not be imposed in complete disregard of the Due Process Clause.[105]   With respect to transfers to an alternative education placement setting, however, courts have routinely held that no protected property interest is implicated by such transfers.[106] In the absence of a protected property

---

[101] 14 *Del. C.* § 202(a).

[102] *See Goss*, 419 U.S. at 568.

[103] *Id.* at 572-74.

[104] *Id.* at 575-76.

[105] *Id.* at 576.

[106] *Nevares v. San Marcos Consolidated Independent School District*, 111 F.3d 25, 27 (11th Cir. 1997); *Flynn v.Terrebonne Parish School Brd.*, 2004 WL 2009277 at *4 (E.D. La.) (Exh. 8), *rearg. denied*, 348 F.Supp.2d 769 (E.D. La. 2004) (following *Nevares* and concluding that a

interest, Plaintiff's due process claim fails as a matter of law.[107]

The facts of *Nevares* are similar to the facts in this case. In *Nevares*, the school district received a police report indicating that Nevares had been detained by the police for an aggravated assault. The principal questioned Nevares about the incident, which occurred off of school property, but Nevares refused to give a statement. After confirming with the police that Nevares was being charged with aggravated assault, the principal decided to transfer Nevares to an alternative program.[108] The court held that while students have a protected property interest in a free education, which is created by State law, students do not have a protected interest in a particular program or attending a particular school.[109] Thus, Nevares' transfer to an alternative school for disciplinary reasons did not raise a constitutional claim under the Due Process Clause.[110]

The suspension at issue in *Goss* is distinguishable from the alternative placement decision made with respect to Nevares. Unlike the situation in *Goss*, which resulted in a total deprivation of education for more than a de minimus period, Nevares was not denied access to public education, even temporarily.[111] As the court noted:

> He was only to be transferred from one school program to another
> program with stricter discipline. This alternative program is maintained

---

student's transfer to a different school for disciplinary reasons was not equivalent to either a suspension or an expulsion and, therefore, the student's "property interest in receiving an education was not implicated by the transfer").

[107] *Nevares*, 111 F.3d at 27.

[108] *Nevares*, 111 F.3d at 26.

[109] *Id.* at 27.

[110] *Id.* at 27. *See Stafford Municipal School District v. L.P.*, 64 S.W.3d 559, 663 (Tx. Ct. App. 2001) (holding that transferring a student from regular classes to an alternative education placement for disciplinary reasons does not impact a protected property interest implicating due process concerns); 68 Am.Jur.2d (Schools) § 244 (indicating that students do not have an absolute right to attend a particular school or a property interest in where they receive their education).

[111] *Nevares*, 111 F.3d at 26.

23

by Texas schools for those students whose violations of the law or the school's code of conduct fall short of triggering suspension or expulsion, but who for reasons of safety and order must be removed from the regular classroom. . . . Not only does disorder interfere with learning school studies, it also defeats the charge to "inoculate the habits and manners of civility."[112]

In this case, like in *Nevares*, Plaintiff's transfer from one school to another did not implicate a property interest subject to constitutional due process protections. Plaintiff's due process claim, therefore, fails as a matter of law.

## VI.   EVEN IF PLAINTIFF'S COMPLAINT STATES A DUE PROCESS CLAIM, THE COMPLAINT ALSO ESTABLISHES THAT PLAINTIFF RECEIVED ALL THE PROCESS THAT WAS DUE

Plaintiff contends that he should be returned to his regular education placement because the district failed to provide the required Due Process with respect to his alternative placement. Plaintiff's contentions fail because he ignores the facts associated with the <u>multiple</u> hearings that he received and he makes conclusory, unsupported allegations which are factually inaccurate. Conclusory allegations are insufficient to defeat a Motion to Dismiss.

Once the Court determines that Due Process applies, it must determine what process is due.[113] The interpretation and application of the Due Process Clause requires a flexible approach, recognizing that "[b]y and large, public education in our Nation is committed to the control of state and local authorities."[114] At a minimum, Due Process requires that deprivation of life, liberty or property by adjudication be preceded by notice and an opportunity to be heard which is appropriate to the nature of the case.[115]

---

[112] *Nevares*, 111 F.3d at 26 (citations omitted).

