# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR THE DELAWARE
DISTRICT

R.W., a Minor, individually, by and through          :
his parent and natural guardian SARAH WILLIAMS;
AND SARAH WILLIAMS, individually,                    :
           PLAINTIFFS,                          :
    v.

THE DELAWARE DEPARTMENT OF                           :
EDUCATION; VALERIE WOODRUFF;
personally and in her official capacity as
the Secretary of Education  for the State of
Delaware; THE STATE OF DELAWARE BOARD                :
OF EDUCATION; and JOSEPH PIKA, Ph. D.;
JEAN ALLEN; RICHARD M. FARMER, JR.;
MARY GRAHAM, ESQ.; BARBARA RUTT;          :C. A. No.  0 5 - 6 6 2
DENNIS SAVAGE; CLAIRBOURNE D.
SMITH; ANNE CASE; VALERIE WOODRUFF;
personally and in their official capacity as Members   :
of the State Board of Education; and
THE CHRISTINA SCHOOL DISTRICT; JOSEPH J.
WISE, personally and in his official capacity as the   :
Superintendent of the District; DAVID SUNSTROM,
personally and in his official capacity as the Assistant
Superintendent of the District; SANDRA COUNTLEY,  :
personally and in her official capacity; SHARON
DENNY,  personally and in her official capacity;      :
FREEMAN WILLIAMS, personally and in his official
capacity;  THE CHRISTINA SCHOOL DISTRICT          :
SCHOOL BOARD; BRENDA  PHILLIPS;                   :
JAMES DURR; GEORGE EVANS, ESQUIRE;
BEVERLY HOWELL; CONSTANCE MERLET                   :
JOHN MACKENZIE; CECELIA SCHERER; and              :
JOSEPH WISE; all personally and in their official
capacity as Members of the CHRISTINA
SCHOOL DISTRICT.                                     :

DEFENDANTS.

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This is a civil rights action brought on behalf of R.W., a minor, (R.W.) under the Civil Rights Act of 1871, 42 U.S.C. Section 1983; and Title VI of the Civil Rights Act of 1964; by and through his parent and natural guardian, SARAH WILLIAMS, (Parent) against the Delaware Department of Education, (DOE); its Secretary, (Secretary); its Board of Directors, ( DOE Board); The Christina School District, (District); its Superintendent and Assistant Superintendent; its School Board Members, (School Board) and personnel related to the Alternative School Program, for compensatory and punitive damages for violations of the Equal Protection and Due Process Clauses of the Constitution of the United States, Federal and State Laws that protect R.W.'s right to an Education and right to be free from Discrimination based on race. Further, R.W. seeks a Declaration that the District's policy and procedures regarding Alternative Placement are unconstitutional for failure to provide Due Process; and Injunctive Relief to prohibit the District from further violating R.W.'s rights by forcing him to attend an Alternative Placement for one month prior to his returning to School on August 29, 2005, again in violation of his

2

Due Process Rights; further to prohibit the District from Discriminating against minority children in its application of discipline.

## II. JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. Sections 1983, 1985 and 1988. Jurisdiction is based on 28 U.S.C. Sections 1331 and 1334. Plaintiffs' cause of action arises under Title VI of the Civil Rights Act of 1964; The Civil Rights Act of 1871; 42 U.S.C. Sections 2000 (d) (1) and 2000 (d) (2); 5 U.S.C. Sections 701-706, and the Fifth and the Fourteenth of the Amendments to the United States Constitution. Plaintiffs are entitled to Emergency Preliminary and Injunctive relief pursuant to 28 U.S.C., F.R. Civ. P. 65 and under the Laws of the United Stated because there is no adequate remedy at law and Plaintiffs have suffered and will continue to suffer irreparable harm absent injunctive relief. Venue is properly in this Court in that all parties reside in this District and the matter at issue arose in this District.

