# EXHIBIT 10

Westlaw.

289 F.Supp.2d 621 Page 1
289 F.Supp.2d 621
(Cite as: 289 F.Supp.2d 621)

C
Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Felix D. WHITTINGTON, Plaintiff,
v.
Donald VAUGHN, et al., Defendants.
No. CIV.A.02-4346.

Nov. 3, 2003.

State prisoner with schizophrenia brought § 1983 action against prison officials, alleging civil rights violations. On defendants' motion for summary judgment, the District Court, Katz, Senior District Judge, held that: (1) unit manager's requests that inmate take his psychotropic medication did not violate inmate's due process rights; (2) hearing examiner's denial of counsel and certain witnesses at misconduct hearings did not violate inmate's due process rights; (3) any error in hearing examiner's denial of witnesses was harmless; (4) misconduct reports were "some evidence" supporting hearing examiner's decisions to find inmate guilty of misconduct; (5) sentences imposed on inmate for violation of prison rules did not violate his due process rights; (6) prison superintendent who upheld decisions of misconduct hearing examiner was not liable under § 1983; and (7) prison officials were entitled to qualified immunity.

Motion granted.

West Headnotes

[1] Constitutional Law 92 €272(2)

92 Constitutional Law
  92XII Due Process of Law
    92k256 Criminal Prosecutions
      92k272 Execution of Sentence
        92k272(2) k. Imprisonment and Incidents Thereof. Most Cited Cases

Prisons 310 €17(2)

310 Prisons
  310k17 Maintenance and Care of Prisoners
    310k17(2) k. Medical and Mental Care. Most Cited Cases
Requests by special needs unit manager at state prison that schizophrenic inmate take his psychotropic medication did not violate inmate's due process rights, for purposes of inmate's § 1983 claim; although inmate was urged to take his medication and was punished for misbehavior that occurred when he was not taking his medication, he was never forcibly injected with antipsychotic medications, and he was permitted to refuse the medication. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

[2] Constitutional Law 92 €272(2)

92 Constitutional Law
  92XII Due Process of Law
    92k256 Criminal Prosecutions
      92k272 Execution of Sentence
        92k272(2) k. Imprisonment and Incidents Thereof. Most Cited Cases

Prisons 310 €13(9)

310 Prisons
  310k13 Custody and Control of Prisoners
    310k13(7) Requisites of Proceedings
      310k13(9) k. Counsel and Witnesses. Most Cited Cases
Hearing examiner's denial of counsel at state inmate's misconduct hearings did not violate inmate's due process rights, for purposes of his § 1983 claim; although inmate requested generally that he be provided with a lawyer or an "inmate and/or staff" in his misconduct hearings, he did not specify any particular individual from whom he sought assistance, and he never alleged that he was illiterate or baffled by the issues the misconducts involved. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

[3] Constitutional Law 92 €272(2)

92 Constitutional Law
  92XII Due Process of Law
    92k256 Criminal Prosecutions
      92k272 Execution of Sentence
        92k272(2) k. Imprisonment and Incidents Thereof. Most Cited Cases

Prisons 310 €13(9)

310 Prisons
  310k13 Custody and Control of Prisoners

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

289 F.Supp.2d 621 Page 2
289 F.Supp.2d 621
**(Cite as: 289 F.Supp.2d 621)**

310k13(7) Requisites of Proceedings
310k13(9) k. Counsel and Witnesses. Most Cited Cases
Hearing examiner's denial of certain witnesses at state inmate's misconduct hearings did not violate inmate's due process rights, for purposes of inmate's § 1983 claim; inmate had pled guilty to some misconducts, had failed to comply with prison's witness request procedure by failing to indicate relevance of certain witnesses, and had failed to submit his request forms in a timely manner. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[4] Constitutional Law 92 272(2)**

92 Constitutional Law
  92XII Due Process of Law
    92k256 Criminal Prosecutions
      92k272 Execution of Sentence
        92k272(2) k. Imprisonment and Incidents Thereof. Most Cited Cases

