# EXHIBIT F

```
             IN THE UNITED STATES DISTRICT COURT

             IN AND FOR THE DISTRICT OF DELAWARE

                           - - -

R.W., individually, by and        :   CIVIL ACTION
through his parent and natural    :
Guardian Sarah Williams, and      :
SARAH WILLIAMS, individually,     :
                                  :
          Plaintiffs,             :
                                  :
     v                            :
                                  :
DELAWARE DEPARTMENT OF            :
EDUCATION, et al.                 :
                                  :
                                  :
          Defendants.             :   NO. 05-662 (KAJ)

                           - - -

                    Wilmington, Delaware
           Thursday, November 10, 2005 at 9:00 a.m.
                  PRELIMINARY INJUNCTION HEARING

                           - - -

BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.

                           - - -

APPEARANCES:


          LAW OFFICES
          BY:  PATRICIA McHALE O'NEILL, ESQ.

                    Counsel for Plaintiff


          DELAWARE DEPARTMENT OF JUSTICE
          BY:  CRAIG ROMOND FITZGERALD, ESQ.
               Deputy Attorney General

                    Counsel for Delaware Defendants



                              Brian P. Gaffigan
                              Registered Merit Reporter
```

```
 1    need to do.  That's an important right that RW has been
 2    deprived.
 3              If this were simply a case of the mother
 4    dictating what education he needed, I certainly wouldn't
 5    even be here.  It's not that.  It's why wasn't I told what I
 6    needed to be told when I needed to be told.  And, sir, I am
 7    personally -- and then I will be quiet -- offended beyond
 8    ever that I could imagine, to have an attorney stand up here
 9    and tell me when I got into a case.
10              THE COURT:  All right.  Well, you can save us
11    all time and emotional angst.  Please don't be offended.
12    I'm sure none was intended and it's not material to the
13    decision.
14              MS. O'NEILL:  Thank you.
15              THE COURT:  All right?
16              MS. O'NEILL:  Thank you, Your Honor.
17              THE COURT:  All right.  Now, we've been together
18    four and-a-half hours.  And this is in addition to many many
19    many hours that obviously have been expended by
20    Ms. Williams, by the school district officials, by State
21    Board of Education personnel and community leaders.  It's
22    been pointed out Mr. Street is here.  He has been active in
23    education in this community for years.  A lot of people
24    spent a lot of time, a lot of effort, a lot of energy and
25    not incidently a lot of money because there are funds
```

1   being expended by the school district in terms of lost
2   productivity of their employees and lawyers that they've
3   hired, lawyers that the State Board of Education has hired,
4   certainly Ms. O'Neill's skills are not free.  They're
5   acquired at cost and expense to her and it's a matter of no
6   small moment that she has spent time briefing and arguing
7   and presenting evidence here.
8           And so I'm left, after all this time, deeply
9   saddened at the waste because it is a waste.  I'm denying
10  this motion for preliminary relief and I'm not going to wait
11  to give you a written opinion on it.  I'm going to try to
12  give you my reasons now because if past performance is any
13  predictor of future behavior, there will be an appeal of
14  this, which is something that can happen.  I'm denying this
15  relief and you can take it to the Third Circuit if you want
16  and, like I said, every decision point has been taken up,
17  from what I can tell in this matter and I'd like you to have
18  the chance to do that if you feel you need to immediately.
19  Because if there is one thing everybody seems to agree on
20  and that I wholeheartedly agree with, it's that Reginald
21  Williams deserves and ought to be in school.
22          This can't be right.  It can't be healthy.  It
23  can't be good for a boy 13 or 14 years old to be at home and
24  not at school.  There is a reason why we have educational
25  opportunities for our kids.  And those educational

