IN THE UNITED STATES DISTRICT COURT FOR THE DELAWARE
DISTRICT

R.W., a Minor, individually, by and through          :
his parent and natural guardian SARAH WILLIAMS;
AND SARAH WILLIAMS, individually,                    :
            PLAINTIFFS,
      v.                                             :

THE DELAWARE DEPARTMENT OF                           :
EDUCATION; VALERIE WOODRUFF;
personally and in her official capacity as
the Secretary of Education for the State of
Delaware; THE STATE OF DELAWARE BOARD                :
OF EDUCATION; and JOSEPH PIKA, Ph. D.;
JEAN ALLEN; RICHARD M. FARMER, JR.;
MARY GRAHAM, ESQ.; BARBARA RUTT;                            :C.A. No. 05-662
DENNIS SAVAGE; CLAIRBOURNE D.
SMITH; ANNE CASE; VALERIE WOODRUFF;
personally and in their official capacity as Members  :
of the State Board of Education; and
THE CHRISTINA SCHOOL DISTRICT; JOSEPH J.             :
WISE, personally and in his official capacity as the
Superintendent of the District; DAVID SUNSTROM,      :
personally and in his official capacity as the Assistant
Superintendent of the District; SANDRA COUNTLEY,
personally and in her official capacity; SHARON
DENNY, personally and in her official capacity;      :
FREEMAN WILLIAMS, personally and in his official
capacity; THE CHRISTINA SCHOOL DISTRICT              :
SCHOOL BOARD; BRENDA PHILLIPS;                       :
JAMES DURR; GEORGE EVANS, ESQUIRE;
BEVERLY HOWELL; CONSTANCE MERLET                     :
JOHN MACKENZIE; CECELIA SCHERER; and                 :
JOSEPH WISE; all personally and in their official
capacity as Members of the CHRISTINA
SCHOOL DISTRICT; DELAWARE SCHOOL
BOARD ASSOCIATION; SUSAN SHEPARD
AND RED CLAY SCHOOL DISTRICT                         :
:

IN THE UNITED STATES DISTRICT
COURT FOR THIS DISTRICT
OF DELAWARE

R.W. A minor individually
by and through his parent
SARAH WILLIAMS AND SARAH Williams
individually

CA·NO·05-CV-
00662

V

THE DELAWARE Department of EDUCATION
Christina School
District AND Board

MOTION TO AMEND COMPLAINT

AND

MOTION FOR CASE SCHEDU
LING ORDER

COMES NOW The PLAINTIff R.W. AND
his parent SARAH Williams, MOTION
TO AMEND COMPLAINT AND THE NEED
FOR CASE SCHEDULING ORDER

1. Plaintiffs R.W. and SARAH WILLIAMS
NEEDS CASE SCHEDULING ORDER
Xo answer Defendants motion for
Summary Judments

2. Plaintiffs R.W. and SARAH WILLIAMS
NEEDS To take defendants depositions
discovery AND interrogatories

for all defendants to answer
defendant motion for summary
judment.

3. Depositions of defendants
would show clear and supported
violation committed by all defendants

4. Discovery of defendants would
show records and factual evidence
that violated Plaintiffs rights
to due prosess and unlawful
removal from his public education

5. Discovery of defendants will
show factual evidence of
race discrimination

Sarah Zully
SARAH Williams
322 E. 10th Street
Wilm. DE19801
(302) 3847624

CERTIFICATE OF SERVICE

I, SARAH M WILLIAMS AND SARAH M WILLIAMS
mother of R.W. do hereby certify that
on this 3rd day of July, 2006 mail
one copy Plaintiffs SARAH Williams
AND SARAH Williams mother of RW
MOTION TO AMEND COM PLAINT AND
MOTION FOR CASE SCHEDULING ORDER
by First Class mail to

Craig FITZgerald
Department of Justice
102 West Water Street
Dover, De 19904

WILLIAM DOERLER
824 N MARKet Street
Suite 902
P.O. Box 709
Wilm. De 18899

By    SARAH M Williams
      322 E. 10th Street
      Wilm. De 19801
      (302) 3847624
      July 3, 2006

IN THE UNITED STATES DISTRICT COURT FOR THE DELAWARE
DISTRICT

R.W., a Minor, individually, by and through          :
his parent and natural guardian SARAH WILLIAMS;
AND SARAH WILLIAMS, individually,                    :
           PLAINTIFFS,
    v.

