# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                                                                           Page 1
Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
John DOE and Jane Doe, his mother, Plaintiffs,
v.
WOODRIDGE ELEMENTARY SCHOOL DISTRICT NO. 68 BOARD OF EDUCATION; Al McGowan, individually and in his official capacity; Robin Lewis, individually and in her official capacity; and Regina Woodson, individually and in her official capacity, Defendants.
No. 04 C 8250.

April 13, 2005.

Randall F. Peters, Randall F. Peters & Associates, Chicago, IL, for Plaintiffs.
Darcy L. Proctor, Lucy Bernice Bednarek, Thomas George DiCianni, Ancel, Glink, Diamond, Bush, DiCianni & Rolek, P.C., Chicago, IL, for Defendants.

*MEMORANDUM OPINION*
KOCORAS, Chief J.
*1 This matter comes before the court on the motion of Defendants Woodridge Elementary School District No. 68 Board of Education ("Woodridge"), Al McGowan ("McGowan"), and Robyn Lewis ("Lewis") to dismiss the fifteen-count complaint of Plaintiffs Jane Doe and her son, John Doe, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

BACKGROUND

John Doe ("Doe") is a minor African-American male who attended John L. Sipley Elementary School in Woodridge, Illinois. Doe alleges that for a five-month period, from January 2001 through May 2001, he was sexually abused by a teacher's aide at the school, Regina Woodson ("Woodson").

Woodson allegedly used her position as a teacher's aide to sexually groom and sexually abuse Doe. The sexual grooming included removing Doe from the school premises in order to abuse him, offering to omit lessons or lessen school punishment in exchange for sexual favors, enticing him with gifts of food and clothing, offering him alcohol, impersonating Jane Doe to the school in order to get Doe excused from school, and deceiving Jane Doe as to the whereabouts of her son after school. The abuse included accepting sexual favors for the omission of school lessons or the lessening of punishment, threatening physical harm if Doe disclosed the abuse, and abusing Doe both on and off school premises.

Jane Doe allegedly requested that Woodson leave her son alone and that she refrain from driving him home; however, these requests were ignored. Jane Doe also allegedly asked school officials to prevent Woodson from removing her son from the school premises, but these requests also were ignored.

Jane Doe alleges that Lewis, Principal of Sipley Elementary School, and McGowan, Superintendent of the School District, were repeatedly made aware of the abuse and "turned a blind eye" to reports of the abuse because she and her son were African-American. Jane Doe and Doe sued Woodridge, McGowan, Lewis, and Woodson, alleging in part that Woodson's sexual grooming and/or abuse and the remaining Defendants' failure to supervise Woodson and stop the abuse resulted in numerous federal constitutional and state statutory and common law violations. Woodridge, McGowan, and Lewis (collectively referred to as the "Defendants") now move to dismiss Counts Two through Five and Counts Seven through Fifteen, asserting various statutory and procedural defenses. We address each argument in turn.

LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts that set forth the essential elements of the cause of action. *Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996). In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

459, 461 (7th Cir.1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). With these principles in mind, we turn to the present motion.

DISCUSSION

I. Federal Claims

A. Count Two

*2 Count Two of the complaint is a claim brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), alleging that the sexual abuse and/or grooming of Doe was the result of racial discrimination and that the abuse was intentionally discredited by Woodridge. The complaint also alleges that the abuse Woodson allegedly inflicted and the Defendants' policy towards the abuse had a disparate impact on African-American boys.

The Defendants claim, in part, that Jane Doe has no standing to assert a Title VI claim because, as a parent and non-student, she is not an intended beneficiary of a federally funded program. We agree.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). A plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program in order to state a claim under Title VI. Simpson v. Reynolds Metals Co., 629 F.2d 1226, 1235 (7th Cir.1980).

Here, Jane Doe alleges that she and her son are the "intended beneficiaries of federal assistance to public schools." However, merely asserting that a parent is the intended beneficiary of a federally funded program does not make it so. Plaintiffs have failed to cite a case where a parent was deemed the beneficiary of a federally funded program for the purposes of a Title VI claim. The Defendants have pointed to cases from various courts holding that parents do not have standing to sue under Title VI.

