# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Muriel COLLINS, natural guardian of Willie Foxworth, a minor, Plaintiffs,
v.
CHICHESTER SCHOOL DISTRICT, et al., Defendants.
No. CIV.A. 96-6039.

June 29, 1998.

*MEMORANDUM*

REED, J.

*1 Currently before the Court is the motion of defendants Chichester School District, Chichester School Board, Philip Voshell (Principal), Salvatore Illuzzi (Superintendent), Samuel Ferrante (Assistant Superintendent), and Cynthia Bottomley (Teacher) (collectively referred to as "School Defendants") to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 39). I have considered all the responses and replies of the parties thereto. I will grant the motion for the following reasons.

PROCEDURAL HISTORY

Plaintiff Muriel Collins is the natural guardian and mother of plaintiff Willie Foxworth ("Foxworth"), a minor. Plaintiffs filed a complaint on September 3, 1996 and filed an Amended Complaint on November 8, 1996 against all School Defendants as well as Upper Chichester Township and Meadow Wood Hospital. In an Order dated July 18, 1997, this Court granted the motion to dismiss of School Defendants on the grounds that the Amended Complaint was vague and failed to specify which particular allegation violated which legal theory and to identify relevant material elements for a cause of action. In its July 18th Order, this Court gave specific guidance to plaintiffs regarding the legal requirements for pleading these claims. This Court also granted plaintiffs leave to file an amended complaint to correct these deficiencies.

On August 4, 1997, plaintiffs filed a timely Second Amended Complaint. And, soon thereafter, School Defendants filed a motion to dismiss.[FN1]

> FN1. Defendants Upper Chichester Township and Meadow Wood Hospital do not join the instant motion before the Court nor have they filed separate motions to dismiss.

THE SECOND AMENDED COMPLAINT

Plaintiffs submit a lengthy Second Amended Complaint. The causes of action therein against the School Defendants are labelled as follows:
(1) Claims for Relief under the 14th Amendment against School District, School Board and Individual School Defendants (¶¶ 14-89);
(2) Claims for Relief under Title VI of Civil Rights Act of 1964 against School District and School Board (¶¶ 90-92);[FN2]

> FN2. Plaintiffs withdraw their claim under Title VI against defendants Illuzzi, Ferrante, Voshell, and Bottomley. (Pl. Mem. at 25, Document No. 46).

(3) Claims for Relief under the 14th Amendment-Due Process against School District, School Board, and Individual School Defendants (¶¶ 93-97);[FN3]

> FN3. Defendant Bottomley is not named in this claim. It is unclear whether this was done deliberately or inadvertently.

(4) Claims for Relief under 42 U.S.C. § 1983 against School District and School Board (¶¶ 98-104);
(5) Claims for Relief under 42 U.S.C. § 1981 (¶¶ 105-109);
(6) Claims for Relief under Pennsylvania Human Relations Act, 43 Pa. Cons.Stat. Ann. § 951, et seq. (¶¶ 110-115); and
(7) Claims for Relief under Pennsylvania State Law for Libel and Slander against Individual Defendants Voshell, Illuzzi, Ferrante, and Bottomley (¶¶ 116-128).

The remaining claims set forth in the Second Amended Complaint are not against School

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Defendants, and thus are not relevant here.[FN4] The facts of this case, while not complex, are especially lamentable. Foxworth is a young African-American male student who appears to be experiencing significant, if not severe, behavioral and academic problems in his school, with teachers, with classmates, and with classes. While Foxworth may be in need of help, his remedy, however, does not lie in the federal justice system.

> FN4. These claims are 14th Amendment Due Process and Equal Protection violations against defendant Upper Chichester Township, and libel and slander against defendant Meadow Wood Hospital.

