45. Further, at the December 2, 2004 Building level conference, Parent was again not provided with access to/or a copy of the Student Code of Conduct which outlined the District's Disciplinary Procedures{ <u>or agreement between the school and the police department</u>}.

46. At no time was the Assignment to Alternative Programs policy and procedure provided to Parent.

47. The Procedure, as stated in the Student Code of Conduct: Assigned to alternative programs is the placement of a student, with appropriate consideration of due process, in a program designed to meet the student's particular needs{<u>.</u>} . . (A) Prior to placement in an alternative program the student and the student's parent/guardian shall be conferred with about the student's need to be in a special program. (B) Following the conference the student and the student's parents/guardians shall be given written notice of: (1.) The circumstances which led to the placement; (2.) How the special program is designed to meet the student's needs; (3.) The conditions, which must be met in order for the student to return to the regular school program . . .

48. At no time prior to/or after the December 2, 2004 was Parent given any of the above information in violation of R.W.{<sup>22</sup>}{<u><sup>2</sup></u>}s Due Process rights. In fact, the result of this meeting was to refer the case to the District. It did not indicate that the student is referred for an expulsion hearing{ <u>or placement at Consortium School</u>}.

49. At no time prior to/or after the December 2, 2004, was Parent given information that the Assignment to Alternative Program contained a clause assuring appropriate consideration of due process.

50. At no time prior to/or after the December 2, 2004 was Parent given a {written}{<u>**Written**</u>} notice that any due process existed in regard to Assignment to Alternative Programs{ <u>or Consortium School</u>}.

13

51. At all times relevant herein, the defendants knew that no due process protections for an Assignment to an Alternative Program existed and {.}knowingly conspired to take no action to remedy this consistent policy{ **or provide hearing before school board**}.

52. For some period of time, R.W. did receive services from the District identified as "Homebound," which consisted of only five hours a week{ **after two unlawful alternative placements**}.

53. The next meeting occurred on December 13, 2004. This so called "District level" meeting was held at The Board Room of the District and attended by the Plaintiffs, their Advocate, Moody, Denny, Countley and witnesses on behalf of R.W.

54. A packet was presented at the meeting which had not been presented prior to the meeting, accordingly, there was no time for review by Parent{ **or question witnesses in the packet**}.

55. Moody, Denny and County asked R.W. questions about the incident.

56. R.W. related that the matter began as related above.

57. Parent and witnesses provided character evidence of her son, R.W. as described above.

58. As a result, County related that R.W. should be placed at an alternative placement called Compass. There was no statement that. R.W. was expelled{ **or Compass was a Consortium School in the Colonial School District**}.

59. The procedure for a Step II-District level conference requires that the parent be given Notice that a formal hearing was to be held. It further requires that the Notice be sent by certified mail or hand delivered. The District failed to do this in violation of R.W. Due Process rights.

60. The procedure for a Step II-District level conference requires that a parent be given the reasons for the recommendation of expulsion; names of witnesses and copies of statement. The District failed to do this in violation of R. W. Due Process rights.

61. The procedure for a Step II-District level conference requires that individuals involved in the building process are NOT to be involved in the District level conference. The District ignored this mandate and had individuals involved in the Building level conference participate in the decision at the District level, i.e., Moody. By this action/inaction, the District violated R.W.'s Due Process rights{, **and labeling him as a gang member**}.

62. The procedure for a Step II-District level conference requires that the District provide a copy of the School District Expulsion Procedures with the requisite Notice. The District failed to do so. By this action/inaction, the District violated R.W.'s Due Process rights{, **and provided no appeal right for a school board hearing or state board appeal**}.

63. At the meeting, Parent requested that the Committee put the decision in writing and send it to her.

64. Despite another request for access or a copy of the Student Code of Conduct, none was provided.

65. Parent was not informed at that meeting, what, if any, appeal rights or procedures existed. Neither was she ever provided with any written Notice of appeal. The District failed to do so. By this action/inaction, the District violated R. W.{²}{='}s Due Process rights.

66. On or about December 17, 2004, a referral was made by the Shue-Medill Middle School to Compass School, a locked facility, which indicated that R. W. was an expelled student. Parent did not receive a copy of this referral until she requested it on or about February 25, 2005.

67. Parent received no information regarding Compass School until she called and wrote a letter to Countley on or about January 3, 2005 requesting the policies and procedures regarding alternative placement and due process rights and appeal rights.

