# EXHIBIT 8

```
1                IN THE UNITED STATES DISTRICT COURT

2                IN AND FOR THE DISTRICT OF DELAWARE

3                            -  -  -

4    R.W., individually, by and     :    CIVIL ACTION
     through his parent and natural :
5    Guardian Sarah Williams, and   :
     SARAH WILLIAMS, individually,  :
6                                   :
              Plaintiffs,           :
7                                   :
          v                         :
8                                   :
     DELAWARE DEPARTMENT OF         :
9    EDUCATION, et al.              :
                                    :
10                                  :
              Defendants.           :    NO. 05-662 (KAJ)
11
                             -  -  -
12
                        Wilmington, Delaware
13            Thursday, November 10, 2005 at 9:00 a.m.
                    PRELIMINARY INJUNCTION HEARING
14
                             -  -  -
15
     BEFORE:        HONORABLE KENT A. JORDAN, U.S.D.C.J.
16
                             -  -  -
17   APPEARANCES:

18
                LAW OFFICES
19              BY:  PATRICIA McHALE O'NEILL, ESQ.

20                      Counsel for Plaintiff

21
                DELAWARE DEPARTMENT OF JUSTICE
22              BY:  CRAIG ROMOND FITZGERALD, ESQ.
                     Deputy Attorney General
23
                        Counsel for Delaware Defendants
24
                                   Brian P. Gaffigan
25                                 Registered Merit Reporter
```

Williams - direct

1    was supposed to go to the Compass School?

2    A.      Until the end of the third marking period.

3              THE COURT:  Now, ma'am, I'm sorry, Ms. O'Neill.

4    Again ...

5              MS. O'NEILL:  If you would like me to move every

6    document in as I hand it up, Your Honor, I would be happy,

7    too.  Otherwise, I would submit I intend to move them all

8    into evidence at the same time, simply in the interest of

9    words and time.

10             THE COURT:  Actually, it will assist the

11   interest of time if you move them when you use them.  That

12   way if there is an objection, I can deal with it at the time

13   instead of after the fact.

14             MS. O'NEILL:  Thank you, sir.  I would move

15   those, P-6 and 7 be moved into evidence.

16             MR. DOERLER:  I have no objection, Your Honor.

17             THE COURT:  They're admitted.

18   *    *    *  (Plaintiffs' Exhibit Nos. 8,9 were received into

19   evidence.)

20             MS. O'NEILL:  Your Honor -- never mind.

21   BY MS. O'NEILL:

22   Q.      Now, when did you -- when, if ever, did you ever

23   learn about what is the -- what is an alternative school?

24   A.      The way I learned about what an alternative school

25   was that I called the State Board of Education and asked

Williams - direct

1  them about Compass and they told me it was an alternative

2  school.

3  Q.    And did they describe the kind of school it was, for

4  what kind of student?

5  A.    No, they send me information.

6  Q.    Did anyone ask you did the district do everything it

7  could before sending him to that alternative school?

8  A.    Yes.  Robin Case asked me had the school district did

9  all that they could for Reggie while he was at Shue School.

10  Q.    And what did you respond?

11  A.    And I said, I said no.

12         MS. O'NEILL:  Your Honor, I need to find

13  something right here.  May I please have a minute?

14         THE COURT:  Sure.

15         (Pause.)

16         MS. O'NEILL:  Thank you.

17  BY MS. O'NEILL:

18  Q.    At some point -- I'm going to jump ahead a little.

19  At some point did you receive the Code of Conduct?

20  A.    Yes.

21  Q.    And give us an approximate date, please.

22  A.    Probably around in February 2005.

23  Q.    And then did you read the procedures regarding an

24  alternative -- assignment to alternative programs?

25  A.    Yes.

Williams - direct

1    Q.    Did you know that the conditions which must -- did

2    they give you any idea about the conditions which must be

3    met in order for the student to return to the regular

4    school?

5    A.    No.

6    Q.    Did you ever talk about that?

7    A.    No.

8    Q.    Did anyone ever say to you at that December 13th

9    meeting or in this letter that you received subsequent that

10    there is an appeal process?

11    A.    No.

12    Q.    By the way, while we're here, let's take a minute and

13    look at expulsion procedures.  Could you tell us what step

14    one is?

15    A.    Step one is listed on the expulsion and student

16    procedure and step one says building level.

17    Q.    Now, you had a building level conference, did you

18    not?

19             THE COURT:  Just a moment.

20             MR. DOERLER:  Your Honor, this student was not

21    expelled so I believe that these are irrelevant.

22             MS. O'NEILL:  It's not irrelevant.  The school,

23    there is paper that will come forth that indicated it came

24    from the Compass School that stated this child was expelled.

25             THE COURT:  Was he expelled?

Williams - direct

1         MS. O'NEILL:  She didn't know.

2         THE COURT:  Well --

3         MS. O'NEILL:  Certainly if you look at the

4 expulsion procedures which talk about a building one level

5 hearing at a district level hearing and what rights attach

6 and then you look at the alternative placement assignment

7 and you say, well, what does attach?

