ATTACHMENT "A"

Westlaw.

Not Reported in F.Supp.2d                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 105482 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Barbara L. HAYES, Plaintiff,
v.
THE BOARD OF EDUCATION FOR THE CAPE
HENLOPEN SCHOOL DISTRICT, Defendant.
**No. Civ.A. 02-55-SLR.**

Jan. 3, 2003.

MEMORANDUM ORDER
ROBINSON, J.
*1 At Wilmington this 3rd day of January, 2003,
having reviewed the papers submitted;

IT IS ORDERED that defendant's motion to dismiss
(D.I.9) is granted, for the reasons that follow:

1. On January 22, 2002 plaintiff Barbara L. Hayes ("
Hayes") filed this action seeking reimbursement of
expenses and consultant's fees as a prevailing party
under the Individuals with Disabilities Education
Act ("IDEA"), 20 U.S.C. § 1415. [FN1] (D.I.1)
Hayes contends that she was forced to institute a
due process hearing action because defendant, The
Board of Education for the Cape Henlopen School
District ("The Board"), refused to provide services
to which her disabled minor son was entitled under
the IDEA. Hayes additionally asserts claims under
29 U.S.C. § 794, 42 U.S.C. § 1983 and contends
punitive damages should be awarded because the
Board has refused to implement the decision of a
due process hearing panel. (Id., letter dated
11/25/01) Hayes indicates the hearing panel ruled in
her favor and ordered the Board to provide services
for her son.[FN2]

> FN1. Congress enacted the IDEA " 'to
> assure that all children with disabilities
> have available to them ... a free
> appropriate public education which

emphasizes special education and related
services designed to meet their unique
needs." ' Cedar Rapids Cmty. Sch. Dist. v.
Garret F., 526 U.S. 66, 68 (1999) (quoting
20 U.S.C. § 1400(c)). The "centerpiece" of
the IDEA's education delivery system is
the "individualized education program," or
"IEP." Honig v. Doe, 484 U.S. 305, 311
(1988). The IEP, the result of
collaborations between parents, educators,
and representatives of the school district, "
sets out the child's present educational
performance, establishes annual and
short-term objectives for improvements in
that performance, and describes the
specially designed instruction and services
that will enable the child to meet those
objectives." Id.

> FN2. The panel decided that: 1) Hayes' son
> is entitled to special educational services
> by reason of having an "other health
> impairment;" 2) The Board should
> promptly convene an IEP team meeting to
> develop an appropriate IEP for the son; 3)
> the IEP team must consider what
> compensatory services, including summer
> services, to which the son is entitled under
> § 504 of the Rehabilitation Act; and 4) if
> The Board does not promptly formulate an
> appropriate IEP and if the compensatory
> services aspect of the plan is not addressed
> adequately, "Ms. Hayes is encouraged to
> take appropriate action." (D.I. 1; 10, Ex.
> A) The Board indicates neither side has
> appealed the panel's decision. (D.I.10)

2. The Board has filed an answer and moved to
dismiss the case. (D.I.4, 9, 10) After Hayes
requested an extension of time (D.I.11), the court
enlarged the time to respond to the motion to
dismiss, to exhaust administrative remedies and to
find counsel to represent the interests of her son.
(D.I.13) By letter dated July 14, 2002, Hayes

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 105482 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

advised the court that she wished to sever her son's claims from her own "because [she] cannot find an attorney that [she] can afford to represent [them]." [FN4] (D.I.14) She argues that she is an injured party under the IDEA and wishes to pursue the instant lawsuit *pro se.* [FN4] *See Collinsgru v. Palmyra Board of Education,* 161 F.3d 225 (3d Cir.1998).

> FN3. No lawsuit, however, has been filed on behalf of her son, specifically naming her son as the plaintiff.

> FN4. Hayes indicates that because a due process hearing panel issued a decision on July 11, 2002, she has exhausted her administrative remedies as mandated by the court's order. Although the disposition of the second due process hearing panel is provided by neither side, the court accepts Hayes' undisputed representation that the matter was decided in July 2002 and, therefore, the exhaustion requirement has been satisfied. The second action sought reimbursement for services expended during the first hearing and for reimbursement of tuition for her son's education in a private school in Vermont. (D.I. 14; 10, Ex. B)

3. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Where the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-521 (1972); *Urrutia v. Harrisburg County*

*Police Dep't.,* 91 F .3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F .2d 1406, 1409 (3d Cir.1991).

4. It has long been established that a federal court litigant has the right to proceed without counsel or *pro se.* 28 U.S.C. § 1654. However, in the area of suits brought by *pro se* parents on behalf of children, the United States Court of Appeals for the Third Circuit has established definitive prerequisites for maintaining actions. For example, a non-attorney parent cannot represent his or her children in a tort action in federal court. *See Osei-Afriyie v. Medical College of Pa.,* 937 F.2d 876, 882 (3d Cir.1991). The Third Circuit has reasoned that "it helps to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents." *Id.* at 236. This holding applies to cases instituted by *pro se* parents under the IDEA. *Collinsgru,* 161 F.3d 225, 231.

*2 According to the Court:
In the IDEA, Congress expressly provided that parents were entitled to represent their child in administrative proceedings. That it did not also carve out an exception to permit parents to represent their child in federal proceedings suggests that Congress only intended to let parents represent their children in administrative proceedings.

*Id.* at 232. Moreover, after an exhaustive examination of the statute, legislative history and case law, the Third Circuit has determined that Congress intended certain areas of the IDEA to apply directly to children and not to their parents. *Id.* at 234-237. The Court wrote: "We conclude that the IDEA's language and legislative history, as well as relevant case law and policy considerations, suggest that Congress did not clearly intend to create joint rights in parents under the IDEA." *Id.* at 236. Along these lines, a parent cannot institute an action to enforce rights under the IDEA even if the parent contends that he or she is truly the injured party. *Id.* (IDEA rights are divisible not concurrent).

5. Applying this authority to Hayes' claims under the IDEA, the court finds the action must be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3

Not Reported in F.Supp.2d, 2003 WL 105482 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

dismissed as Hayes' minor son is the real party in interest. The violations Hayes asserts are based upon the rights afforded to her son under the IDEA and are neither transferrable nor severable to her. *Id.* Moreover, to the extent Hayes seeks recovery of an "award of attorney's fees to the parents of a child with a disability who is the prevailing party" under 20 U.S.C. § 1415(i)(3)(B), the Third Circuit has limited such awards to the child who is the prevailing party and has specifically rejected classifying the parent as the prevailing party. *Id.* at 234.

6. Hayes next contends that "I as Plaintiff and my son were victims of harassment and intimidation under Section 504." (D.I. 1 at 4) *See* 29 U.S.C. § 794. "While [the] IDEA sets forth a positive right to a 'free appropriate public education,' § 504 bars all federally funded entities (governmental or otherwise) from discriminating on the basis of disability." *Susavage v. Bucks County Schools Intermediate Unit No. 22,* 2002 WL 109615, at 18 (E.D. Pa 2002), quoting, *W.B. v. Matula,* 67 F.3d 484, 502 (3d Cir.1995). To assert a viable claim under § 504, four factors must be established, *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3d Cir.1991), the first of which, that she is a disabled individual, the court finds that Hayes has failed to demonstrate.

7. Finally, although Hayes has invoked 42 U.S.C. § 1983 in her complaint, she has not provided any allegations for the court to infer the substance of this argument.