[113] *Goss*, 419 U.S. at 577.

[114] *Goss*, 419 U.S. at 577.

[115] *Id.*

The content of the notice and the nature of the hearing will be decided by balancing the competing interests involved.[116] To determine what process is due, courts weigh: "1) the private interests at stake, 2) the governmental interests at stake, and 3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards."[117]

With respect to school discipline, students have an interest in avoiding unfair or mistaken exclusion from the educational process.[118] Schools, on the other hand, have an essential interest in discipline and order.[119] Because disciplinarians often rely on reports of others and the controlling facts are often disputed, however, the risk of error should be guarded against to the extent that it can be done without prohibitive cost or interference with the educational process.[120]

With respect to a suspension of 10 days or less, the Due Process Clause requires that a student be given oral or written notice of the charges against him and, if the charges are denied, an explanation of the evidence against him and an opportunity to present his side of the story.[121] There does not, however, need to be a delay between the time that notice is given and the time of the hearing.[122]

In the "great majority of cases" involving school discipline, the school disciplinarian may informally discuss the alleged misconduct with the student

---

[116] *Id.*

[117] *Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335-36 (1976)).

[118] *Goss*, 419 U.S. at 579.

[119] *Id.*

[120] *Id.*

[121] *Id.* at 581.

[122] *Id.* at 582.

immediately after it occurs, provided that prior to being given an opportunity to explain himself the student is told what he is accused of doing and what the basis of the accusation is.[123]  Students who pose a continuing danger to others at the school or who are an ongoing threat to the academic process may be immediately removed from school.[124]  Where immediate removal is warranted, the necessary notice and "rudimentary hearing"[125] should follow as soon as practicable.[126]

As a preliminary matter, Plaintiff refers to being expelled in the Complaint. Plaintiff, however, was not expelled.  Plaintiff's Complaint acknowledges that fact in his complaint[127] and therefore, references to being expelled and Step II conferences are simply red herrings.

The facts set forth in the Statement of Facts section unequivocally establish that Plaintiff received all the process that was due to him.  Immediately after the incident, Mr. Carter spoke with Plaintiff and Mother, heard their side of the story and investigated the incident.  After Mr. Carter investigated the incident, Plaintiff was suspended for five days.  His suspension was subsequently extended for an additional five days after the police determined that there was probably cause to believe that an assault occurred.  This extension was  mandated by statute and was necessary to permit the school time to confer

---

[123] *Id.*

[124] *Goss*, 419 U.S. at 582.

[125] In requiring only a "rudimentary hearing" with respect to short suspensions, the Court recognized that imposing additional safeguards, such as the opportunity to secure counsel and confront and cross-examine witnesses, would probably overwhelm the administrative capabilities of most school districts and would likely cost more that it would save in educational effectiveness.  *Id.* at 583.  Escalating the formality and adversary nature of such proceedings would make it too costly to use suspensions as a regular disciplinary tool and destroy its effectiveness as part of the teaching process.  *Id.*

[126] *Id.* at 582.

[127] *See* Cmplt. ¶ 58, 67-68.

with Mother and consider alternative placement options.

Mother received notice of the Building Level Conference and appeared for the Conference. The notice unequivocally advised Mother that Plaintiff had been involved in an altercation that could result in an alternative placement and that two meetings were scheduled to discuss the issue.[128] Moreover, it is clear that Mother was given an opportunity to be heard at the conference.[129] At the conclusion of the initial conference, Mother was advised that her son's case would be referred to the District Office for an alternative placement meeting.[130]

On December 8, 2004, prior to the Alternative Placement meeting, Plaintiff pled guilty to Assault III.[131] Both Plaintiff and Mother signed the plea agreement.[132]

On December 13, 2004, Mother and Plaintiff appeared at the District Level meeting regarding Alternative Placement.[133] They appeared at the meeting with an "advocate," and character witnesses.[134] At the meeting, Plaintiff was questioned about the incident and he stated his side of the story.[135] In addition, Mother and the character

---

[128] Exh. 9 (Extension of Suspension letter dated 11/19/04).

[129] *See* Cmplt. ¶¶ 35-39.