## III. PARTIES

3. The Plaintiffs are R.W., a thirteen -year old student of the Defendant District, and his parent and natural guardian, Sarah Williams. They reside at 322 East 10th Street, Wilmington, County of New Castle, DE 19801 and are citizens of the State of Delaware.

3

4. The Delaware Department of Education is located at the Townsend Building, 401 Federal Street, Dover, DE 19901. It is the governmental agency responsible for administrating public school programs within the State of Delaware and is the entity which, pursuant to State law has the ultimate legal control of the educational process. The DOE has the ultimate authority and duty to cause the Defendant District to comply with the requirements of state and federal law. The DOE is a recipient of federal funds. As a result of the failure of the DOE to assure compliance with the laws, both state and federal, R.W. and his Parent have suffered harm and will continue to suffer harm by loss of education; loss of educational opportunities; serious injury to his ability to become a productive member of the community and the workforce, emotional harm and other irreparable harm in that R.W. has loss time for education which he can never get back.

5. Defendant Valerie Woodruff is the Secretary of Education for the State of Delaware. Under 14 Del. C. Section 101-10103, Secretary Woodruff is responsible for the overall administration of the DOE. At all times relevant herein, Secretary Woodruff was responsible for the supervision of agents, servants, and employees of the DOE and the Board. The Secretary is sued personally and in her official capacity as Secretary of Education for the State of Delaware. Her office is located in the Townsend Building, Federal Street, Dover, DE 19901.

4

6. Defendant State of Delaware School Board is established under 14 Del. C. Section 104 and is the governmental agency empowered, among other things: to decide certain types of controversies and disputes involving the administration of the public school systems, (14 Del.C. Section 104 (b) (5)) as well as decide all controversies involving rules and regulations of local school boards ( *Id.* at (7)).

7. Defendant Joseph Pika, Ph.D. is President of the Defendant Board and is responsible for administration of the Board. He is being sued personally and in his official capacity. His office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

8. Defendant Jean Allen is the vice-president of the Board. She is being sued personally and in her official capacity. Her office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

9. Defendants Richard M. Farmer Jr. ; Mary Graham, Esquire; Barbara Rutt; Dennis Savage; Clairbourne D. Smith; Anne Case; Valerie Woodruff; all sit as members of the Board and together with Defendants Pika and Allen, at all times relevant hereto, failed to oversee Defendant District's  policies and procedures regarding Alternative Placements which resulted in harm to R.W. *supra*. They are being sued personally and in an official capacity. Their office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

10.  Defendant Christina School District is a political subdivision of the State of Delaware performing the function of administering public education under the laws of the State of Delaware.  It is responsible for and obligated to provide public education to R.W.  Its principal place of business is  600 North  Lombard Street, Wilmington, DE 19801.  The  District caused harm to R.W. due to unconstitutional policies and procedures which deprived R.W. of his equal protection and due process rights.  The District is a federally funded program and activity under Title VI of the Civil Rights Act of 1964 which prohibits discrimination on the basis of race, color or national origin in federally assisted programs and activities receiving assistance from the U.S. Government.

11.  Defendant Joseph J. Wise (Wise) is the Superintendent of the Defendant District.  At all times relevant herein, Superintendent Wise was responsible for the supervision of agents, servants, and employees of the Defendant District.  He  is sued personally and in his official capacity as Superintendent of Defendant District.  His principal place of business is  600 North  Lombard Street, Wilmington, DE 19801. At all times relevant herein, Defendant Wise did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

12.  Defendant David Sundstrom, ( Sundstrom) is the  Assistant Superintendent of Defendant District.  At all times relevant herein, Defendant

6

Sundstrom was responsible for the supervision of agents, servants, and employees of the Defendant District. He is sued personally and in his official capacity as Assistant Superintendent of Defendant District. His principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Sundstrom did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

13.   Defendant Sandra Countley, (Countley) is the Director of Alternative Placement Defendant District. At all times relevant herein, Countley was responsible for the Alternative Placement Program. She is sued personally and in her official capacity as Alternative Placement Program of Defendant District. Her principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Countley did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

14.   Defendant Sharon Denny (Denny) is the Coordinator of the Alternative Program for Defendant District. At all times relevant herein, Denny was responsible for the supervision and implementation of the Program. She is sued personally and in his official capacity as Coordinator of the Alternative Program for Defendant District. Her principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Denny did conspire with other

7

named Defendants to deprive R.W. of his equal protection and due process rights.