**Prisons 310 13(9)**

310 Prisons
  310k13 Custody and Control of Prisoners
    310k13(7) Requisites of Proceedings
      310k13(9) k. Counsel and Witnesses. Most Cited Cases
Any error in hearing examiner's denial of witnesses at state prison inmate's misconduct hearings was harmless, for purposes of inmate's due process claim, where the primary witness requested was the officer who authored the misconduct report containing the officer's version of the facts that formed the basis of misconduct, and the only other witness requested was an officer who was not present at the time the misconduct was issued, and whose only involvement was that he served inmate with the notice of misconduct hearing. U.S.C.A. Const.Amend. 14.

**[5] Prisons 310 13(7.1)**

310 Prisons
  310k13 Custody and Control of Prisoners
    310k13(7) Requisites of Proceedings
      310k13(7.1) k. In General. Most Cited Cases
Misconduct reports submitted by corrections officers were "some evidence" supporting hearing examiner's decisions to find inmate guilty of misconduct.

**[6] Constitutional Law 92 272(2)**

92 Constitutional Law
  92XII Due Process of Law
    92k256 Criminal Prosecutions
      92k272 Execution of Sentence
        92k272(2) k. Imprisonment and Incidents Thereof. Most Cited Cases

**Prisons 310 13(4)**

310 Prisons
  310k13 Custody and Control of Prisoners
    310k13(4) k. Particular Violations, Punishments, and Deprivations; Use of Force. Most Cited Cases
Sentences imposed on state inmate by hearing examiner for inmate's violation of prison rules did not violate inmate's due process rights since such discipline fell within expected perimeter of the sentence imposed by a court of law. U.S.C.A. Const.Amend. 14.

**[7] Civil Rights 78 1358**

78 Civil Rights
  78III Federal Remedies in General
    78k1353 Liability of Public Officials
      78k1358 k. Criminal Law Enforcement; Prisons. Most Cited Cases
State prison superintendent who upheld decisions of misconduct hearing examiner was not liable to inmate under § 1983 for alleged due process violations, based solely upon the fact that he sustained the rulings of hearing examiners; superintendent upheld decisions since there were no procedural errors at the hearings. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[8] Civil Rights 78 1336**

78 Civil Rights
  78III Federal Remedies in General
    78k1334 Persons Liable in General
      78k1336 k. Vicarious or Respondeat Superior Liability in General. Most Cited Cases
Theory of respondeat superior is inapplicable for civil rights violations by individuals acting under color of state law.

**[9] Civil Rights 78 1335**

78 Civil Rights
  78III Federal Remedies in General
    78k1334 Persons Liable in General
      78k1335 k. In General. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For acts allegedly taken in their individual capacity, defendants in a civil rights action must have personal involvement to be liable; such involvement may be demonstrated through allegations of participation or actual knowledge and acquiescence in the violation.

[10] Civil Rights 78 1358

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1353 Liability of Public Officials
　　　　　　78k1358 k. Criminal Law Enforcement; Prisons. Most Cited Cases
State prison defendants who had absolutely no personal involvement in the alleged violations of schizophrenic inmate's due process rights were not liable in their individual capacities under § 1983. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

[11] Federal Civil Procedure 170A 1744.1

170A Federal Civil Procedure
　　170AXI Dismissal
　　　　170AXI(B) Involuntary Dismissal
　　　　　　170AXI(B)2 Grounds in General
　　　　　　　　170Ak1744 Parties, Defects as to
　　　　　　　　　　170Ak1744.1 k. In General. Most Cited Cases
Omission of a defendant's name from the material allegations of a complaint justifies dismissal of the complaint against that defendant.

[12] Civil Rights 78 1376(2)

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1372 Privilege or Immunity; Good Faith and Probable Cause
　　　　　　78k1376 Government Agencies and Officers
　　　　　　　　78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
Qualified immunity protects government officials from damages liability in § 1983 suits unless there has been a constitutional violation of a clearly established right. 42 U.S.C.A. § 1983.