1  opportunities are not strictly focused on the academic.
2  They are focused as well on socialization and behavioral
3  questions.
4       Now, I don't for a second discount the strength
5  of the conviction that Ms. Williams has that the decision
6  ill founded.  That is, it wasn't the right idea to send her
7  son to Compass.  And I want to emphasize that is not what
8  this hearing is about.  And if anybody thought that was what
9  this hearing was about, I want to disabuse you of this.  I'm
10 not here to pass a judgment on the quality of your decision
11 about what is good or not good for your son, Ms. Williams.
12      Nor am I here to say whether or not the school
13 district touched every base within their own regulations.
14 The question is not did they do everything right by their
15 own book.  It's whether, at this hearing, you made out a
16 case for preliminary injunctive relief and in the broader
17 case whether due process, whether it was applicable, if it
18 were applicable, was met.  That is all there is before me.
19      As a parent, I have experienced my own
20 frustration on occasion with school issues.  So I repeat,
21 I'm not unsympathetic to the depth of feeling that a parent
22 can have when they feel like these school officials, they're
23 not hearing me.  They don't understand.  They don't
24 appreciate that I know my son or daughter and I want them to
25 follow my lead on this.

1              But I reiterate, the question before me is did
2    you meet the four-pronged test for preliminary injunctive
3    relief?  And the answer to that is no.
4              The first piece of that test is probability of
5    success on the merits.  Not adequately answered in briefing
6    or here today is the point made by the school district that
7    an alternative placement does not implicate due process
8    rights as an expulsion does.  Cases are cited.  I'll note in
9    particular that there is a -- give me a moment -- a case
10   entitled Novars vs. San Marcos Consolidated Independent
11   School District, an Eleventh Circuit case from 1997.  There
12   is a case, Levi Waln v Todd County School District, an
13   Eastern District of Louisiana case which makes the point
14   directly that unlike the issue in Goss when we're talking
15   about alternative placement and not expulsion, we're not
16   talking about a denial of that property interest in
17   education because the education is still available albeit
18   in a setting that the parent or the child might not
19   particularly want.
20             It's still available.  And I have no evidence at
21   this juncture other than Ms. Williams understandable concern
22   about hearing people swear in the halls and acting up in the
23   halls of the Compass School which she would not eagerly send
24   her son into, that that Compass School could not have
25   provided an adequate and appropriate alternative placement

```
 1   for her son.  Not the one you wanted perhaps on the
 2   plaintiffs' side, but nevertheless, one that would have
 3   satisfied the property interest in an education.  And so
 4   there is not a likelihood of success on the merits here
 5   because at that first point, whether or not he has a right
 6   to due process prior to alternative placement, I believe
 7   that the school district had it right.
 8            Even if that were not true, however, on this
 9   preliminary record, it appears to me that there was notice
10   provided on the 19th of November.  I look at Plaintiffs'
11   Exhibit 3 which states the student is scheduled for an
12   alternative placement meeting and it lists the dates,
13   December 2nd and December 13th.
14            Ms. Williams went to both of those meetings.
15   She is obviously an articulate woman, smart, experienced in
16   dealing with the resolution of disputes.  She has been a
17   union representative and understands how to figure out
18   what rights are and how to address rights and that is her
19   background and experience.  And I believe based on the
20   testimony that the custom and practice in the school
21   district is to send a Code of Conduct home with every
22   student at the beginning of the school year.  That it's more
23   likely than not a Code of Conduct went with Reginald
24   Williams at the beginning of the school year.
25            That even if no Code of Conduct were shown to
```

1  her, that it was available to her on the Internet during
2  that time and based on on the record evidence I have,
3  including printouts from a computer in September, from the
4  Newark High School site, that a person of Ms. Williams
5  ability, intelligence knew how to get on the Internet and
6  look to see what the Code of Conduct said, if that was of
7  dramatic importance to her decision making.
8      In any event, it's unrebutted when she went to
9  the second meeting on the 13th she had brought with her
10 character witnesses for her son.  That she brought an
11 advocate who is well known and respected in the community
12 for his understanding of education and educational issues.
13 It seems on this preliminary record more likely than not
14 that she understood that what that notice she got on
15 November 19th said, that is, you are going to talk about
16 alternative placement, where your kid is going to go to
17 school, was going to be discussed.  And it was discussed.
18      And then there are follow-up meetings after
19 that.  So even if due process rights were implicated, on
20 the record before me, it looks like they were satisfied and
21 that therefore there is not a likelihood of success on the
22 merits.
23      I think it's key that I make the following
24 statement as well.  There is no showing of irreparable harm.
25 We're talking what should happen to Reginald going forward.