THE DELAWARE DEPARTNIENT OF                          :
EDUCATION; VALERIE WOODRUFF;
personally and in her official capacity as
the Secretary of Education for the State of
Delaware; THE STATE OF DELAWARE BOARD               :
OF EDUCATION; and JOSEPH PIKA, Ph. D.;
JEAN ALLEN; RICHARD M. FARMER, JR.;
MARY GRAHAM, ESQ.; BARBARA RUTT;                                        :C.A. No. 05-662
DENNIS SAVAGE; CLAIRBOURNE D.
SMITH; ANNE CASE; VALERIE WOODRUFF;
personally and in their official capacity as Members    :
of the State Board of Education; and
THE CHRISTINA SCHOOL DISTRICT; JOSEPH J.
WISE, personally and in his official capacity as the    :
Superintendent of the District; DAVID SUNSTROM,
personally and in his official capacity as the Assistant
Superintendent of the District; SANDRA COUNTLEY,
personally and in her official capacity; SHARON
DENNY, personally and in her official capacity;         :
FREEMAN WILLIAMS, personally and in his official
capacity; THE CHRISTINA SCHOOL DISTRICT               :
SCHOOL BOARD; BRENDA PHILLIPS;                        :
JAMES DURR; GEORGE EVANS, ESQUIRE;
BEVERLY HOWELL; CONSTANCE MERLET                      :
JOHN MACKENZIE; CECELIA SCHERER; and                 :
JOSEPH WISE; all personally and in their official
capacity as Members of the CHRISTINA
SCHOOL DISTRICT; DELAWARE SCHOOL
BOARD ASSOCIATION; SUSAN SHEPARD
AND RED CLAY SCHOOL DISTRICT                          :
:

DEFENDANTS.

## AMENDED COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is a civil rights action brought on behalf of R.W., a minor, (R.W.)

under the Civil Rights Act of 1871,42 U.S.C. Section 1983; and Title VI of the Civil

Rights Act of 1964; by and through his parent and natural guardian, SARAH

WILLIAMS, (Parent) against the Delaware School Board Association and the Delaware

Department of Education, (DOE); its Secretary, (Secretary); its Board of Directors, (DOE

Board); The Christina School District, (District); its Superintendent and Assistant

Superintendent; its School Board Members, (School Board) and personnel related to the

Alternative School Program, for compensatory and punitive damages for violations of the

Equal Protection and Due Process Clauses of the Constitution of the United States,

Federal and State Laws that protect R.W.'s right to an Education and right to be free from

Discrimination based on race. Further, R.W. seeks a Declaration that the District's policy

and procedures regarding Alternative Placement are unconstitutional for failure to

provide Due Process; and Injunctive Relief to prohibit the  School District from further

violating R.W.' s rights by forcing him to attend an Alternative Placement for one

month prior to his returning to School on August 29, 2005, again in violation of his

Due Process Rights; further to prohibit the District from Discriminating against

minority children in its application of discipline and equal public education.

**II. JURISDICTION AND VENUE**

2. This action is brought pursuant to 42 V.S.C. Sections 1983, 1985 and

1988. Jurisdiction is based on 28 V.S.C. Sections 1331 and 1334. Plaintiffs' cause

of action arises under Title VI of the Civil Rights Act of 1964; The Civil Rights Act

of 1871; 42 V.S.C. Sections 2000 (d) (1) and 2000 (d) (2); 5 V.S.C. Sections 701-

706, and the Fifth and the Fourteenth of the Amendments to the United States

Constitution. Plaintiffs are entitled to Preliminary and Injunctive relief

pursuant to 28 U.S.C., F.R. Civ. P. 65 and under the Laws of the United Stated

because there is no adequate remedy at law and Plaintiffs and other parents have suffered

and will continue to suffer irreparable harm absent injunctive relief. Venue is properly in

this Court in that all parties reside in this District and the matter at issue arose in this

District.

**III. PARTIES**

3. The Plaintiffs are R.W., a thirteen -year old student of the Defendant

District, and his parent and natural guardian, Sarah Williams. They reside at 322

East 10thStreet, Wilmington, County of New Castle, DE 19801 and are citizens of

the State of Delaware.

4. The Delaware Department of Education is located at the Townsend

Building, 401 Federal Street, Dover, DE 19901. It is the governmental agency

responsible for administrating public school programs within the State of Delaware

and is the entity which, pursuant to State law has the ultimate legal control of the

educational process. The DOE has the ultimate authority and duty to cause the

Defendant District to comply with the requirements of state and federal law . The

DOE is a recipient of federal funds. As a result of the failure of the DOE to assure
compliance with the laws, both state and federal, R.W. and his Parent and citizen have
suffered harm and will continue to suffer harm by loss of education; loss of educational
opportunities; serious injury to his ability to become a productive member of the
community and the workforce, emotional harm and other irreparable harm in that
R.W. has loss time for education, sports activities, and social activities which he can
never get back.

  5. Defendant Valerie Woodruff is the Secretary of Education for the State of
Delaware. Under 14 Del. C. Section 101-10103, Secretary Woodruff is responsible
for the overall administration of the DOE. At all times relevant herein, Secretary
Woodruff was responsible for the supervision of agents, servants, and employees of
the DOE and the Board failed to monitor school districts homebound and state board
violations. The Secretary is sued personally and in her official capacity as Secretary of
Education for the State of Delaware. Her office is located in the Townsend Building,
Federal Street, Dover, DE 19901.