We find the analysis in these cases to be persuasive. See Jackson v. Katy Indep. Sch. Dist., 951 F.Supp. 1293, 1298 (S.D.Tex.1996) (holding that the intended beneficiaries of a federally funded public school program are school children, not their parents). Therefore, Jane Doe personally lacks standing to assert a claim for damages against the Defendants, but may bring an action on behalf of her minor son, who, as an intended beneficiary of the school, has standing to assert a claim for discrimination under Title VI.

The Defendants also challenge Doe's claim under Title VI in that the allegations of disparate impact cannot be sustained. We agree.

The complaint sets forth that the discrimination at issue was intentional and that it had a distinctively disparate impact on African-American students. Insofar as Count Two alleges disparate impact, it must be dismissed under Alexander v. Sandoval, 532 U.S. 275, 285, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). In Sandoval, the Supreme Court held that Section 601 of Title VI prohibits only intentional discrimination. Sandoval, 532 U.S. at 280. The Seventh Circuit has expressed similar sentiments in Craft v. Bd. Of Regents of Univ. of Illinois, holding that "proof of intentional discrimination [has been consistently required] ... as a basis for compensatory relief" in Title VI claims. Craft, 793 F.2d 140, 142 (7th Cir.1986). Therefore, Plaintiff's allegations in Count Two that are based on disparate impact discrimination are dismissed, while those relating to intentional conduct may stand.

B. Counts Three and Four

*3 Count Three is a § 1983 claim brought against McGowan, Lewis and Woodson in their individual capacities, and Count Four is a § 1983 claim against the same Defendants in their official capacity and Woodridge. Both claims allege a violation of the Plaintiffs' due process and equal protection rights due to sexual and racial discrimination.

1. Count Four (Against the Defendants in their Official Capacity)

The Defendants contend that Count Four must be dismissed under Monell v. New York City Dep't of Social Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In Monell, the Supreme Court established that local governments could not be held liable under

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

a *respondeat superior* theory. Rather, a local government could be held liable solely when the constitutional deprivation arises from a governmental custom. *Id.*

Here, the Plaintiffs have not made any specific allegations with regard to McGowan, Lewis, or Woodson that would indicate that these Defendants acted in their official capacity in carrying out a policy or custom of racial and sexual discrimination that was in place at Woodridge at the time the alleged events occurred. Accordingly, the portion of Count Four that are against the Defendants in their official capacity is dismissed.

2. *Counts Three and Four (Section 1983 Claims)*

Next, the Defendants assert various defenses, including preclusion, statute of limitations, and failure to state a claim, and seek dismissal of Counts Three and Four of the complaint. Count Three alleges a § 1983 claim against the individual Defendants. Specifically, the Plaintiffs claim that Woodson sexually groomed and/or abused Doe because he was an Africa-American male. Count Three also contains allegations that McGowan and Lewis knew of the sexual abuse and discrimination and "turned a blind eye to reports of abuse from African-American parents." Count Four contains allegations that Woodridge demonstrated "deliberate indifference" to the Constitutional rights of the Plaintiffs, and that it engaged in an official policy or custom of discrimination. Both Counts Three and Four allege that these actions caused injury to Jane Doe and her son.

a. *Preemption of Both Section 1983 Claims*

First, the Defendants seek dismissal based on a theory of preemption. Specifically, the Defendants argue that the § 1983 claims are preempted by the availability of Title VI and Title IX actions. To support their argument, the Defendants rely on *Delgado v. Stengall*, 367 F.3d 668 (7th Cir.2004). Plaintiffs counter that the Defendants' reliance on *Delgado* is misplaced.

In *Delgado*, the Seventh Circuit held that a university student could sue her professor for sexual harassment under § 1983. However, with respect to the university, the Court noted that Title IX "furnishes all the relief that is necessary to rectify the *discriminatory policies or practices of the school itself.*" *Delgado,* 367 F.3d at 674 (emphasis added). Preclusion does not occur when the teacher engages in abuse that is not a policy or practice for which a school could be held liable under Title IX. *Id.* Thus, the distinction between teacher and school official becomes "crucial" when determining whether § 1983 claims are preempted by Title IX. *Id.*

*4 Count Three is a § 1983 claim against the individual Defendants. In Count Three, the Plaintiffs do not allege that the discrimination was due to the school's discriminatory policy, but rather that the Defendants engaged in discrimination in their individual capacity. Because the alleged conduct in Count Three is not that of school policy but of individual conduct, like that in *Delgado,* the Defendants' preclusion argument fails.