FACTUAL BACKGROUND

*2 The following summary of facts are taken from the Second Amended Complaint.[FN5] The Second Amended Complaint alleges numerous incidents where Foxworth was involved in physical altercations with other students and other misconduct, which resulted in formal disciplinary action. Specifically, plaintiffs allege that Foxworth was physically assaulted by a white male student in the school bathroom and Foxworth retaliated to protect himself. Foxworth received a three-day suspension as a result of the incident. On October 21, 1994, Foxworth was again suspended for three days when he was alleged to have placed glue on a student's locker and to have had an altercation with another student in the school cafeteria. And, finally, on January 12, 1995, Foxworth was suspended for having been accused of passing gas in a teacher aid's face.

> FN5. _Miree v. DeKalb County_, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

One incident in particular involved purported sexual misconduct by Foxworth while on a school bus trip on September 26, 1994. During the investigation of the incident, Bottomley instructed students to write down what happened on the bus. Foxworth, at that time, was sent to the Vice Principal's, Voshell, office. Voshell purportedly read aloud accounts written by other students about the bus incident and told Foxworth that Voshell knew Foxworth "did it." Foxworth denied any sexual misconduct on his part and requested that Voshell call the alleged victim and accusers to the office. Voshell called two black male students and two white female students to his office. Foxworth and one of the black male students were the only students to receive suspension. On October 4, 1994 Voshell held a parent conference with Muriel Collins and her husband, Foxworth, and a police officer called Corporal Mignogna. At that meeting, Voshell accused Foxworth of sexual misconduct during the bus incident. Although the precise dates are not entirely clear, the Second Amended Complaint alleges that Foxworth was suspended for a total of thirteen days. It appears as if Foxworth received initially a three-day suspension that was subsequently extended for ten additional days from October 3, 1994 to October 12, 1994. The Second Amended Complaint also alleges that Foxworth was not permitted to return to school until October 18, 1994. (_See_ Second Amended Complaint ¶ ¶ 36, 43, 51, 52, 53, 59, 96). Plaintiffs allege that Foxworth was never provided an opportunity to give his version of the events that transpired on the bus. Plaintiffs further allege that the Chichester School District has a written policy which provides that the parents of a student suspended in excess of three days has the right to an informal hearing, where the parents as well as the student may call witnesses and cross-examine witnesses.

Plaintiffs also allege that the disciplinary actions taken by School Defendants toward Foxworth as a result of the aforementioned incidents were for the purpose of building a negative record against Foxworth in order to remove him from the school district or place him in the special education program, and were harsher due to his race than that taken toward white students.

LEGAL STANDARD FOR MOTION TO DISMISS

*3 When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must accept as true and view in a light most favorable to the plaintiff all allegations made in the complaint. _H.J. Inc. v. Northwestern Bell Tel. Co.,_ 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); _Rocks v. City of Philadelphia,_ 868 F.2d 644, 645 (3d Cir.1989). The complaint should not be dismissed unless the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. _Hishon v. King & Spalding,_ 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); _Ala, Inc. v. CCAIR, Inc.,_ 29 F.3d 855, 859 (3d Cir.1994).

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)  
**(Cite as: Not Reported in F.Supp.)**

Page 3

## DISCUSSION

School Defendants assert a plethora of bases for dismissing the Second Amended Complaint.[FN6]

> FN6. While many of these bases are compelling, the sheer numerosity of these bases gives the appearance of merely hoping to stumble upon a winning argument. Such briefing style is discouraged.
> I also note that I reject the argument of School Defendants that plaintiffs' causes of action are barred by the statute of limitations. Based on my comparison of the Amended Complaint and the Second Amended Complaint, I find that the latter does, in fact, "relate back" to factual allegations set forth in the earlier complaint. Thus, I turn to the merits of the claims as reviewed under a motion to dismiss standard.

### A. *Standing of Plaintiff Muriel Collins*

The right to a free public education is a right which belongs to students and not their parents. *Goss v. Lopez,* 419 U.S. 565, 573-74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

After studying the Second Amended Complaint, I find that Muriel Collins in support of her claims in her own right (*See* Second Amended Complaint ¶ 4) fails to assert any claims that she herself suffered a constitutional deprivation. Plaintiffs argue that Muriel Collins has a property interest in her son's education because she pays for it with taxes. I reject this argument. While parents typically have taxpayer standing to challenge religious activities conducted in the school under the Establishment Clause of the First Amendments, the courts have never held that parents have standing to assert constitutional due process or equal protection claims belonging to their children.