68. At that time, Parent was informed by that the decision to place R.W. in an alternative placement had been mailed to her. Parent never received that letter until approximately ten days after her phone call and letter{, **and no written record**}.

69. An appeal of the December 13, 2004 decision was made to Wise on January 4, 2005. This was sent to all District Board members.

70. No response to this request was made by Wise or the Board.

71. Despite further calls to Countley, Parent spoke to Countley's supervisor on or about January 18, 2005 because Parent had no response from Countley. Parent was advised that {Sundstrom}{**Sunstrom**} would call her.

72. Parent met with Sunstrom and Denny on January 26, 2005. Parent informed Sunstrom and Denny that the information regarding the Student Code of Conduct and the appeal process was never received by Parent. Sunstrom apologized for several due process violations, including but not limited to, failure to show a videotape of R.W. after the incident at the December 13, 2004 meeting.

73. Sunstrom also stated that he has been following the regulations in the Student Code of Conduct and that the regulations have been the same for years.{ **Sunstrom has been in Delaware for a year and a half with not regulations training.**}

74. Parent stated: what are the regulations? Sunstrom could not state even one of the regulations to Parent so he tried unsuccessfully to retrieve a copy from the computer. Parent still

had no copy of the Student Code of Conduct or Expulsion Procedures. By this action/inaction, the District violated R.W.'s Due Process rights.{ **Sunstrom was appointed his position.**}

75.  {Sundstrom}{**Sunstrom**} sent a follow-up letter dated January 27, 2005, reciting that Parent admitted that her son punched another student. Parent denies that this conversation took place. This aggressive letter was an attempt to intimidate the Parent in order to pressure Parent to send R.W. to Compass, again in violation of R.W.'s rights{ **and due process**}.

76.  A second request for an appeal of the December 13, 2004 meeting was submitted on February 7, 2005 by Mr. Jea Street, an Advocate for R.W.

77.  No acknowledgment of this request was made and no appeal was {scheduled}{**Scheduled by Christina School Board, David Sunstrom was not a Christina School Board member**}.

78.  Parent visited Compass School on February 2, 2005. At that time, Parent first learned that R.W. was expelled, contrary to what she had been told, {i.e}{**ie**}., that was given an alternative placement and not an expulsion. However, when Parent later investigated Compass School, she learned that only expelled students were admitted to Compass School. Further, during her visit, Parent observe a 12 year-old student telling the administrator to "s{–}{**=**}k his d{---}{**=**}k (private parts) and that he was sick of the m---{f-ing}{**fing**} school" At the February 2, 2005 visit, a school representative, asked Parent: "Why are you asking so many questions-most parents just sign the papers."

79.  On March 1, 2005, the Advocate, Mr. Street, wrote a letter to Pika, of the State Board, to appeal the decision of the District to expel R.W.

80.  Also an appeal was taken on the District's decision to remove R.W. from the regular educational setting to an alternative school without a hearing.

17

81.     On April 12, 2005, Parent attended the District' School Board meeting. At that meeting, Parent again requested a hearing before the Board and no response was given. After the meeting, {~~Sundstron~~}{**Sandstorm**} asked if Parent would re-consider Kirk Middle Alternative School ( why had unofficially been offered) and Parent advised that she would think about it. Parent did not reject Kirk placement for the sole reason of lack of transportation, (District sent a bus for handicapped children to pick up R.W., which was unacceptable) but rather did not consider it an appropriate placement{**, and false information was given to R.W**}.

82.     On April 14, 15, 2005, District representatives called Parent to find out her decision whether to send R.W. to Kirk Alternative School. For the first time, Parent learned from one of the representatives that R.W. was considered a problems to his teachers and that the Kirk program was an alternative program. Parent advised the representative that R.W. was not a problem to his teachers.

83.     The representative stated that R.W. did not have to attend the alternative program but that he could go to the regular educational setting at Kirk Middle{**, which was out of his feeder pattern, and Parent made no choice request**}.

84.     Parent asked -if he is going to be placed in a regular educational setting{-} why would he not go back to Shue-Medill Middle School. This question was never answered{**, and Christina School District had a history of maintaining false records**}.

85.     In response to the March 1, 2005 letter to Pika, Parent was notified that the case would be on the Board's agenda for April 21, 2005. The Board voted to hear the issue of whether the Board had jurisdiction over the matter and oral arguments were scheduled for May 19, 2005.{ **Unknown to Plaintiffs, wheels were in motion to deny Plaintiffs a fair and impartial hearing.**}

18

86. Prior to May 18, 2005, upon information and belief, three members of the Board, Allen, Farmer, and Pepper, attended a meeting at the Delaware School Board Association wherein the R.W. matter was discussed as a topic of concern. A statement was made that if R.W.'s appeal was granted, that the floodgates to litigation would be opened{, **and votes were taken to legal fees for Christina School District and not report at School District meeting**}.