8         THE COURT:  Okay.  I'm sustaining the objection.

9 There is no evidence other than what people assert was in

10 error and you say it wasn't an error, a letter saying

11 expelled.  All the evidence including from Ms. Williams is

12 we're talking about an alternative placement.  Now, if you

13 have some other evidence to indicate that he was expelled

14 other than that letter, I'm happy to hear it.  Otherwise if

15 that is your evidence, I'll have the book, I can see it, I

16 can read it as well as have her read it from the stand.

17         MS. O'NEILL:  I think that the basic -- if I may

18 respond -- that the basic issue is not knowing what kind of

19 hearing was being taken, what was taking place either on the

20 2nd or the 13th and what appeal rights attach.  Neither are

21 in this book which she never received, nor was she informed

22 either in a written notice or in an appeal notice of what

23 happened at the December 13th meeting.  And the problem is,

24 Your Honor, that subsequent to this, there is another whole

25 scenario which I don't believe is relevant to this

Williams - direct

1    proceeding where this was, there was an appeal to the

2    Delaware Department of Education which was thrown back

3    because certain things, pursuant to their regulations, were

4    not done below in the district.  So whether someone is

5    submitting that this was done as a --

6             THE COURT:  Let's shorten this up this way.  Why

7    don't you tell me, are you contending he was expelled?

8             MS. O'NEILL:  I'm contending at no point did

9    mother know what was going on because she never was able to

10   receive this book ahead of time and this is an integral part

11   of what the notice requirement is.

12            THE COURT:  Okay.  But in order for me to know

13   whether there is a basis for saying expulsion is a relevant

14   inquiry, I need you to step up now and say either yea or

15   nay.  Are you contending the student was expelled?  Because

16   if you are not contending he was expelled, then what we're

17   talking about is was notice proper for alternative

18   placement, et cetera.  Let's focus on that.  If you are

19   contending as a matter of fact he was expelled, I guess

20   we'll open up and say okay, we'll talk about expulsion, but

21   if you are not contending he was expelled, it's irrelevant.

22            MS. O'NEILL:  Your Honor, with that in mind, I

23   will not discuss that at this time.

24            THE COURT:  All right.

25            MS. O'NEILL:  What is relevant is what notice

Williams - direct

1              THE COURT:  Okay.

2              MS. O'NEILL:  The one that we're getting copies

3    of.  There would be one more question that would give you a

4    summary of the events that occurred subsequent that really

5    not the focus of what you need to do today but is relevant

6    in that the scenario, the saga did not end at the district

7    level and because I knew we were focusing rather on what

8    happened, I don't want you to -- I just want -- I will ask

9    her a question as to what happened afterwards and ask her

10   just to give a brief summary.

11             THE COURT:  That's fine.

12             (Documents passed out.)

13   BY MS. O'NEILL:

14   Q.    Ms. Williams, I'm going to hand you what has now been

15   marked P-15 for identification, please.

16             Do you recognize this document?

17   A.    Yes.

18   Q.    What is it?

19   A.    It's a letter from David Sundstrom dated April 11,

20   2005.

21             MS. O'NEILL:  Your Honor, I'd like to move this

22   into evidence.

23             THE COURT:  It's admitted.  P-15 is in.

24             MS. O'NEILL:  Thank you.

25   BY MS. O'NEILL:

Williams - direct

1   Q.      Did you have a discussion with him on the phone on or

2   about this date that you recall?

3   A.      Yes.  Looking at this document, yes.

4   Q.      And was there a discussion about returning Reggie to

5   school?

6   A.      He told me on the phone that he wasn't going to allow

7   Reggie to return to regular school in the Christina School

8   District.

9   Q.      And this talks about --

10              THE COURT:  Hold on just a moment.

11              MS. O'NEILL:  I'm sorry.

12              THE COURT:  What is it in this letter, P-15 that

13  tells you he was not going to be permitted to return to any

14  school except an alternative placement?

15              THE WITNESS:  Well, Compass School actually

16  belonged to Colonial Schools.  Colonial School District.

17              THE COURT:  So if I'm understanding you right,

18  you're telling me that on the basis of this April 11, 2005

19  letter which is P-15 in evidence, you understood that the

20  district's position was your son would not be permitted to

21  go to Newark High School?