D.Del.,2003.
Hayes v. Board of Educ. for Cape Henlopen School Dist.
Not Reported in F.Supp.2d, 2003 WL 105482 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ATTACHMENT "B"

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 21501838 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Texas, Dallas
Division.
Alinda FRANCINE Carter-Thomas, and Minor
Child, Jane Doe Plaintiff,
v.
DALLAS INDEPENDENT SCHOOL DISTRICT,
et al. Defendants.
**No. Civ.A. 3:02-CV-1853-.**

June 25, 2003.

*ORDER*

SOLIS, J.
*1 Now before the Court is Defendants' Pre-Answer Motion to Dismiss, filed February 17, 2003, with Plaintiff's First, Second and Third Rebuttal Responses to Defendants' Pre-Answer Motion to Dismiss, as well as Defendants' Reply. After full consideration of the Parties' briefing and the applicable law, for the reasons discussed herein, the Court hereby GRANTS Defendants' Pre-Answer Motion to Dismiss.

*BACKGROUND*

On August 28, 2002, Plaintiffs Alinda Francine Carter-Thomas ("Thomas") and her minor child, Jane Doe ("Doe")(collectively "Plaintiffs") filed a Complaint against Dallas Independent School District ("DISD"), Dallas Independent School District Superintendent, Dr. Mike Moses ("Moses"), Dallas Independent School District Board ("Board "), Philip Jackson, and Kyle Richardson (collectively "Defendants").

Plaintiffs filed this lawsuit, appealing and seeking review of special education due process hearing officer Janis Herd's ("Herd") decision, issued on

July 8, 2002. Plaintiff filed for a due process hearing, claiming that DISD violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (2003)("IDEA"), regarding the education of Thomas' daughter, Doe. The issues involved in the due process hearing related to: 1) whether DISD provided an appropriate education to Doe, 2) whether Plaintiffs were entitled to compensatory services in the form of District-provided tuition and transportation to a private school or private tutoring service; and 3) whether a change in placement, proposed by the DISD Admission Review and Dismissal Committee ("ARDC") in March of 2002, was appropriate. In her decision, Herd stated that 1) Doe made progress and received educational benefit in DISD, 2) Plaintiffs were not entitled to compensatory services, and 3) that Doe's disabilities required more intensive special education services than that provided by the program proposed in March 2002 by ARDC. It is from this decision that Plaintiffs appealed, filing a complaint with this Court. On February 17, 2003, Defendants filed this Pre-Answer Motion to Dismiss.

*DISCUSSION*

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint when Defendant shows that Plaintiff has failed to state a claim for which relief may be granted. A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). Under the rule of *Conley v. Gibson,* 355 U.S. 41 (1957), a claim should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. The Court must render its decision taking the complaint in the light most favorable to the Plaintiff and taking its allegations as true. *Baker v. Putnal,* 75 F.3d 190,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21501838 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

196 (5th Cir.1996). The Court limits its inquiry to whether Plaintiff is entitled to offer evidence to support claims and does not address whether Plaintiff will ultimately prevail on the merits. *Johnson v. Dallas Ind. School Dist.,* 38 F.3d 198, 199 (5th Cir.1994). However, dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier,* 801 F.2d 789, 791-92 (5th Cir.1986).

**\*2** Defendants claim that because Plaintiffs lack the capacity to bring and maintain this action individually and because Thomas cannot bring this action as "next friend" without the aid of counsel, Plaintiffs cannot prove any set of facts that would allow relief under the allegations in the complaint.

### I. Individual Capacity

Plaintiffs bring this action pursuant to the provisions of the IDEA which affords any party aggrieved by the findings and decision made by a due process hearing officer "the right to bring a civil action with respect to the complaint." 20 U.S.C. § 1400(i)(2)(A) (2003). This complaint is brought by both Thomas and Doe, each in their individual capacities.

### Doe

Federal Rule of Civil Procedure 17 states that the " capacity to sue or be sued shall be determined by the law of the state in which the district is held." The Court accordingly looks to Texas law to determine if Doe has the capacity to sue. According to the Texas Supreme Court, a minor cannot bring a cause of action on her own behalf unless her disability of minority has been removed. *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983). Furthermore, a minor does not have the legal capacity to employ an attorney or anyone else to watch over her interests. *Byrd v. Woodruff,* 891 S.W.2d 689, 704 (Tex.App.Dallas 1994, writ denied). Doe is 13 years old, and a minor. Thus, Doe, in her individual capacity, cannot allege any

cognizable theory of recovery and cannot state a claim upon which relief may be granted. Therefore, the Court GRANTS Defendants' Motion to Dismiss as to Doe.

### Thomas

The IDEA does not provide for a separate and independent cause of action for the parents of students. The Court stated in *Collinsgru v. Palmyra Bd. of Educ.,* 161 F.3d 225, 227 (3rd Cir.1998)

... the IDEA does not confer joint substantive rights on parents and their children. We agree that the IDEA grants parents ample procedural rights to ensure active parental involvement at all stages of the development and implementation of a child's individual educational program, even through the administrative process. We think, however, that Congress's decision to endow parents with these procedural rights should not be read, under the language of the IDEA, to imply that parents also possess the same underlying substantive rights that their children possess.

*See also Bernard v. School Bd.,* 58 F.Supp.2d 669, 674 (E.D.Va.1999)(holding that although the IDEA bestows procedural rights upon parents, the child, not the parents, is the real party in interest in any IDEA proceeding).

Thus, a parent does not have a right of action under the IDEA, other than in a next friend capacity, for her disabled child.[FN1] The Court cannot clearly discern from the Complaint if Plaintiff is suing only in her individual capacity, or if Plaintiff is also suing in next friend capacity. Construing the pleadings liberally, the Court interprets the Complaint to mean that Plaintiff is suing in her individual capacity as well as in a next friend capacity. Because Plaintiff has stated no claim upon which relief can be granted, the Court GRANTS Defendants' Motion to Dismiss with prejudice as to Thomas in her individual capacity, and GRANTS Defendant's Motion to Dismiss without prejudice as to Thomas in her capacity as next friend to her minor child. As discussed below, the Court will allow Thomas 30 days to retain an attorney and refile as next friend of her minor child.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21501838 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

FN1. Fed.R.Civ.P. 17(c) states, "An infant or incompetent person ... may sue by a next friend."

## II. Parent *Pro-Se* Representation

**\*3** In light of the Court's ruling that Thomas has 30 days to retain an attorney and refile as next friend, the Court next turns to the issue of Thomas representing her child without the aid of counsel. It has long been recognized that a litigant in federal court has the right to proceed as his or her own counsel. 28 U.S.C. § 1654 (2003)(stating "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...."). In contrast, under Rule 17 of the Federal Rules of Civil Procedure, minors are precluded from determining their own legal actions. Rather, under Rule 17(c), a representative or guardian "may sue or defend on behalf of the infant."

While the Fifth Circuit has not addressed directly the issue of whether a parent can represent her child in a *pro se* capacity in a federal proceeding under the IDEA, the Fifth Circuit has held that individuals who do not have a law licence may not represent other parties in federal court even on a next friend basis. *Weber v. Garza,* 570 F.2d 511, 514 (5th Cir.1978)(finding that "individuals not licensed to practice law by the state may not use the 'next friend ' device as an artifice for the unauthorized practice of law"); *see also Guajardo v. Luna,* 432 F.2d 1324 (5th Cir1970)(holding, upon being faced with Petitioner's request for declaratory judgment that a state may not constitutionally prevent a layman from filing a civil suit on behalf of another person, that "the requirement that only licensed lawyers may represent others in court is a reasonable rule that does not offend any constitutional guarantee"). FN2

FN2. Several other circuits have also held that the right to proceed *pro se* in federal courts does not give non-lawyer parents the right to represent their children in proceedings before a federal court. *See Cheung v. Youth Orchestra Found.,* 906

F.2d 59, 61 (2d Cir.1990); *Meeker v. Kercher,* 782 F.2d 153, 154 (10th Cir.1986); *Johns v. County of San Diego,* 114 F.3d 874, 876-77 (9th Cir.1997); *Hickey v. Wellesley Sch. Comm.,* 14 F.3d 44, 1993 WL 527964, at \*2 (1st Cir. Dec. 21, 1993) (unpublished disposition).