[130] Cmplt. ¶ 42; Exh. 6 ("Summary of Building Level Conference Form").

[131] Exh. 5 (Plea Agreement).

[132] *Id.* In light of Plaintiff's admitted guilt, due process concerns focus not on the fact finding procedure, but on the opportunity to be heard on the question of what discipline is warranted for the admitted offense. *Betts v. Board of Education of the City of Chicago*, 466 F.2d 629, 633 (7th Cir. 1972). The decision of the School District regarding discipline was a discretionary one.

[133] Exh. 1 (Cmplt. ¶ 53).

[134] Exh. 1 (Cmplt. ¶53).

[135] Exh. 1 (Cmplt. ¶¶ 55-56). In the Complaint, Plaintiff states: "Moody, Denney and Countly [sic] asked R.W. about the incident;" and "R.W. related that the matter began as related above." *Id.*

27

witnesses were permitted to speak and present evidence on Plaintiff's behalf.[136]

After hearing Plaintiff's side of the story, the District representatives at the meeting agreed that Plaintiff's assault on Jeffrey L. was sufficiently serious and violent to warrant an immediate alternative placement at the Compass School.[137]   Dr. Countley, as the Superintendent's designee, conveyed the District's decision to Mother, Plaintiff and their advocate at the end of the meeting.[138]

Following the Alternative Placement meeting Mother and Plaintiff's advocate sought to appeal the decision to the Superintendent of the School District and to the School Board.  Although not required by either the Due Process Clause or the Code of Conduct,[139] Defendant Sundstrom agreed to meet with Mother on January 26, 2005, to review the case and give her one more chance to plead Plaintiff's case.[140]   After reviewing Plaintiff's case and giving Mother an opportunity to be heard, Defendant Sundstrom upheld the alternative placement decision.[141]

In light of the fact that Plaintiff is objecting to procedures related to his assignment to an alternative placement, any safeguards required by the Due Process Clause are even less than those required for suspensions.[142]   Suspensions result in a total exclusion from the educational process.  Alternative placements, in contrast, are not total

---

[136] Exh. 1 (Cmplt. ¶ 57).

[137] See Exh. 1 (Cmplt. ¶ 58).

[138] See Id.

[139] See Exh. 2 (Code of Conduct, p. 54, addressing Assignments to Alternative Programs).

[140] Exh. 7 (Jan. 27, 2005 ltr.); Exh. 1 (Cmplt. ¶ 72).  The January 27, 2005 letter from Mr. Sundstrom is referred to in Paragraph 75 of the Complaint.

[141] Exh. 7 (Letter dated Jan. 27, 2005 from Defendant Sundstrom).

[142] See Nevares, 111 F.3d at 27 (comparing an alternative placement to the suspension addressed in Goss).

28

exclusions.

To the extent that the Due Process Clause was implicated, consistent with *Goss,* rudimentary notice and an opportunity to be heard is all that was required.[143]  It is beyond dispute that Plaintiff received notice and an opportunity to be heard.  That was all that was required in this case.  The Court, therefore, should dismiss Plaintiff's Complaint, because it fails to state a claim upon which relief can be granted.

VII.  **THE COMPLAINT SHOULD BE DISMISSED AS TO DEFENDANTS WISE AND THE SCHOOL DISTRICT BOARD MEMBERS AS THERE ARE NO FACTUAL ALLEGATIONS SUFFICIENT TO IMPLICATE THEM**

As was discussed in Section IV, *supra,* Defendant Wise and the School District Board members cannot be held liable on the basis of supervisor liability.  Individual supervisory government officials may not be held liable under § 1983 for the acts of subordinates on a purely respondeat superior basis.[144]  Rather, supervisory liability under § 1983 requires that a named defendant have personally deprived Plaintiff of a constitutional right, or caused the conduct complained of, or participated in some manner in the allegedly unlawful actions of his or her subordinates.[145]  Consequently, even under

---

[143] *Cf. Betts v. Brd. of Education of the City of Chicago,* 466 F.2d 629, 633-34 (7th Cir. 1972) (concluding that the plaintiff had not shown a reasonable likelihood of success with respect to her Due Process claim where the plaintiff admitted pulling the school's fire alarm and was transferred to an alternative school after she and her mother met with a school administrator and were given an opportunity to explain the plaintiff's actions); *Palmer,* 868 F.2d at 96 (holding that the informal notice and hearing procedures established in *Goss* provided appropriate Due Process procedures for a student suspended from school for 10 days and from the football program for 60 days);

[144] *See e.g. Polk County v. Dodson,* 454 U.S. 312, 325 (1989); *Guzman v. Cranston,* 812 F.2d 24, 26 (1st Cir. 1987).