15. Defendant Eleanor Ludwigesen (Ludwigsen) the Principal of Shue-Medill Middle School, one of the schools located within the boundaries of the Defendant District at 1500 Capital Trail, Newark, DE 19711. At all times relevant herein, Ludgwigsen was responsible for the supervision of agents, servants, and employees of the Middle School. She is sued personally and in his official capacity as Principal. At all times relevant herein, Ludwigsen did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

16. Defendant Gina Moody is the Assistant Principal of Shue- Medill Middle School, one of the schools located within the boundaries of the Defendant District at 1500 Capital Trail, Newark, DE 19711. At all times relevant herein, Moody was responsible for the supervision of agents, servants, and employees of the Middle School. She is sued personally and in his official capacity as Assistant Principal. At all times relevant herein, Moody did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

17. Defendant Freedman Williams (Williams) is the Director of School Operations for the Defendant District. At all times relevant herein, Williams was responsible for the supervision of agents, servants, and employees of the District. He is sued personally and in his official capacity as District Director of Operations.

8

His principal place of business is 600 North Lombard Street, Wilmington, DE
19801. At all times relevant herein, Williams did conspire with other named
Defendants to deprive R.W. of his equal protection and due process rights.

18. Defendant Christina School Board (School Board) is established under 14
Del. C. Section 1041 *et.seq.* and has the authority to administer and supervise the
free public schools of the reorganized school district and have the authority to
determine policy and adopt rules and regulations for the general administration and
supervision of the District. Its principal place of business is 600 North Lombard
Street, Wilmington, DE 19801. The School Board violated R.W.'s rights by failing
to provide due process rights upon a placement in an Alternative School; by
permitting a continuous policy and procedures to exist in the Student Code of
Conduct which discriminate against R.W. and denies equal protection by subjecting
R.W. to discriminatory treatment in regard to discipline for R.W., a minority child.
Due to this continuous policy and procedure, R.W. and Parent suffered the harm,
*supra.*

19. Defendants Brenda Phillips; James Durr, George Evans, Esquire; Beverly
Howell; Constance Merlet; John MacKenzie; Cecelia Scherer; and Joseph Wise
are, at all relevant times, all members of the School Board. They are being sued
personally and in their official capacity. Their official place of business is 600

9

North Lombard Street, Wilmington, DE 19801. The School Board members permitted a continuous policy and procedure to exist, in the Student Code of Conduct, which each and every member of the School Board knew failed to provide due process rights in regard to placement in an Alternative School as well as discrimination against minority children on the basis of race.

20. At all times relevant hereto and in all of the actions described herein, all individuals and agency defendants were acting in their respective capacities as stated under Color of law, ordinances and regulations of the State of Delaware and statutes of the United States of America, and did subject the Plaintiffs herein to the deprivation of rights, privileges, and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described herein.

## IV. FACTUAL BACKGROUND

21. R.W. was born on June 3, 1991. He is presently 14 years old and was attending Shue-Megill Middle School for the school year 2004-2005 for the eighth grade. This school is located within the District.

22. R.W. attended the District schools from Kindergarten until November 8, 2004. He was an Honors Student and had a perfect attendance record until November 8, 2004. He received numerous academic awards over his education,

including but not limited to, spelling bee awards, science awards, Math awards, sportsmanship awards, and the City of Wilmington Academic Award for his 6th grade year.   He also was recognized for intervening in a Rape in Progress on his school bus in 7th grade.