[13] Civil Rights 78 1376(1)

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1372 Privilege or Immunity; Good Faith and Probable Cause
　　　　　　78k1376 Government Agencies and Officers
　　　　　　　　78k1376(1) k. In General. Most Cited Cases

Civil Rights 78 1376(2)

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1372 Privilege or Immunity; Good Faith and Probable Cause
　　　　　　78k1376 Government Agencies and Officers
　　　　　　　　78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
In determining whether government official is entitled to qualified immunity from damages liability in § 1983 action, courts consider whether there has been in fact a constitutional violation, and if so, whether the right violated was clearly established. 42 U.S.C.A. § 1983.

[14] Civil Rights 78 1376(7)

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1372 Privilege or Immunity; Good Faith and Probable Cause
　　　　　　78k1376 Government Agencies and Officers
　　　　　　　　78k1376(7) k. Prisons, Jails, and Their Officers; Parole and Probation Officers. Most Cited Cases
The alleged due process right of a schizophrenic inmate to be free from requests to take his psychotropic medication, and the right to have counsel and any desired witnesses at a prison misconduct hearing, were not clearly established rights, and therefore, prison officials were entitled to qualified immunity from inmate's § 1983 claim for due process violations. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

*623 Felix D. Whittington, Waynesburg, PA, pro se.
Kevin R. Bradford, Esquire, Office of the Attorney General, Philadelphia, PA, for Defendants.

MEMORANDUM AND ORDER

KATZ, Senior District Judge.
Plaintiff is in custody serving a life sentence for a murder conviction. Pl. Dep. at 6-7. From 1994

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

289 F.Supp.2d 621                                                                                                          Page 4
289 F.Supp.2d 621
**(Cite as: 289 F.Supp.2d 621)**

until 2002, plaintiff was serving this sentence at SCI Graterford. Plaintiff's claims arise from this time served at SCI Graterford.

Plaintiff is a schizophrenic. Pl. Dep. at 7. He is six feet, two inches tall and approximately 253 pounds. *Id.* at 5. Plaintiff has a history of violent behavior and fire starting. Exh. D-2. Plaintiff hears voices and has mood swings. *Id.* at 56, 66. Plaintiff also believes that he is being controlled or attempted to be controlled through his ears by "security monitoring defenses with an electronic device" while at various DOC facilities throughout the state, including SCI Graterford. *Id.* at 64. Plaintiff's behavior has caused other inmates to be afraid of him. Plt. Dep. at 72; Feild Decl. Attachment 1.

During plaintiff's stay at SCI Graterford, there were times when plaintiff would take the psychotropic medications that were prescribed to address his schizophrenia, and there were times that he would *624 refuse to take them. Pl. Dep. at 12-14, 36-39; Feild Decl. ¶ 5.

Plaintiff first had contact with defendant Feild in 1995. Pl. Dep. at 9. At all relevant times, defendant Feild was a Unit Manager of the Special Needs Units at SCI Graterford. Feild Decl., ¶ 4. From 1995 until plaintiff's eventual transfer to SCI Albion in 2002, plaintiff and defendant Feild had frequent discussions regarding plaintiff's psychotropic medications. Pl. Dep. at 9; Feild Decl. ¶ 5. On at least one occasion, plaintiff told defendant Feild about the voices he hears and the "security monitoring defenses." Pl. Dep. at 66. These discussions took place either in the form of Program Review Committee Hearings, which were scheduled meetings also attended by two other prison officials, or as more informal discussions with just defendant Feild in his office. Pl. Dep. at 9-11, Feild Decl. ¶ 5. The informal meetings almost always took place as a result of disruptive or unusual behavior by plaintiff. *Id.* When defendant Feild had meetings with plaintiff, he often urged plaintiff to take his psychotropic medication, and plaintiff always agreed to comply, at least temporarily. *Id.*

One time, during one of their informal meetings called as a result of plaintiff's behavior, defendant Feild told plaintiff that he would be issued what plaintiff believed to be a misconduct if he refused to take his medications. Pl. Dep. at 45, 50; D-1 at 2. Plaintiff agreed to take his medication. *Id.* Defendant Feild did not issue a misconduct or file any other document as a result of this discussion. Feild Decl. ¶ 7; Pl.'s Dep. at 14. Defendant Feild never issued plaintiff a misconduct throughout his incarceration at SCI Graterford (1995 to 2002). Feild Decl. ¶ 7; Pl.'s Dep. at 50.