  6. Defendant State of Delaware School Board is established under 14 Del. C.
Section 104 and is the governmental agency empowered, among other things: to
decide certain types of controversies and disputes involving the administration of the
public school systems, (14 Del.C. Section 104 (b) (5)) as well as decide all
controversies involving rules and regulations of local school boards (fd. at (7)) and failure
to remand cases without local board hearing.

  7. Defendant Joseph Pika, Ph.D. is President of the Defendant Board and is
impartial decision maker responsible for administration of the Board. He is being sued

4

personally and in his official capacity. His office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

8. Defendant Jean Allen is the vice-president of the Board, and impartial decision maker She is being sued personally and in her official capacity. Her office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

9. Defendants Richard M. Farmer Jr. ; Mary Graham, Esquire; Barbara Rutt; Dennis Savage; Clairbourne D. Smith; Anne Case; Valerie Woodruff; all sit as members of the Board and together with Defendants Pika and Allen, at all times relevant hereto, failed to oversee Defendant District's policies, procedures, and impartial decision maker regarding suspensions, homebound, and Alternative Placements which resulted in harm to R.W. and mother Sarah Williams supra. They are being sued personally and in an official capacity. Their office is located at The Townsend Building, 401 Federal Street/Suite 2, Dover, DE 19901.

10. Defendant Christina School District is a political subdivision of the State of Delaware performing the function of administering public education under the laws of the State of Delaware. It is responsible for and obligated to provide public education to R.W., and enrollment within his feeder pattern.  Its principal place of business is 600 North Lombard Street, Wilmington, DE 19801. The District caused harm to R.W. and his mother Sarah Williams due to unconstitutional policies and procedures which deprived R.W and his mother Sarah Williams of his equal protection and due process rights. The District is a federally funded program and activity under Title VI of the civil Rights Act of 1964 which prohibits discrimination on the basis of race, color or

5

national origin in federally assisted programs and activities receiving assistance from the U.S. Government.

11. Defendant Joseph J. Wise (Wise) is the Superintendent of the Defendant District. At all times relevant herein, Superintendent Wise was responsible for the supervision of agents, servants, and employees of the Defendant District and be incompliance with state regualations. He is sued personally and in his official capacity as Superintendent of Defendant District. His principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Defendant Wise did conspire with other named Defendants to deprive R.W. and his mother Sarah Williams of their equal protection and due process rights.

12. Defendant David Sandstorm, (Sunstrom) is the Assistant Superintendent of Defendant District. At all times relevant herein, Defendant Sunstrom was responsible for the supervision of agents, servants, and employees of the Defendant District. He is sued personally and in his official capacity as Assistant Superintendent of Defendant District. His principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Sunstrom did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

13. Defendant Sandra Countley, (Countley) was appointed the Director of Alternative Placement Defendant District from principal of Christiana High School. At all times relevant herein, Countley was responsible for the Alternative Placement Program, and be incompliance with state and federal law. She is sued personally and in her appointed official capacity as Alternative Placement Program of Defendant District. Her principal place of business is 600 North Lombard Street, Wilmington, DE 19801.

At all times relevant herein, Countley did conspire with Gina Moody, Sharon Denny, and other named Defendants to deprive R.W. and his mother Sarah Williams of their equal protection and due process rights.

14. Defendant Sharon Denny (Denny) is the Coordinator of the Alternative Program for Defendant District. At all times relevant herein, Denny was to be incompliance with state and federal law, and be responsible for the supervision and implementation of the Program. She is sued personally and in his official capacity as Coordinator of the Alternative Program for Defendant District. Her principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Denny did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

15. Defendant Eleanor Ludwigesen (Ludwigsen) the Principal of Shue- Medill Middle School, one of the schools located within the boundaries of the Defendant District at 1500 Capital Trail, Newark, DE 19711. At all times relevant herein, Ludgwigsen was responsible for the supervision of agents, servants, students, and employees of the Middle School. She is sued personally and in his official capacity as Principal. At all times relevant herein, Ludwigsen did conspire with Sharon Denny, Gina Moody, David Sunstrom, and other named Defendants to deprive R.W. and his mother Sarah Williams of his equal protection and due process rights.

16. Defendant Gina Moody is the Assistant Principal of Shue- Medill Middle School, one of the schools located within the boundaries of the Defendant District at 1500 Capital Trail, Newark, DE 19711. At all times relevant herein, Moody was responsible for the supervision of agents, servants, students, and employees of the Middle

School. She is sued personally and in his official capacity as Assistant Principal. At all times relevant herein, Moody did conspire with other named Defendants to deprive R.W. of his equal protection and due process rights.