With respect to Count Four, however, which alleges a § 1983 claim against the Defendants in their official capacity, the Plaintiffs do allege that the discrimination was Woodridge's "official custom or policy." We find that under *Delgado,* Count Four is precluded by the availability of a claim against Woodridge under Title IX. *See Delgado,* 367 F.3d at 674. Accordingly, the Defendants' motion to dismiss Count Four of the complaint is granted.

b. *Jane Doe's Section 1983 Claims and the Statute of Limitations*

Both Counts Three and Four allege injury to Jane Doe due to the discriminatory actions of the Defendants. The Defendants argue that Jane Doe is time-barred from raising these claims under *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 277 (7th Cir.1989) and *Ashafa v. City of Chicago,* 146 F.3d 459, 462 (7th Cir.1998). Both cases stand for the proposition that § 1983 claims are subject to a two-year statute of limitations.

Section 1983 does not contain an express statute of limitations. In order to determine the proper statute of limitations for § 1983 actions, a federal court must adopt the forum state's statute of limitations for personal injury claims. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The appropriate statute of limitations for § 1983 cases filed in Illinois is two years. *Ashafa,* 146 F.3d at 462; *see also* 735 ILCS § 5/13-202.

Here, the complaint at issue was filed well over two years after the alleged abuse and discrimination. Accordingly, Jane Doe's § 1983 claims must be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00662-GMS-MPT   Document 66-2   Filed 07/11/2006   Page 5 of 6

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

dismissed.

### c. Doe's Section 1983 Claims

The Defendants argue that Counts Three and Four should be dismissed with respect to Doe as well because the complaint does not sufficiently allege that Woodson's abuse was under color of state law. The Plaintiffs contend that Woodson was "clothed with the requisite authority" which facilitated the abuse.

In order to sustain a § 1983 claim, the plaintiff must allege the violation of a constitutional right and must show that the deprivation was committed by a person acting under color of state law. *Bowman v. City of Franklin,* 980 F.2d 1104 (7th Cir.1992). A municipality may be held liable if the alleged constitutional deprivation occurred pursuant to a municipal policy or custom. *Monell,* 436 U.S. at 658; *Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir.1990).

The traditional definition of acting under color of state law requires that "the defendant in a § 1983 action has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Taking all allegations as true and construing inferences in favor of the Plaintiffs, it is clear that Doe has sufficiently pleaded that Woodson's abuse was conducted under the color of state law. Woodson was a teacher's aide, specifically assigned to Doe, and she allegedly used her authority to sexually groom and/or abuse him. The alleged abuse was made possible while Woodson was clothed with the authority of state law: Woodson allegedly offered to omit lessons and decrease punishment if Doe would engage in sexual favors, which he allegedly did. The alleged abuse, as can be inferred from the complaint, took place both on and off of school premises. Woodson abused the position given to her by the state and thus acted under color of law. Consequently, she was acting under color of state law and Doe's § 1983 claims survive the Defendants' motion to dismiss.

### II. State Law Claims

*5 Count Seven and Counts Nine through Fifteen are state law claims, which the Defendants claim are barred by the one-year statute of limitations set forth in the Illinois Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/8-101. Count Seven alleges intentional infliction of emotional distress against Defendants McGowan and Lewis. Count Nine alleges that the School District violated the Illinois Hate Crimes Act, 720 ILCS 5/12-7.1. Count Ten alleges negligence per se, Count Eleven alleges willful and wanton conduct in the execution or enforcement of the law, Count Twelve alleges negligent supervision, and Count Thirteen alleges negligent hiring. Counts Ten through Thirteen are against Woodridge, McGowan, and Lewis. Count Fourteen alleges that Woodridge ratified Woodson's abuse. Finally, Count Fifteen alleges that all Defendants negligently breached a special duty owed to Doe.