Additionally, in support of their contention that Muriel Collins has been injured in her own right, plaintiffs point to various allegations in the Second Amended Complaint where School Defendants failed to answer her letters and disallowed her an informal hearing regarding her son's suspension. This argument also lacks merit. The claims of Muriel Collins arise from and are integrally related to the School Defendants' treatment of her son, Foxworth. Thus, it cannot be said that Muriel Collins has legally enforceable claims in her own right separate and distinct from those of her son.

I therefore conclude that Muriel Collins lacks standing to assert any constitutional claim. Accordingly, having permitted Muriel Collins to amend her complaint for the second time, I will now dismiss with prejudice Muriel Collins as party plaintiff in her own right from the Second Amended Complaint. Muriel Collins shall remain a plaintiff only in her status as parent and natural guardian of Foxworth. (*See* Second Amended Complaint ¶ 3).

### B. *Fourteenth Amendment, Section 1981, and Section 1983*

*4 The Second Amended Complaint contains overlapping claims. There are two Fourteenth Amendment claims (one of which is labelled Due Process) against School Defendants as well as a separate 42 U.S.C. § 1983 ("Section 1983") claim against the School District and the School Board. "Section 1983 is a remedial statute. It 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.' " *Rembert v. Monroe Township Bd. of Ed.,* Civ. No. 95-4818, 1997 WL 189318, at *5 (D.N.J. Apr.14, 1997) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Due to the overlapping and potentially confusing nature of the claims as alleged in the Second Amended Complaint, I will categorize them into claims related to due process violations and claims related to race discrimination.

#### (1) *Due Process*

The United States Supreme Court in *Goss* held that the Due Process Clause requires that before a school may order a suspension of ten days or less, a student must be given notice of the charges, an explanation of the evidence against him, and an opportunity to present his side of the story. *Goss,* 419 U.S. at 581; *see also Palmer by Palmer v. Merluzzi,* 868 F.2d 90, 93 (3d Cir.1989). The purpose of these "rudimentary precautions" is to prevent "unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss,* 419 U.S. at 581. The United States Supreme Court stopped short of holding that due process requires an opportunity for the student "to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00662-GMS-MPT     Document 66-3     Filed 07/11/2006     Page 5 of 8

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

583. Because the Supreme Court in *Goss* addressed only suspension not in excess of ten days, it concluded that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584.

In the instant case, the Second Amended Complaint alleges that Foxworth was suspended from school for a total of thirteen days. The questions thus becomes whether the *Goss* due process requirements for a ten-day suspension are applicable here. I find that a thirteen-day suspension is more closely aligned with a ten-day suspension than it is with the "longer suspensions or expulsions" contemplated in *Goss,* and thus the due process measures enunciated in *Goss* are appropriate here. The question now becomes whether the process afforded to Foxworth was due.

Foxworth admits in his Second Amended Complaint that he was taken to the Vice Principal's, Voshell, office where Voshell accused Foxworth of sexual misconduct on the bus incident by purporting to read aloud accounts written by other students. Foxworth denied any sexual misconduct and suggested that Voshell call in the victim and accusers. Voshell then called other students to his office and spoke with all the students separately from Foxworth and one other student. Shortly thereafter, Voshell questioned and accused Foxworth for the same offense in a parent conference attended by Muriel Collins, her husband, and a police officer. Thus, I find that Foxworth received notice on two separate occasions (one of which was before the suspension went into effect) that he was accused of sexual misconduct and he was informed that the basis for the accusation derived from statements written by other students.