87. These three Board members attended the May 18, 2005 oral argument but did not disclose this association and any information which may have been related to them to Parent or the Board at the May 19, 2005 hearing.

88. Further, Pika stated that he would not assign this matter to a hearing officer, (as is the usual procedure) because he did not know who he could trust to hear the case{, **and complied with the Christina School District, Christina School Board, and Delaware School Board Association**}.

89. This conduct was taken as part of the conspiracy to deprive Plaintiffs of their right to a full, fair and impartial hearing on the merits{ **before the State Board of Education**}.

90. Accordingly, {Plainitffs}{**Plaintiffs**}' rights to a {frill}{**full**}, fair and impartial hearing were violated{-}{ **by Jean Allen, Farmer, Pepper, Pika, Daniell Cruce, and David Williams**}

91. At the Board meeting, the attorney for the District, David Williams, Esquire, failed to disclose that he was representing the Delaware School Board Association in addition to the District.

92. The Board decided upon oral argument, that the Board did not have jurisdiction over the matter because there was no direct Board action over the matter. The Board incorrectly stated that there was no appeal made on R.W.'s behalf to the District. An appeal was taken on

19

February 7, 2005, despite the District's failure to provide any information regarding Notice of the Hearing and appeal rights{ **or transcript, remand case back to Local School Board**}.

93. The Board violated the rights of the Plaintiffs by failure to supervise the District's and the Board's policies and procedures; rules and regulations, regarding exclusion of this child from his educational setting without due process and in violation of equal protection, thereby conspiring with the District and the Board to deprive R.W. of his education{**, sports activities, and social activities that harmed R.W. and his mother Sarah Williams**}.

94. Further, the Board has the statutory responsibility to resolve disputes and refused to perform its duties in violation of R.W.'s due process and equal protection rights{ **and remanded the case wth no local board action**}.

95. The District further violated R.W.'s rights by threatening criminal charges and truancy against both Parent and R.W. if Parent continued to hold her son out of school while trying to exercise their constitutionally protected rights.

96. The District did file Truancy charges against both Plaintiffs which is pending in truancy court{ **as a form of retaliation and to prevent floodgates from opening**}.

97. At the present time, the District continues to refuse to provide R.W. with due process, continues to attempt to intimidate Parent, continues to follow its own Rules and Regulation by designating that R.W. must attend an alternative school for the month of September and continues to refuse to place R.W. in his regular education school{**, continued truancy charges.**}{

**98.** }{**On or about January 19, 2006, Delaware J.P Court ordered R.W. back to Newark High School for regular education**}.

20

## COUNT I
## Violation of The Civil Rights Act of 1964. Title VI

**99.** {98. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

**100.** {99. Defendants, by their aforestated actions, have deprived Plaintiffs of their rights under The Civil Rights Act of 1964. Title VI.

**101.** {100. At all times relevant hereto and in all of the actions described herein, all individual defendants were acting in their respective capacities as stated under Color of Ordinances and Regulations of the School District, statutes of the State of Delaware and statutes of the United States of America and did subject Plaintiffs herein to the deprivation of their rights, privileges and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described hereafter.

**102.** {101. The Civil Rights Act of 1964, Title VI provides that no person in the Unites States shall, on the grounds of race, color or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under program or activity receiving financial assistance.

**103.** {102. The State of Delaware and the Christina School District, agents and employees of both public agencies are the recipients of federal assistance.

**104.** {103. The Civil Rights Act of 1964, Title VI provides that no state shall be immune from suit under the Act, or any other Federal statute prohibiting discrimination.

**105.** {104. All defendants, as described above, did discriminate against the Plaintiff on the basis of race, specifically the disparate discipline given to R.W. in reference to another actor in this matter who was a white individual who initiated the incident complained of herein, who received no discipline at all.

21

106. {105. All defendants have caused the plaintiff{;}{,} a child, to be excluded from participation in, denied the benefits of, and subjected to discrimination in his educational program, solely on the basis of his race, and failure to provide due process at all levels. All Plaintiffs have been injured by defendants' actions and inactions.