22              THE WITNESS:  Yes, Your Honor.

23              THE COURT:  Okay.

24  BY MS. O'NEILL:

25  Q.      And subsequent to that, did you also have a

Williams - cross

```
1    refer the case to the district level?

2    A.      That's correct.

3    Q.      And you didn't ask them any questions about that?

4    A.      They just told me it would be referred to the

5    district level.

6    Q.      And so you didn't ask any questions?

7    A.      I didn't know what questions to ask.

8    Q.      And you did receive a copy of the November 19th

9    extension of suspension notice which indicates that the

10   reason for the December 2nd meeting was to schedule for

11   alternative placement meeting; correct?

12   A.      I wouldn't know exactly what it was for.  All I was

13   told was that I would have to go to the December 13th

14   meeting.

15   Q.      But you will agree with me on this form, November

16   19th that it says that both of these meetings are about an

17   alternative placement meeting; correct?

18   A.      It's on the same line with alternative placement

19   meeting, yes.

20   Q.      And you actually went to the December 13th meeting

21   with an advocate, Mr. Street, and two character witnesses?

22   A.      Yes.

23   Q.      Okay.  And although you didn't know what this was

24   about, you testified you didn't know what the meeting was

25   about, you brought an advocate and witnesses to testify on
```

Williams - cross

1    your son's behalf?

2    A.    That's correct.

3    Q.    So you were permitted at the hearing to ask questions

4    of Reggie?

5    A.    No.

6    Q.    Was Mr. Street permitted to ask questions?

7    A.    No.

8    Q.    And Reggie was however permitted to tell his side of

9    the story; correct?

10   A.    He was asked questions, yes.

11   Q.    He was asked questions by Dr. Moody, Dr. Countley,

12   Dr. Jenning?

13   A.    Yes.

14   Q.    And Mr. Street was able to make arguments on behalf

15   of Reggie at the hearing or at the meeting?

16   A.    Mr. Street made statements, yes.

17   Q.    Okay.  And the character witnesses were permitted to

18   testify on behalf of Reggie?

19   A.    They testified to Reggie's character, yes.

20   Q.    Okay.  And although it's your testimony that you

21   didn't know what the purpose of the meeting was, you brought

22   all these people to testify anyways?

23   A.    That's correct.

24   Q.    And during this hearing or during this meeting, you

25   became aware that there was an alternative placement at

Williams - cross

1    issue?

2    A.      I became aware they was going to send Reggie to

3    Compass at the end of the meeting.

4    Q.      Okay.  So at the meeting then you discussed the

5    placement at Compass; correct?  Or an alternative placement?

6    A.      No, that's not correct.

7    Q.      So throughout the whole hearing, you went through it

8    and you still didn't know what the hearing was for?

9    A.      That's correct.

10    Q.      And what did you think you were there for?

11    A.      Well, I was there because as they was saying about

12    the incident that Reggie was involved in.

13    Q.      Okay.  And --

14    A.      And getting there, when they hand out all the

15    packets, then after seeing all the statements and

16    everything, and if I had that, then I would have brought

17    other witnesses and be able to question those witnesses that

18    they was utilizing which I was denied that right.

19    Q.      I don't think that answered my question.  What did

20    you think you were doing when you went to the meeting on the

21    13th?  Why did you think they were holding the meeting?

22    A.      I had no idea but I knew they told me before Reggie

23    go back to school I would have to go through that meeting,

24    so I had no idea what was going to transpire during that

25    meeting.

Williams - cross

1    Q.      At the end of the meeting, you were told that they

2    were going to send Reggie to Compass School until the end of

3    the third marking period; is that correct?

4    A.      That's correct.

5    Q.      So you were told that at the meeting?

6    A.      At the end of the meeting.

7    Q.      And you visited Compass and then after that, you

8    decided you wouldn't send him to Compass?

9    A.      That's correct.

10   Q.      And it's my understanding now that you will not send

11   Reggie to any alternative placement in the school district

12   or outside of the school district other than his regular

13   placement setting; is that right?

14   A.      That's correct.

15   Q.      You testified about, I believe it was Principal

16   Patton.  Is that his name, Patton?

17   A.      Yes.

18   Q.      That you had a conversation with him about

19   potentially sending Reggie to Kirk Middle School.  It's my

20   understanding that he didn't have an understanding as to

21   exactly what Reggie's disciplinary status was; is that

22   right?

23           MS. O'NEILL:  I object to that.  How does she

24   know what this man thought?

25           MR. DOERLER:  I believe she testified earlier

Williams - redirect

1    of that question.  It doesn't matter what he thinks.

2                 THE COURT:  Well, I think it's a fairly posed

3    question and answerable so it's overruled.

4    A.    Yes, Mr. Sundstrom did send a letter in April.

5    BY MR. DOERLER:

6    Q.    So as of April, you knew your son would have to

7    complete at least a marking period in an alternative

8    placement before returning to his regular placement;

9    correct?

10   A.    That's what the April letter said.

11                MR. DOERLER:  I have no other questions.

12                THE COURT:  All right.  Mr. Fitzgerald, do you

13   have any questions, sir?

14                MR. FITZGERALD:  Your Honor, I have no questions

15   at this time.

16                THE COURT:  All right.  Any redirect,

17   Ms. O'Neill?

18                MS. O'NEILL:  Just clarification of one matter.

19                THE COURT:  Fine.

20                MS. O'NEILL: · Thank you.

21                      REDIRECT EXAMINATION

22   BY MS. O'NEILL:

23   Q.    Ms. Williams, the original suspension, was that to

24   end on the 18th, if you recall?

25   A.    Yes.