The Third Circuit addressed this issue at length in *Collinsgru,* deciding whether the parents seeking to enforce their child's substantive right to an appropriate education under the IDEA may or may not represent their child in federal court. *Collinsgru,* 161 F.3d at 227. The Court concluded that in light of the IDEA's language and the statutory and common law rules guarding against non-attorney representation, the parent could not. *Id.*

Furthermore, the Second Circuit stated,
It goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected. There is nothing in the guardian-minor relationship that suggests that the minor's interests would be furthered by representation by the non-attorney guardian.

*Cheung v. Youth Orchestra Foundation, Inc.,* 906 F.2d 59, 61 (2nd Cir.1990).

The Court agrees with the Second and Third Circuits in finding that a non-attorney parent shall not represent their minor child in federal court. Accordingly, because Thomas cannot represent her child without the aid of an attorney, the Court GRANTS Defendants' Motion to Dismiss as to Thomas' next friend claim, without prejudice. Thomas will be given 30 days to retain an attorney to refile her next friend claim.

## CONCLUSION

**\*4** After full consideration of the Parties' briefing and the applicable law, for the reasons discussed herein, the Court hereby GRANTS Defendants' Pre-Answer Motion to Dismiss with prejudice as to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 4

Not Reported in F.Supp.2d, 2003 WL 21501838 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**


Plaintiff Doe, and with prejudice as to Plaintiff
Thomas in her individual capacity and without
prejudice as to Thomas in her next friend capacity.
Thus, within 30 days Plaintiff may refile as next
friend but only through the services of a licenced
and admitted attorney to represent her daughter's
interests in court.

IT IS SO ORDERED.

N.D.Tex.,2003.
Francine v. Dallas Independent School Dist.
Not Reported in F.Supp.2d, 2003 WL 21501838
(N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 3:02cv01853 (Docket) (Aug. 28, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ATTACHMENT "C"

Westlaw.

Not Reported in F.Supp.                                                                Page 1

Not Reported in F.Supp., 1992 WL 277993 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Walter and Janina DACYNA, Parents and Natural
Guardians, on behalf of their disabled son, Stephan
Dacyna, Plaintiffs,
v.
The SCHOOL DISTRICT OF PHILA. BOARD OF
EDUCATION, Pennsylvania Department of
Education and the Commonwealth of Pennsylvania,
Defendants.
**Civ. A. No. 92-CV-2428.**

Oct. 2, 1992.

Walter Dacyna, Janina Dacyna, Walter Dacyna, pro
se.
Glenna Hazeltine, Philadelphia, Pa., for The School
Dist. of Philadelphia, Bd. of Educ.
Claudia M. Tesoro, Office of Atty. Gen.,
Philadelphia, Pa., for Pennsylvania Dept. of Educ.,
Comm. of Pa.

MEMORANDUM

BUCKWALTER, District Judge.
*1 Walter and Janina Dacyna have filed a motion to
vacate an order of this court of September 2, 1992,
which disqualified them from pro se representation
of their son, Stephan. The Third Circuit Court of
Appeals has clearly stated that a non-lawyer is not
entitled to represent his children in place of an
attorney in federal court. *Osei-Afriyie v. Medical
College of Pennsylvania,* 937 F.2d 876, 882-83 (3d
Cir.1991). As that court stated,

It goes without saying that it is not in the interest of
minors or incompetents that they be represented by
non-attorneys. Where they have claims that require
adjudication, they are entitled to trained legal
assistance so their rights may be fully protected.

*Id., citing Cheung v. Youth Orchestra Found. of*

*Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990).

Walter and Janina Dacyna are thus instructed to
obtain counsel in this case. They are reminded that
the Individuals With Disabilities Act, (the "IDEA",
20 U.S.C. § 1415(e)(4)(B), allows for the recovery
of reasonable attorneys' fees, in the discretion of the
Court, as part of the costs to the parents or
guardians of a handicapped child or youth who is
the prevailing party. They are also directed to 28
U.S.C. 1915(d), which authorizes this Court to
request an attorney to represent any person unable
to employ counsel. If the Dacynas allege that they
cannot afford to hire counsel, they may move in
forma pauperis for an appointment of counsel.

An appropriate order follows.

ORDER

AND NOW, this 2nd day of October, 1992, upon
consideration of Plaintiff's Motion to Reconsider
and Vacate this Court's Order of September 2,
1992, disqualifying Walter and Janina Dacyna from
pro se representation of their son, Stephan, it is
ORDERED THAT the motion is DENIED.

IT IS SO ORDERED.

E.D.Pa.,1992.
Dacyna v. School Dist. of Phila. Bd. of Educ.
Not Reported in F.Supp., 1992 WL 277993
(E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:92cv02428 (Docket) (Apr. 27, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ATTACHMENT "D"

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Muriel COLLINS, natural guardian of Willie
Foxworth, a minor, Plaintiffs,
v.
CHICHESTER SCHOOL DISTRICT, et al.,
Defendants.
**No. CIV.A. 96-6039.**

June 29, 1998.

*MEMORANDUM*
REED, J.
**\*1** Currently before the Court is the motion of defendants Chichester School District, Chichester School Board, Philip Voshell (Principal), Salvatore Illuzzi (Superintendent), Samuel Ferrante (Assistant Superintendent), and Cynthia Bottomley (Teacher) (collectively referred to as "School Defendants") to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 39). I have considered all the responses and replies of the parties thereto. I will grant the motion for the following reasons.

PROCEDURAL HISTORY

Plaintiff Muriel Collins is the natural guardian and mother of plaintiff Willie Foxworth ("Foxworth"), a minor. Plaintiffs filed a complaint on September 3, 1996 and filed an Amended Complaint on November 8, 1996 against all School Defendants as well as Upper Chichester Township and Meadow Wood Hospital. In an Order dated July 18, 1997, this Court granted the motion to dismiss of School Defendants on the grounds that the Amended Complaint was vague and failed to specify which particular allegation violated which legal theory and to identify relevant material elements for a cause of action. In its July 18th Order, this Court gave

specific guidance to plaintiffs regarding the legal requirements for pleading these claims. This Court also granted plaintiffs leave to file an amended complaint to correct these deficiencies.

On August 4, 1997, plaintiffs filed a timely Second Amended Complaint. And, soon thereafter, School Defendants filed a motion to dismiss.[FN1]

> FN1. Defendants Upper Chichester Township and Meadow Wood Hospital do not join the instant motion before the Court nor have they filed separate motions to dismiss.

THE SECOND AMENDED COMPLAINT

Plaintiffs submit a lengthy Second Amended Complaint. The causes of action therein against the School Defendants are labelled as follows:
(1) Claims for Relief under the 14th Amendment against School District, School Board and Individual School Defendants (¶¶ 14-89);
(2) Claims for Relief under Title VI of Civil Rights Act of 1964 against School District and School Board (¶¶ 90-92); [FN2]

> FN2. Plaintiffs withdraw their claim under Title VI against defendants Illuzzi, Ferrante, Voshell, and Bottomley. (Pl. Mem. at 25, Document No. 46).