[145] *Guzman,* 812 F.2d at 25-26; *McCarther v. Grady County,* 437 F.Supp. 831, 834-35 (W.D. Okla. 1977); *Egan v. Concini,* 585 F.Supp. 801, 803-04 (M.D. Pa. 1984) (indicating that it is insufficient merely to show that the defendant is the superior of the person who actually committed the unconstitutional act).

29

the liberal pleading standards of the Federal Rules, where no specific factual allegations are made with respect to a named defendant, that defendant is properly dismissed.[146]

In this case, Plaintiff alleges no specific actions involving Defendant Wise other than a claim based upon respondeat superior. With respect to the individual School District Board members, Plaintiff alleges that they are liable based upon respondeat superior, and that they failed to grant an appeal where no right to an appeal otherwise existed. The respondeat superior claims against Defendant Wise and the School District Board members must be dismissed.

The allegations against the School District Board members for failing to grant an appeal must also be dismissed as the Code of Conduct does not grant students an appeal to the Board related to alternative placement decisions, and the Due Process Clause does not require an appeal. Conclusory allegations of conspiracy, moreover, are insufficient to withstand a motion to dismiss.[147] The Court should dismiss all claims against the School District Board members.[148]

## CONCLUSION

Moving Defendants are entitled to legislative and/or quasi-judicial immunity. To the extent that they are not, they are entitled to qualified immunity because even if

---

[146] *Whittington v. Vaughn*, 289 F.Supp.2d 621 (E.D. Pa. 2003) (Exh. 10) (indicating that the omission of a defendant's name from the material allegations of a complaint justifies dismissal of the Complaint against that defendant); *Marvasi v. Shorty*, 70 F.R.D. 14, 22-23 (E.D. Pa. 1976); *United States ex. rel. Tyrell v. Speaker*, 471 F.2d 1197, 1204 (3d Cir. 1973); *Hamilton v. Jamieson*, 355 F.Supp. 290, 294 (E.D. Pa. 1973); *Rakes v. Coleman*, 318 F.Supp. 181, 192-193 (E.D. Va. 1970) (action dismissed as to Attorney General and Governor, where Complaint failed to specify their involvement in the alleged wrong).

[147] *Marvasi*, 70 F.R.D. at 23 (holding that in order to state a claim for conspiracy, a plaintiff must allege specific facts establishing the conspiracy). *See also* § II of State Def. Motion to Dismiss (Dkt. #29) (discussing the pleading requirements for conspiracy claims).

[148] The School District Board members are: Defendants Phillips, Durr, Evans, Howell, Merlet, Mackenzie, and Sherer.

Plaintiff's rights were violated, reasonable school officials would not have believed that Plaintiff's due process rights were violated, and to the extent that Plaintiff stated an equal protection claim and identified similarly situated students in an nonprotected class, officials could reasonably disagree with respect to whether Plaintiff was similarly situated with the other students involved in the incident.

In addition, Plaintiff's Complaint fails to state an Equal Protection and Title VI claim for race discrimination as he failed to identify similarly situated individuals in a non-protected class. Plaintiff's Complaint also fails to state a Due Process claim because school placement decisions to not invoke the protections of the Due Process Clause. Even if they did, the Complaint establishes that Plaintiff received all of the process to which he was due.

Finally, Plaintiff's Complaint against Defendant Wise and the District School Board members should be dismissed as there are no factual allegations in the Complaint sufficient to implicate their direct involvement and claims alleging supervisory liability are not permitted under 42 U.S.C. § 1983. In addition, the Complaint's allegations of conspiracy with respect to these individuals is insufficient as there are no specific factual allegations supporting the claim in the Complaint.