23.  On November 8, 2004, in a classroom at Shue-Megill Middle School a fellow student identified as Nick. M. stepped on a long chain which was hanging from the pants of student Jeffrey L.   Jeffrey L. then that threw his shoulder into R.W. and pushed him and R.W. gave him a push back.

24.  R.W. exited the classroom with other students and began walking down the hallway to his 1st period class.

25.  Jeffery L. threatened R.W. and two other students three times with a "death wish."  The topic of death wishes and voo-doo had been recently discussed in social studies class.

26.  R.W. then entered another classroom and punched Jeffrey L. under his right eye.

27.  Jeffrey L.'s eye was bleeding as and he went to the  nurse's office.

28.  R.W. was told by his teacher, Mrs. Jefferson to go to  the nurse's office because his hand was bleeding.

29.  Defendant Moody interceded and sent R.W. to Mr. Carter's office

wherein Mr. Carter told R.W. to return to the nurse's office for treatment. There, Jeffrey L. stated to R.W. in a provocative manner: " Bleed, Bleed, Bleed, it didn't hurt," (referring to his eye).

30. After treatment, R.W. went back to see Mr. Carter. Parent was called and both were told that R.W. was suspended for 5 days. Parent asked for a copy of the Student Code of Conduct and was told by Mr. Carter that the School did not have a copy to give her. Two days later, Parent again requested a copy of the Student Code of Conduct and was again told the School did not have one to give her.

31. R.W. returned to school on November 19, 2004 for one-half day when parent received a phone call from Moody stating that R.W. was going to be suspended for five more days.

32. Parent immediately went to school and met with Moody with Mr. Carter present and asked why was R.W. being suspended -did something else happen? She was told by Moody that Denny, from the District office, ordered her to suspend R.W. for five more days because that he wasn't punished enough. Again, Parent requested a copy of the Student Code of Conduct and was told by Moody that the only copy she had was her own and none was given.

33. Parent received an Extension of Suspension form (Revision date 9/99) on November 19, 2004 which suspended R.W. for 5 more days until December 1, 2004.

12

The first paragraph stated that R.W. had been involved in an offense which will result in alternative placement or expulsion. The second paragraph of the form is as follows: " The student is scheduled for an alternative placement meeting on the following date: Dec.2- 8 a.m. BLDG., Dec 13- 9:30 a.m.(Both of the dates were on one line). If the student is recommended for expulsion, the District Office personnel will contact you to schedule a time for the expulsion hearing."

34. In the interim, R.W. was charged with Assault in the third degree and conspiracy. All three of the minority students were charged and the Caucasian male, Jeffrey L. was not, although he instigated the incident. The disparate discipline was done in violation of R.W.' s equal protection rights. R.W. was given a diversionary program by the Family Court of the State of Delaware.

35. A Building level Conference was held on December 2, 2004 attended by Parent, Freeman, Moody, Sley, Carter.

36. At that conference, Parent stated that the District's dress code was not enforced on November 8, 2004 (and in fact was never enforced against Jeffrey L., who dresses in the Gothic fashion, but was routinely enforced against minority children) against Jeffrey L. who was wearing chains on his pants, his consistent manner of dress.

37. Parent tried to point out that if the dress code had been consistently and

equitably enforced against all children and not just minority children, then this incident would not have happened.

38. Also, Parent expressed that the two teachers from his home room class were not monitoring the classroom, but rather, talking between themselves in the hallway.

39. Also, Parent questioned, upon being told that there was a security tape of the hallway showing R.W. greeting one of his other friends with a "high five" gesture, why was the situation not handled immediately rather than be permitted to escalate.

40. Parent stated that she was not familiar with this type of conference and again requested a copy of the Student Code of Conduct and again was not provided with one.

41. Parent also asserted that R.W. was in honors classes and involved in many activities and that he was remorseful for his part in the incident.

42. The recommendation from this conference was to: "refer case to District for review." Parent was not told what this meant.