Plaintiff did receive numerous misconducts from other prison officials during this time period. Pl. Dep. at 21-35; Exhs. D-5 to D-11. On every single occasion that plaintiff received a misconduct while at SCI Graterford, he was not taking his psychotropic medications. The descriptions of each of these misconducts are as follows:

On January 29, 1996, plaintiff was charged with refusing to obey an order, presence in an unauthorized area, and lying to an employee. Plaintiff had a misconduct hearing before Hearing Examiner Donald Jones, who found plaintiff guilty of refusing to obey an order and presence in an unauthorized area. As a result, he sentenced plaintiff to 30 days cell restriction. Exh. D-5; Pl. Dep. at 21-23.

On September 8, 1996, plaintiff was charged with refusing to obey an order and using abusive or obscene language to an employee. On this occasion, the misconduct Hearing Examiner was defendant Mary Canino. Plaintiff pled guilty to using abusive or obscene language to an employee. Defendant Canino found that plaintiff was not guilty of the other charge and ordered that he lose his prison job for the charge to which he pled guilty. Exh. D-6; Pl. Dep. at 23-24.

On November 2, 1996, plaintiff was charged with threatening an employee or his/her family. Defendant Canino found plaintiff guilty and ordered 60 days disciplinary custody. Exh. D-7; Pl. Dep. at 24-26.

On August 6, 1997, plaintiff was charged with refusing to obey an order and lying to an employee. Hearing Examiner Donald James found plaintiff guilty of both charges and sentenced him to 60 days disciplinary custody. Exh. D-8; Pl. Dep. 26-28.

On December 20, 2000, plaintiff was charged with threatening an employee or his/her family with bodily harm. Following plaintiff's plea of guilty to the charge, defendant Canino ordered plaintiff to serve *625 60 days disciplinary custody and lose his prison job. Exh. D-9; Pl. Dep. at 28-30.

On April 20, 2001, plaintiff was charged with threatening an employee or his/her family with bodily harm, indecent exposure, and refusing to obey an order. Defendant Canino found plaintiff guilty of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the three charges and ordered 270 days disciplinary custody. Exh. D-10; Pl. Dep. at 31-33.

On October 5, 2001, plaintiff was charged with assault, threatening an employee or his/her family with bodily harm, using abusive, obscene, or inappropriate language to an employee, refusing to obey an order, and lying to an employee. Plaintiff pled guilty to using abuse, obscene or inappropriate language to an employee. Defendant Canino found plaintiff guilty of the remaining charges, except for lying to an employee, and ordered 180 days of disciplinary custody. Exh.D-11; Pl. Dep. at 34-35.

Plaintiff appealed some of the misconduct findings to defendant Vaughn, who was the Superintendent of SCI Graterford at the time. Defendant Vaughn responded to the appeals, upholding the rulings in each instance. Exh. D-9, D-10; Pl. Dep. 71-72.

Aside from being named on page 2 of plaintiff's Complaint in the "Defendants" section, DiGuglielmo, Buzzar and Smith are not referred to anywhere else in the Complaint. Exh. D-1. Furthermore, not one of these names came up during plaintiff's deposition.

Plaintiff fails to articulate the specific civil rights that he believes have been violated by the Commonwealth defendants. A potential, but unsuccessful, argument is that defendant Feild's requests to plaintiff to take psychotropic medication violated plaintiff's due process rights.