17. Defendant Freedman Williams (Williams) was appointed the Director of School Operations for the Defendant District. At all times relevant herein, Williams was responsible for the supervision of agents, servants, and employees of the District. He is sued personally and in his official capacity as District Director of Operations. His principal place of business is 600 North Lombard Street, Wilmington, DE 19801. At all times relevant herein, Williams did conspire with other named Defendants to deprive R.W. and his mother Sarah Williams of their equal protection and due process rights.

18. Defendant Christina School Board (School Board) is established under 1L Del. C. Section 1041 et. seq. and has the authority to administer, decide controversies through hearings, and supervise the free public schools of the reorganized school district and have the authority to determine policy and adopt rules and regulations, and be incompliance with state and federal law for the general administration and supervision of the District. Its principal place of business is 600 North Lombard Street, Wilmington, DE 19801. The School Board violated R.W.'s and his mother Sarah Williams' rights by failing to schedule a school board hearing, and to provide due process rights upon a placement in an Alternative School; by permitting a continuous policy and procedures to exist in the Student Code of Conduct, and not within the Student Code of Conduct which discriminate against R.W. and his mother Sarah Williams and denies equal protection by subjecting; R.W. and his mother Sarah Williams to discriminatory treatment in regard to

suspension, extended suspension, homebound, and expulsion for R.W., a minority child. Due to this continuous policy and procedure, R.W. and Parent suffered the harm, supra.

19. Defendants Brenda Phillips; James Durr, George Evans, Esquire; Beverly Howell; Constance Merlet; John MacKenzie; Cecelia Scherer; and Joseph Wise are, at all relevant times, all members of the School Board. They are being sued personally and in their official capacity. Their official place of business is 600 North Lombard Street, Wilmington, DE 19801. The School Board members permitted a continuous policy and procedure to exist, in the Student Code of Conduct, and not within the Student Code of Conduct, which each and every member of the School Board knew failed to provide due process rights in regard to suspensions, extended suspension, homebound, expulsion, and placement in an Alternative School as well as discrimination against minority children on the basis of race and age.

20. At all times relevant hereto and in all of the actions described herein, all individuals and agency defendants were acting in their respective capacities as stated under Color of law, ordinances and regulations of the State of Delaware and statutes of the United States of America, and did subject the Plaintiffs herein to the deprivation of rights, privileges, and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act and gross negligence described herein.

## IV. FACTUALBACKGROUND

21. R.W. was born on June 3, 1991. He is presently 14 years old and was attending Shue-Medill Middle School for the school year 2004-2005 for the eighth grade. This school is located within the District.

22. R.W. attended the District schools nom Kindergarten until November 8, 2004. He was an Honors Student and had a perfect attendance record until November 8, 2004. He received numerous academic awards over his education, including but not limited to, spelling bee awards, science awards, Math awards, sportsmanship awards, and the City of Wilmington Academic Award for his 6th grade year. He also was recognized for intervening in a Rape in Progress on his school bus in 7th grade.

23. On November 8, 2004, in a classroom at Shue-Medill Middle School a fellow student identified as Nick. M. stepped on a long chain which was hanging from the pants of student Jeffrey L. Jeffrey L. offensively touched by throwing his shoulder into R.W. and R.W. gave him a push back.

24. R.W. exited the classroom with other students and began walking down the hallway to his 1st period class.

25. Jeffery L. threatened R.W. and two other students three times with a "death wish." The topic of death wishes and voo-doo had been recently discussed in social studies class. Jeffery L. has a history of voo-doo threats.

26. R.W. then entered another classroom and punched Jeffrey L. under his right eye after Jeffery L. continued his voo-doo threats.

27. Jeffrey L.'s eye was bleeding as and he went to the nurse's office.

28. R.W. was told by his teacher, Mrs. Jefferson to go to the nurse's office because his hand was bleeding.

29. Defendant Moody interceded and sent R.W. to Mr. Carter's office wherein Mr. Carter told R.W. to return to the nurse's office for treatment. There,

Jeffrey L. stated to R.W. in a provocative manner: " Bleed, Bleed, Bleed, it didn't hurt," (referring to his eye), again no action was taken to protect R.W.

30. After treatment, R.W. went back to see Mr. Carter. Parent was called and both were told that R.W. was suspended for 5 days by Charles Carter. Parent asked for a copy of the Student Code of Conduct and was told by Mr. Carter that the School did not have a copy to give her. Two days later, Parent again requested a copy of the Student Code of Conduct and was again told the School did not have one to give her. R.W. and his parent were told 5 days suspension for R.W.'s actions.

31. R.W. returned to school on November 19, 2004 for one-half day when parent received a phone call from Moody stating that R.W. was going to be suspended for five more daysm, but R.W. was suspended for more than 14 months.