### A. Jane Doe's State Law Claims

The alleged events at issue took place in 2001. The Plaintiffs filed their complaint well over three years later, on December 22, 2004. The Plaintiffs assert that the Tort Immunity Act is not controlling; rather, they argue that the applicable statute of limitations is set forth in 735 ILCS 5/13-202.2, which sets the statute of limitations for childhood sexual abuse as ten years after the limitation period begins to run or within five years the person abused discovers or should have discovered that an injury due to childhood abuse was sustained.

We agree with the Defendants' contention that by its plain language 735 ILCS 5/13-202.2 does not apply to Jane Doe's claim, since she is not the "person abused." Consequently, the Tort Immunity Act applies to Jane Doe's state tort claims. Accordingly, because the complaint was filed more than one year after Jane Doe became aware of her claims, Counts Two, Nine, Ten, Eleven, Thirteen, Fourteen, and Fifteen are dismissed with respect to Jane Doe.

### B. Doe's State Law Claims

#### 1. Intentional Infliction of Emotional Distress

Defendants also seek dismissal of Doe's state law claims. In Count Seven, the Plaintiffs allege a state law claim for intentional infliction of emotional distress against McGowan and Lewis. The claim is based on their purported failure to prevent Doe's abuse, investigate Woodson's background, respond to reports of abuse, and supervise Woodson's activities.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A cause of action for the tort of intentional infliction of emotional distress exists when: (1) the conduct involved is truly extreme and outrageous; (2) the actor either intends, or knows that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct does, in fact, cause severe emotional distress. *Giraldi v. Lamson,* 205 Ill.App.3d 1025, 1028, 150 Ill.Dec. 829, 563 N.E.2d 956 (Ill.App.Ct.1990).

Here, the complaint alleges that McGowan and Lewis were informed of the abuse, yet engaged in policy of deliberate indifference despite repeated attempts to call attention to the abuse. Doe alleges that McGowan and Lewis' conduct was intended to inflict severe emotional distress and that Doe did in fact suffer severe emotional distress as a result. Accordingly, Doe has set forth sufficient allegations to survive dismissal at this stage of the controversy.

### 2. Scope of Employment

*6 Defendants argue that Count Two and Counts Nine through Fifteen should be dismissed because Woodson was acting outside the scope of her employment. We agree.

Under Illinois law, a municipality may only be held liable for the tortious conduct of its employees when the act occurs within the employee's scope of employment. *See Wright v. City of Danville,* 174 Ill.2d 391, 405, 221 Ill.Dec. 203, 675 N.E.2d 110 (Ill.1996). An employee's actions fall within the scope of employment if "(a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." *Pyne v. Witmer,* 129 Ill.2d 351, 359, 135 Ill.Dec. 557, 543 N.E.2d 1304 (Ill.1989). While even criminal acts of an employee may fall within the scope of employment, "if the employee's actions are different from the type of acts that he is authorized to perform or were performed purely in his own interests, he has departed from the scope of employment." *Wright,* 174 Ill.2d at 405, 221 Ill.Dec. 203, 675 N.E.2d 110.

Here, Woodson's alleged actions were obviously those she was not authorized to perform and the actions were perpetuated purely in her own interests and not for a purpose to serve her employer. Accordingly, Doe's state law claims against Woodridge, McGowan, and Lewis are dismissed.

### CONCLUSION

Based on the foregoing analysis, the Defendants' motion to dismiss is granted in part and denied in part. With respect to Jane Doe's claims, Counts Two, Three, Four, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen are dismissed. With respect to John Doe's claims, Counts Two, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen are dismissed.

Plaintiffs' complaint was not in compliance with Federal Rules of Civil Procedure 8(a) and 10(b). Plaintiffs have requested leave to file an amended complaint to rectify non-compliance with the Rules. Accordingly, leave is granted to file an amended complaint as to the remaining counts.

N.D.Ill.,2005.
Doe v. Woodridge Elementary School Dist. No. 68 Bd. of Educ.
Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3124075 (Trial Pleading) Complaint and Demand for Jury Trial (Dec. 22, 2004) Original Image of this Document (PDF)
• 1:04cv08250 (Docket) (Dec. 22, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.