*5 While the Second Amended Complaint alleges that Foxworth did not have an opportunity to give his version of the events (Second Amended Complaint ¶ 47), I nonetheless conclude that process was due under the circumstances here. The Court of Appeals for the Third Circuit in *Palmer,* where a high school student received a ten-day suspension from school plus a sixty-day suspension from playing football, had to determine whether the student received due process. According to the *Palmer* court, due process is determined by "weighing (1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards." *Palmer,* 868 F.2d at 95. The *Palmer* court, quoting *Goss,* described the student's interest as one in "avoiding unfair or mistaken exclusion from the educational process with all of its unfortunate consequences" such as damage to student's reputation among peers and teachers as well interference with the student's higher education or employment opportunities. *Id.* (internal quotations omitted). The public school is interested in maintaining order and discipline without prohibitive costs. *Id.* The court continued to reason that a formal hearing where a student may summon the accuser, present witnesses, or be permitted counsel, would increase costs but not necessarily fairness and reliability. *Id.*

Weighing the factors enunciated in *Palmer,* I find that the three additional days of suspension received by Foxworth in excess of the ten-day parameter established in *Goss* did not materially lessen Foxworth's standing among his peers and teachers or substantially reduce Foxworth's future opportunities for employment or education. Indeed, Foxworth does not allege or argue otherwise. I further find that the thirteen-day suspension in our case, which was not for the balance of the semester, does not amount to an extensive suspension or permanent expulsion necessitating more formal procedures beyond rudimentary due process.

In light of the foregoing and accepting the allegations of the Second Amended Complaint as true, I conclude that Foxworth received all the necessary process due him. While the thirteen-day suspension exceeds technically the parameters of *Goss,* the process rendered toward Foxworth certainly complies with the spirit of *Goss.* Accordingly, having permitted plaintiffs to amend their complaint for the second time, I will dismiss with prejudice claims based on the Due Process Clause of the Fourteenth Amendment brought under Section 1983 (Second Amended Complaint ¶ ¶ 14-89, 93-97, 98-104). There are no set of facts alleged or inferrable from the Second Amended Complaint to support these claims as a matter of law.

(2) *Race Discrimination Claims*

*6 The Second Amended Complaint alleges a race discrimination claim under Section 1981 against all School Defendants. Though the Second Amended Complaint does not specifically label it as such, I will assume for purposes of a thorough analysis, that plaintiffs also assert a race discrimination claim under Section 1983 in violation of the Equal Protection Clause of the Fourteenth Amendment.[FN7]

Case 1:05-cv-00662-GMS-MPT   Document 66-3   Filed 07/11/2006   Page 6 of 8

Not Reported in F.Supp.                                                                                           Page 5
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

FN7. Plaintiffs apparently argue a violation of the Equal Protection Clause of the 14th Amendment in their brief. (*See* Pl. Mem. at 16-17, Document No. 46).

These two claims, which are premised on the same allegations in the Second Amended Complaint, require intentional, purposeful discrimination on the basis of race. See *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 389, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Washington v. Davis,* 426 U.S. 229, 241, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Keenan v. City of Philadelphia,* 983 F.2d 459, 465 (3d Cir.1992); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988); *Ascolese v. SEPTA,* 902 F.Supp. 533, 546 (E.D.Pa.1995).

Specifically, plaintiffs claim in the Second Amended Complaint that School Defendants practice and endorse "harsher disciplinary actions for Black and other minority students, than for similarly situated students for the same or similar incidents" (Second Amended Complaint ¶¶ 80, 102); denying or minimizing employment opportunities and extra-curricular program funding for Black applicants, and particularly for positions of relatively high authority within the School District (¶¶ 82, 103); "attempting to place Black and minority students in special education classes without sufficient rationale and based on race" (¶ 104); and "harassing or allowing nonminority students to harass Black and minority students without taking appropriate disciplinary action against the offenders" (¶ 81).