## COUNT II
{ }Violation of the Civil Rights Act of 1871, 42 U.S.C. Section 1983

107. {106. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

108. {107. Defendants by the aforestated actions have deprived Plaintiffs of their rights to Due Process of law as guaranteed by the Fourteenth Amendment, in violation of the Civil Rights Act of {1871, 42 U}{1871, 42 D}.S.C. Section 1983.

109. {108. Defendants are "person" as defined by 42 {U}{D}.S.C. Section 1983.

110. {109. At all times relevant hereto and in all of the actions described herein, all individual defendants were acting in their respective capacities as stated under Color of Ordinances and Regulations of the School District, statutes of the State of Delaware and statutes of the United States of America and did subject Plaintiffs herein to the deprivation of their rights, privileges and immunities secured by the United States Constitution and the aforementioned statutes by the acts and/or failure to act as described hereafter.

111. {110. Acting under color of law, by and through a policy custom or practice, defendants intentionally, knowingly recklessly or with deliberate indifference to the rights of the plaintiffs failed to instruct, train, supervise and control on a continuing basis the procedures and policies involving due process for Alternative School Placements.

112. {111. Acting under color of law, by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs

22

failed to instruct, train, supervise and control on a continuing basis the procedures and policies regarding discipline of students thereby resulting in a disparity in the number of minority children placed in Alternative Placements and/or expulsion.

**113.** {~~112.~~ Acting under color of law by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs failed to instruct, train, supervise and control on a continuing basis the procedures and policies regarding deprivation of the {~~Plaintiffs~~}{**Plaintiff s**} right to his education as guaranteed under the laws of the state of Delaware, the United Stated and the Constitution.

**114.** {~~113.~~ Acting under color of law, by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs failed to instruct, train, supervise and control on a continuing basis the procedures and policies regarding denial of Plaintiffs appeal to both the District Board of Education and the Delaware State Board of Education.

**115.** {~~114.~~ Acting under color of law, by and through a policy or practice, defendants intentionally, knowingly, recklessly or with deliberate indifference to the rights of the Plaintiffs conspired to deny Plaintiffs their rights under the law.

**116.** {~~115.~~ Defendants' conduct demonstrates a reckless and callous attitude toward the federally protected rights of the Plaintiffs as enumerated herein.

**117.** {~~116.~~ By failing to abide by The Civil Rights Act of 1964, Title VI, The Civil Rights Act of 1871, the Due Process and Equal Protections as provided by the Constitution of the United States of America, the defendants have caused the plaintiff, a child, to be excluded from participation in, denied the benefits of, and subjected to discrimination in his educational

23

program, solely on the basis of his race, and failure to provide due process at all levels. All Plaintiffs have been injured by defendants' actions and inactions.

## COUNT III{ }
### Violation of Equal Protection and Due Process Rights

**118.** {117. Plaintiffs incorporate by reference all preceding paragraphs, as fully as set forth herein at length.

**119.** {118. Defendants by the aforestated actions have deprived Plaintiffs of their rights to Equal Protection and Due Process of law as guaranteed by the Fourteenth Amendment, in violation of the Civil Rights Act of {1871, 42}**{1871,42}** U.S.C. Section 1983.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court:

**(A)**  {A) Find and hold that the Plaintiffs suffered acts and/or acts of omissions of Due Process and Equal Protection by the defendants;

**(B)**  {B) Enter an emergency, preliminary and permanent injunction under the laws of the Unites States enjoining all defendants to comply with said statutes and to provide due process and equal protection;

**(C)**  {C) Enter an emergency, preliminary and permanent Injunction to the District to return the Plaintiff to his regular education school;

**(D)**  {D) Award compensatory and punitive damages for violations of Plaintiffs' civil rights, in an amount deemed appropriate at trial;

**(E)**  {E) Correct and purge R.W.'s school record regarding the November 8, 2004- incident;

**(F)**  {F) Award Plaintiffs the cost of this actions and its pursuit thereof as well as attorney fees; and

24

**(G)**   {G} Award such other and {further} **farther** relief as may be deemed just and proper.

{Patricia M. O'Neill, Esquire}
**{Sarah Williams}**

{22 West Front}**{322 East Tenth}** Street
{Media, PA 19063}
{610-891-6668}
{Attorney for Plaintiffs}

{Delaware Supreme Court}
{Identification No: 3016}
{Admitted to Delaware District Court}

**{Wilmington, De 19801 }**
{302-384-7624}

Date: {September 12, 2005}{ **June 30, 2006**}