(3) Claims for Relief under the 14th Amendment-Due Process against School District, School Board, and Individual School Defendants(¶¶ 93-97); [FN3]

> FN3. Defendant Bottomley is not named in this claim. It is unclear whether this was done deliberately or inadvertently.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

(4) Claims for Relief under 42 U.S.C. § 1983 against School District and School Board (¶¶ 98-104);
(5) Claims for Relief under 42 U.S.C. § 1981 (¶¶ 105-109);
(6) Claims for Relief under Pennsylvania Human Relations Act, 43 Pa. Cons.Stat. Ann. § 951, *et seq.* (¶¶ 110-115); and
(7) Claims for Relief under Pennsylvania State Law for Libel and Slander against Individual Defendants Voshell, Illuzzi, Ferrante, and Bottomley(¶¶ 116-128).

The remaining claims set forth in the Second Amended Complaint are not against School Defendants, and thus are not relevant here.[FN4] The facts of this case, while not complex, are especially lamentable. Foxworth is a young African-American male student who appears to be experiencing significant, if not severe, behavioral and academic problems in his school, with teachers, with classmates, and with classes. While Foxworth may be in need of help, his remedy, however, does not lie in the federal justice system.

> FN4. These claims are 14th Amendment Due Process and Equal Protection violations against defendant Upper Chichester Township, and libel and slander against defendant Meadow Wood Hospital.

### FACTUAL BACKGROUND

**\*2** The following summary of facts are taken from the Second Amended Complaint.[FN5] The Second Amended Complaint alleges numerous incidents where Foxworth was involved in physical altercations with other students and other misconduct, which resulted in formal disciplinary action. Specifically, plaintiffs allege that Foxworth was physically assaulted by a white male student in the school bathroom and Foxworth retaliated to protect himself. Foxworth received a three-day suspension as a result of the incident. On October 21, 1994, Foxworth was again suspended for three days when he was alleged to have placed glue on a student's locker and to have had an altercation with another student in the school cafeteria. And, finally,

on January 12, 1995, Foxworth was suspended for having been accused of passing gas in a teacher aid's face.

> FN5. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

One incident in particular involved purported sexual misconduct by Foxworth while on a school bus trip on September 26, 1994. During the investigation of the incident, Bottomley instructed students to write down what happened on the bus. Foxworth, at that time, was sent to the Vice Principal's, Voshell, office. Voshell purportedly read aloud accounts written by other students about the bus incident and told Foxworth that Voshell knew Foxworth "did it." Foxworth denied any sexual misconduct on his part and requested that Voshell call the alleged victim and accusers to the office. Voshell called two black male students and two white female students to his office. Foxworth and one of the black male students were the only students to receive suspension. On October 4, 1994 Voshell held a parent conference with Muriel Collins and her husband, Foxworth, and a police officer called Corporal Mignogna. At that meeting, Voshell accused Foxworth of sexual misconduct during the bus incident. Although the precise dates are not entirely clear, the Second Amended Complaint alleges that Foxworth was suspended for a total of thirteen days. It appears as if Foxworth received initially a three-day suspension that was subsequently extended for ten additional days from October 3, 1994 to October 12, 1994. The Second Amended Complaint also alleges that Foxworth was not permitted to return to school until October 18, 1994. (*See* Second Amended Complaint ¶¶ 36, 43, 51, 52, 53, 59, 96). Plaintiffs allege that Foxworth was never provided an opportunity to give his version of the events that transpired on the bus. Plaintiffs further allege that the Chichester School District has a written policy which provides that the parents of a student suspended in excess of three days has the right to an informal hearing, where the parents as well as the student may call witnesses and cross-examine witnesses.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Plaintiffs also allege that the disciplinary actions taken by School Defendants toward Foxworth as a result of the aforementioned incidents were for the purpose of building a negative record against Foxworth in order to remove him from the school district or place him in the special education program, and were harsher due to his race than that taken toward white students.

## LEGAL STANDARD FOR MOTION TO DISMISS

**\*3** When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must accept as true and view in a light most favorable to the plaintiff all allegations made in the complaint. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The complaint should not be dismissed unless the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Ala, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

## DISCUSSION

School Defendants assert a plethora of bases for dismissing the Second Amended Complaint.[FN6]

> FN6. While many of these bases are compelling, the sheer numerosity of these bases gives the appearance of merely hoping to stumble upon a winning argument. Such briefing style is discouraged.
> I also note that I reject the argument of School Defendants that plaintiffs' causes of action are barred by the statute of limitations. Based on my comparison of the Amended Complaint and the Second Amended Complaint, I find that the latter does, in fact, "relate back" to factual allegations set forth in the earlier

complaint. Thus, I turn to the merits of the claims as reviewed under a motion to dismiss standard.

### A. *Standing of Plaintiff Muriel Collins*

The right to a free public education is a right which belongs to students and not their parents. *Goss v. Lopez,* 419 U.S. 565, 573-74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

After studying the Second Amended Complaint, I find that Muriel Collins in support of her claims in her own right (*See* Second Amended Complaint ¶ 4) fails to assert any claims that she herself suffered a constitutional deprivation. Plaintiffs argue that Muriel Collins has a property interest in her son's education because she pays for it with taxes. I reject this argument. While parents typically have taxpayer standing to challenge religious activities conducted in the school under the Establishment Clause of the First Amendments, the courts have never held that parents have standing to assert constitutional due process or equal protection claims belonging to their children.

Additionally, in support of their contention that Muriel Collins has been injured in her own right, plaintiffs point to various allegations in the Second Amended Complaint where School Defendants failed to answer her letters and disallowed her an informal hearing regarding her son's suspension. This argument also lacks merit. The claims of Muriel Collins arise from and are integrally related to the School Defendants' treatment of her son, Foxworth. Thus, it cannot be said that Muriel Collins has legally enforceable claims in her own right separate and distinct from those of her son.

I therefore conclude that Muriel Collins lacks standing to assert any constitutional claim. Accordingly, having permitted Muriel Collins to amend her complaint for the second time, I will now dismiss with prejudice Muriel Collins as party plaintiff in her own right from the Second Amended Complaint. Muriel Collins shall remain a plaintiff only in her status as parent and natural guardian of Foxworth. (*See* Second Amended Complaint ¶ 3).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 4

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

B. *Fourteenth Amendment, Section 1981, and Section 1983*

**\*4** The Second Amended Complaint contains overlapping claims. There are two Fourteenth Amendment claims (one of which is labelled Due Process) against School Defendants as well as a separate 42 U.S.C. § 1983 ("Section 1983") claim against the School District and the School Board. " Section 1983 is a remedial statute. It 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.' " *Rembert v. Monroe Township Bd. of Ed.*, Civ. No. 95-4818, 1997 WL 189318, at \*5 (D.N.J. Apr.14, 1997) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Due to the overlapping and potentially confusing nature of the claims as alleged in the Second Amended Complaint, I will categorize them into claims related to due process violations and claims related to race discrimination.