For all of these reasons, the Court should dismiss Plaintiffs' Complaint. In addition, because it is clear from the face of Plaintiffs' Complaint that it is without merit, the Court should award attorneys fees and costs to the Moving Defendants pursuant to 42 U.S.C. § 1988(b) and the Court's rules.

31

Respectfully Submitted,

WHITE AND WILLIAMS LLP

BY:

JOHN D. BALAGUER (#2537)
WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: 302.467.4508
*Attorneys for The Christina School District
Board of Education, Joseph J. Wise, David
Sunstrom, Sandra Countley, Sharon Denny,
Freeman Williams, Brenda Phillips, James
Durr, George Evans, Beverly Howell,
Constance Merlet, John Mackenzie and Cecilia
Scherer*

Date:  January 17, 2006

32

IN THE UNITED STATES DISTRICT COURT
FOR THE DELAWARE DISTRICT

R.W., A Minor, individually, by and through          :
his parent and natural guardian SARAH WILLIAMS      :
and SARAH WILLIAMS, individually,                   :
          PLAINTIFFS,                              :
                                             :

          V.                                           :

THE DELAWARE DEPARTMENT OF                          :
EDUCATION; VALERIE WOODRUFF;                        :
personally and in her official capacity as          :
the Secretary of Education for the State of          :
Delaware; THE STATE OF DELAWARE BOARD                :
OF EDUCATION; and JOSEPH PIKA, Ph.D.;               :
JEAN ALLEN; RICHARD M. FARMER, JR.;                 :
MARY GRAHAM, ESQ.; BARBARA RUTT;                    :          C.A. NO. 05-CV-
00662                                               
DENNIS SAVAGE; CLAIRBOARNE D.                       :
SMITH; ANNE CASE; VALERIE WOODRUFF;                 :
personally and in their official capacity as Members :
of the State Board of Education; and                :
THE CHRISTINA SCHOOL DISTRICT; JOSEPH J.            :
WISE, personally and in his official capacity as the :
Superintendent of the District; DAVID SUNSTROM,     :
personally and in his official capacity as the Assistant :
Superintendent of the District; SANDRA COUNTLEY     :
personally and in her official capacity; SHARON     :
DENNY, personally and in her official capacity;     :
FREEMAN WILLIAMS, personally and in his official    :
capacity; THE CHRISTINA SCHOOL DISTRICT  :
SCHOOL BOARD; BRENDA PHILLIPS;                      :
JAMES DURR; GEORGE EVANS, ESQUIRE;                  :
BEVERLY HOWELL; CONSTANCE MERLET                    
JOHN MACKENZIE, CECELIA SCHERER; and                
JOSEPH WISE; all personally and in their official   :
capacity as Members of the CHRISTINA                :
SCHOOL DISTRICT.                                    :
                   DEFENDANTS.                         :

## CERTIFICATE OF SERVICE

I, William L. Doerler, Esquire, do hereby certify that on this 17th day of January, 2005 two (2) copies of the foregoing DEFENDANTS THE CHRISTINA SCHOOL DISTRICT BOARD OF EDUCATION, JOSEPH J. WISE, DAVID SUNSTROM,

SANDRA COUNTLEY, SHARON DENNY, FREEMAN WILLIAMS, BRENDA
PHILLIPS, JAMES DURR, GEORGE EVANS, BEVERLY HOWELL, CONSTANCE
MERLET, JOHN MACKENZIE AND CECILIA SCHERER, BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS were delivered via First Class Mail, postage prepaid
and/or E-File and Serve upon:

Patricia McHale O'Neill, Esquire          Craig Romond Fitzgerald, Esquire
114 West Front Street                     Department of Justice
Media, PA 19063                           102 West Water Street
                                          Dover, DE 19904


WHITE AND WILLIAMS LLP


BY:

_____
WILLIAM L. DOERLER (#3627)
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
Phone: 302.467.4508
*Attorneys for The Christina School District
Board of Education, Joseph J. Wise, David
Sunstrom, Sandra Countley, Sharon Denny,
Freeman Williams, Brenda Phillips, James
Durr, George Evans, Beverly Howell,
Constance Merlet, John Mackenzie and Cecilia
Scherer*

2