43. The District's Student Code of Conduct, revised edition, 2004, on page states that the  consequences of an assault are (all of the following): 1) Parent/Guardian notification, 2) suspension for five (5) days, 3) parent/guardian

conference, 4) notification of police; charges may be filed, 5) restitution/restoration, if necessary, 6) recommendation to appropriate counseling, 7) **\*possible** (\*Emphasis added) recommendation for alterative placement or expulsion, and 8) referral to mediation, if appropriate.

44. At no time relevant heretofore, despite repeated requests, was Parent provided with access to/or a copy of the Student Code of Conduct.

45. Further, at the December 2, 2004 Building level conference, Parent was again not provided with access to/or a copy of the Student Code of Conduct which outlined the District's Disciplinary Procedures.

46. At no time was the Assignment to Alternative Programs policy and procedure provided to Parent.

47. The Procedure, as stated in the Student Code of Conduct:   Assigned to alternative programs is the placement of a student, with appropriate consideration of due process, in a program designed to meet the student's particular needs . . . (A) Prior to placement in an alternative program the student and the student's parent/guardian shall be conferred with about the student's need to be in a special program.   (B) Following the conference the student and the student's parents/guardians shall be given written notice of:   (1.) The circumstances which led to the placement; (2.) How the special program is designed to meet the student's

needs;  (3.) The conditions, which must be met in order for the student to return to

the regular school program . . .

48.  At no time prior to/or after  the December 2, 2004  was Parent given any

of the above information in violation of R.W.":s Due Process rights.   In fact, the

result of this meeting was to refer the case to the District.  It did not indicate that the

student is referred for an expulsion hearing.

49.  At no time prior to/or after  the December 2, 2004,  was Parent given

information that the Assignment  to Alternative Program contained a clause assuring

appropriate consideration of due process.

50.  At no time prior to/or after  the December 2, 2004 was Parent given a

written notice that any due process existed in regard to Assignment to Alternative

Programs.

51.  At all times relevant herein, the defendants knew that no due process

protections for an Assignment to an Alternative Program existed and knowingly

conspired to take no action to remedy this consistent policy.

52.  For some period of time, R.W. did receive services from the District

identified as "Homebound," which consisted of only five hours a week.

53.  The next meeting occurred on December 13, 2004.  This so called

"District level"  meeting was held at The Board Room of the District and attended by

the Plaintiffs, their Advocate, Moody, Denny, Countley and witnesses on behalf of

R.W.

54. A packet was presented at the meeting which had not been presented prior
to the meeting, accordingly, there was no time for review by Parent.

55. Moody, Denny and Countly asked R.W. questions about the incident.

56. R.W. related that the matter began as related above.

57. Parent and witnesses provided character evidence of her son, R.W. as
described above.

58. As a result, Countly related that R.W. should be placed at an alternative
placement called Compass. There was no statement that. R.W. was expelled.

59. The procedure for a Step II-District level conference requires that the
parent be given Notice that a formal hearing was to be held. It further requires that
the Notice be sent by certified mail or hand delivered. The District failed to do this
in violation of R.W. Due Process rights.

60. The procedure for a Step II-District level conference requires that a parent
be given the reasons for the recommendation of expulsion; names of witnesses and
copies of statement. The District failed to do this in violation of R.W. Due Process
rights.

61. The procedure for a Step II-District level conference requires that

individuals involved in the building process are NOT to be involved in the District level conference. The District ignored this mandate and had individuals involved in the Building level conference participate in the decision at the District level, i.e., Moody. By this action/inaction, the District violated R.W.'s Due Process rights.

62. The procedure for a Step II-District level conference requires that the District provide a copy of the School District Expulsion Procedures with the requisite Notice. The District failed to do so. By this action/inaction, the District violated R.W.'s Due Process rights.

63. At the meeting, Parent requested that the Committee put the decision in writing and send it to her.

64. Despite another request for access or a copy of the Student Code of Conduct, none was provided.

65. Parent was not informed at that meeting, what, if any, appeal rights or procedures existed. Neither was she ever provided with any written Notice of appeal. The District failed to do so. By this action/inaction, the District violated R.W.'s Due Process rights.