In _Washington v. Harper_, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), the Supreme Court addressed the involuntary administration of antipsychotic drugs through forcible injection to a schizophrenic Washington state prisoner. The Court, in addressing the prisoner's substantive due process rights, held that, while prisoners have a "significant liberty interest" in not taking unwanted antipsychotic medications, this interest may be overcome where the prisoner has a serious mental illness, is dangerous to others, and treatment is in the prisoner's best interest. _Id._ at 227, 110 S.Ct. 1028.

[1] While the instant plaintiff's mental diagnosis is quite similar to the plaintiff in _Harper,_ the facts regarding the administration of the instant plaintiff's medication are quite different. Namely, the instant plaintiff has never been forcibly injected with antipsychotic medications by defendant Feild or anyone else. Plaintiff was permitted to refuse the medication. There were numerous occasions during his time at SCI Graterford when plaintiff was not taking medications. As plaintiff freely admits, at the times of each of his seven misconducts that he incurred at SCI Graterford, he was not taking his medication.

While plaintiff was sanctioned for his misbehavior, he was never punished for not taking his psychotropic medications. Defendant Feild simply urged plaintiff to take this medication. Even the one incident, where defendant Feild was going to send plaintiff to the Restricted Housing Unit as a result of his disruptive behavior unless he took his medication, did not amount to the involuntary medication of plaintiff. Plaintiff had the option of taking or refusing the medication. Any transfer to a different location of the prison as a result of this decision would not give rise to any Constitutional claims, regardless of whether it was for administrative or disciplinary purposes.

*626 In _Sandin v. Conner,_ the Supreme Court held that an inmate's transfer to a more intensive type of custody for disciplinary reasons does not create a liberty interest, implicating due process rights, unless the change "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Subsequent to _Sandin,_ the courts of this Circuit have repeatedly held that temporary transfers to SCI Graterford's RHU, whether for administrative or disciplinary reasons, do not impose such hardships and thus do not create a possible due process violation. _See_ _Griffin v. Vaughn,_ 112 F.3d 703 (3d Cir.1997); _Johnston v. Vaughn,_ No. 00-1844, 2000 WL 1694029 (E.D.Pa. Nov.13, 2000), _Rauso v. Vaughn,_ No. 96-6977, 2000 WL 873285 (E.D.Pa. Jun.26, 2000).

While plaintiff did spend a significant period of time in the RHU as a result of his misconducts, none of the charges related to the failure of plaintiff to take his psychotropic medication. Furthermore, even if plaintiff had been transferred to the RHU at SCI Graterford for simply not taking his medication (something that plaintiff acknowledges never happened), no due process rights would be implicated by such action.

Since the only allegations against defendant Feild involve his requests to plaintiff to take his psychotropic medication, and these actions cannot be considered a civil rights violation, the claims against this defendant cannot stand.

[2] Plaintiff's claims against defendant Canino center

upon her role as Hearing Examiner in several of plaintiff's misconduct hearings. Defendant Canino was the Hearing Examiner for five of plaintiff's misconduct hearings. Plaintiff alleges that of these five hearings, three involved the violation of his civil rights.

The three misconducts plaintiff complains about are the last three he received before his departure from SCI Graterford in 2002, numbers A-327942, A-327928 and A-293982. Plaintiff's claims have to do with the denial of witnesses and counsel at these hearing and the sentences imposed by defendant Canino. Presumably, plaintiff argues that these conditions violated his due process rights.

In *Wolff v. McDonnell*, the Supreme Court outlined the due process requirements applicable in prisoner disciplinary proceedings. The Court held that a prisoner is entitled to advance written notice of the charges, a written statement by the fact-finder identifying the evidence relied upon and reason for the disciplinary action taken, and the opportunity to present evidence and call witnesses. 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Court noted that prison officials should be given broad discretion in permitting witnesses and that "there must be mutual accommodations between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* at 556, 566-67, 94 S.Ct. 2963.