32. Parent immediately went to school and met with Moody with Mr. Carter present and asked why was R.W. being suspended -did something else happen? She was told by Moody that Denny, from the District office, ordered her to suspend R.W. for five more days because that he wasn't punished enough.  When other students committed repeat offenses at Shue-Medill, again, Parent requested a copy of the Student Code of Conduct and was told by Moody that the only copy she had was her own and none was given.

33. Parent received an Extension of Suspension form (Revision date 9/99) on November 19, 2004 which suspended R.W. for 5 more days until December 1, 2004. The first paragraph stated that R.W. had been involved in an offense which will result in alternative placement or expulsion. The second paragraph of the form is as follows: "The student is scheduled for an alternative placement meeting on the

11

following date: Dec.2- 8 a.m. BLDG., Dec 13- 9:30 a.m. (Both of the dates were on one line). If the student is recommended for expulsion, the District Office personnel will contact you to schedule a time for the expulsion hearing", when records stated R.W. was expelled.

34. In the interim, R.W. was charged with Assault in the third degree and conspiracy. All three of the minority students were charged, and another minority was named a gang member. The Caucasian male, Jeffrey L. was not, although he instigated the incident. The disparate discipline was done in violation of R.W.' s equal protection rights. R.W. was given a diversionary program by the Family Court of the State of Delaware.

35. A Building level Conference was held on December 2, 2004 attended by Parent, Freeman, Moody, Sley, Carter, and R.W. was denied a building level conference.

36. At that conference, Parent stated that the District's dress code was not enforced on November 8, 2004 (and in fact was never enforced against Jeffrey L., who dresses in the Gothic fashion, but was routinely enforced against minority children) against Jeffrey L. who was wearing chains on his pants, his consistent manner of dress, and Jeffery L. was allowed to practice religion in school by practicing voo-doo.

37. Parent tried to point out that if the dress code had been consistently and equitably enforced against all children and not just minority children, then this incident would not have happened, and failure to supervise classroom.

38. Also, Parent expressed that the two teachers from his home room class were not monitoring the classroom, but rather, talking between themselves in the

hallway, and control the hallway to prevent any misconduct.

39. Also, Parent questioned, upon being told that there was a security tape of the hallway showing R.W. greeting one of his other friends with a "high five" gesture, why was the situation not handled immediately rather than be permitted to escalate, and was not told her son could be arrested, and any statement would be turned over to the police department or there was a written agreement with the school district and police department.

40. Parent stated that she was not familiar with this type of conference and again requested a copy of the Student Code of Conduct and again was not provided with one. She asked who was the school attorney and was told David Sunstrom by Freeman Williams.

41. Parent also asserted that R.W. was in honors classes and involved in many activities and that he was remorseful for his part in the incident.

42. The recommendation from this conference was to: "refer case to District for review." Parent was not told what this meant or given any statement or investigative records.

43. The District's Student Code of Conduct, revised edition, 2004, on page states that the consequences of an assault are (all of the following): 1) Parent/Guardian notification, 2) suspension for five (5) days, 3) parent/guardian conference, 4) notification of police; charges may be filed, 5) restitution/restoration, if necessary, 6) recommendation to appropriate counseling, 7) *possible (*Emphasis added) recommendation for alterative placement or expulsion, and 8) referral to mediation, if appropriate, and no mention of Consortium School.

13

44. At no time relevant heretofore, despite repeated requests, was Parent provided with access to/or a copy of the Student Code of Conduct.

45. Further, at the December 2, 2004 Building level conference, Parent was again not provided with access to/or a copy of the Student Code of Conduct which outlined the District's Disciplinary Procedures or agreement between the school and the police department.

46. At no time was the Assignment to Alternative Programs policy and procedure provided to Parent.

47. The Procedure, as stated in the Student Code of Conduct: Assigned to alternative programs is the placement of a student, with appropriate consideration of due process, in a program designed to meet the student's particular needs. . . (A) Prior to placement in an alternative program the student and the student's parent/guardian shall be conferred with about the student's need to be in a special program. (B) Following the conference the student and the student's parents/guardians shall be given written notice of: (1.) The circumstances which led to the placement; (2.) How the special program is designed to meet the student's needs; (3.) The conditions, which must be met in order for the student to return to the regular school program. . .

48. At no time prior to/or after the December 2, 2004 was Parent given any of the above information in violation of R.W.'s Due Process rights. In fact, the result of this meeting was to refer the case to the District. It did not indicate that the student is referred for an expulsion hearing or placement at Consortium School.

49. At no time prior to/or after the December 2, 2004, was Parent given

information that the Assignment to Alternative Program contained a clause assuring appropriate consideration of due process.

50. At no time prior to/or after the December 2, 2004 was Parent given a Written notice that any due process existed in regard to Assignment to Alternative Programs or Consortium School.