Plaintiffs also allege that Foxworth "was arbitrarily singled out for attempts for evaluation for special education ... at least in part due to his race" (¶ 21); received a majority of failing grades on his report cards that did not correspond with school work and homework grades, yet nothing was done to rectify or investigate based on his race (¶¶ 23, 24); was "subject[ed] to punishment more severe and harsh than similarly situated white students with regard to all of his suspensions" (¶ 108); was deprived of a right to "write a statement about the bus trip ... while purposely not denying that right to similarly situated White students who were alleged to have committed misconduct on ... the bus trip" (¶ 47); and was deprived of an "informal hearing ... at least in part due to [his] race" (¶ 46).

I find that, even under the liberal pleading standards afforded by the Federal Rules of Civil Procedure, plaintiffs do not allege a set of facts in support of any race discrimination claim that would entitle them to relief. The allegations are nothing more than accusations of race-based discrimination and unequal treatment without any factual support. Where plaintiffs claim that Foxworth received suspensions unfairly due to his race, they fail to allege facts showing that similarly-situated white students (*e.g,* a white student who was involved in the same physical altercations and incidents, which occurred on the bus, with glue in a locker, or with passing gas in a teacher aid's face) were treated any differently. The Second Amended Complaint is devoid of factual documentation as to how the School Defendants acted with purposeful race animus or had a pattern or practice of intentional discrimination. Conclusory, generic allegations will not enable a plaintiff's claim to survive a motion to dismiss. See *Odom v. Columbia Univ.,* 906 F.Supp. 188, 194-95 (S.D.N.Y.1995) (dismissing Section 1981 claim where allegations of race discrimination were conclusory); *Trader v. Fiat Distribs., Inc.,* 476 F.Supp. 1194, 1198 (D.Del.1979) ("[T]he Third Circuit teach[es] that a civil rights complaint must specify, with a sufficient degree of particularity, the unlawful conduct allegedly committed by each defendant and the time and the place of the conduct.").

*7 Accordingly, having permitted plaintiffs to amend their complaint for the second time, I will dismiss with prejudice all of the race discrimination claims against School Defendants brought under Section 1981, Section 1983, and the Fourteenth Amendment. (Second Amended Complaint ¶¶ 14-89, 98-104, 105-109). There are no set of facts alleged or inferrable from the Second Amended Complaint to support these claims as a matter of law.

C. *Title VI*

Title VI [FN8] requires proof of actual intentional discrimination on the basis of race. See *Guardians Ass'n,* 463 U.S. at 608 n. 1 (Powell, J., concurring in judgment); *Alexander v. Choate,* 469 U.S. 287, 293, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *see also Elston v. Talladega County Bd. of Educ.,* 997 F.2d 1394, 1405, 1406 & n. 12 (11th Cir.1993) ("Title VI itself, like the Fourteenth Amendment, bars only intentional discrimination" and provides no more protection than the Equal Protection Clause). A court's analysis for evaluating a Title VI claims mirrors the analysis used for an equal protection claim. *Foremanye v. University of Pa.,* Civ. No. 96-3597, 1996 WL 684242, at *3 (E.D.Pa. Nov.21,

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)  
**(Cite as: Not Reported in F.Supp.)**

Page 6

1996) (citing *Elston* ), *aff'd,* --- F.3d ----, Civ. No. 96-2130 (Apr. 14, 1998).

> FN8. Title VI provides in pertinent part:
> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
> 42 U.S.C. § 2000d.

As I concluded earlier for the race discrimination claims under the Fourteenth Amendment and Section 1981, I find that the Second Amended Complaint is devoid of any factual allegations that School Defendants intentionally discriminated against Foxworth on the basis of race and treated him differently than other individuals similarly situated. Accordingly, I will dismiss with prejudice the Title VI claim. (Second Amended Complaint ¶ ¶ 90-92).

### D. *State Law Claims*

Having dismissed all federal claims in the lawsuit against School Defendants, I will exercise my discretion and dismiss without prejudice all pendente state law claims against School Defendants. Courts should ordinarily decline to exercise jurisdiction over state law claims when the federal claims are dismissed. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, I will dismiss the claims for Pennsylvania Human Relations Act, 43 Pa. Cons.Stat. Ann. § 951, *et seq.* (¶ ¶ 110-115) and for libel and slander under Pennsylvania state law (¶ ¶ 116-128) without prejudice to the right of plaintiffs to reassert such claims in the appropriate state forum.