(1) *Due Process*

The United States Supreme Court in *Goss* held that the Due Process Clause requires that before a school may order a suspension of ten days or less, a student must be given notice of the charges, an explanation of the evidence against him, and an opportunity to present his side of the story. *Goss,* 419 U.S. at 581; *see also Palmer by Palmer v. Merluzzi*, 868 F.2d 90, 93 (3d Cir.1989). The purpose of these "rudimentary precautions" is to prevent "unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss,* 419 U.S. at 581. The United States Supreme Court stopped short of holding that due process requires an opportunity for the student "to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 583. Because the Supreme Court in *Goss* addressed only suspension not in excess of ten days, it concluded that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584.

In the instant case, the Second Amended Complaint

alleges that Foxworth was suspended from school for a total of thirteen days. The questions thus becomes whether the *Goss* due process requirements for a ten-day suspension are applicable here. I find that a thirteen-day suspension is more closely aligned with a ten-day suspension than it is with the "longer suspensions or expulsions " contemplated in *Goss,* and thus the due process measures enunciated in *Goss* are appropriate here. The question now becomes whether the process afforded to Foxworth was due.

Foxworth admits in his Second Amended Complaint that he was taken to the Vice Principal's, Voshell, office where Voshell accused Foxworth of sexual misconduct on the bus incident by purporting to read aloud accounts written by other students. Foxworth denied any sexual misconduct and suggested that Voshell call in the victim and accusers. Voshell then called other students to his office and spoke with all the students separately from Foxworth and one other student. Shortly thereafter, Voshell questioned and accused Foxworth for the same offense in a parent conference attended by Muriel Collins, her husband, and a police officer. Thus, I find that Foxworth received notice on two separate occasions (one of which was before the suspension went into effect) that he was accused of sexual misconduct and he was informed that the basis for the accusation derived from statements written by other students.

**\*5** While the Second Amended Complaint alleges that Foxworth did not have an opportunity to give his version of the events (Second Amended Complaint ¶ 47), I nonetheless conclude that process was due under the circumstances here. The Court of Appeals for the Third Circuit in *Palmer,* where a high school student received a ten-day suspension from school plus a sixty-day suspension from playing football, had to determine whether the student received due process. According to the *Palmer* court, due process is determined by " weighing (1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards." *Palmer,* 868 F.2d at 95. The *Palmer*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 5

court, quoting *Goss,* described the student's interest as one in "avoiding unfair or mistaken exclusion from the educational process with all of its unfortunate consequences" such as damage to student's reputation among peers and teachers as well interference with the student's higher education or employment opportunities. *Id.* (internal quotations omitted). The public school is interested in maintaining order and discipline without prohibitive costs. *Id.* The court continued to reason that a formal hearing where a student may summon the accuser, present witnesses, or be permitted counsel, would increase costs but not necessarily fairness and reliability. *Id.*

Weighing the factors enunciated in *Palmer,* I find that the three additional days of suspension received by Foxworth in excess of the ten-day parameter established in *Goss* did not materially lessen Foxworth's standing among his peers and teachers or substantially reduce Foxworth's future opportunities for employment or education. Indeed, Foxworth does not allege or argue otherwise. I further find that the thirteen-day suspension in our case, which was not for the balance of the semester, does not amount to an extensive suspension or permanent expulsion necessitating more formal procedures beyond rudimentary due process.

In light of the foregoing and accepting the allegations of the Second Amended Complaint as true, I conclude that Foxworth received all the necessary process due him. While the thirteen-day suspension exceeds technically the parameters of *Goss,* the process rendered toward Foxworth certainly complies with the spirit of *Goss.* Accordingly, having permitted plaintiffs to amend their complaint for the second time, I will dismiss with prejudice claims based on the Due Process Clause of the Fourteenth Amendment brought under Section 1983 (Second Amended Complaint ¶¶ 14-89, 93-97, 98-104). There are no set of facts alleged or inferrable from the Second Amended Complaint to support these claims as a matter of law.

*(2) Race Discrimination Claims*

*6 The Second Amended Complaint alleges a race discrimination claim under Section 1981 against all School Defendants. Though the Second Amended Complaint does not specifically label it as such, I will assume for purposes of a thorough analysis, that plaintiffs also assert a race discrimination claim under Section 1983 in violation of the Equal Protection Clause of the Fourteenth Amendment.[FN7]

> FN7. Plaintiffs apparently argue a violation of the Equal Protection Clause of the 14th Amendment in their brief. (*See* Pl. Mem. at 16-17, Document No. 46).

These two claims, which are premised on the same allegations in the Second Amended Complaint, require intentional, purposeful discrimination on the basis of race. *See General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 389, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Washington v. Davis,* 426 U.S. 229, 241, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Keenan v. City of Philadelphia,* 983 F.2d 459, 465 (3d Cir.1992); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988); *Ascolese v. SEPTA,* 902 F.Supp. 533, 546 (E.D.Pa.1995).

Specifically, plaintiffs claim in the Second Amended Complaint that School Defendants practice and endorse "harsher disciplinary actions for Black and other minority students, than for similarly situated students for the same or similar incidents" (Second Amended Complaint ¶¶ 80, 102); denying or minimizing employment opportunities and extra-curricular program funding for Black applicants, and particularly for positions of relatively high authority within the School District (¶¶ 82, 103); "attempting to place Black and minority students in special education classes without sufficient rationale and based on race" (¶ 104); and "harassing or allowing nonminority students to harass Black and minority students without taking appropriate disciplinary action against the offenders" (¶ 81).

Plaintiffs also allege that Foxworth "was arbitrarily singled out for attempts for evaluation for special education ... at least in part due to his race" (¶ 21);

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 6

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

received a majority of failing grades on his report cards that did not correspond with school work and homework grades, yet nothing was done to rectify or investigate based on his race (¶¶ 23, 24); was " subject[ed] to punishment more severe and harsh than similarly situated white students with regard to all of his suspensions" (¶ 108); was deprived of a right to "write a statement about the bus trip ... while purposely not denying that right to similarly situated White students who were alleged to have committed misconduct on ... the bus trip" (¶ 47); and was deprived of an "informal hearing ... at least in part due to [his] race" (¶ 46).

I find that, even under the liberal pleading standards afforded by the Federal Rules of Civil Procedure, plaintiffs do not allege a set of facts in support of any race discrimination claim that would entitle them to relief. The allegations are nothing more than accusations of race-based discrimination and unequal treatment without any factual support. Where plaintiffs claim that Foxworth received suspensions unfairly due to his race, they fail to allege facts showing that similarly-situated white students (*e.g.* a white student who was involved in the same physical altercations and incidents, which occurred on the bus, with glue in a locker, or with passing gas in a teacher aid's face) were treated any differently. The Second Amended Complaint is devoid of factual documentation as to how the School Defendants acted with purposeful race animus or had a pattern or practice of intentional discrimination. Conclusory, generic allegations will not enable a plaintiff's claim to survive a motion to dismiss. *See Odom v. Columbia Univ.*, 906 F.Supp. 188, 194-95 (S.D.N.Y.1995) (dismissing Section 1981 claim where allegations of race discrimination were conclusory); *Trader v. Fiat Distribs., Inc.*, 476 F.Supp. 1194, 1198 (D.Del.1979) ("[T]he Third Circuit teach[es] that a civil rights complaint must specify, with a sufficient degree of particularity, the unlawful conduct allegedly committed by each defendant and the time and the place of the conduct. ").

*7 Accordingly, having permitted plaintiffs to amend their complaint for the second time, I will dismiss with prejudice all of the race discrimination claims against School Defendants brought under

Section 1981, Section 1983, and the Fourteenth Amendment. (Second Amended Complaint ¶¶ 14-89, 98-104, 105-109). There are no set of facts alleged or inferrable from the Second Amended Complaint to support these claims as a matter of law.