66. On or about December 17, 2004, a referral was made by the Shue- Medill Middle School to Compass School, a locked facility, which indicated that R.W. was an expelled student. Parent did not receive a copy of this referral until she requested

it on or about February 25, 2005.

67.  Parent received no information regarding Compass School until she called and wrote a letter to Countley on or about January 3, 2005 requesting the policies and procedures regarding alternative placement and due process rights and appeal rights.

68.  At that time, Parent was informed by that the decision to place R.W. in an alternative placement had been mailed to her.  Parent never received that letter until approximately ten days after her phone call and letter.

69.  An appeal of the December 13, 2004 decision was made to Wise  on January 4, 2005.  This was sent to all District Board members.

70.  No response to this request was made by Wise or the Board.

71. Despite further calls to Countley, Parent spoke to Countley's supervisor on or about January 18, 2005 because Parent had no response from Countley.  Parent was advised that Sundstrom would call her.

72.  Parent met with Sunstrom and Denny on January 26, 2005.  Parent informed Sunstrom and Denny that the information regarding the Student Code of Conduct and the appeal process was never received by Parent.  Sunstrom apologized for several due process violations, including but not limited to, failure to show a videotape of R.W. after the incident at the December 13, 2004 meeting.

19

73.  Sunstrom also stated that he has been following the regulations in the Student Code of Conduct and that the regulations have been the same for years.

74. Parent stated: what are the regulations?  Sunstrom could not state even one of the regulations to  Parent so he tried unsuccessfully to retrieve a copy from the computer.  Parent still had no copy of the Student Code of Conduct or Expulsion Procedures.  By this action/inaction, the District violated R.W.'s  Due Process rights.

75. Sundstrom sent a follow-up letter dated January 27, 2005, reciting that Parent admitted that her son punched another student.  Parent denies that this conversation took place. This  aggressive letter was an attempt to intimidate the Parent in order to pressure Parent to send R.W. to Compass, again in violation of R.W.'s rights.

76.  A second request for an appeal of the December 13, 2004 meeting was submitted on February 7, 2005 by Mr. Jea Street, an  Advocate for R.W.

77.  No acknowledgment of this request was made and no appeal was scheduled.

78. Parent visited Compass School on February 2, 2005. At that time, Parent first learned that R.W. was expelled, contrary to what she had been told, i.e., that was given an alternative placement and not an expulsion.   However, when Parent later investigated Compass School, she learned that only expelled students were

admitted to Compass School.  Further, during her visit, Parent observe a 12 year-old

student telling  the administrator to "s–k his d—k  (private parts) and that he was

sick of the m---f'ing  school"  At the February 2, 2005 visit, a school representative,

asked Parent: "Why are you asking so many questions- most parents just sign the

papers."

79.  On March 1, 2005, the Advocate, Mr. Street, wrote a letter to Pika, of the

State Board, to appeal the decision of the District to expel R.W.

80. Also an appeal was taken on the District's decision to remove R.W. from

the regular educational setting to an alternative school without a hearing.

81.  On April 12, 2005, Parent attended the District' School Board meeting.

At that meeting, Parent again requested a hearing before the Board and no response

was given.  After the meeting, Sundstron asked if Parent would re-consider Kirk

Middle Alternative School ( why had unofficially been offered) and Parent advised

that she would think about it.  Parent did not reject Kirk placement for the sole

reason of lack of transportation, (District sent a bus for handicapped children to pick

up R.W., which was unacceptable)  but rather did not consider it an appropriate

placement.

82.  On April 14, 15, 2005, District representatives called Parent to find out

her decision whether to send R.W. to Kirk Alternative School.  For the first time,

Parent learned from one of the representatives that R.W. was considered a problems to his teachers and that the Kirk program was an alternative program. Parent advised the representative that R.W. was not a problem to his teachers.