The *Wolff* court also explained that there is no right to counsel at prison disciplinary hearings. *Id.* at 570, 94 S.Ct. 2963. Where the prisoner is illiterate, or, "due to the complexity of the issue, the prisoner would be unable to collect and present the evidence necessary for an adequate comprehension of the case," the prisoner may seek the assistance of a fellow prisoner or, if unavailable, be assisted by staff. *Id.*

In light of *Wolff*, plaintiff's claims based upon the failure of defendant Canino to provide him with counsel may be baseless. Plaintiff did request assistance in all three misconduct hearings, but he did not specify any particular individual from which he sought that assistance. Plaintiff requested *627 that he be provided with a lawyer in two of his requests and "inmate and/or staff" in the third. However, plaintiff has never alleged that he is illiterate or baffled by the issues these misconducts involve. Even if error, the individual defendants who erred are protected by qualified immunity.

[3] Plaintiff's claims regarding his witnesses are likewise without merit. Plaintiff pled guilty to some misconducts which, as defendant Canino noted in writing, negated the need for any witnesses.

At the hearing for another misconduct, Corrections Officer Miller appeared pursuant to plaintiff's request. Plaintiff had requested six prison guards to appear as witnesses. However, plaintiff provides no reason on the request form as to these witnesses' relevance. This omission means plaintiff has not complied with the prison's witness request procedure.

At another misconduct hearing, plaintiff requested two corrections officers as witnesses. This request was rejected by defendant Canino because plaintiff's witness request form was not timely submitted, as it was handed in at the time of the hearing. The witness request form clearly states that it must be submitted by 9:00 a.m. the first working day after the inmate receives notice of the hearing. Plaintiff admits that his request was not timely, but offers an excuse. He claims that he had filled it out in a timely manner, but he was unable to submit it because none of the guards on his cellblock would accept it.

[4] Defendant Canino ruled that plaintiff could not have his two witnesses present since he submitted his witness request form at the start of the hearing. Defendant Canino made the decision despite plaintiff's excuse, which he provided to her. Even if defendant Canino abused her discretion, the error was harmless since the primary witness plaintiff requested was Corrections Officer Heffinger who had authored the misconduct report which contained his version of the facts that formed the basis of the misconduct. The only other witness requested was Corrections Officer Huson, Jr., who plaintiff admits was not present at the time the misconduct was issued and whose only involvement was that he served plaintiff with the notice of the misconduct hearing. Thus, his testimony would be immaterial.

Plaintiff's final civil rights claim against defendant Canino appears to be that he is generally unhappy with her decisions regarding his guilt and sentence imposed. Plaintiff points to nothing specific regarding this allegation other than the fact that plaintiff believes he is being "targeted" by prison officials. He further alleges that if defendant Canino had more thoroughly "investigated" the charges she would realize that on each occasion plaintiff's behavior, while in violation of the rules was justified which-in turn-would alter her decisions regarding his

guilt and sentencing.

The Supreme Court has held that the decisions of a prison disciplinary board meet due process requirements so long as there is "some evidence" supporting the decision. _Superintendent, Mass. Correctional Institution, Walpole v. Hill_, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The Court explained that the relevant inquiry is "whether there is any evidence in the record that could support the conclusion." _Id._

[5] All three of defendant Canino's decisions about which plaintiff complains easily meet this standard. In one misconduct, the misconduct report supports all three of the charges with which plaintiff was charged. Even plaintiff's written version of the events generally coincides with the actions described in the misconduct report. There was an abundance of evidence supporting *628 defendant Canino's decision to find plaintiff guilty.

In another misconduct, the misconduct report gives a detailed explanation of the facts leading to the misconduct issuance. Plaintiff pled guilty to one of the charges and not guilty to the other four. After plaintiff presented his version of the events, defendant Canino found plaintiff guilty of the remaining four charges. The facts provided in the misconduct report supported defendant Canino's decision. The misconduct report alone provides enough evidence to meet the "some evidence" standard. _Carter v. Kane_, 938 F.Supp. 282, 287 (E.D.Pa.1996).

[6] Likewise, plaintiff's sentences for violating prison rules do not raise due process violations. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." _Sandin_, 515 U.S. at 485, 115 S.Ct. 2293.