51. At all times relevant herein, the defendants knew that no due process protections for an Assignment to an Alternative Program existed and .knowingly conspired to take no action to remedy this consistent policy or provide hearing before school board.

52. For some period of time, R.W. did receive services from the District identified as "Homebound," which consisted of only five hours a week after two unlawful alternative placements.

53. The next meeting occurred on December 13, 2004. This so called "District level" meeting was held at The Board Room of the District and attended by the Plaintiffs, their Advocate, Moody, Denny, Countley and witnesses on behalf of R.W.

54. A packet was presented at the meeting which had not been presented prior to the meeting, accordingly, there was no time for review by Parent or question witnesses in the packet.

55. Moody, Denny and Countly asked R.W. questions about the incident.

56. R.W. related that the matter began as related above.

57. Parent and witnesses provided character evidence of her son, R.W. as described above.

58. As a result, Countly related that R.W. should be placed at an alternative placement called Compass. There was no statement that. R.W. was expelled or Compass was a Consortium School in the Colonial School District.

59. The procedure for a Step II-District level conference requires that the parent be given Notice that a formal hearing was to be held. It further requires that the Notice be sent by certified mail or hand delivered. The District failed to do this in violation of R.W. Due Process rights.

60. The procedure for a Step II-District level conference requires that a parent be given the reasons for the recommendation of expulsion; names of witnesses and copies of statement. The District failed to do this in violation of R. W. Due Process rights.

61. The procedure for a Step II-District level conference requires that individuals involved in the building process are NOT to be involved in the District level conference. The District ignored this mandate and had individuals involved in the Building level conference participate in the decision at the District level, i.e., Moody. By this action/inaction, the District violated R.W.'s Due Process rights, and labeling him as a gang member.

62. The procedure for a Step II-District level conference requires that the District provide a copy of the School District Expulsion Procedures with the requisite Notice. The District failed to do so. By this action/inaction, the District violated R.W.'s Due Process rights, and provided no appeal right for a school board hearing or state board appeal.

63. At the meeting, Parent requested that the Committee put the decision in

writing and send it to her.

64. Despite another request for access or a copy of the Student Code of Conduct, none was provided.

65. Parent was not informed at that meeting, what, if any, appeal rights or procedures existed. Neither was she ever provided with any written Notice of appeal. The District failed to do so. By this action/inaction, the District violated R. W. 's Due Process rights.

66. On or about December 17, 2004, a referral was made by the Shue- Medill Middle School to Compass School, a locked facility, which indicated that R. W. was an expelled student. Parent did not receive a copy of this referral until she requested it on or about February 25, 2005.

67. Parent received no information regarding Compass School until she called and wrote a letter to Countley on or about January 3, 2005 requesting the policies and procedures regarding alternative placement and due process rights and appeal rights.

68. At that time, Parent was informed by that the decision to place R.W. in an alternative placement had been mailed to her. Parent never received that letter until approximately ten days after her phone call and letter, and no written record.

69. An appeal of the December 13, 2004 decision was made to Wise on January 4, 2005. This was sent to all District Board members.

70. No response to this request was made by Wise or the Board.

71. Despite further calls to Countley, Parent spoke to Countley's supervisor on or about January 18, 2005 because Parent had no response from Countley. Parent

was advised that Sunstrom would call her.

72. Parent met with Sunstrom and Denny on January 26, 2005. Parent informed Sunstrom and Denny that the information regarding the Student Code of Conduct and the appeal process was never received by Parent. Sunstrom apologized for several due process violations, including but not limited to, failure to show a videotape of R.W. after the incident at the December 13, 2004 meeting.

73. Sunstrom also stated that he has been following the regulations in the Student Code of Conduct and that the regulations have been the same for years. Sunstrom has been in Delaware for a year and a half with not regulations training.

74. Parent stated: what are the regulations? Sunstrom could not state even one of the regulations to Parent so he tried unsuccessfully to retrieve a copy from the computer. Parent still had no copy of the Student Code of Conduct or Expulsion Procedures. By this action/inaction, the District violated R.W.' s Due Process rights. Sunstrom was appointed his position.

75. Sunstrom sent a follow-up letter dated January 27, 2005, reciting that Parent admitted that her son punched another student. Parent denies that this conversation took place. This aggressive letter was an attempt to intimidate the Parent in order to pressure Parent to send R.W. to Compass, again in violation of R.W.'s rights and due process.

76. A second request for an appeal of the December 13, 2004 meeting was submitted on February 7, 2005 by Mr. Jea Street, an Advocate for R.W.

77. No acknowledgment of this request was made and no appeal was

Scheduled by Christina School Board, David Sunstrom was not a Christina School Board member.