### CONCLUSION

For the foregoing reasons, I will grant the motion of School Defendants to dismiss the Second Amended Complaint. Having provided an opportunity to plaintiffs to amend the complaint for a second time, I will now dismiss with prejudice all School Defendants from the Second Amended Complaint. All remaining state law claims against School Defendants will be dismissed without prejudice.

*8 An appropriate Order follows.

*ORDER No. 2*

AND NOW, on this 29th day of June, 1998, upon consideration of the motion of defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 39), and all subsequent responses and briefs of parties thereto, and for the reasons stated in the attached memorandum of law, and having found that plaintiffs can prove no set of facts alleged in the Second Amended Complaint in support of the claim that would entitle plaintiffs to relief, it is hereby ORDERED that the motion is GRANTED and that all federal claims (set forth in paragraphs 14-89, 90-92, 93-97, 98-104, and 105-109 in the Second Amended Complaint) against defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley are DISMISSED WITH PREJUDICE from the lawsuit.

IT IS FURTHER ORDERED that all claims of plaintiff Muriel Collins in her own right are DISMISSED WITH PREJUDICE from the lawsuit and all references to "Muriel Collins Individually and in Her Own Right" shall accordingly be removed from all captions of documents filed hereinafter. The Clerk of the Court is directed to remove plaintiff Muriel Collins Individually and in Her Own Right from the caption on the docket.

IT IS FURTHER ORDERED that the supplemental state law claims against defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley, are, in the exercise of this Court's discretion, DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3), recognizing the right of plaintiffs to refile their state law claims in the appropriate state court if legally permissible.

This is not a final Order.[FN9]

> FN9. The claims against defendants Upper Chichester Township and Meadow Wood Hospital remain.

*ORDER No. 1*

AND NOW, on this 29th day of June, 1998, upon

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

consideration of the motion of plaintiffs Muriel Collins and Willie Foxworth for a entry of default judgment against defendant Upper Chichester Township pursuant to Federal Rule of Civil Procedure 55 (Document No. 41), and the response of defendant Upper Chichester Township ("Township") thereto, and having found that defendant Township filed its answer two days late, and having found the failure of defendant Township to file a timely answer was due to inadvertence and not willfulness or bad faith, and having found that plaintiffs were not prejudiced by a two-day late filing especially where defendant Township has previously filed timely answers to the complaint and the amended complaint and where discovery has been undertaken, and having found that defendant Township was not itself dilatory in any way, it is hereby ORDERED that the motion for default judgment is DENIED.

ORDER No. 3

AND NOW, on this 29th day of June, 1998, in accordance with the Orders of Judge Angell entered on January 16, 1998 (Document No. 53) and April 13, 1998 (Document No. 57), and the motion to dismiss by defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley having been resolved on this same date, it is hereby ORDERED that the defendants Upper Chichester Township and Meadow Wood Hospital have until no later than August 3, 1998 to file their respective dispositive motions.

*9 IT IS FURTHER ORDERED that no later than July 13, 1998, defendants Upper Chichester Township and Meadow Wood Hospital shall each notify this Court by letter to chambers if it does not intend to file a dispositive motion.

ORDER

AND NOW, on this 29th day of June, 1998, upon consideration of the motion of defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley for leave to file a reply brief to plaintiffs' answer to moving defendants' motion to dismiss plaintiffs' second amended complaint (Document No. 47), and having considered the reply brief of defendants in resolving the motion to dismiss on this same date, it is hereby ORDERED that the motion for leave is GRANTED nunc pro tunc.

E.D.Pa.,1998.
Collins v. Chichester School Dist.
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:96cv06039 (Docket) (Sep. 03, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.