### C. Title VI

Title VI [FN8] requires proof of actual intentional discrimination on the basis of race. *See Guardians Ass'n*, 463 U.S. at 608 n. 1 (Powell, J., concurring in judgment); *Alexander v. Choate*, 469 U.S. 287, 293, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *see also Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1405, 1406 & n. 12 (11th Cir.1993) (" Title VI itself, like the Fourteenth Amendment, bars only intentional discrimination" and provides no more protection than the Equal Protection Clause). A court's analysis for evaluating a Title VI claims mirrors the analysis used for an equal protection claim. *Foremanye v. University of Pa.*, Civ. No. 96-3597, 1996 WL 684242, at *3 (E.D.Pa. Nov.21, 1996) (citing *Elston* ), *aff'd*, --- F.3d ----, Civ. No. 96-2130 (Apr. 14, 1998).

> FN8. Title VI provides in pertinent part:
> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
> 42 U.S.C. § 2000d.

As I concluded earlier for the race discrimination claims under the Fourteenth Amendment and Section 1981, I find that the Second Amended Complaint is devoid of any factual allegations that School Defendants intentionally discriminated against Foxworth on the basis of race and treated him differently than other individuals similarly situated. Accordingly, I will dismiss with prejudice the Title VI claim. (Second Amended Complaint ¶ ¶ 90-92).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 7

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

### D. *State Law Claims*

Having dismissed all federal claims in the lawsuit against School Defendants, I will exercise my discretion and dismiss without prejudice all pendente state law claims against School Defendants. Courts should ordinarily decline to exercise jurisdiction over state law claims when the federal claims are dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, I will dismiss the claims for Pennsylvania Human Relations Act, 43 Pa. Cons.Stat. Ann. § 951, *et seq.* (¶¶ 110-115) and for libel and slander under Pennsylvania state law (¶¶ 116-128) without prejudice to the right of plaintiffs to reassert such claims in the appropriate state forum.

### CONCLUSION

For the foregoing reasons, I will grant the motion of School Defendants to dismiss the Second Amended Complaint. Having provided an opportunity to plaintiffs to amend the complaint for a second time, I will now dismiss with prejudice all School Defendants from the Second Amended Complaint. All remaining state law claims against School Defendants will be dismissed without prejudice.

*8 An appropriate Order follows.

### *ORDER No. 2*

AND NOW, on this 29th day of June, 1998, upon consideration of the motion of defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 39), and all subsequent responses and briefs of parties thereto, and for the reasons stated in the attached memorandum of law, and having found that plaintiffs can prove no set of facts alleged in the Second Amended Complaint in support of the claim that would entitle plaintiffs to relief, it is hereby ORDERED that the motion is GRANTED

and that all federal claims (set forth in paragraphs 14-89, 90-92, 93-97, 98-104, and 105-109 in the Second Amended Complaint) against defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley are DISMISSED WITH PREJUDICE from the lawsuit.

IT IS FURTHER ORDERED that all claims of plaintiff Muriel Collins in her own right are DISMISSED WITH PREJUDICE from the lawsuit and all references to "Muriel Collins Individually and in Her Own Right" shall accordingly be removed from all captions of documents filed hereinafter. The Clerk of the Court is directed to remove plaintiff Muriel Collins Individually and in Her Own Right from the caption on the docket.

IT IS FURTHER ORDERED that the supplemental state law claims against defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley, are, in the exercise of this Court's discretion, DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3), recognizing the right of plaintiffs to refile their state law claims in the appropriate state court if legally permissible.

This is not a final Order.[FN9]

> FN9. The claims against defendants Upper Chichester Township and Meadow Wood Hospital remain.

### *ORDER No. 1*

AND NOW, on this 29th day of June, 1998, upon consideration of the motion of plaintiffs Muriel Collins and Willie Foxworth for a entry of default judgment against defendant Upper Chichester Township pursuant to Federal Rule of Civil Procedure 55 (Document No. 41), and the response of defendant Upper Chichester Township (" Township") thereto, and having found that defendant Township filed its answer two days late, and having found the failure of defendant Township to file a timely answer was due to inadvertence and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 8

Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

not willfulness or bad faith, and having found that plaintiffs were not prejudiced by a two-day late filing especially where defendant Township has previously filed timely answers to the complaint and the amended complaint and where discovery has been undertaken, and having found that defendant Township was not itself dilatory in any way, it is hereby ORDERED that the motion for default judgment is DENIED.

### ORDER No. 3

AND NOW, on this 29th day of June, 1998, in accordance with the Orders of Judge Angell entered on January 16, 1998 (Document No. 53) and April 13, 1998 (Document No. 57), and the motion to dismiss by defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley having been resolved on this same date, it is hereby ORDERED that the defendants Upper Chichester Township and Meadow Wood Hospital have until no later than August 3, 1998 to file their respective dispositive motions.

**\*9** IT IS FURTHER ORDERED that no later than July 13, 1998, defendants Upper Chichester Township and Meadow Wood Hospital shall each notify this Court by letter to chambers if it does not intend to file a dispositive motion.

### ORDER

AND NOW, on this 29th day of June, 1998, upon consideration of the motion of defendants Chichester School District, Chichester School Board, Philip Voshell, Salvatore Illuzzi, Samuel Ferrante, and Cynthia Bottomley for leave to file a reply brief to plaintiffs' answer to moving defendants' motion to dismiss plaintiffs' second amended complaint (Document No. 47), and having considered the reply brief of defendants in resolving the motion to dismiss on this same date, it is hereby ORDERED that the motion for leave is GRANTED nunc pro tunc.

E.D.Pa.,1998.

Collins v. Chichester School Dist.
Not Reported in F.Supp., 1998 WL 351718 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:96cv06039 (Docket) (Sep. 03, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ATTACHMENT "E"

# Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
John DOE and Jane Doe, his mother, Plaintiffs,
v.
WOODRIDGE ELEMENTARY SCHOOL
DISTRICT NO. 68 BOARD OF EDUCATION; Al
McGowan, individually and in his official capacity;
Robin Lewis, individually and in her official
capacity; and Regina Woodson, individually and in
her official capacity, Defendants.
**No. 04 C 8250.**

April 13, 2005.

Randall F. Peters, Randall F. Peters & Associates,
Chicago, IL, for Plaintiffs.
Darcy L. Proctor, Lucy Bernice Bednarek, Thomas
George DiCianni, Ancel, Glink, Diamond, Bush,
DiCianni & Rolek, P.C., Chicago, IL, for
Defendants.

### MEMORANDUM OPINION
KOCORAS, Chief J.
**\*1** This matter comes before the court on the
motion of Defendants Woodridge Elementary
School District No. 68 Board of Education ("
Woodridge"), Al McGowan ("McGowan"), and
Robyn Lewis ("Lewis") to dismiss the fifteen-count
complaint of Plaintiffs Jane Doe and her son, John
Doe, pursuant Federal Rule of Civil Procedure
12(b)(6). For the reasons set forth below, the
motion is granted in part and denied in part.

### BACKGROUND

John Doe ("Doe") is a minor African-American
male who attended John L. Sipley Elementary
School in Woodridge, Illinois. Doe alleges that for
a five-month period, from January 2001 through
May 2001, he was sexually abused by a teacher's
aide at the school, Regina Woodson ("Woodson").