83. The representative stated that R.W. did not have to attend the alternative program but that he could go to the regular educational setting at Kirk Middle.

84. Parent asked -if he is going to be placed in a regular educational setting- why would he not go back to Shue-Medill Middle School. This question was never answered.

85. In response to the March 1, 2005 letter to Pika, Parent was notified that the case would be on the Board's agenda for April 21, 2005. The Board voted to hear the issue of whether the Board had jurisdiction over the matter and oral arguments were scheduled for May 19, 2005.

86. Prior to May 18, 2005, upon information and belief, three members of the Board, Allen, Farmer, and Pepper, attended a meeting at the Delaware School Board Association wherein the R.W. matter was discussed as a topic of concern. A statement was made that if R.W.'s appeal was granted, that the floodgates to litigation would be opened.

87. These three Board members attended the May 18, 2005 oral argument but did not disclose this association and any information which may have been related to

them to Parent or the Board at the May 19, 2005 hearing.

88. Further, Pika stated that he would not assign this matter to a hearing officer, (as is the usual procedure) because he did not know who he could trust to hear the case.

89. This conduct was taken as part of the conspiracy to deprive Plaintiffs of their right to a full, fair and impartial hearing on the merits.

90. Accordingly, Plainitffs' rights to a full, fair and impartial hearing were violated.

91. At the Board meeting, the attorney for the District, David Williams, Esquire, failed to disclose that he was representing the Delaware School Board Association in addition to the District.

92. The Board decided upon oral argument, that the Board did not have jurisdiction over the matter because there was no direct Board action over the matter. The Board incorrectly stated that there was no appeal made on R.W.'s behalf to the District. An appeal was taken on February 7, 2005, despite the District's failure to provide any information regarding Notice of the Hearing and appeal rights.

`93. The Board violated the rights of the Plaintiffs by failure to supervise the District's and the Board's policies and procedures; rules and regulations, regarding exclusion of this child from his educational setting without due process and in

23

violation of equal protection, thereby conspiring with the District and the Board to deprive R.W. of his education.

94.  Further, the Board has the statutory responsibility to resolve disputes and refused to perform its duties in violation of R.W.'s due process and equal protection rights.

95.  The District further violated R.W.'s rights by threatening criminal charges and truancy against both Parent and R.W. if Parent continued to hold her son out of school while trying to exercise their constitutionally protected rights.

96.  The District did file Truancy charges against both Plaintiffs which is pending in truancy court.

97.  At the present time, the District continues to refuse to provide R.W. with due process, continues to attempt to intimidate Parent, continues to follow its own Rules and Regulation by designating that R.W. must attend an alternative school for the month of September and continues to refuse to place R.W. in his regular education school.

## COUNT I
### Violation of The Civil Rights Act of 1964. Title VI

98.  Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

99. Defendants, by their aforestated actions, have deprived Plaintiffs of their rights under The Civil Rights Act of 1964. Title VI.

100. At all times relevant hereto and in all of the actions described herein, all individual defendants were acting in their respective capacities as stated under Color of Ordinances and Regulations of the School District, statutes of the State of Delaware and statutes of the United States of America and did subject Plaintiffs herein to the deprivation of their rights, privileges and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described hereafter.

101. The Civil Rights Act of 1964, Title VI provides that no person in the Unites States shall, on the grounds of race, color or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under program or activity receiving financial assistance.

102. The State of Delaware and the Christina School District, agents and employees of both public agencies are the recipients of federal assistance.

103. The Civil Rights Act of 1964, Title VI provides that no state shall be immune from suit under the Act, or any other Federal statute prohibiting discrimination.

104. All defendants, as described above, did discriminate against the

25

Plaintiff on the basis of race, specifically the disparate discipline given to R.W. in reference to another actor in this matter who was a white individual who initiated the incident complained of herein, who received no discipline at all.