[7] Plaintiff's claims against defendant Vaughn are based solely upon the fact that he sustained the actions of defendant Canino. Plaintiff appealed some misconducts to defendant Vaughn, who upheld the decisions since there were no procedural errors at the hearings.

[8] The claims against Vaughn cannot stand. _See Bey v. Pa. Dept. of Corrections_, 98 F.Supp.2d 650, 664 (E.D.Pa.2000). It is well-established that the theory of _respondeat superior_ is inapplicable for civil rights violations by individuals acting under color of state law. _Durmer v. O'Carroll_, 991 F.2d 64, 69 n. 14 (3d Cir.1993).

[9] For acts allegedly taken in their individual capacity, " 'defendant[s] in a civil rights action must have personal involvement' to be liable." _Sutton v. Rasheed_, 323 F.3d 236, 249 (3d Cir.2003) (_quoting Rode v. Dellarciprete_, 845 F.2d 1195, 1207 (3d Cir.1988)). This involvement may also be demonstrated through allegations of participation or actual knowledge and acquiescence in the violation. _Rode_, 845 F.2d at 1207. None of the remaining Commonwealth defendants are even alleged to have personally participated in a violation.

[10] DiGuglielmo, Buzzar, and Smith, whose names appear in the "Defendants" section of the plaintiff's Complaint, are not mentioned anywhere else in the Complaint, including the "Statement of the Case" section, which instructs the writer to list each defendant's involvement. Additionally, plaintiff did not make reference to these three individuals during his deposition.

[11] The omission of a defendant's name from the material allegations of a complaint justifies dismissal of the Complaint against that defendant. _Marvasi v. Shorty_, 70 F.R.D. 14, 22-23 (E.D.Pa.1976) (citing _United States ex rel. Tyrrell v. Speaker_, 471 F.2d 1197 (3d Cir.1973)). By the same token, where there is no indication in the pleadings that a defendant played any role in the challenged conduct, the claims against that defendant are subject to dismissal. _E.g., Eckford-El v. Toombs_, 760 F.Supp. 1267, 1272-73 (W.D.Mich.1991); _Hodgin v. Agents of Montgomery County_, 619 F.Supp. 1550, 1554, (E.D.Pa.1985).

Since DiGuglielmo, Buzzar, and Smith had absolutely no personal involvement in the alleged civil rights violations, any damage claims against them in their individual capacities should be dismissed.

[12] The Commonwealth defendants, as state officials, are entitled to the protection of qualified immunity. Qualified immunity protects government officials from damages liability in § 1983 suits unless there has been a constitutional violation of a clearly established right. *629_Conn v. Gabbert_, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).

[13] [14] In determining the applicability of this immunity, the initial inquiry is whether there has been in fact a constitutional violation. _Hope v. Pelzer_,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

289 F.Supp.2d 621                                                                    Page 8
289 F.Supp.2d 621
**(Cite as: 289 F.Supp.2d 621)**

536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Even if so, the second step is to determine whether the right violated was clearly established. *Hope,* 536 U.S. at 739, 122 S.Ct. 2508 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope,* 536 U.S. at 739, 122 S.Ct. 2508 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The alleged rights in question here-the right of a schizophrenic inmate to be free from requests to take his psychotropic medication, and the right to have counsel and any desired witnesses at a prison misconduct hearing-are certainly not clearly established under the facts and circumstances of this case.

Even if any of the Commonwealth defendants did, somehow violate plaintiff's constitutional rights, the violation was not of a clearly established right. Thus, they are shielded from a § 1983 damages claim by qualified immunity.

An appropriate Order follows.

### ORDER

**AND NOW,** this 3rd day of November, 2003, upon consideration of the Commonwealth defendants' Motion for Summary Judgment, it is hereby **ORDERED** that the said Motion is **GRANTED.**

E.D.Pa.,2003.
Whittington v. Vaughn
289 F.Supp.2d 621

Briefs and Other Related Documents (Back to top)

• 2:02cv04346 (Docket) (Jun. 28, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.