78. Parent visited Compass School on February 2, 2005. At that time, Parent first learned that R.W. was expelled, contrary to what she had been told, ie., that was given an alternative placement and not an expulsion. However, when Parent later investigated Compass School, she learned that only expelled students were admitted to Compass School. Further, during her visit, Parent observe a 12 year-old student telling the administrator to "s-k his d-k (private parts) and that he was sick of the m---fing school" At the February 2, 2005 visit, a school representative, asked Parent: "Why are you asking so many questions- most parents just sign the papers. "

79. On March 1, 2005, the Advocate, Mr. Street, wrote a letter to Pika, of the State Board, to appeal the decision of the District to expel R.W.

80. Also an appeal was taken on the District's decision to remove R.W. from the regular educational setting to an alternative school without a hearing.

81. On April 12, 2005, Parent attended the District' School Board meeting. At that meeting, Parent again requested a hearing before the Board and no response was given. After the meeting, Sandstorm asked if Parent would re-consider Kirk Middle Alternative School (why had unofficially been offered) and Parent advised that she would think about it. Parent did not reject Kirk placement for the sole reason of lack of transportation, (District sent a bus for handicapped children to pick up R.W., which was unacceptable) but rather did not consider it an appropriate placement, and false information was given to R.W.

19

82. On April 14, 15, 2005, District representatives called Parent to find out her decision whether to send R.W. to Kirk Alternative School. For the first time, Parent learned from one of the representatives that R.W. was considered a problems to his teachers and that the Kirk program was an alternative program. Parent advised the representative that R.W. was not a problem to his teachers.

83. The representative stated that R.W. did not have to attend the alternative program but that he could go to the regular educational setting at Kirk Middle, which was out of his feeder pattern, and Parent made no choice request.

84. Parent asked -if he is going to be placed in a regular educational setting why would he not go back to Shue-Medill Middle School. This question was never answered, and Christina School District had a history of maintaining false records.

85. In response to the March 1, 2005 letter to Pika, Parent was notified that the case would be on the Board's agenda for April 21, 2005. The Board voted to hear the issue of whether the Board had jurisdiction over the matter and oral arguments were scheduled for May 19, 2005.  Unknown to Plaintiffs, wheels were in motion to deny Plaintiffs a fair and impartial hearing.

86. Prior to May 18, 2005, upon information and belief, three members of the Board, Allen, Farmer, and Pepper, attended a meeting at the Delaware School Board Association wherein the R.W. matter was discussed as a topic of concern. A statement was made that if R.W.'s appeal was granted, that the floodgates to litigation would be opened, and votes were taken to legal fees for Christina School District and not report at School District meeting.

87. These three Board members attended the May 18, 2005 oral argument but

did not disclose this association and any information which may have been related to them to Parent or the Board at the May 19, 2005 hearing.

88. Further, Pika stated that he would not assign this matter to a hearing officer, (as is the usual procedure) because he did not know who he could trust to hear the case, and complied with the Christina School District, Christina School Board, and Delaware School Board Association.

89. This conduct was taken as part of the conspiracy to deprive Plaintiffs of their right to a full, fair and impartial hearing on the merits before the State Board of Education.

90. Accordingly, Plaintiffs' rights to a full, fair and impartial hearing were violated by Jean Allen, Farmer, Pepper, Pika, Daniell Cruce, and David Williams

91. At the Board meeting, the attorney for the District, David Williams, Esquire, failed to disclose that he was representing the Delaware School Board Association in addition to the District.

92. The Board decided upon oral argument, that the Board did not have jurisdiction over the matter because there was no direct Board action over the matter. The Board incorrectly stated that there was no appeal made on R.W.'s behalf to the District. An appeal was taken on February 7, 2005, despite the District's failure to provide any information regarding Notice of the Hearing and appeal rights or transcript, remand case back to Local School Board.

93. The Board violated the rights of the Plaintiffs by failure to supervise the District's and the Board's policies and procedures; rules and regulations, regarding exclusion of this child from his educational setting without due process and in

violation of equal protection, thereby conspiring with the District and the Board to deprive R.W. of his education, sports activities, and social activities that harmed R.W. and his mother Sarah Williams.

94. Further, the Board has the statutory responsibility to resolve disputes and refused to perform its duties in violation of R.W.'s due process and equal protection rights and remanded the case wth no local board action.

95. The District further violated R.W.'s rights by threatening criminal charges and truancy against both Parent and R.W. if Parent continued to hold her son out of school while trying to exercise their constitutionally protected rights.

96. The District did file Truancy charges against both Plaintiffs which is pending in truancy court as a form of retaliation and to prevent floodgates from opening.

97. At the present time, the District continues to refuse to provide R.W. with due process, continues to attempt to intimidate Parent, continues to follow its own Rules and Regulation by designating that R.W. must attend an alternative school for the month of September and continues to refuse to place R.W. in his regular education school, continued truancy charges.