Woodson allegedly used her position as a teacher's
aide to sexually groom and sexually abuse Doe. The
sexual grooming included removing Doe from the
school premises in order to abuse him, offering to
omit lessons or lessen school punishment in
exchange for sexual favors, enticing him with gifts
of food and clothing, offering him alcohol,
impersonating Jane Doe to the school in order to get
Doe excused from school, and deceiving Jane Doe
as to the whereabouts of her son after school. The
abuse included accepting sexual favors for the
omission of school lessons or the lessening of
punishment, threatening physical harm if Doe
disclosed the abuse, and abusing Doe both on and
off school premises.

Jane Doe allegedly requested that Woodson leave
her son alone and that she refrain from driving him
home; however, these requests were ignored. Jane
Doe also allegedly asked school officials to prevent
Woodson from removing her son from the school
premises, but these requests also were ignored.

Jane Doe alleges that Lewis, Principal of Sipley
Elementary School, and McGowan, Superintendent
of the School District, were repeatedly made aware
of the abuse and "turned a blind eye" to reports of
the abuse because she and her son were
African-American. Jane Doe and Doe sued
Woodridge, McGowan, Lewis, and Woodson,
alleging in part that Woodson's sexual grooming
and/or abuse and the remaining Defendants' failure
to supervise Woodson and stop the abuse resulted
in numerous federal constitutional and state
statutory and common law violations. Woodridge,
McGowan, and Lewis (collectively referred to as
the "Defendants") now move to dismiss Counts
Two through Five and Counts Seven through
Fifteen, asserting various statutory and procedural
defenses. We address each argument in turn.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

### LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts that set forth the essential elements of the cause of action. *Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996). In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). With these principles in mind, we turn to the present motion.

### DISCUSSION

#### I. Federal Claims

#### A. Count Two

**\*2** Count Two of the complaint is a claim brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), alleging that the sexual abuse and/or grooming of Doe was the result of racial discrimination and that the abuse was intentionally discredited by Woodridge. The complaint also alleges that the abuse Woodson allegedly inflicted and the Defendants' policy towards the abuse had a disparate impact on African-American boys.

The Defendants claim, in part, that Jane Doe has no standing to assert a Title VI claim because, as a parent and non-student, she is not an intended beneficiary of a federally funded program. We agree.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). A plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program in order to state a claim under Title VI. *Simpson v. Reynolds Metals Co.,* 629 F.2d 1226, 1235 (7th Cir.1980).

Here, Jane Doe alleges that she and her son are the " intended beneficiaries of federal assistance to public schools." However, merely asserting that a parent is the intended beneficiary of a federally funded program does not make it so. Plaintiffs have failed to cite a case where a parent was deemed the beneficiary of a federally funded program for the purposes of a Title VI claim. The Defendants have pointed to cases from various courts holding that parents do not have standing to sue under Title VI. We find the analysis in these cases to be persuasive. *See Jackson v. Katy Indep. Sch. Dist.,* 951 F.Supp. 1293, 1298 (S.D.Tex.1996) (holding that the intended beneficiaries of a federally funded public school program are school children, not their parents). Therefore, Jane Doe personally lacks standing to assert a claim for damages against the Defendants, but may bring an action on behalf of her minor son, who, as an intended beneficiary of the school, has standing to assert a claim for discrimination under Title VI.

The Defendants also challenge Doe's claim under Title VI in that the allegations of disparate impact cannot be sustained. We agree.

The complaint sets forth that the discrimination at issue was intentional and that it had a distinctively disparate impact on African-American students. Insofar as Count Two alleges disparate impact, it must be dismissed under *Alexander v. Sandoval,* 532 U.S. 275, 285, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). In *Sandoval,* the Supreme Court held that Section 601 of Title VI prohibits only intentional discrimination. *Sandoval,* 532 U.S. at 280. The Seventh Circuit has expressed similar sentiments in *Craft v. Bd. Of Regents of Univ. of*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*Illinois,* holding that "proof of intentional discrimination [has been consistently required] ... as a basis for compensatory relief" in Title VI claims. *Craft,* 793 F.2d 140, 142 (7th Cir.1986). Therefore, Plaintiff's allegations in Count Two that are based on disparate impact discrimination are dismissed, while those relating to intentional conduct may stand.

### B. Counts Three and Four

**\*3** Count Three is a § 1983 claim brought against McGowan, Lewis and Woodson in their individual capacities, and Count Four is a § 1983 claim against the same Defendants in their official capacity and Woodridge. Both claims allege a violation of the Plaintiffs' due process and equal protection rights due to sexual and racial discrimination.

### 1. Count Four (Against the Defendants in their Official Capacity)

The Defendants contend that Count Four must be dismissed under *Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* the Supreme Court established that local governments could not be held liable under a *respondeat superior* theory. Rather, a local government could be held liable solely when the constitutional deprivation arises from a governmental custom. *Id.*

Here, the Plaintiffs have not made any specific allegations with regard to McGowan, Lewis, or Woodson that would indicate that these Defendants acted in their official capacity in carrying out a policy or custom of racial and sexual discrimination that was in place at Woodridge at the time the alleged events occurred. Accordingly, the portion of Count Four that are against the Defendants in their official capacity is dismissed.

### 2. Counts Three and Four (Section 1983 Claims)

Next, the Defendants assert various defenses, including preclusion, statute of limitations, and

failure to state a claim, and seek dismissal of Counts Three and Four of the complaint. Count Three alleges a § 1983 claim against the individual Defendants. Specifically, the Plaintiffs claim that Woodson sexually groomed and/or abused Doe because he was an African-American male. Count Three also contains allegations that McGowan and Lewis knew of the sexual abuse and discrimination and "turned a blind eye to reports of abuse from African-American parents." Count Four contains allegations that Woodridge demonstrated " deliberate indifference" to the Constitutional rights of the Plaintiffs, and that it engaged in an official policy or custom of discrimination. Both Counts Three and Four allege that these actions caused injury to Jane Doe and her son.

### a. Preemption of Both Section 1983 Claims

First, the Defendants seek dismissal based on a theory of preemption. Specifically, the Defendants argue that the § 1983 claims are preempted by the availability of Title VI and Title IX actions. To support their argument, the Defendants rely on *Delgado v. Stengall,* 367 F.3d 668 (7th Cir.2004). Plaintiffs counter that the Defendants' reliance on *Delgado* is misplaced.

In *Delgado,* the Seventh Circuit held that a university student could sue her professor for sexual harassment under § 1983. However, with respect to the university, the Court noted that Title IX " furnishes all the relief that is necessary to rectify the *discriminatory policies or practices of the school itself." Delgado,* 367 F.3d at 674 (emphasis added). Preclusion does not occur when the teacher engages in abuse that is not a policy or practice for which a school could be held liable under Title IX. *Id.* Thus, the distinction between teacher and school official becomes "crucial" when determining whether § 1983 claims are preempted by Title IX. *Id.*

**\*4** Count Three is a § 1983 claim against the individual Defendants. In Count Three, the Plaintiffs do not allege that the discrimination was due to the school's discriminatory policy, but rather that the Defendants engaged in discrimination in their individual capacity. Because the alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

conduct in Count Three is not that of school policy but of individual conduct, like that in *Delgado,* the Defendants' preclusion argument fails.

With respect to Count Four, however, which alleges a § 1983 claim against the Defendants in their official capacity, the Plaintiffs do allege that the discrimination was Woodridge's "official custom or policy." We find that under *Delgado,* Count Four is precluded by the availability of a claim against Woodridge under Title IX. *See Delgado,* 367 F.3d at 674. Accordingly, the Defendants' motion to dismiss Count Four of the complaint is granted.