105. All defendants have caused the plaintiff, a child, to be excluded from participation in, denied the benefits of, and subjected to discrimination in his educational program, solely on the basis of his race, and failure to provide due process at all levels. All Plaintiffs have been injured by defendants' actions and inactions.

## COUNT II
## Violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983

106. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

107. Defendants by the aforestated actions have deprived Plaintiffs of their rights to Due Process of law as guaranteed by the Fourteenth Amendment, in violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

108. Defendants are "person" as defined by 42 U.S.C. Section 1983.

109. At all times relevant hereto and in all of the actions described herein, all individual defendants were acting in their respective capacities as stated under

26

Color of Ordinances and Regulations of the School District, statutes of the State of

Delaware and statutes of the United States of America and did subject Plaintiffs

herein to the deprivation of their rights, privileges and immunities secured by the

United States Constitution and the aforementioned statutes by the acts and/or

failure to act as described hereafter.

110. Acting under color of law, by and through a policy custom or practice,

defendants intentionally, knowingly recklessly or with deliberate indifference to

the rights of the plaintiffs failed to instruct, train, supervise and control  on a

continuing basis the procedures and policies involving due process for Alternative

School Placements.

111. Acting under color of law, by and through a policy or practice,

defendants intentionally, knowingly, recklessly or with deliberate indifference to

the rights of the Plaintiffs failed to instruct, train, supervise and control  on a

continuing basis the procedures and policies regarding discipline of students

thereby resulting in a disparity in the number of minority children placed in

Alternative Placements and/or expulsion.

112. Acting under color of law by and through a policy or practice,

defendants intentionally, knowingly, recklessly or with deliberate indifference to

the rights of the Plaintiffs failed to instruct, train, supervise and control on a

continuing basis the procedures and policies regarding deprivation of the Plaintiff's right to his education as guaranteed under the laws of the state of Delaware, the United Stated and the Constitution.

113.   Acting under color of law, by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs failed to instruct, train, supervise and control  on a continuing basis the procedures and policies regarding denial of Plaintiffs appeal to both the District Board of Education and the Delaware State Board of Education.

114.   Acting under color of law,  by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs conspired to deny Plaintiffs their rights under the law.

115.   Defendants' conduct demonstrates a reckless and callous attitude toward the federally protected rights of the Plaintiffs as enumerated herein.

116.   By failing to abide by  The Civil Rights Act of 1964, Title VI, The Civil Rights Act of 1871, the Due Process and Equal Protections as provided by the Constitution of the United States of America, the defendants have caused the plaintiff, a child, to be excluded from participation in, denied the benefits of, and subjected to discrimination in his educational program, solely on the basis of his

28

race, and failure to provide due process at all levels. All Plaintiffs have been injured by defendants' actions and inactions.

## COUNT III
### Violation of Equal Protection and Due Process Rights

117. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

118. Defendants by the aforestated actions have deprived Plaintiffs of their rights to Equal Protection and Due Process of law as guaranteed by the Fourteenth Amendment, in violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court:

A) Find and hold that the Plaintiffs suffered acts and/or acts of omissions of Due Process and Equal Protection by the defendants;

B) Enter an emergency, preliminary and permanent injunction under the laws of the Unites States enjoining all defendants to comply with said

29

statutes and to provide due process and equal protection;

C)  Enter an emergency, preliminary and permanent Injunction to the

District to return the Plaintiff to his regular education school;

D)  Award compensatory and punitive damages for violations of Plaintiffs'

civil rights, in an amount deemed appropriate at trial;

E)  Correct and purge R.W.'s school record regarding the November 8,

2004-incident;

F)   Award Plaintiffs the cost of this actions and its pursuit thereof as well

as attorney fees; and

G)  Award such other and further relief as may be deemed just and proper.

Patricia M. O'Neill, Esquire
22 West Front Street
Media, PA 19063
610-891-6668
Attorney for Plaintiffs

Delaware Supreme Court
Identification No: 3016
Admitted to Delaware District Court

Date:    September 12, 2005