98. On or about January 19, 2006, Delaware J.P Court ordered R.W. back to Newark High School for regular education.

## COUNT I

### Violation of The Civil Rights Act of 1964. Title VI

99. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

100. Defendants, by their aforestated actions, have deprived Plaintiffs of

22

their rights under The Civil Rights Act of 1964. Title VI.

101. At all times relevant hereto and in all of the actions described herein, all individual defendants were acting in their respective capacities as stated under Color of Ordinances and Regulations of the School District, statutes of the State of Delaware and statutes of the United States of America and did subject Plaintiffs herein to the deprivation of their rights, privileges and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described hereafter.

102. The Civil Rights Act of 1964, Title VI provides that no person in the Unites States shall, on the grounds of race, color or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under program or activity receiving financial assistance.

103. The State of Delaware and the Christina School District, agents and employees of both public agencies are the recipients of federal assistance.

104. The Civil Rights Act of 1964, Title VI provides that no state shall be immune from suit under the Act, or any other Federal statute prohibiting discrimination.

105. All defendants, as described above, did discriminate against the Plaintiff on the basis of race, specifically the disparate discipline given to R.W. in reference to another actor in this matter who was a white individual who initiated the incident complained of herein, who received no discipline at all.

106. All defendants have caused the plaintiff, a child, to be excluded from participation in, denied the benefits of, and subjected to discrimination in his

educational program, solely on the basis of his race, and failure to provide due process at all levels. All Plaintiffs have been injured by defendants' actions and inactions.

## COUNT II

### Violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983

107. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

108. Defendants by the aforestated actions have deprived Plaintiffs of their rights to Due Process of law as guaranteed by the Fourteenth Amendment, in violation of the Civil Rights Act of 1871,42 D.S.C. Section 1983.

109. Defendants are "person" as defined by 42 D.S.C. Section 1983.

110. At all times relevant hereto and in all of the actions described herein, all individual defendants were acting in their respective capacities as stated under Color of Ordinances and Regulations of the School District, statutes of the State of Delaware and statutes of the United States of America and did subject Plaintiffs herein to the deprivation of their rights, privileges and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described hereafter.

111. Acting under color of law, by and through a policy custom or practice, defendants intentionally, knowingly recklessly or with deliberate indifference to the rights of the plaintiffs failed to instruct, train, supervise and control on a continuing basis the procedures and policies involving due process for Alternative School Placements.

24

112. Acting under color of law, by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs failed to instruct, train, supervise and control on a continuing basis the procedures and policies regarding discipline of students thereby resulting in a disparity in the number of minority children placed in Alternative Placements and/or expulsion.

113. Acting under color of law by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs failed to instruct, train, supervise and control on a continuing basis the procedures and policies regarding deprivation of the Plaintiff s right to his education as guaranteed under the laws of the state of Delaware, the United Stated and the Constitution.

114. Acting under color of law, by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs failed to instruct, train, supervise and control on a continuing basis the procedures and policies regarding denial of Plaintiffs appeal to both the District Board of Education and the Delaware State Board of Education.

115. Acting under color of law, by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs conspired to deny Plaintiffs their rights under the law.

116. Defendants' conduct demonstrates a reckless and callous attitude toward the federally protected rights of the Plaintiffs as enumerated herein.

117. By failing to abide by The Civil Rights Act of 1964, Title VI, The Civil Rights Act of 1871, the Due Process and Equal Protections as provided by the Constitution of the United States of America, the defendants have caused the plaintiff, a child, to be excluded from participation in, denied the benefits of, and subjected to discrimination in his educational program, solely on the basis of his race, and failure to provide due process at all levels. All Plaintiffs have been injured by defendants' actions and inactions.

## COUNT III

### Violation of Equal Protection and Due Process Rights

118. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

119. Defendants by the aforestated actions have deprived Plaintiffs of their rights to Equal Protection and Due Process of law as guaranteed by the Fourteenth Amendment, in violation of the Civil Rights Act of 1871,42 U.S.C. Section 1983.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court:

A) Find and hold that the Plaintiffs suffered acts and/or acts of omissions of Due Process and Equal Protection by the defendants;

B) Enter an emergency, preliminary and permanent injunction under the laws of the Unites States enjoining all defendants to comply with said statutes and to provide due process and equal protection;

C) Enter an emergency, preliminary and permanent Injunction to the District to return the Plaintiff to his regular education school;

D) Award compensatory and punitive damages for violations of Plaintiffs' civil rights, in an amount deemed appropriate at trial;

E) Correct and purge R.W.'s school record regarding the November 8, 2004-incident;

F) Award Plaintiffs the cost of this actions and its pursuit thereof as well as attorney fees; and

G) Award such other and further relief as may be deemed just and proper.


Sarah Williams

322 East Tenth Street
Wilmington, De 19801
302-384-7624


Date:   June 30, 2006

27