### b. Jane Doe's Section 1983 Claims and the Statute of Limitations

Both Counts Three and Four allege injury to Jane Doe due to the discriminatory actions of the Defendants. The Defendants argue that Jane Doe is time-barred from raising these claims under *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 277 (7th Cir.1989) and *Ashafa v. City of Chicago,* 146 F.3d 459, 462 (7th Cir.1998). Both cases stand for the proposition that § 1983 claims are subject to a two-year statute of limitations.

Section 1983 does not contain an express statute of limitations. In order to determine the proper statute of limitations for § 1983 actions, a federal court must adopt the forum state's statute of limitations for personal injury claims. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The appropriate statute of limitations for § 1983 cases filed in Illinois is two years. *Ashafa,* 146 F.3d at 462; *see also* 735 ILCS § 5/13-202.

Here, the complaint at issue was filed well over two years after the alleged abuse and discrimination. Accordingly, Jane Doe's § 1983 claims must be dismissed.

### c. Doe's Section 1983 Claims

The Defendants argue that Counts Three and Four should be dismissed with respect to Doe as well because the complaint does not sufficiently allege

that Woodson's abuse was under color of state law. The Plaintiffs contend that Woodson was "clothed with the requisite authority" which facilitated the abuse.

In order to sustain a § 1983 claim, the plaintiff must allege the violation of a constitutional right and must show that the deprivation was committed by a person acting under color of state law. *Bowman v. City of Franklin,* 980 F.2d 1104 (7th Cir.1992). A municipality may be held liable if the alleged constitutional deprivation occurred pursuant to a municipal policy or custom. *Monell,* 436 U.S. at 658; *Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir.1990).

The traditional definition of acting under color of state law requires that "the defendant in a § 1983 action has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. " *West v. Atkins,* 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Taking all allegations as true and construing inferences in favor of the Plaintiffs, it is clear that Doe has sufficiently pleaded that Woodson's abuse was conducted under the color of state law. Woodson was a teacher's aide, specifically assigned to Doe, and she allegedly used her authority to sexually groom and/or abuse him. The alleged abuse was made possible while Woodson was clothed with the authority of state law: Woodson allegedly offered to omit lessons and decrease punishment if Doe would engage in sexual favors, which he allegedly did. The alleged abuse, as can be inferred from the complaint, took place both on and off of school premises. Woodson abused the position given to her by the state and thus acted under color of law. Consequently, she was acting under color of state law and Doe's § 1983 claims survive the Defendants' motion to dismiss.

### II. State Law Claims

**\*5** Count Seven and Counts Nine through Fifteen are state law claims, which the Defendants claim are barred by the one-year statute of limitations set forth in the Illinois Governmental and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/8-101. Count Seven alleges intentional infliction of emotional distress against Defendants McGowan and Lewis. Count Nine alleges that the School District violated the Illinois Hate Crimes Act, 720 ILCS 5/12-7.1. Count Ten alleges negligence per se, Count Eleven alleges willful and wanton conduct in the execution or enforcement of the law, Count Twelve alleges negligent supervision, and Count Thirteen alleges negligent hiring. Counts Ten through Thirteen are against Woodridge, McGowan, and Lewis. Count Fourteen alleges that Woodridge ratified Woodson's abuse. Finally, Count Fifteen alleges that all Defendants negligently breached a special duty owed to Doe.

### A. Jane Doe's State Law Claims

The alleged events at issue took place in 2001. The Plaintiffs filed their complaint well over three years later, on December 22, 2004. The Plaintiffs assert that the Tort Immunity Act is not controlling; rather, they argue that the applicable statute of limitations is set forth in 735 ILCS 5/13-202.2, which sets the statute of limitations for childhood sexual abuse as ten years after the limitation period begins to run or within five years the person abused discovers or should have discovered that an injury due to childhood abuse was sustained.

We agree with the Defendants' contention that by its plain language 735 ILCS 5/13-202.2 does not apply to Jane Doe's claim, since she is not the "person abused." Consequently, the Tort Immunity Act applies to Jane Doe's state tort claims. Accordingly, because the complaint was filed more than one year after Jane Doe became aware of her claims, Counts Two, Nine, Ten, Eleven, Thirteen, Fourteen, and Fifteen are dismissed with respect to Jane Doe.

### B. Doe's State Law Claims

#### 1. Intentional Infliction of Emotional Distress

Defendants also seek dismissal of Doe's state law claims. In Count Seven, the Plaintiffs allege a state law claim for intentional infliction of emotional distress against McGowan and Lewis. The claim is based on their purported failure to prevent Doe's abuse, investigate Woodson's background, respond to reports of abuse, and supervise Woodson's activities.

A cause of action for the tort of intentional infliction of emotional distress exists when: (1) the conduct involved is truly extreme and outrageous; (2) the actor either intends, or knows that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct does, in fact, cause severe emotional distress. *Giraldi v. Lamson,* 205 Ill.App.3d 1025, 1028, 150 Ill.Dec. 829, 563 N.E.2d 956 (Ill.App.Ct.1990).

Here, the complaint alleges that McGowan and Lewis were informed of the abuse, yet engaged in policy of deliberate indifference despite repeated attempts to call attention to the abuse. Doe alleges that McGowan and Lewis' conduct was intended to inflict severe emotional distress and that Doe did in fact suffer severe emotional distress as a result. Accordingly, Doe has set forth sufficient allegations to survive dismissal at this stage of the controversy.

#### 2. Scope of Employment

**\*6** Defendants argue that Count Two and Counts Nine through Fifteen should be dismissed because Woodson was acting outside the scope of her employment. We agree.

Under Illinois law, a municipality may only be held liable for the tortious conduct of its employees when the act occurs within the employee's scope of employment. *See Wright v. City of Danville,* 174 Ill.2d 391, 405, 221 Ill.Dec. 203, 675 N.E.2d 110 (Ill.1996). An employee's actions fall within the scope of employment if "(a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." *Pyne v. Witmer,* 129 Ill.2d 351, 359, 135 Ill.Dec. 557, 543 N.E.2d 1304 (Ill.1989). While even criminal acts of an employee may fall

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6

Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

within the scope of employment, "if the employee's actions are different from the type of acts that he is authorized to perform or were performed purely in his own interests, he has departed from the scope of employment." *Wright,* 174 Ill.2d at 405, 221 Ill.Dec. 203, 675 N.E.2d 110.

Here, Woodson's alleged actions were obviously those she was not authorized to perform and the actions were perpetuated purely in her own interests and not for a purpose to serve her employer. Accordingly, Doe's state law claims against Woodridge, McGowan, and Lewis are dismissed.

### CONCLUSION

Based on the foregoing analysis, the Defendants' motion to dismiss is granted in part and denied in part. With respect to Jane Doe's claims, Counts Two, Three, Four, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen are dismissed. With respect to John Doe's claims, Counts Two, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen are dismissed.

Plaintiffs' complaint was not in compliance with Federal Rules of Civil Procedure 8(a) and 10(b). Plaintiffs have requested leave to file an amended complaint to rectify non-compliance with the Rules. Accordingly, leave is granted to file an amended complaint as to the remaining counts.

N.D.Ill.,2005.
Doe v. Woodridge Elementary School Dist. No. 68 Bd. of Educ.
Not Reported in F.Supp.2d, 2005 WL 910732 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3124075 (Trial Pleading) Complaint and Demand for Jury Trial (Dec. 22, 2004) Original Image of this Document (PDF)
• 1:04cv08250 (Docket) (Dec. 22, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.